**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detaine | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0003356 | Martinez | Ramon | 7/11/77 | 11/30/21 | EDWARDS | No | Poss Cont Subs - Felony | Felony |
| CF0003355 | Dominguez | Alejandro | 3/23/97 | 11/30/21 | EDWARDS | No | Smuggling of Persons | Felony |
| CF0003643 | Herrera | Jorge Alejandro | 7/19/99 | 12/20/21 | EDWARDS | No | Possession Child Pornography | Felony |
| CF0003808 | Rivera | Roberto | 7/8/79 | 1/5/22 | EDWARDS | No | Smuggling of Persons | Felony |
| CF0004190 | OWEN | CHRISTOPHER ALLEN | 8/3/90 | 2/1/22 | EDWARDS | No | Smuggling of Persons | Misdemeanor |
| CF0004193 | SEANZ | CARLOS NICHOLAS FRANCISCO | 10/8/86 | 2/1/22 | EDWARDS | No | Smuggling of Persons | Felony |
| CF0004316 | Smith | Quinton Tanner | 6/20/97 | 2/14/22 | EDWARDS | No | Poss Cont Subs - Felony | Felony |
| CF0004956 | Paredes Gonzalez | Jorge Antonio | 8/7/67 | 3/23/22 | EDWARDS | Yes | Smuggling of Persons | Felony |
| CF0005107 | Scott | Korey I | 2/27/84 | 3/30/22 | EDWARDS | No | Smuggling of Persons | Felony |
| CF0005218 | Tisby | Alan Demond | 6/8/84 | 4/6/22 | EDWARDS | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0005210 | Carter | Jacob Ross | 5/3/97 | 4/6/22 | EDWARDS | No | Smuggling of Persons | Felony |
| CF0005215 | McKenzie | Duane George JR | 12/6/97 | 4/6/22 | EDWARDS | No | Smuggling of Persons | Felony |
| CF0005216 | Rodriguez | Edwin Adan | 1/24/01 | 4/6/22 | EDWARDS | No | Unlawful Carrying Weapon | Felony |
| CF0002376 | Duran | Jose | 10/10/71 | 10/4/21 | FRIO | No | Smuggling of Persons | Felony |
| CF0004089 | Brasher | Blake Anthony | 12/13/92 | 1/25/22 | FRIO | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004090 | Cruz | Gilbert Andres | 5/2/87 | 1/25/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004238 | Gonzalez | Luis Alberto | 1/10/88 | 2/7/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004269 | Auten | Daniel | 6/23/80 | 2/10/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004708 | Banks | Aaron | 7/6/96 | 3/10/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004709 | Boatman | Danny | 8/23/69 | 3/10/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004710 | Fisher | Christopher | 6/2/89 | 3/10/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004711 | Miles | Zacchaeus | 6/24/01 | 3/10/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004712 | Perez | Angel | 8/16/00 | 3/10/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004837 | Guzman | Edgar | 10/10/96 | 3/19/22 | FRIO | No | Poss Cont Subs - Felony | Felony |
| CF0004838 | Hernandez | Baltazar Jacob | 2/17/92 | 3/19/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0005221 | Hernandez | Jonathan | 2/11/96 | 4/7/22 | FRIO | No | Manufacture/Delivery Controlled Substance | Felony |
| CF0005222 | Ramirez | Juan | 4/15/00 | 4/7/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0005224 | Velasquez | Alberto | 8/15/73 | 4/7/22 | FRIO | No | Smuggling of Persons | Felony |
| CF0004602 | Ocampo-Camacho | Baru Natanael | 10/2/02 | 3/1/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004603 | Rodriguez-Lopez | Orlando | 4/23/88 | 3/1/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004641 | Morales-Sosa | Hernaldo | 2/11/94 | 3/4/22 | JIM HOGG | No | Smuggling of Persons | Felony |
| CF0004691 | Martinez-Fuentes | Francisco | 10/3/83 | 3/9/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004763 | Jiguan-Miranda | Neriy | 5/4/94 | 3/14/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004873 | Arenas-Flores | Esteban | 9/13/90 | 3/22/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004874 | Barrios-Montufar | Nesvin | 7/2/92 | 3/22/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004877 | Garcia-Calachij | William | 8/19/02 | 3/22/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004878 | Gomez-Ariza | Daniel | 12/15/02 | 3/22/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004879 | Lopez-Cruz | Ever Mauricio | 4/27/86 | 3/22/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004934 | Cruz-Zamora | Luis Miguel | 5/7/85 | 3/23/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004935 | Martinez-Silva | Jose Juan | 7/1/84 | 3/23/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004937 | Soto-Calderon | Eulojio | 10/1/62 | 3/23/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0004938 | Soto-Silva | Oscar | 1/27/97 | 3/23/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004969 | Matias-Lopez | Aroldo Gonzalo | 2/15/96 | 3/24/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005072 | Galeano-Avila | Raul | 2/5/77 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005075 | Pacheco-Salazar | Demetrio | 12/22/82 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005076 | Pop-Caal | Alejandro | 5/10/89 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005103 | Morales-Madrid | Ossiel De Jesus | 6/25/01 | 3/30/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005105 | Salinas-Perez | Miguel Angel | 4/2/01 | 3/30/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005108 | Bautista-Santana | Jose | 3/3/91 | 3/31/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005109 | Franco-Arias | Marcelo | 1/11/81 | 3/31/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005110 | Francisco-Resendiz | Eusebio | 1/27/96 | 3/31/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detaine | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0005111 | Gonzalez-Camargo | Jose Enrique | 7/24/92 | 3/31/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005112 | Herrera-Villalobos | Cristobal | 1/1/84 | 3/31/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005113 | Hidalgo-Sanchez | Guillermo | 2/10/95 | 3/31/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005114 | Duran-Maya | Jose Mario | 9/30/85 | 3/31/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005115 | Ramirez-Ramirez | Ismael | 6/17/03 | 3/31/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005116 | Labra-Resendiz | Angel | 4/4/91 | 3/31/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005143 | Amaro-Sanchez | Jose Margarito | 10/17/68 | 4/2/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005144 | Chable-De La Cruz | Raul | 10/23/78 | 4/2/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005145 | Cordero-Garcia | Miguel | 2/4/86 | 4/2/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005146 | De La Cruz-Aleman | Reyli | 11/21/03 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005147 | De La Cruz-Ramirez | Eris | 11/11/03 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005149 | Martinez-Gonzalez | Aristides | 9/4/89 | 4/2/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005150 | Miranda-Miranda | Jonathan Enrique | 4/27/01 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005151 | Morales-Lopez | Angel | 5/22/01 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005152 | Morales-Tecun | Adolfo Sebastian | 2/6/95 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005153 | Perez-Manuel | Demetrio | 8/14/92 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005154 | Reyes-Gonzalez | Aviut | 1/19/92 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005155 | Santos-Gonzales | Valentin | 2/14/89 | 4/2/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005156 | Vasquez-Perez | Edgar Amilcar | 7/8/94 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005157 | Velasquez-Mendez | Carlos Daniel | 2/19/98 | 4/2/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005168 | Esparza-Rodriguez | Julio Cesar | 8/26/00 | 4/3/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005169 | Godinez | Alejandro | 1/11/75 | 4/3/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005170 | Licona-Soto | Jose Angel | 8/26/00 | 4/3/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005171 | Martinez-Licona | Yonatan | 2/13/98 | 4/3/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005172 | Valerio-Jimenez | Hilarino | 1/17/88 | 4/3/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005173 | Valerio-Jimenez | Jose | 9/18/81 | 4/3/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005225 | Garcia | Mathew Ray | 10/21/95 | 4/7/22 | JIM HOGG | No | Possession of Controlled Substance | Felony |
| CF0005226 | Mejia-Aguilar | Alberto Eli | 2/3/88 | 4/7/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005227 | Ortiz-Catarino | Gerardo | 1/28/92 | 4/7/22 | JIM HOGG | No | Criminal Trespass | Misdemeanor |
| CF0005228 | Quintanilla | Jaime | 5/28/80 | 4/7/22 | JIM HOGG | No | Engaging In Organized Criminal Activity | Felony |
| CF0003359 | Banuelos-Collazo | Raul | 10/8/92 | 11/30/21 | KIMBLE | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0003361 | Monge-Gallardo | Fabian Faustino | 1/20/63 | 11/30/21 | KIMBLE | No | Smuggling of Persons | Felony |
| CF0004002 | Hernandez-Ramos | Julio Cesar | 5/12/01 | 1/19/22 | KIMBLE | Yes | Smuggling of Persons | Felony |
| CF0002384 | Sanchez | Santiago Anthony | 7/6/97 | 10/5/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0002489 | Medford | Marquise Shakur | 8/12/97 | 10/12/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0002491 | Mosee | Trevele Deshone | 10/26/98 | 10/12/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0002742 | Aguilar-Ruiz | Fray Eduardo | 6/9/81 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002964 | Salgado | Michael Angelo | 3/5/78 | 11/6/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003003 | Zornes | Mark Anthony | 3/28/83 | 11/8/21 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0003099 | Montes | Daniel | 5/6/97 | 11/12/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003205 | Critchlow | Joshua Trey | 1/9/87 | 11/18/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003257 | Lawrence | Wesley Aaron | 5/16/79 | 11/21/21 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0003291 | Gonzales | Carlos | 9/24/03 | 11/23/21 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0003311 | Snedeker | Michael Wayne | 1/9/86 | 11/26/21 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0003309 | Odom | Cody Lee | 9/4/98 | 11/26/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003314 | Balderas | Jorge Antonio | 3/12/94 | 11/27/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003331 | Rodriguez Rodriguez | Ariel Joel | 6/17/98 | 11/28/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003400 | Gelacio | Abraham | 7/18/95 | 12/2/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003437 | Chapa | Christian Jesus | 12/31/01 | 12/5/21 | KINNEY | No | Smuggling of Persons SBI | Felony |
| CF0003512 | King | Lee Andrew | 10/14/76 | 12/12/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003539 | Hernandez | Jason H | 4/25/77 | 12/14/21 | KINNEY | No | Smuggling of Persons | Felony |

Appx. 2

**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detaine | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0003571 | Ready | William Hunter | 9/12/94 | 12/15/21 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0003556 | Diaz Maldonado | Oscar | 2/5/84 | 12/15/21 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0003682 | Poll-Carmona | Jesus | 2/6/89 | 12/24/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003727 | Sanchez-Guzman | Villamar | 3/25/82 | 12/28/21 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0003735 | Davila | Gabriel Elias | 2/6/00 | 12/29/21 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0003773 | Villamizar-Carrero | Anderson J | 2/26/01 | 1/1/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003789 | Williams | Quailyn Isaiah | 3/20/95 | 1/1/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003806 | Leal | Christopher Jacob | 11/7/89 | 1/5/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003812 | Munguia | Kevin Adalberto | 11/8/02 | 1/6/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003833 | Garza | Ricardo Jr | 5/26/81 | 1/10/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003868 | Simmons | Russell | 9/6/72 | 1/12/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003869 | Tellez | Oscar Jr | 4/23/87 | 1/12/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003878 | Nunn | Oscar Lee | 8/21/96 | 1/13/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0003911 | Vences-Abiles | Royer | 8/28/93 | 1/15/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003926 | Gonzalez | Jesus Elias | 1/26/94 | 1/16/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003981 | Valenzuela-Melendez | Robin Eezeequiel | 8/9/00 | 1/17/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003982 | Blaylock | Dmardriayn Terel | 1/21/92 | 1/18/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004010 | Navarrete | Westley Lamar | 10/10/91 | 1/19/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0004030 | Patterson | Nathaniel Carter Scott | 12/6/99 | 1/21/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004122 | GALLARDO-SOSA | MARCELO HONORATO | 3/11/81 | 1/28/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004161 | CHAPA JR | CHRISTOPHER LEE | 1/4/81 | 1/31/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004162 | DONJUAN | Jorge Luis | 8/17/91 | 1/31/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004179 | MALDONADO | JESSE ROBERT | 6/17/90 | 2/1/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Misdemeanor |
| CF0004215 | Samora | Cory Ray | 7/7/86 | 2/3/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0004211 | Martinez | Emmanuel | 7/13/99 | 2/3/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004218 | Bladsdel | Zachary Jacob | 6/9/87 | 2/4/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004220 | Habbit | Gregory Scott | 12/10/70 | 2/5/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0004223 | Davenport JR | Lawrence Paul | 12/20/82 | 2/6/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004224 | Guzman | Guadalupe Gregory | 3/13/72 | 2/6/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004225 | Nunez-Turcios | Josue Alexander | 8/23/01 | 2/6/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004234 | Hall | Elliot Stewart | 2/21/95 | 2/7/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004235 | Hurd Battles | Darius Jovione | 10/2/93 | 2/7/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004270 | Dumbuya | Michael | 5/29/99 | 2/11/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004305 | Ott | Samuel Hunter | 9/13/97 | 2/13/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004308 | Sanchez Retana | Anthony Fabian | 11/21/96 | 2/13/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004314 | Vega | Ivan | 2/19/00 | 2/14/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004375 | Mejia-Maldonado | Herbin Oswaldo | 12/11/86 | 2/17/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004384 | Fuentes | Juan | 3/30/88 | 2/18/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004404 | Villalta-Jimenez | Jonathan Alexander | 4/9/01 | 2/18/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004435 | Flores | Jhonny Rey | 4/2/96 | 2/21/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004472 | Hernandez | Fernando | 6/1/94 | 2/22/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004480 | Barr | Brett Tyler | 7/10/97 | 2/23/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004486 | Moton | Daniel Deonte Malik | 1/20/99 | 2/23/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004523 | Verner | Dandre Laron | 3/17/82 | 2/24/22 | KINNEY | No | Manufacture/Delivery Controlled Substance | Felony |
| CF0004516 | Prado Pedraza | Jesus | 12/24/00 | 2/24/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004525 | Baylon-Arrellano | Israel | 8/12/88 | 2/25/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004530 | Lopez-Lozano | Jose Marcos | 2/3/87 | 2/25/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004539 | Salazar | Abel JR | 2/19/85 | 2/25/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004540 | Tatum | Loren James | 1/29/81 | 2/25/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004554 | Ellis | Jonathan Charles | 6/27/89 | 2/26/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0004563 | Pothuisje | Evan Ryan | 4/22/91 | 2/26/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |

Appx. 3

**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004576 | Broom | Joshua David | 9/16/83 | 2/27/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0004593 | Diaz Perez | Silverio | 3/6/92 | 2/28/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004594 | Garcia Alvarez | Miguel Honorio | 6/17/95 | 2/28/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004597 | Perez Gomez | Feliciano | 10/9/92 | 2/28/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004607 | Dubon Rivera | Jose Bernardino | 5/18/96 | 3/2/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004609 | Gomez Baiza | Jose Gabriel | 1/25/93 | 3/2/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004611 | Limon | Alberto Jacome | 1/27/86 | 3/2/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004616 | Sotolongo Torres | Yoankys | 3/6/90 | 3/2/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004617 | Vasquez | Juan Francisco | 7/16/83 | 3/2/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004614 | McAfee | Tyus Khristylan | 6/11/00 | 3/2/22 | KINNEY | No | Unauthorized Use of Vehicle | Misdemeanor |
| CF0004642 | Garcia | Miguel Angel | 5/20/02 | 3/4/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004649 | Nava | Eric Delcampo | 7/30/79 | 3/5/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004647 | Hunt | Jason Paul | 11/14/91 | 3/5/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004656 | Jones | Julius Lee | 6/22/00 | 3/6/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004662 | Flores | Jacob Daniel | 3/27/81 | 3/6/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004669 | Reyes Salabarria | Amed | 1/5/71 | 3/8/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004698 | Larry | Xavier Jewdell | 7/27/91 | 3/9/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004705 | Salinas | Jose Reyes | 9/27/63 | 3/10/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004714 | Vazquez | Sergio Alejandro | 12/15/03 | 3/11/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004713 | Jaime | Fernando | 5/7/03 | 3/11/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004724 | Vera Vela | Mario Eduardo | 4/15/03 | 3/12/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004746 | Espinoza-Samilpa | Carlos Benito | 8/14/00 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004747 | Flores | Angel Gabriel | 9/17/03 | 3/13/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004741 | Adame | Samuel Heriberto | 5/9/01 | 3/13/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004743 | Bonillo Merlo | Rodolfo Reyes | 5/20/94 | 3/13/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004748 | Garrido Gaysso | Omar | 6/22/90 | 3/13/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004766 | Torres | Fernando | 9/5/74 | 3/14/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004770 | Arrisola | Aidan Matthew | 4/8/02 | 3/15/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004794 | Wilson | Gerald Jonathan | 12/22/89 | 3/15/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004824 | Helaire | Shawn Joseph, Jr | 12/13/00 | 3/17/22 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004819 | Jackson | Juan Jose | 3/5/58 | 3/17/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004828 | Jones | Christopher Ray | 9/18/91 | 3/18/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004835 | Gardner | Derrick Paul | 4/25/80 | 3/19/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004857 | Servin-Castaneda | Cesar | 4/1/97 | 3/20/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004859 | Hernandez-Godinez | Juan Carlos | 7/23/94 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004860 | Chaparro-Alvarado | Macario | 12/9/85 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004851 | Lehman-Velez | Allen Angel | 8/2/01 | 3/20/22 | KINNEY | No | Evading Arrest Det W/Veh - SBI | Felony |
| CF0004846 | Jackson | Antoine Terell | 8/22/83 | 3/20/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004847 | Penaloza Jr | Guadencio | 10/2/92 | 3/20/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004862 | Hernandez-Cano | Cristhian | 7/21/00 | 3/21/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004863 | Contreras-Bautista | Pedro | 9/15/95 | 3/21/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004868 | Rodriguez | Lucio Jose | 3/1/88 | 3/21/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004866 | Randle | Darius Deshun | 10/15/01 | 3/21/22 | KINNEY | No | Smuggling of Persons SBI | Felony |
| CF0004959 | Prieto-Mendez | Jose Gabriel | 9/9/01 | 3/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004940 | Alvarado-Narvaez | Kevin | 10/12/98 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004942 | Calan-Moo | Guillermo | 9/10/72 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004943 | Carrillo-Izquierdo | Erik | 11/6/88 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004947 | Gomez-Cordova | Darvin | 8/13/02 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004948 | Gomez-Morales | David | 8/3/80 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004949 | Lopez-Zelaya | Marlon Geovanny | 9/2/92 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004954 | Morales-Cruz | Lucas | 9/16/91 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

Appx. 4

**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detaine | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004955 | Morales-Cruz | Manuel | 12/31/95 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004963 | Sarao Acuna | Humberto | 8/2/89 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004968 | Vazquez-Gutierrez | Gerardo | 11/17/91 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004957 | Parker | Nicholas Taylor | 11/8/99 | 3/23/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004917 | McEwen | Rory Deangelo | 5/2/96 | 3/23/22 | KINNEY | No | Unauthorized Use of Vehicle | Felony |
| CF0004971 | Arias Hernandez | Aurelio | 3/11/00 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004975 | Sanchez-Lopez | Alexander | 6/3/87 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004977 | Sanchez-Sanchez | Denis | 5/18/78 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004979 | Uscanga Juarez | Nextali | 6/28/79 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004981 | Velazquez-Hernandez | Juan | 9/9/97 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Felony |
| CF0004984 | Granados Gallegos | Ricardo | 8/14/94 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004985 | Landa Romero | Francisco | 1/24/76 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004991 | Morales | Edwin G | 11/1/96 | 3/25/22 | KINNEY | No | Criminal Trespass | Misdemeanor |
| CF0004993 | Perez Lopez | Martin | 7/3/97 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004996 | Roman Gonzalez | Ricardo | 4/20/68 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004998 | Vazquez Rodriguez | Manuel | 5/4/74 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004994 | Portillo | Ricky | 7/20/89 | 3/25/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0005005 | Navarro Mojica | Miguel Angel | 8/5/92 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005017 | Gutierrez Hernandez | Guillermo | 3/24/01 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005022 | Perez Hernandez | Evelio Nicasio | 1/5/96 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005023 | Ramirez Mondono | Raymundo | 11/13/80 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005028 | Velazquez Lopez | Enemias | 3/4/75 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005002 | Hernandez | Cody Allen | 1/25/84 | 3/26/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0005008 | Williams | Mister Jerome Lee | 1/17/95 | 3/26/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0005033 | Agustin Lopez | Cristian Ivan | 5/24/98 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005038 | Guerra Chacon | Allan Estuardo | 8/18/88 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005039 | Hernandez Diaz | Humberto De Jesus | 2/19/93 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005041 | Juarez-Hernandez | Gerson | 10/10/99 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005047 | Munoz-Castro | Angel | 12/17/94 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005090 | Montilla-Villamayor | David Gustavo | 3/13/88 | 3/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005084 | Barrera-Alvarado | Cristhian | 8/8/00 | 3/29/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0005094 | Alfaro | Lorenzo Antonio | 8/3/93 | 3/29/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0005095 | Nevarez | Eloy | 6/25/75 | 3/29/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0005096 | Williams III | Ivory Duke | 10/12/00 | 3/30/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0005123 | Mejia | Louis IV | 9/1/87 | 3/31/22 | KINNEY | No | Poss Cont Subs - Felony | Felony |
| CF0005118 | Sanchez | John Michael | 12/11/76 | 3/31/22 | KINNEY | No | Smuggling of Persons | Felony |
| CF0004960 | Ramos-Gomez | Cuauhtemoc | 3/10/71 | | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004902 | Cocoletzi Manoatl | Andres | 11/30/86 | 3/16/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004887 | Martinez | Enrique | 11/10/72 | 3/21/22 | MAVERICK | No | Poss Cont Subs - Felony | Felony |
| CF0004888 | Ramirez | Augustin | 12/29/80 | 3/22/22 | MAVERICK | No | Poss Cont Subs - Felony | Felony |
| CF0004896 | Arrazola Raudalez | Luis Alfredo | 6/4/86 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004897 | Banegas Flores | Darwin Josue | 12/23/94 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004898 | Audelo Cruz | Mario Fermin | 7/7/80 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004899 | Bautista-Gonzalez | Ivan Daniel | 1/1/90 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004900 | Benhumea Hernandez | Jesus | 3/21/91 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004901 | Caliz | Melvin Onah | 12/3/98 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004903 | Cruz Martinez | Ramon Alfonso | 9/28/80 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004904 | Cruz Murillo | Marvin Adrian | 3/5/98 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004905 | Estevez-Cruz | Fernando | 8/26/91 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004906 | Estrada-Garcia | Joel | 11/16/85 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004907 | Figueroa Turcios | Ricardo Antonio | 6/12/87 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |

Appx. 5

**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detaine | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004908 | Garcia-Banda | Luis | 11/24/95 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004909 | Granados-Garcia | Juan Manuel | 9/20/91 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004910 | Grande Ramirez | Ernesto Anderson | 9/27/91 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004911 | Hernandez Conde | Jose Luis | 10/21/91 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004914 | Hernandez Montes | Mailon Segundo | 4/10/98 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004915 | Jimenez Hernandez | Gamaliel | 10/14/02 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004916 | Lopez Orellana | Alexis | 5/6/87 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004918 | Martinez-Mendieta | Salvador | 9/3/92 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004919 | Mendoza Sanchez | Saul | 4/24/95 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004920 | Montero-Farfan | Felix | 1/14/69 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004921 | Moran Medina | Jose Manuel | 3/14/88 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004923 | Ortez Cruz | Johen Alfonzo | 5/26/00 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004924 | Perez Cervantes | Federico | 2/2/88 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004925 | Ramirez-Govea | Sergio | 5/22/86 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004926 | Reyes-Argijo | Aaron Josue | 9/4/03 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004928 | Sierra Andino | Carlos Arturo | 8/25/84 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004929 | Velazquez-Brena | Leoncio | 3/27/78 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004930 | Villalobos Galeano | Oscar Danilo | 2/9/90 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004931 | Villanueva Salinas | Tito Alberto | 1/3/92 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004932 | Zelaya | Darly | 4/9/00 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0004933 | Zelaya Garcia | Ohan Otoniel | 3/25/88 | 3/23/22 | MAVERICK | Yes | Criminal Trespass | Misdemeanor |
| CF0005031 | Vasquez-Torres | Sergio Valent | 11/28/88 | 3/26/22 | MAVERICK | No | Evading Arrest Det W/Veh - SBI | Felony |
| CF0005030 | Quilantan Lara | Diego | 12/17/02 | 3/26/22 | MAVERICK | Yes | Evading Arrest/Detn W/Vehicle | Felony |
| CF0005032 | Villatoro | David Salomon | 5/4/84 | 3/26/22 | MAVERICK | No | Smuggling of Persons | Felony |
| CF0005029 | Johnson | Elton Eugene | 4/4/80 | 3/26/22 | MAVERICK | No | Tamper/Fabricate Physical Evidence With Intent To Impair | Felony |
| CF0004893 | Geyser | Jeronimo Sales | 12/16/94 | 3/22/22 | UVALDE | Yes | Aggravated Assault Against Public Servant/Law Enforcement Offic | Felony |
| CF0004890 | Callahan | Kevin T | 12/12/75 | 3/22/22 | UVALDE | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004892 | Eden-Trochez | Jose Nahin | 2/2/02 | 3/22/22 | UVALDE | Yes | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004889 | Barahona Velasquez | Carlos Andres | 11/4/92 | 3/22/22 | UVALDE | Yes | Smuggling of Persons | Felony |
| CF0004891 | Cole | Anthony Dominic | 5/13/88 | 3/22/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0004894 | Mathieu | Scott Michael | 3/27/67 | 3/22/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0004967 | Vasquez | Johnny | 12/27/66 | 3/22/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0004951 | Martinez-Vargas | Antonio | 9/25/88 | 3/23/22 | UVALDE | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004941 | Bermudes | Danny | 11/9/80 | 3/23/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0004945 | Frazier | Henry Greg | 10/31/66 | 3/23/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0004953 | Mireles-Munoz | Oscar Leonardo | 3/12/91 | 3/23/22 | UVALDE | Yes | Smuggling of Persons | Felony |
| CF0004962 | Roque-Zamora | Gerrardo | 9/26/90 | 3/23/22 | UVALDE | Yes | Smuggling of Persons | Felony |
| CF0004966 | Tovar | Rigoberto | 2/18/99 | 3/23/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0005119 | Aguirre-Hernandez | Anthony Cruz | 4/7/94 | 3/31/22 | UVALDE | Yes | Smuggling of Persons | Felony |
| CF0005120 | Barrera-Pacheco | Juan Pablo | 6/14/80 | 3/31/22 | UVALDE | Yes | Smuggling of Persons | Felony |
| CF0005121 | Escobar-Gomez | Juan Carlos | 7/12/87 | 3/31/22 | UVALDE | Yes | Smuggling of Persons | Felony |
| CF0005122 | Flores-Fuentes | Hector Alejandro | 12/12/92 | 3/31/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0005124 | Perez | Tony Anthony | 9/9/78 | 3/31/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0005125 | Rodriguez | Dennis Lee | 4/13/86 | 3/31/22 | UVALDE | No | Smuggling of Persons | Felony |
| CF0001470 | Casias | Joe Luis | 9/4/68 | 8/19/21 | VAL VERDE | No | Unauthorized Use of Vehicle | Felony |
| CF0002386 | Bustamante | Santos | 4/25/86 | 10/5/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0002425 | Torres | Matthew Ray | 7/27/91 | 10/8/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0002500 | Gonzalez Presas | Juan Enrique | 11/6/01 | 10/13/21 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0002502 | Fernandez-Lopez | Joel | 7/19/00 | 10/13/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0002575 | Gonzalez | Adan Mendiola | 7/14/93 | 10/17/21 | VAL VERDE | Yes | Resist Arrest Search or Transport | Misdemeanor |
| CF0002615 | Escobar | Saul | 1/5/97 | 10/21/21 | VAL VERDE | No | Smuggling of Persons | Felony |

Appx. 6

**Operation Lone Star Confinees - Briscoe Unit**
**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detaine | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0002758 | Figueredo-Boizan | Mauro | 3/16/77 | 10/27/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0003310 | Brammer | Jon William | 2/1/88 | 11/26/21 | VAL VERDE | No | Poss Cont Subs - Felony | Felony |
| CF0003325 | Aregullin | Alejandro | 6/30/91 | 11/28/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0003410 | Anguiano | Juan Miguel | 10/1/98 | 12/2/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0003449 | Valadez | Sergio | 4/16/99 | 12/6/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0003493 | Johns | Alexander Lee | 2/8/96 | 12/10/21 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0003691 | Diaz-Tamayo | Juan Evaristo | 10/20/98 | 12/24/21 | VAL VERDE | Yes | Escape From Custody | Felony |
| CF0003819 | Rodas-Villegas | Jesus | 2/5/90 | 1/7/22 | VAL VERDE | Yes | Smuggling of Persons | Felony |
| CF0004018 | Aguirre-Leahut | Jose Uvaldo | 1/9/96 | 1/20/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004031 | Reyes | Reyes | 1/29/96 | 1/21/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004181 | PENA | LUIS TREVINO | 3/16/87 | 2/1/22 | VAL VERDE | No | Poss Cont Subs - Felony | Felony |
| CF0004177 | GUERRA JR | JESSE ABEL | 8/5/80 | 2/1/22 | VAL VERDE | No | Unlawful Possession Firearm By Felon | Misdemeanor |
| CF0004221 | Moreno | Pablo | 3/26/96 | 2/5/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004281 | Castillo Servin | Jose Carmen | 7/17/93 | 2/12/22 | VAL VERDE | Yes | Smuggling of Persons | Felony |
| CF0004290 | Mejia Moreira | Yeyson Antonio | 11/6/02 | 2/13/22 | VAL VERDE | Yes | Smuggling of Persons | Felony |
| CF0004481 | Gonzalez | Gael Alejandro | 8/30/02 | 2/23/22 | VAL VERDE | No | Smuggling of Persons SBI | Felony |
| CF0004511 | Obregon | Mark Anthony | 4/1/93 | 2/24/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004510 | Martinez | Henry | 1/24/01 | 2/24/22 | VAL VERDE | No | Smuggling of Persons SBI | Felony |
| CF0004541 | Valadez | Daniel | 9/11/83 | 2/25/22 | VAL VERDE | No | Poss Cont Subs - Felony | Felony |
| CF0004608 | Escobar Rojelio | Armando | 7/5/86 | 3/2/22 | VAL VERDE | No | Engaging In Organized Criminal Activity | Felony |
| CF0004610 | Guerrero | Jacob Allen | 9/9/98 | 3/2/22 | VAL VERDE | No | Engaging In Organized Criminal Activity | Felony |
| CF0004651 | Melgar | Ezequiel Jesus | 7/28/01 | 3/5/22 | VAL VERDE | Yes | Fraudulent Use/Possession Of Identifying Information | Felony |
| CF0004696 | Casanova | Nicolas Ryan | 5/14/96 | 3/9/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004733 | Lopez-Aviles | Santiago | 6/15/01 | 3/13/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004793 | Vasquez Martinez | Jefferson Josue | 5/29/03 | 3/15/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004839 | Diaz-Valdes | Jeronimo | 5/3/79 | 3/20/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0004840 | Diaz-Torres | Felipe | 5/26/80 | 3/20/22 | VAL VERDE | No | Evading Arrest Detention | Misdemeanor |
| CF0004841 | Bermudez-Rodriguez | Oscar | 7/16/01 | 3/20/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0004842 | Ovalle-Monsivais | Gustavo | 4/30/87 | 3/20/22 | VAL VERDE | No | Evading Arrest Detention | Misdemeanor |
| CF0004843 | Correa-Carmona | Orlando | 1/15/89 | 3/20/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0004845 | Roberts | Donovan Durell | 12/20/85 | 3/20/22 | VAL VERDE | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004844 | Cabello | Jesus Alberto | 9/9/80 | 3/20/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0004964 | Sias | Miguel Angel | 10/8/96 | 3/23/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0004978 | Santana | Jonathan Lee | 11/7/00 | 3/23/22 | VAL VERDE | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004995 | Ramos | Mark Anthony | 11/8/86 | 3/25/22 | VAL VERDE | No | Aggravated Assault Against Public Servant/Law Enforcement Offic | Felony |
| CF0005081 | Reyes Vasquez | Ivan | 8/23/01 | 3/28/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005117 | Gissendanner | Keenan Devarius | 11/17/96 | 3/31/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005127 | Alvarez | Humberto Peralta | 3/17/80 | 4/1/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005128 | Loera Sanchez | Jorge Armando | 1/27/00 | 4/1/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005129 | Loera Sanchez | Sergio Alejandro | 7/16/01 | 4/1/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005133 | Dominguez-Lopez | Jose Julian | 12/16/01 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005134 | Gutierrez Romero | Israel | 10/19/73 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005135 | Hernandez-Ulloa | Ezequias | 9/22/72 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005136 | Montelongo Del Valle | Jose Eduardo | 4/27/91 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005137 | Osorio-De La Cruz | Jonathan | 10/28/01 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005138 | Gonzalez Pesina | Gamliel | 5/17/73 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005139 | Rodriguez-Lopez | Luis Jose | 6/12/96 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005140 | Ulin-De La Cruz | Julian | 1/7/87 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005141 | Ulloa-Sanchez | Edain | 7/12/90 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005142 | Viveros-Lopez | Ruben | 12/20/91 | 4/2/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005132 | Contrera Otero | Yordan | 2/12/86 | 4/2/22 | VAL VERDE | No | Smuggling of Persons | Felony |

**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0005158 | Alvarado-Morin | Carlos | 4/24/84 | 4/3/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005159 | Arguello-Farias | Rudy Alberto | 11/15/95 | 4/3/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005162 | Garcia-Mendoza | Feleciano | 10/20/82 | 4/3/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005163 | Mendoza-Barrios | Francisco Javier | 2/19/94 | 4/3/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005165 | Rios-Tolentino | Ricardo | 7/11/90 | 4/3/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005166 | Velasco-Martinez | Andres | 1/4/04 | 4/3/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005160 | Flores | Jose M | 11/24/78 | 4/3/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005161 | Garcia | Luis Angel | 10/12/98 | 4/3/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005164 | Olvera | Alejandro Jr | 5/19/00 | 4/3/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005174 | Alvarez-Vargas | Felipe | 3/20/81 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005175 | Angeles-Ibarra | Oswaldo | 1/12/02 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005176 | Espejel-Delgado | Victor | 10/23/91 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005177 | Lara-Loaisa | Jesus | 1/7/63 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005178 | Martinez-Romero | Joan Jair | 4/23/99 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005179 | Ramirez-Garrido | Luis Manuel | 8/25/80 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005180 | Ramirez-Flores | Celestino Manuel | 8/8/73 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005181 | Rodriguez-Orgaz | Miguel Angel | 2/16/92 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005182 | Hernandez-Onofre | Enrique | 7/15/76 | 4/4/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005183 | Amador Carcamo | Norman Manfredo | 9/20/98 | 4/4/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005185 | Delgado | Keller Eliel | 8/7/93 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005186 | Garcia-Mejia | Alex Alejandro | 6/12/89 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005187 | Ponce Baca | Jhony Noe | 10/30/99 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005188 | Rodriguez-Pineda | Martin De Jesus | 8/11/00 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005189 | Salinas-Pacheco | Nixon Neptali | 6/21/85 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005192 | Cordova-Ramos | Luis Miguel | 12/16/86 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005194 | Dominguez-Izquierdo | Gabriel | 11/2/87 | 4/5/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005198 | Pena-Castro | Everardo | 4/11/91 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005199 | Perez-Lopez | Nain | 11/3/93 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005200 | Quiroz-Perez | Alexis | 3/30/95 | 4/5/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005184 | Avila Oseguera | Denis Jursabi | 7/20/81 | 4/5/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0005190 | Arteaga | Edil Ricardo | 12/2/91 | 4/5/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0005191 | Carrasco Santiago | Jose Juan | 5/27/75 | 4/5/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0005193 | Diaz | Christian Jose | 5/4/95 | 4/5/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0005195 | Lainez Arriola | Kevin Armando | 9/15/00 | 4/5/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0005196 | Lopez | Sami Lenni | 10/3/96 | 4/5/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0005197 | Montufar Aguilar | Oscar Gerardo | 10/3/98 | 4/5/22 | VAL VERDE | Yes | Evading Arrest Detention | Misdemeanor |
| CF0005201 | Carrillo Hernandez | Luis Fernando | 12/12/02 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005202 | Espinoza Sanchez | Luis David | 3/7/03 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005203 | Funez Banegas | Orly Rene | 8/29/78 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005204 | Gonzalez Morales | Jose Alfredo | 11/19/94 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005205 | Hernandez Salmeron | Santios | 6/18/73 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005206 | Romero Inestroza | Brayan Samir | 3/10/96 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005207 | Santos Sanchez | Jose Guadalupe | 6/22/98 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005208 | Sanchez Santo | Jesus | 4/17/86 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005211 | Castillo Sanchez | Eber Miguel | 8/1/97 | 4/6/22 | VAL VERDE | Yes | Criminal Trespass | Misdemeanor |
| CF0005213 | Lopez Dominguez | Bartolo | 3/3/95 | 4/6/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005219 | Valencia Perez | Armando | 10/27/78 | 4/6/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005220 | Vazquez Palma | Nicolas | 5/8/89 | 4/6/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005209 | Alcala | Jesse Eric | 12/11/95 | 4/6/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005212 | De Los Santos | Isai | 7/14/84 | 4/6/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005214 | Luna | Steven Alexander | 4/12/93 | 4/6/22 | VAL VERDE | No | Smuggling of Persons | Felony |

Appx. 8

**Operation Lone Star Confinees - Briscoe Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0005217 | Soto | Sebastian Angel Manuel | 3/22/93 | 4/6/22 | VAL VERDE | No | Smuggling of Persons | Felony |
| CF0005229 | Botello-Ugalde | Elias | 4/17/82 | 4/7/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005230 | Colorado-Campos | Daniel | 8/10/81 | 4/7/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005232 | Ugalde-Martinez | Ricardo | 5/22/97 | 4/7/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005231 | Escamilla Rodriguez | Elias Ruben | 10/4/75 | 4/7/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0005223 | Santes Dolores | Gerardo | 4/11/90 | 4/7/22 | VAL VERDE | No | Criminal Trespass | Misdemeanor |
| CF0002112 | King | Laquintonne Denzell | 5/6/94 | 9/16/21 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0002115 | Salvador | Victor | 11/21/91 | 9/16/21 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0002116 | Sanchez | Isidoro | 12/24/96 | 9/16/21 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0002117 | Thompson | Dylan | 7/19/91 | 9/16/21 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0002306 | Gamez-Rodriguez | Ramiro | 3/6/91 | 9/30/21 | ZAVALA | Yes | Poss Cont Subs - Felony | Felony |
| CF0002308 | Reyes | Michael | 4/1/96 | 9/30/21 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0002309 | San Miguel | Juan | 5/29/02 | 9/30/21 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0002919 | Sanchez | Cesar Alberto | 1/14/97 | 11/4/21 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0003809 | Contreras | Jose DeJesus | 4/9/88 | 1/6/22 | ZAVALA | Yes | Smuggling of Persons | Felony |
| CF0003991 | Mendoza | Manuel Ronaldo | 6/18/98 | 1/18/22 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0004325 | Davis | Ire Jason | 8/29/78 | 2/15/22 | ZAVALA | No | Poss Cont Subs - Felony | Felony |
| CF0004327 | Rodriguez | Christian | 3/7/98 | 2/15/22 | ZAVALA | No | Poss Cont Subs - Felony | Felony |
| CF0004326 | DeLeon | Cresencio | 10/24/93 | 2/15/22 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0004688 | Gonzales | Joseph George | 9/20/02 | 3/8/22 | ZAVALA | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004687 | Orduna Villanueva | Francisco Javier | 6/22/01 | 3/9/22 | ZAVALA | Yes | Smuggling of Persons | Felony |
| CF0004795 | Castleman | Charles William | 11/7/88 | 3/16/22 | ZAVALA | No | Smuggling of Persons | Felony |
| CF0004796 | Cisneros | Pablo Ernesto | 1/23/81 | 3/16/22 | ZAVALA | No | Smuggling of Persons | Misdemeanor |
| CF0004798 | Hernandez Morataya | Angel D | 4/25/86 | 3/16/22 | ZAVALA | No | Smuggling of Persons | Felony |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004604 | Rosales-Hercules | Kevin Leonardo | 10/12/01 | 3/1/22 | JIM HOGG | Yes | Smuggling of Persons | Felony |
| CF0004633 | Diego-Ortiz | Armando | 8/16/87 | 3/4/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004644 | Palos-Castaneda | Jorge Alberto | 4/23/86 | 3/5/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004692 | Villanueva-Garcia | Juan | 12/27/90 | 3/9/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004707 | Vazquez Ardinez | Juan Ricardo | 6/24/83 | 3/10/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0004936 | Pina-Flores | Victor | 6/11/81 | 3/23/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005069 | Banegas-Gonzalez | Hesler Dayan | 1/10/00 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005071 | Chamale-Yoc | Luis Fernando | 9/30/83 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005074 | Monterroso-Lopez | Edinson Gustavo | 2/1/89 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005077 | Robledo-Loreto | Patricio | 8/19/80 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0005078 | Tena-Arellano | Jhovany | 10/8/93 | 3/28/22 | JIM HOGG | Yes | Criminal Trespass | Misdemeanor |
| CF0001782 | Victoria | Jesus Alejandro | 12/24/99 | 8/31/21 | KINNEY | No | Manufacture/Delivery Controlled Substance | Felony |
| CF0002049 | Aguilar | Lester Hidalgo | 9/10/82 | 9/14/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002084 | Tapia-Ramirez | Ivan  Alejandro | 2/7/97 | 9/15/21 | KINNEY | Yes | Arson | Felony |
| CF0002334 | Martinez-Medina | Leandro | 2/27/59 | 10/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002317 | Olvera Gutierrez | Eleazar | 5/31/74 | 10/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002322 | Victoria Sebastian | Erick | 9/2/98 | 10/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002315 | Martinez Hernandez | Arturo | 9/1/74 | 10/2/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0002347 | Contreras-Hernandez | Jose Adan | 2/12/00 | 10/3/21 | KINNEY | Yes | Unauthorized Use of Vehicle | Felony |
| CF0002374 | Flores-Buenaventura | Jose Anton | 1/17/86 | 10/4/21 | KINNEY | Yes | Evading Arrest Det W/Veh - SBI | Felony |
| CF0002402 | Rivera-Castelan | Moctezuma | 8/23/85 | 10/7/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002479 | Barrera-Alberto | Oduan  Adali | 1/9/94 | 10/12/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0002537 | Martinez-Martinez | Tomas | 6/7/75 | 10/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002545 | Zuniga-Mendoza | Dagoberto | 10/13/98 | 10/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002571 | Alejo-Martinez | Juan Antonio | 5/18/93 | 10/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002573 | Campos-Morales | Isai | 4/3/99 | 10/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002574 | Diaz-Gomez | Bernardo | 3/6/75 | 10/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002581 | Sanchez-Garay | Victor | 3/29/98 | 10/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002582 | Sandoval-DeLaCruz | Jose Armando | 11/10/96 | 10/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002583 | Vazquez-Vazquez | Fermin | 10/10/77 | 10/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002585 | Berdomo-Flores | Mario Alexander | 7/22/03 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002588 | Cruz-Ventrua | Jeremias | 11/8/82 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002590 | Jacinto-Bautista | Erik Mauricio | 3/24/00 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002591 | Perez-Diaz | Arnulfo | 7/19/97 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002593 | Reyes-Lopez | Jairo Josue | 3/31/00 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002596 | San Martin-Valencia | Misael | 12/30/80 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002597 | Santos-Vasquez | Jose | 3/29/81 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002599 | Villalobo-Bonillo | Genaro | 3/15/91 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002601 | Medina-Acosta | Endis Armando | 1/11/91 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002603 | Sanchez-Lagos | Selvin Joel | 4/13/90 | 10/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002612 | Ruiz-Diaz | Rigoberto | 7/19/97 | 10/20/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002617 | Gomez | Ivan Isaid | 1/25/01 | 10/21/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002628 | Vera-Andrade | Guadalupe | 12/12/74 | 10/21/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002633 | Miranda-Gutierrez | Henry Gabriel | 10/25/95 | 10/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002643 | Perez-Sixto | Juan Manuel | 6/18/87 | 10/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002645 | Quiroz Duran | Cesar | 12/10/92 | 10/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002634 | Salas | Oscar | 2/3/93 | 10/23/21 | KINNEY | Yes | Evading Arrest/Detn W/Vehicle | Felony |
| CF0002662 | Hernandz-Ventura | Erlin Santos | 7/27/96 | 10/24/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0002690 | Herrera-Sarmiento | Carlos Antonio | 2/23/92 | 10/25/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002691 | Isco-Bautista | Wilson Antonio | 5/23/81 | 10/25/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0002683 | Quintero-Lazo | Henry Joel | 12/21/75 | 10/25/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0002702 | Neptali | Olvin | 5/24/02 | 10/26/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002743 | Alba-Cantu | Jose Guadalupe | 10/19/95 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002744 | Cruz-Mercado | Genaro | 1/27/01 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002749 | Reyes-Chagala | Reyes | 1/6/79 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002752 | Del Angel-Salis | Angel Ernesto | 1/27/01 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002753 | Maldonado Salis | Jose Eduardo | 1/25/89 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002754 | Reyes-Resendiz | Jose Ramon | 10/3/83 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002761 | Licona-Oliva | Eduin Joel | 11/8/93 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002762 | Palma-Aquino | Freddy Nehemias | 2/1/99 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002764 | Ramirez Perez | Julio Cesar | 3/15/95 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002765 | Turcios-Henriquez | Jonathan | 11/3/89 | 10/27/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002823 | Norales-Bermudez | Renan Apricio | 3/27/77 | 10/29/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002843 | Dominguez-Nicolas | Edgar Moises | 6/7/88 | 10/31/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002852 | Lopez-Salas | Adonai Bernabe | 3/7/85 | 10/31/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002861 | Guzman-Cantu | Hector | 9/20/95 | 11/1/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002906 | Lopez-Perez | Oveth | 6/7/88 | 11/3/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002909 | Perez-Morales | Leonel Andrid | 5/15/02 | 11/3/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002924 | Contreras-Ortiz | Rafael | 3/12/73 | 11/5/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002925 | Cruz-Membreno | Andres | 11/9/91 | 11/5/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002926 | Elvir Bobadilla | Jose Orlando | 6/17/00 | 11/5/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002929 | Landeros Paredes | Isidro | 11/30/74 | 11/5/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002968 | Castillo-Jardines | Ulises | 2/12/88 | 11/6/21 | KINNEY | Yes | Evading Arrest/Detn W/Vehicle | Felony |
| CF0002998 | Ventura-Lopez | Alexander | 8/1/03 | 11/7/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0002996 | Valentin-Lopez | Alvaro | 12/21/96 | 11/7/21 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0003007 | Diaz-Hernandez | Antonio | 9/15/93 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003008 | Diaz Hernandez | Eduardo | 5/9/94 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003017 | Lopez-Diaz | Arley | 5/14/03 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003018 | Ortiz Hernandez | Angel Alexis | 8/31/87 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003019 | Padilla Caliz | Wualter Josue | 7/18/96 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003023 | Sanchez-Raudales | Jose Martiliano | 6/24/92 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003026 | Ventura | Jose Antonio | 1/16/87 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003033 | Bonilla-Garcia | Marvin Aerixon | 12/13/89 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003038 | Garmendia-Lopez | Henry Daniel | 11/24/91 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003042 | Lopez-Diaz | Gerardo | 12/16/96 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003043 | Lopez-Gomez | Carlos Manuel | 10/24/82 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003045 | Martinez | Mauricio Santos | 3/31/01 | 11/9/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003063 | Rivera | Santos Geronimo | 8/13/93 | 11/10/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003106 | Hernandez-Vasquez | Francisco | 6/4/96 | 11/12/21 | KINNEY | Yes | Poss Cont Subs - Felony | Felony |
| CF0003129 | Lopez-Bautista | Rene | 6/8/96 | 11/15/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003161 | Martinez-Gomez | Olvin Joel | 3/5/84 | 11/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003179 | Rocha-Martinez | Jose Arturo | 11/15/92 | 11/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003182 | Sanchez-Moreno | Miguel Angel | 9/30/75 | 11/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003193 | Garci | Antonio Edgar | 10/20/87 | 11/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003198 | Millan Porcayo | Javier | 9/30/78 | 11/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003202 | Solorzano-Aguilar | Fermin | 1/3/00 | 11/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003207 | Castillo Sanchez | Jared Alejandro | 12/2/01 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003212 | De La Cruz | Senen | 8/25/85 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003213 | Lopez-Mendoza | Cesar | 10/29/93 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003215 | Martinez-Cruz | Rodrigo | 3/7/75 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0003216 | Mendoza Romero | Antonio | 11/27/70 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003219 | Ramirez-Casango | Francisco | 3/19/94 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003221 | Lopez De Leon | Martin | 8/10/77 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003222 | Maradiaga Ruiz | Jose Joel | 11/6/91 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003223 | Martinez-Cruz | Rene | 11/2/82 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003227 | Ramirez Izquierdo | Miguel | 9/29/82 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003228 | Ramirez-Hernandez | Cesar | 3/28/96 | 11/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003248 | Estrada-Rios | Edwyn Rodolfo | 12/27/81 | 11/21/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003277 | Figueroa-Carpio | Reynaldo | 1/5/00 | 11/22/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003283 | Ramos Dominguez | Arnefer | 9/28/88 | 11/22/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003293 | Mendez-Hernandez | Carlos Aldemar | 3/8/00 | 11/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003300 | Ferrera-Ortiz | Osman Nahun | 6/29/92 | 11/24/21 | KINNEY | No | Evading Arrest/Detn W/Vehicle | Felony |
| CF0003295 | Guzman-Negrete | Abraham Alberto | 3/15/99 | 11/24/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003299 | Chavarria-Castro | Ibzan Adin | 1/14/02 | 11/24/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003301 | Ortez-Cuadras | Anner Isai | 9/30/99 | 11/24/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003333 | Bejerano-Cadena | Ovidio | 8/4/73 | 11/29/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003368 | Gallegos-Hernandez | Rokili | 3/21/67 | 11/30/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003364 | Garcia-Flores | Ines Gerardo | 3/29/00 | 11/30/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003377 | Gutierrez-Frias | Juan Francisco | 11/2/90 | 12/1/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003378 | Hernandez Hernandez | Luis Enrique | 1/15/85 | 12/1/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003379 | Rodriguez Dominguez | Frediberto | 12/8/89 | 12/1/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003385 | De Lo Santos- Lopez | Baldemer | 6/10/93 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003386 | Diaz-Amaya | Enrique Isaac | 12/8/00 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003395 | Padron-Orocio | Armando | 11/29/75 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003397 | Valenzuela-Hernandez | Miguel | 10/4/97 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003399 | Carrasco Polito | Joel | 7/26/97 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003401 | Gomez-Vasquez | Alvaro Fernando | 12/31/02 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003403 | Lazaro Gutierrez | Manuel | 9/6/97 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003408 | Gomez-Vasquez | Genaro | 11/12/95 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003415 | Rodriguez-Brito | Hernan De Jesus | 8/15/89 | 12/2/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003388 | Gutierrez-Vazquez | Mainor | 12/6/90 | 12/2/21 | KINNEY | Yes | Smuggling of Persons SBI | Felony |
| CF0003418 | Carrillo-Perez | Victor Manuel | 7/9/90 | 12/3/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003419 | Cordova-Contreras | Daniel | 8/8/90 | 12/3/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003428 | Mendez De Los Santos | Gilberto | 3/30/82 | 12/3/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003443 | Casildo Martinez | Ovidio Joel | 2/9/84 | 12/5/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003444 | Lopez-Arzu | Nestor Victorino | 8/1/89 | 12/5/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003456 | MARADIGA-ALVARADO | Francisco | 8/28/00 | 12/7/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003470 | Gregorio-Mateo | Carlos | 2/7/94 | 12/8/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003502 | Vidales | Miguel Angel | 11/21/98 | 12/11/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003507 | Diaz Acosta | Jordan Alfredo | 6/4/95 | 12/12/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003511 | Granados | Alan Alexis | 3/25/00 | 12/12/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003513 | Macario Salvador | Maynor | 9/2/02 | 12/12/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003515 | Morales | Diego Soc | 2/28/02 | 12/12/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003518 | Peralta Meza | Cristhian Alexis | 11/20/98 | 12/12/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003503 | Medina-Arrazola | Jose | 7/10/99 | 12/12/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003522 | Salvador Sut | Jose Angel | 4/6/98 | 12/13/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003521 | Morales | Julio Cesar | 7/25/87 | 12/13/21 | KINNEY | Yes | Failure To Identify | Misdemeanor |
| CF0003552 | Castillo Molina | David Ibran | 12/30/80 | 12/15/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003559 | Garcia Castro | Nelson Omar | 10/15/68 | 12/15/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003564 | Mendez Lopez | Leonardo Balery | 3/22/98 | 12/15/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0003569 | Trochez Navarrete | Arturo | 9/22/74 | 12/15/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003584 | Chavira Gutierrez | Ezequiel | 10/9/92 | 12/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003585 | Cupil Carrillo | Angel | 8/29/78 | 12/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003586 | Diaz Hernandez | Jose Luis | 12/26/91 | 12/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003587 | Domingo | Gonzalez Antonio | 8/21/78 | 12/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003588 | Dominguez Lopez | Rigoberto | 10/10/99 | 12/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003589 | Morales Arellano | Emanuel | 8/7/95 | 12/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003591 | Ventura | Obed Jose | 1/21/02 | 12/16/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003593 | De La Cruz Rinconada | Sergio Adrian | 4/18/78 | 12/17/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003594 | Diaz Santiz | Marcelino | 3/27/86 | 12/17/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003595 | Martinez Alvarado | Fernando | 11/28/80 | 12/17/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003603 | Vela Montoya | Luis Angel | 3/13/01 | 12/17/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003604 | Andrade Cordoba | Omar | 2/17/86 | 12/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003610 | Juarez-Parra | Juan Carlos | 12/23/97 | 12/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003614 | Lopez Martinez | Jaime | 5/4/76 | 12/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003618 | Ricardez-Cordova | Freddy | 5/17/92 | 12/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003619 | Escobar-Osorio | Efrain | 2/26/59 | 12/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003621 | Escobar-Ovando | Julio Cesar | 7/8/84 | 12/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003622 | Leon-Garcia | Jose Ramon | 2/20/97 | 12/18/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003625 | Campos Sanchez | Juan Pedro | 10/8/90 | 12/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003626 | Herrera Ramirez | Francisco Daniel | 5/9/95 | 12/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003628 | Marcos-Hernandez | Luis Alberto | 6/4/03 | 12/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003629 | Marcos Hernandez | Wiliam Adolfo | 10/30/77 | 12/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003630 | Sanchez-Espinal | Alexander Daniel | 9/7/97 | 12/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003631 | Villanueva | Victor David Alberto | 4/30/87 | 12/19/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003637 | Hernandez Lopez | Santos | 8/3/82 | 12/20/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003638 | Lopez Gonzalez | Jose Benjamin | 6/23/90 | 12/20/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003639 | Morales Aguinaga | Daniel Humberto | 12/7/90 | 12/20/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003640 | Ponce Laguna | Joel | 5/1/94 | 12/20/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003641 | Salgado | Denis Julian | 1/27/81 | 12/20/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003644 | Garcia | Rufino Gerardo | 3/29/89 | 12/21/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003651 | Curiel-Sanchez | Mario | 5/18/93 | 12/21/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003655 | Ramirez-Sanchez | Valentin | 2/14/74 | 12/21/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003645 | Munoz Linares | Esmanuel Aristides | 9/4/80 | 12/21/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003650 | Cruz Santos | Didier Alid | 10/28/98 | 12/21/21 | KINNEY | No | Smuggling of Persons | Felony |
| CF0003659 | Alvarez Colon | Pedro Atiliano | 2/24/98 | 12/22/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003660 | Gutierrez Portillo | Cristian Nahum | 2/2/01 | 12/22/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003661 | Portillo Portillo | Jesus Alberto | 1/8/87 | 12/22/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003662 | Colorado Arias | Jose Reyes | 1/5/80 | 12/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003663 | Bolanos Ledesma | Rolando | 5/13/93 | 12/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003666 | Diaz Velazquez | Donato | 4/10/78 | 12/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003671 | Gomez Roblero | Misael | 1/7/85 | 12/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003676 | Morales Perez | Fredy | 9/28/85 | 12/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003677 | De Jesus Morales Vicente | Manuel | 4/3/92 | 12/23/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003664 | Chucuy Salan | Felix Rocael | 11/7/93 | 12/23/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003683 | Balcazar-Hernandez | Alfredo | 1/12/00 | 12/24/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003684 | Cuadras Avila | Santos Benjamin | 9/12/02 | 12/24/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003685 | Galindo-Escoto | Cesar Augusto | 8/6/95 | 12/24/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003689 | Martinez Cartagena | Marco Obdulio | 2/20/96 | 12/24/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003690 | Torres-Padilla | Marvin Fernando | 11/26/95 | 12/24/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0003692 | Cruz-Ramirez | Juan Antonio | 3/14/98 | 12/25/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003694 | Amaya Zelaya | Melvin Joel | 10/25/93 | 12/25/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003703 | Dominguez Rojas | Jose Luis | 8/8/83 | 12/25/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003702 | Gonzalez-Aguilar | Donis Jared | 9/2/98 | 12/25/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003714 | Bermudez | Kevin Saul | 12/25/92 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003715 | Diaz-Sanchez | Eliasin | 11/22/89 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003719 | Orellana-Barrera | Miguel Angel | 10/24/88 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003723 | Rivas-Hernandez | JOSE DEL CARMEN | 9/25/78 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003726 | Sanchez-Castellanos | Julio Angel | 2/9/86 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003728 | Sanchez-Hernandez | Jose | 1/7/01 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003730 | Cruz-Santos | Pedro | 1/28/72 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003731 | Hernandez-Guajardo | Rolando | 5/7/75 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003733 | Tovar-Herrera | Roberto Salome | 6/9/89 | 12/28/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003736 | Gutierrez-Sanchez | Edgar David | 1/26/03 | 12/29/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003734 | Urrea Escobar | Armindo | 12/7/85 | 12/29/21 | KINNEY | Yes | Prohibited Substance/Item in Corr/Civ Com Facility | Felony |
| CF0003738 | Rojas-Avilez | Cesar | 11/17/92 | 12/29/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003739 | Villarreal-Esparza | Carlos Antonio | 6/11/02 | 12/30/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003742 | Chacon-Lara | Josue Daniel | 1/22/93 | 12/30/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003745 | Gutierrez-Jacinto | Darvin Samuel | 2/2/97 | 12/30/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003748 | Hernandez-Sosa | Gerardo Antonio | 1/9/02 | 12/30/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003749 | Mata | Mario Ernesto | 10/15/84 | 12/30/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003751 | Vargas-Lopez | Salomon Arturo | 11/18/89 | 12/30/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003741 | Garcia-Esparza | Ricardo | 9/17/93 | 12/30/21 | KINNEY | Yes | Poss Cont Subs - Felony | Felony |
| CF0003765 | Duron -Hernandez | Luis | 6/21/83 | 12/31/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003766 | Flores | Jairo Jose | 5/30/77 | 12/31/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003767 | Reyes-Garcia | Santos | 8/4/85 | 12/31/21 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003770 | Vargas-Cruz | Juan Daniel | 10/16/97 | 12/31/21 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003779 | Espinoza-Cruz | Jose Cristobal | 12/10/88 | 1/1/22 | KINNEY | Yes | Assault on a Public Servant | Felony |
| CF0003777 | Cubas-Colindrez | Jose Misael | 10/15/96 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003778 | Diaz Alvarez | Nicolas | 12/14/00 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003781 | Gutierrez-Montero | Francisco | 10/1/82 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003782 | Hernandez-Martinez | Kevin Josue | 12/18/97 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003783 | Ovando-Mendez | Efrain | 2/5/84 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003785 | Sanchez-Aguero | Hendrik Bladimir | 2/13/85 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003786 | Serrano-Martinez | Oscar Arcenio | 1/14/91 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003787 | Solis-Elis | Elvin Dario | 11/21/82 | 1/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003776 | Castellano | Falin | 6/22/93 | 1/1/22 | KINNEY | No | Unlawful Carrying Weapon | Felony |
| CF0003799 | Reyna-Alonso | Angel Armando | 1/4/96 | 1/2/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003803 | Leyva | Raquel Gomez | 12/1/98 | 1/4/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003811 | Salinas-Maradiaga | Henry A | 10/6/88 | 1/6/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003820 | Vasquez-Amador | Jose Santos | 11/30/95 | 1/7/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003822 | Hernandez-Castillo | Pedro | 5/6/75 | 1/8/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003823 | Mendez-Figueroa | Alfredo | 7/20/80 | 1/8/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003824 | Rodriguez-Perez | Osiel | 5/4/01 | 1/8/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003826 | Solis-Hernandez | Homero | 9/2/93 | 1/8/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003827 | Calvo-Rodriguez | Dani Nefrali | 1/16/99 | 1/8/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003831 | Tovar-Aguilar | Jorge Humberto | 9/17/84 | 1/9/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003835 | Carrillo | Manuel De Jesus Pinales | 12/25/90 | 1/10/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003838 | Rodriguez Henriquez | Jaime Alfonso | 3/3/92 | 1/10/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003836 | Estanislao-Montalvo | Hugo | 2/25/85 | 1/10/22 | KINNEY | Yes | Poss Cont Subs - Felony | Felony |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|-----------|-----------|------------|---------------|---------------|----------------|--------------|-----------------|----------------------|
| CF0003853 | Gonzalez-Padilla | Jose Luis | 9/6/84 | 1/12/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003857 | Lazaro-Olvera | Jorge | 5/28/84 | 1/12/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003862 | Perez-Rodriguez | Erik Adan | 8/13/00 | 1/12/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003866 | Rodriguez-Merino | Francisco Javier | 11/9/87 | 1/12/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003883 | Chavez Gonzalez | Juan Alejandro | 1/28/00 | 1/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003885 | Jimenez Aguillon | Diego David | 5/9/00 | 1/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003888 | Bautista Morales | Cristian | 6/24/02 | 1/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003895 | Esquivel Garcia | Ricardo Miguel | 3/30/99 | 1/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003897 | Garcia Esquivel | Sergio Fernando | 2/23/03 | 1/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003901 | Herrera Serrano | Pedro Luis | 11/24/03 | 1/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003908 | Ramirez Olvera | JOSE FRANCISCO | 10/25/71 | 1/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003913 | Castellanos Lopez | OBDULIO | 10/26/89 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003915 | De Dios Cordova | William | 4/14/98 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003916 | Dominguez De La Cruz | Ricardo | 5/3/92 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003917 | Garcia | Jesus Eduardo | 3/26/02 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003922 | Sanchez Cordova | Rigoberto | 3/3/98 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003923 | Sanchez Cordova | Salome | 8/28/94 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003928 | Hernandez-Escobar | Andres | 11/30/80 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003931 | Herrera-Miranda | David | 9/25/87 | 1/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003935 | Ortiz Dominguez | Arnold Janeth | 5/31/02 | 1/16/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0003948 | Duarte Gonzalez | Herly Mauricio | 6/20/90 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003949 | Fernandez Velasquez | Jeferson Omar | 2/24/00 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003956 | Navarro Najera | Willmer Antonio | 2/4/88 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003957 | Nunez Guity | Justo Roberto | 2/6/77 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003962 | Eguiguren Gonzalez | Manfred | 3/16/86 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003964 | Hipolito Ugarte | Edgar Josue | 12/13/86 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003973 | Posada Trejo | Joaquin | 5/24/82 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003976 | Reyes Sierra | Gamaniel | 4/7/84 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003979 | Talavera Rodriguez | Mario Alexander | 12/29/89 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003980 | Tejeda Alcudia | Marco Antonio | 6/16/93 | 1/17/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003983 | Chavez | Vidal Medina | 1/10/86 | 1/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003992 | Munoz Fernandez | Jose Eduardo | 2/24/98 | 1/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003995 | Peralta Mendez | Jhonatan | 12/16/94 | 1/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004001 | GUZMAN-PACHECO | ROMAN | 1/24/90 | 1/19/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004004 | Lemos-Arevalo | Walter Israel | 7/22/98 | 1/19/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0003997 | Garcia | Adrian Ivan Miranda | 7/15/89 | 1/19/22 | KINNEY | Yes | Poss Cont Subs - Felony | Felony |
| CF0003998 | Castruita | Jose Martin Gracian | 4/13/99 | 1/19/22 | KINNEY | Yes | Poss Cont Subs - Felony | Felony |
| CF0004027 | Paredes-Altamirano | Marvin | 7/4/95 | 1/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004028 | Rodriguez-Alonso | David | 6/22/99 | 1/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004029 | Abanto-Chavez | Deyvi Bony | 1/19/87 | 1/21/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004032 | Viera-Rodriguez | Luis Samuel | 1/28/92 | 1/21/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004046 | Hernandez-Nunez | Jose Rodolfo | 3/7/90 | 1/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004052 | Nunez | Rico Francisco | 4/7/97 | 1/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004066 | Rubio-Hernandez | Proceso | 7/12/91 | 1/23/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004068 | Barboza Gutierrez | Raul | 1/2/62 | 1/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004069 | Garnica-Ordaz | Josue | 1/8/95 | 1/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004075 | Manzo De La Cruz | Jhoni | 5/30/82 | 1/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004080 | Rivera-Gonzalez | Adonai | 2/21/91 | 1/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004084 | Lopez-Mendez | Alejandro De Jesus | 12/27/94 | 1/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004085 | Lopez-Torres | Antonio | 5/9/72 | 1/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004087 | Ramos-Soler | Carlos Manuel | 10/6/01 | 1/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004092 | Reyna-Martinez | Alejandro | 8/29/88 | 1/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004100 | CORDOVA-KETCHUM | JESUS ANTONIO | 12/25/01 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004102 | GOMEZ-SANCHEZ | Juan Gabriel | 3/29/83 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004103 | JIMENEZ-RAMOS | Josue | 7/15/02 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004104 | LOPEZ-JIMEZ | Julian | 3/31/95 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004105 | RODRIGUEZ-VENTURA | SEFERINO | 12/20/91 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004109 | Santiago-Santiago | Jesus | 4/17/91 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004110 | SOTO LAZCANO | Alfredo | 9/7/89 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004111 | VENTURA-PEREZ | Israel | 6/27/91 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004114 | FUENTES ESPARZA | Jesus | 3/2/01 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004115 | GREGORIO ANTONIO | GERMAN | 5/2/92 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004116 | GREGORIO ANTONIO | Sergio | 10/8/00 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004117 | GUILLERMO PADILLA | Juan Miguel | 9/16/69 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004119 | RAMIREZ RODRIGUEZ | HECTOR MANUEL | 8/9/01 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004120 | TABERA GREGORIO | Luis Angel | 12/11/93 | 1/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004123 | ESPINOSA | ARTURO CORTES | 12/17/80 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004124 | Gomez | CARLOS GERONINO DIAZ | 11/25/00 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004127 | GONZALEZ LAINEZ | EDWIN ARIEL | 12/29/02 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004130 | Gomez | ANDRES HERNANDEZ | 8/30/72 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004131 | Perez | HERMINIO LOPEZ | 4/9/73 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004133 | PINEDA BONILLA | EDY DAVID | 8/10/83 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004134 | PINEDA FIGUEROA | EXEL YOHIR | 9/21/03 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004135 | RAMOS MENDEZ | DIEYRI ROBERSSY | 8/17/98 | 1/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004136 | ARCOS PEREZ | JESUS ANTONIO | 6/12/95 | 1/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004138 | LARA PEREGRINO | Arturo | 12/14/82 | 1/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004143 | ULLOA MARTINEZ | Bartolo | 12/13/94 | 1/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004144 | VINAGRE RODRIGUEZ | ELIN | 10/5/82 | 1/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004142 | REVOLORIO DE LA CRUZ | JOSE ADAN | 10/3/00 | 1/29/22 | KINNEY | Yes | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004147 | AGUILAR-HERNANDEZ | Alfredo | 1/7/81 | 1/30/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004148 | AVILA-DE LA CRUZ | FABIAN | 4/16/01 | 1/30/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004149 | DE LA ROSA-MARTINEZ | Luis David | 1/20/94 | 1/30/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004158 | PEREZ-DE LA CRUZ | Jose Luis | 1/10/02 | 1/30/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004145 | SANCHEZ SANCHEZ | JOSE EMMANUEL | 5/18/03 | 1/30/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004159 | PRIETO RAMOS | ALEXIS FERNANDO | 1/18/98 | 1/30/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004189 | Martinez Padilla | Juan Antonio | 12/6/69 | 2/1/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004199 | Garcia | Gonzalo Nava | 4/16/97 | 2/2/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004216 | De Leon-Lopez | Emmanuel | 12/13/98 | 2/3/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004236 | Clarisier-Aurelus | Jean | 6/16/97 | 2/7/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004260 | Brono-Guerra | David | 12/14/98 | 2/10/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004309 | Tapia Garcia | Jonathan Moises | 3/18/96 | 2/13/22 | KINNEY | Yes | Possession Marijuana | Felony |
| CF0004300 | Hernandez-Duran | Carlos Rafael | 4/4/94 | 2/13/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004319 | Lopez-Najera | Adonys Adalid | 1/2/96 | 2/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004320 | Mendoza-Munoz | Alex Jonas | 4/22/99 | 2/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004323 | Trejo-Navarro | Walter Antonio | 4/18/83 | 2/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004344 | Cardona-Cardona | Marbin Yobany | 11/2/95 | 2/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004349 | Martinez-Ocadiz | Francisco Javier | 12/4/83 | 2/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004350 | Pineda-Segundo | Elias | 2/15/84 | 2/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004351 | Sanchez-Barrios | Ulises | 8/18/91 | 2/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004358 | Zamora Noguez | Eduardo | 7/30/88 | 2/16/22 | KINNEY | Yes | Smuggling of Persons | Felony |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004379 | Rodriguez-Vega | Marlon David | 7/30/90 | 2/17/22 | KINNEY | Yes | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004401 | Gonzalez-Alcala | Edgardo Iridian | 7/14/95 | 2/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004393 | Gardea-Zapata | Gustavo Ignacio | 10/5/87 | 2/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004394 | Hernandez-Reyes | Cornelio Alexander | 1/16/83 | 2/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004401 | Rivas-Arana | Sergio De Jesus | 2/26/96 | 2/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004383 | Delcid-Alfaro | Carlos Enrique | 11/12/96 | 2/18/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004429 | Rueda Sanchez | Facundo | 6/9/01 | 2/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004430 | Velazquez Sanchez | Mauricio De Jesus | 9/16/89 | 2/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004431 | Villegas-Perez | Anselmo | 3/5/84 | 2/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004433 | Castellanos | Jose Moises | 7/14/83 | 2/21/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004448 | Castellanos Garcia | Raul Reynaldo | 7/29/95 | 2/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004452 | Diaz Perez | Eder | 12/19/82 | 2/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004455 | Lopez Mendoza | Eder | 4/9/94 | 2/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004460 | Sanchez-Hernandez | Abenamar | 11/25/90 | 2/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004466 | Chavez | Calixto Duarte | 10/14/90 | 2/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004468 | Fiallos Coello | Luis Armando | 7/29/91 | 2/22/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004462 | Tol Pablo | Miguel | 8/12/86 | 2/22/22 | KINNEY | Yes | Poss Cont Subs - Felony | Felony |
| CF0004476 | Perez | Nelson Caleb | 1/8/02 | 2/22/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004488 | Teratol Teratol | Edgar Enrique | 11/11/95 | 2/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004483 | Guevara-Espin | Jose Gregorio | 5/19/94 | 2/23/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004506 | Jimenez | Juan Domingo | 6/22/94 | 2/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004507 | Jimenez-Lopez | Eduardo Saqueo | 12/25/96 | 2/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004515 | Ponce-Lopez | Jose Luis | 6/11/72 | 2/24/22 | KINNEY | Yes | Evading Arrest/Detn W/Vehicle | Felony |
| CF0004531 | Lopez-Lozano | Miguel Angel | 5/18/89 | 2/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004542 | Villalpando-Ramos | Franciso Javier | 8/5/94 | 2/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004555 | Espinosa Correa | Oscar Osvaldo | 5/15/78 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004557 | Gonzalez | Gonzalo Pineda | 9/6/02 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004558 | Gutierrez Baeza | Fernando | 5/30/84 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004560 | Paez Perez | Juan Manuel | 2/24/74 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004562 | Perez Beina | Rosendo | 8/13/76 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004565 | Reyes Ceciliano | Fermin | 8/16/82 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004567 | Sanchez-Barcenas | Jose Luis | 12/26/95 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004568 | Sanchez-Sanchez | Alexis | 8/21/99 | 2/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004544 | Lopez Bonilla | Melvin Antonio | 3/13/98 | 2/26/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004572 | Aguilar Parra | J Pueblito | 11/24/00 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004574 | Ardon Caceres | Nery Ismael | 5/27/95 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004577 | Campos Martinez | Mario Enrique | 2/9/95 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004578 | Diaz Alvarenga | Marvin Omar | 5/26/01 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004579 | Euceda Cabrera | Cristian Alexander | 11/13/02 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004581 | Hernandez | Victor Manuel | 2/29/80 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004582 | Morales-Hernandez | Gerardo Alejandro | 2/22/91 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004583 | Moreno Centeno | Sergio | 3/30/80 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004584 | Ochoa Tamayo | David | 12/4/02 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004586 | Perez Martinez | Victor Manuel | 2/27/97 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004587 | Sanchez Guerrero | Sotero | 11/25/74 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004588 | Vallecillo Pineda | Juan Angel | 12/10/03 | 2/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004595 | Garcia Gonzalez | Rogelio Elias | 3/10/95 | 2/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004596 | Gomez Nunez | Mateo | 8/20/92 | 2/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004598 | Perez Hurtado | Pedro | 3/24/89 | 2/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004599 | Sanchez Gonzalez | Jorge Enrique | 10/4/99 | 2/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004600 | Sanchez Nunez | Jose Luis | 4/14/98 | 2/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004590 | HIGUERA ARGUELLO | JORGE ELIECER | 7/16/60 | 2/28/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004606 | Diaz Hernandez | LORENZO | 8/10/82 | 3/2/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004612 | Lopes Portillo | Wally Alexander | 11/5/94 | 3/2/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004613 | Martinez Lopez | Oswaldo Jose | 1/3/99 | 3/2/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004615 | Sanchez Hernandez | Jeremias | 9/22/90 | 3/2/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004619 | Lopez Gomez | Juan Hugo | 5/23/85 | 3/3/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004661 | Colchado Martinez | Jacinto | 8/17/87 | 3/7/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004694 | Bautista-Vargas | Luis Rosendo | 8/24/95 | 3/9/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004699 | Montejo-Arias | Marcelo | 7/13/83 | 3/9/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004700 | Perez-Garcia | Francisco Antonio | 8/1/94 | 3/9/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004701 | Rueda-Ramirez | Luis David | 2/3/98 | 3/9/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004702 | Torres-Martinez | Ismael Antonio | 6/17/98 | 3/9/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004742 | Arias Benito | Juan Jesus | 3/1/98 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004744 | Centeno-Robles | Humberto | 8/7/83 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004745 | Centeno-Robles | Jose Juan | 4/5/69 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004749 | Guzman-Sanchez | Felipe De Jesus | 11/17/93 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004750 | Javier Alcudia | Asuncion | 8/15/89 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004751 | Javier Alcudia | Eladilo | 11/25/85 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004752 | Palma Leyva | Pedro | 7/5/92 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004753 | Palma Vazquez | Eliseo | 6/15/86 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004755 | Torres-Moreno | Octavio | 11/20/77 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004757 | Vargas-Torres | Angel Enrique | 6/23/90 | 3/13/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004732 | Gonzalez-Poz | Leonel Selvyn Samuel | 10/6/98 | 3/13/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004734 | Ruiz Garcia | Miguel | 1/20/99 | 3/13/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004758 | Dimas Binzha | Alejandro | 2/18/04 | 3/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004760 | Gonzalez Olvera | Eloy | 12/1/93 | 3/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004761 | Gonzalez Olvera | Gabriel | 11/20/91 | 3/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004764 | Meza Ramirez | Leopoldo | 5/11/79 | 3/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004765 | Rivera Ruiz | Jorge Luis | 11/9/95 | 3/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004767 | Serrato Baez | Fernando | 7/1/87 | 3/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004768 | Rodriguez Alvarado | Javier | 2/2/79 | 3/14/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004759 | Frias Perez | Jose Salvador | 12/13/74 | 3/14/22 | KINNEY | Yes | Smuggling of Persons | Felony |
| CF0004772 | Jeronimo Aguilar | Francisco Javier | 9/5/94 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004773 | Mateo Alvarado | Andres | 3/26/93 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004774 | Rosales Contreras | Brayan Abraham | 7/4/01 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004775 | Sanchez Avalos | Jose Trinidad | 5/29/72 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004776 | Solorio Menera | Juan Carlos | 8/3/96 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004777 | Cordona-Rivas | Jorge Refugio | 7/4/88 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004778 | Carmona-Galindo | Emilio | 5/22/77 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004779 | Cortes-Romero | Juan Andres | 11/30/92 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004783 | Hernandez Romero | Lazaro | 2/6/95 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004784 | Lopez Herrera | Romualdo | 2/13/77 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004785 | Lopez Perez | Jose Paz | 1/24/82 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004786 | Luna-Torres | Cesar | 7/3/88 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004790 | Ojeda Sustaita | Jesus | 11/21/92 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004791 | Ramirez-Perez | Marcelo Jesus | 7/3/92 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004792 | Rivas-Cisneros | J Misael | 8/24/80 | 3/15/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004800 | De La Cruz-Jimenez | Francisco Antonio | 3/15/98 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004801 | De La Cruz Jimenez | Victor | 11/8/88 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0004804 | Garcia Cordova | Guillermo | 5/10/69 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004805 | Garcia Gil | Raul | 4/6/92 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004806 | Garcia Gil | Julian De Jesus | 12/25/90 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004807 | Gil Garcia | Noe | 7/17/78 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004809 | Gonzalez Diaz | Imer Migdael | 9/23/96 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004810 | Gonzalez Gonzalez | Jose David | 5/5/97 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004811 | Gonzalez Hernandez | Reyes Dario | 2/5/86 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004812 | Hernandez Jimenez | Cesar Roberto | 12/31/94 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004813 | Jimenez Torres | Gabriel | 9/5/88 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004814 | Mendez Rodriguez | Pedro | 4/8/88 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004816 | Perez Diaz | Ruvisel Einsten | 8/20/91 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004817 | Sifuentes Dominuez | Omar | 6/28/75 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004818 | Silva Lopez | Jesus | 5/12/88 | 3/16/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004832 | Rodriguez Coello | Oscar Antonio | 7/24/99 | 3/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004833 | Velasques Izquierdo | Ricardo | 4/3/91 | 3/18/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004848 | Ambrosio-Ramirez | Julio | 10/24/91 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004849 | Ramirez-Perez | Diego Elias | 5/9/00 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004850 | Gonzalez-Vargas | Jose Jesus | 12/23/81 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004852 | Godinez-Ramirez | Mauro | 1/15/93 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004853 | Godinez-Munoz | Jose Jesus | 3/6/95 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004854 | Barron-Guerrero | Esteban | 8/23/91 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004855 | Arellano-Ramirez | Alejandro | 3/31/76 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004856 | Aguirre-Rodriguez | Gamaliel | 12/31/97 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004858 | Rodriguez-Colin | Ernesto | 8/28/88 | 3/20/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004927 | Rodriguez Amador | Rossell M | 7/3/96 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004946 | Gamas Enrique | Manuel | 8/29/92 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004958 | Perez-Perez | Guillermo | 1/8/94 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004961 | Ramos-Perez | Ismael | 6/17/01 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004965 | Torres-May | David | 4/23/95 | 3/23/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004973 | Martinez-Leon | Oribel | 9/14/85 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004974 | Mena Candelero | Williams | 12/13/91 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004976 | Sanchez Palma | Felix Enrique | 8/26/95 | 3/24/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004983 | De La Cruz | Juan Jose Perez | 3/8/81 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004986 | Limas Garcia | Javier Ernesto | 9/27/89 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004990 | Millan Flores | Francisco | 1/15/74 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0004997 | Sanchez Velasco | Alejandro | 6/1/85 | 3/25/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005012 | Castro Rodriguez | Benhur Isaac | 5/15/85 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005013 | Espinoza Esquierdo | Jonas | 6/18/94 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005015 | Golpe Organista | Salvador | 4/3/90 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005016 | Gomez Juarez | Jairo | 1/13/02 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005018 | Mixtega Fiscal | Jorge | 6/1/91 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005021 | Perez Alvarado | Fermin Jeremias | 9/12/97 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005025 | Tenango Vigueras | Aldair | 8/28/02 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005027 | Trujillo Flores | Jaciel | 6/28/86 | 3/26/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005034 | Chavez Perez | Luis Alfredo | 8/21/91 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005035 | Chavez Perez | Melfin Otuniel | 12/15/01 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005036 | Gaitan Ibarra | Gilberto | 3/30/80 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005037 | Gonzalez Gauna | Manuel | 9/15/71 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005040 | Hernandez Perez | Luis Jordan Alexander | 5/24/00 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005042 | Lopez Diaz | Eduardo | 12/26/94 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |

**Operation Lone Star Confinees - Segovia Unit**

**As of April 8, 2022**

| Unique Id | Last Name | First Name | Date of Birth | Date Received | Sending County | ICE Detainer | Primary Offense | Primary Offense Type |
|---|---|---|---|---|---|---|---|---|
| CF0005043 | Lopez Garcia | Eleazar | 1/24/83 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005044 | Lopez Lopez | Eulises | 3/27/96 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005046 | Mendez Lopez | Marvin Lisando | 6/10/90 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005049 | Ramirez Felipe | Juan Jose | 8/13/03 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005050 | Salas Mireles | Armando | 5/5/92 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005051 | Zabala Carrera | Ludvin Ivan | 5/13/92 | 3/27/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005052 | Aragon Juarez | Luis Felipe | 12/7/93 | 3/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005053 | Bena-Castillo | Armando | 4/14/88 | 3/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005054 | Cortes Villarreal | Miguel Angel | 1/10/93 | 3/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005057 | Lopez-Perez | Jose Luis | 6/5/92 | 3/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005058 | Lopez Ventura | Porfilio Romero | 2/8/03 | 3/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005063 | Ramirez Franco | Roberto | 3/31/98 | 3/28/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005085 | Cordova-Alcocer | Jonas | 4/26/92 | 3/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005087 | Hernandez-Ramos | Jorge Luis | 11/3/97 | 3/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005088 | Martinez-Perez | Natanael | 1/17/04 | 3/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005089 | Martinez-Saldana | Raul | 5/1/99 | 3/29/22 | KINNEY | Yes | Criminal Trespass | Felony |
| CF0005091 | Orozco-Villa | Javier | 4/2/02 | 3/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |
| CF0005092 | Ramos-Lara | Adonai | 10/9/84 | 3/29/22 | KINNEY | Yes | Criminal Trespass | Misdemeanor |



GOVERNOR GREG ABBOTT

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
____8Pm___ O'CLOCK

MAY 31 2021

Secretary of State

May 31, 2021

The Honorable Ruth R. Hughs
Secretary of State
State Capitol Room 1E.8
Austin, Texas  78701

Dear Secretary Hughs:

Pursuant to his powers as Governor of the State of Texas, Greg Abbott has issued the following:

A proclamation certifying that the ongoing surge of individuals unlawfully crossing the Texas-Mexico border poses an ongoing and imminent threat of widespread and severe damage, injury, and loss of life and property, including property damage, property crime, human trafficking, violent crime, threats to public health, and a violation of sovereignty and territorial integrity, in certain Texas counties and for all state agencies affected by this disaster.

The original proclamation is attached to this letter of transmittal.

Respectfully submitted,

Gregory S. Davidson
Executive Clerk to the Governor

GSD/gsd

Attachment

Appx. 21

# PROCLAMATION

**BY THE**

## Governor of the State of Texas

---

**TO ALL TO WHOM THESE PRESENTS SHALL COME:**

WHEREAS, securing the international border is the federal government's responsibility, but the State of Texas has consistently taken action to ensure the safety of all Texans by augmenting federal border security efforts at the Texas-Mexico border; and

WHEREAS, since 2014, Texas has spent roughly $3.5 billion to help secure the border and protect public safety; and

WHEREAS, in 2021 alone, I have deployed 1,000 troopers from the Texas Department of Public Safety (DPS) and hundreds of soldiers from the Texas National Guard to the border; and

WHEREAS, on March 6, 2021, amidst escalating border crossings, I directed DPS to initiate Operation Lone Star and devote additional law enforcement resources towards deterring illegal border crossings and protecting our border communities; and

WHEREAS, on March 17, 2021, I expanded Operation Lone Star to have DPS interview unaccompanied alien children to identify victims of human trafficking and gain actionable intelligence that will aid in the arrest of traffickers; and

WHEREAS, in fewer than three months since Operation Lone Star began, DPS has made over 1,300 criminal arrests, apprehended over 35,000 illegal migrants, and seized over 10,000 pounds of drugs and over 100 firearms; and

WHEREAS, the federal government used to take seriously its responsibility to enforce federal immigration laws and secure the international border, which allowed Texas to collaborate on law enforcement and related activities along the border; and

WHEREAS, under the Biden Administration, however, the federal government has shown unwillingness, ambivalence, or inability to enforce federal immigration laws, to deter and stop illegal border crossings into the United States, or to meaningfully partner with Texas in pursuing these goals; and

WHEREAS, my calls for the federal government to do its job and secure the border have gone unanswered; and

WHEREAS, the Biden Administration's inaction, whether intentional, reckless, or negligent, is causing a dramatic increase in the number of individuals unlawfully crossing the international border into Texas; and

WHEREAS, the Biden Administration's immigration policies are failing Texans, causing a humanitarian crisis in many Texas communities along the border; and

WHEREAS, there are numerous reports of farmers, ranchers, and other Texans suffering property damage as a result of the increase in unlawful crossings, including damage to crops, livestock, ranch fences, and homes; and

WHEREAS, the Biden Administration's open-border policies have enabled escalating violence from the cartels, dramatically increased the risk of human trafficking, and created a severe crisis of illegal drugs crossing into the United States, including 21.5

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
_____ ᎧᏢᏁ O'CLOCK

**MAY 3 1 2021**

*Governor Greg Abbott*
May 31, 2021

*Proclamation*
Page 2

million lethal doses of fentanyl that were intercepted by DPS from January through April 2021, all of which threatens harm throughout Texas and in other states; and

WHEREAS, the arrest of human smugglers by state and local law enforcement, combined with increased arrests connected with other border-related crime, threatens to substantially increase inmate population in jails to the extent that there may not be an adequate number of jail beds available; and

WHEREAS, the federal government's failure to secure the border has led to so many individuals unlawfully crossing the border that it has unilaterally established roughly ten new migrant detention facilities in Texas that are operated exclusively by the federal government, without any state regulation or oversight; and

WHEREAS, while Texas previously licensed certain residential facilities that house unaccompanied alien children or families, the U.S. Constitution prohibits the federal government from commandeering the State of Texas or its officials to continue administering state-licensed facilities in response to a federal migrant detention crisis caused by the acts or omissions of the federal government; and

WHEREAS, the unabated influx of individuals resulting from federal government policies threatens to negatively impact state-licensed residential facilities, including those that serve Texas children in foster care; and

WHEREAS, in the Texas Disaster Act of 1975, the Legislature charged the Governor with the responsibility "for meeting . . . the dangers to the state and people presented by disasters" under Section 418.011 of the Texas Government Code, and expressly granted the Governor broad authority to fulfill that responsibility; and

WHEREAS, the Legislature has, in Section 418.004(1), defined a "disaster" as "the occurrence or imminent threat of widespread or severe damage, injury, or loss of life or property resulting from any natural or man-made cause;" and

WHEREAS, under Texas law, declaring a disaster allows the use of all available state and local resources needed to manage the situation, activates the state emergency management plan, and empowers the Texas Division of Emergency Management to reassign and fully utilize appropriate personnel where they are needed most; and

WHEREAS, the Legislature has also, in Section 12.50 of the Texas Penal Code, increased the punishments available for certain criminal offenses committed in an area for which a disaster has been declared, including for criminal trespass, burglary, and theft; and

WHEREAS, declaring a disaster also allows the State of Texas to request federal funding for costs related to the disaster, and a number of counties have already declared a local disaster and started accounting for costs that can be made part of a request (Crockett, Edwards, Goliad, Gonzales, Hudspeth, Jeff Davis, Jim Hogg, Kinney, Lavaca, La Salle, Maverick, Presidio, Uvalde, Real, and Val Verde counties); and

WHEREAS, declaring a disaster also allows the State of Texas to request federal funding for costs related to the disaster, and a number of counties have already declared a local disaster and started accounting for costs that can be made part of a request (Crockett, Edwards, Goliad, Gonzales, Hudspeth, Jeff Davis, Jim Hogg, Kinney, La Salle, Lavaca, Maverick, Presidio, Real, Uvalde, and Val Verde counties);

NOW, THEREFORE, I, GREG ABBOTT, Governor of the State of Texas, in accordance

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
_____ O'CLOCK

MAY 3 1 2021

App. 23

*Governor Greg Abbott*
May 31, 2021

*Proclamation*
Page 3

with the authority vested in me by Section 418.014 of the Texas Government Code, do hereby certify that the ongoing surge of individuals unlawfully crossing the Texas-Mexico border poses an ongoing and imminent threat of widespread and severe damage, injury, and loss of life and property, including property damage, property crime, human trafficking, violent crime, threats to public health, and a violation of sovereignty and territorial integrity, in Brewster, Brooks, Cameron, Crockett, Culberson, Dimmit, Duval, Edwards, El Paso, Goliad, Gonzales, Hidalgo, Hudspeth, Jeff Davis, Jim Hogg, Kenedy, Kinney, La Salle, Lavaca, Maverick, McMullen, Pecos, Presidio, Real, Reeves, Starr, Sutton, Terrell, Uvalde, Val Verde, Webb, Willacy, Zapata, and Zavala counties, and for all state agencies affected by this disaster.  I do hereby declare a state of disaster for all listed counties covered by this disaster declaration and for all state agencies affected by this disaster.

Pursuant to Section 418.017, I authorize the use of all available resources of state government and of political subdivisions that are reasonably necessary to cope with this disaster, including the use of all available resources of state and local law enforcement to assist and protect Texans from criminal activity and property damage.

I hereby direct DPS to use available resources to enforce all applicable federal and state laws to prevent the criminal activity along the border, including criminal trespassing, smuggling, and human trafficking, and to assist Texas counties in their efforts to address those criminal activities.

I hereby direct the Texas Commission on Jail Standards and the Texas Commission on Law Enforcement to work with Texas counties, to provide appropriate guidance, and to request from the Office of the Governor any necessary suspensions of law, in order to ensure that the counties have the flexibility needed to establish adequate alternative detention facilities or otherwise add or expand capacity; to streamline procedures for licensing and transfers; and to address any staffing issues that may arise in expanding capacity.

I hereby direct the Texas Health and Human Services Commission (HHSC) to take all necessary steps to discontinue state licensing of any child-care facility in this state that shelters or detains unlawful immigrants or other individuals not lawfully present in the United States under a contract with the federal government.  Pursuant to Section 418.016 of the Texas Government Code, I hereby suspend Sections 42.046 and 42.048 of the Texas Human Resources Code, and all other relevant laws, to the extent necessary to allow HHSC to deny a license application for any new child-care facility that shelters or detains unlawful immigrants or other individuals not lawfully present in the United States under a contract with the federal government, to renew any existing such licenses for no longer than a 90-day period following the date of this order, and to provide notice and initiate a 90-day period beginning on the date of this order to wind down any existing such licenses.

Pursuant to Section 418.016, any regulatory statute prescribing the procedures for conduct of state business or any order or rule of a state agency that would in any way prevent, hinder, or delay necessary action in coping with this disaster shall be suspended upon written approval of the Office of the Governor.  However, to the extent that the enforcement of any state statute or administrative rule regarding contracting or procurement would impede any state agency's emergency response that is necessary to protect life or property threatened by this declared disaster, I hereby authorize the suspension of such statutes and rules for the duration of this declared disaster.

FILED IN THE OFFICE OF THE
SECRETARY OF STATE
8:0A O'CLOCK

MAY 3 1 2021

App. 024

*Governor Greg Abbott*
May 31, 2021

*Proclamation*
Page 4

In accordance with the statutory requirements, copies of this proclamation shall be filed with the applicable authorities.



IN TESTIMONY WHEREOF, I have hereunto signed my name and have officially caused the Seal of State to be affixed at my office in the City of Austin, Texas, this the 31st day of May, 2021.

GREG ABBOTT
Governor

ATTESTED BY:

RUTH R. HUGHS
Secretary of State



GOVERNOR GREG ABBOTT

May 28, 2021

Dear Sheriff:

As Governor of Texas, the safety and security of our communities will always remain my top priority, and I am grateful for our shared commitment to ensuring a more secure future for the state of Texas. That is why I am inviting you to a Border Security Summit on Thursday, June 10th in Del Rio, Texas, where you will hear from state officials on the actions that the State of Texas is taking to secure our southern border and combat the ongoing humanitarian crisis. This summit will also focus on collaborative strategies between the state government, local city and county law enforcement officials, and land owners to secure our border communities and ensure a safer future for all Texans.

As you know, the crisis at the border remains one of the biggest public safety issues facing our state. Due to the open-border policies of President Joe Biden, Texas is experiencing an influx of people and contraband—including weapons and dangerous drugs like fentanyl—moving into our state. For months, the Biden Administration has continued to turn a blind eye to this crisis, and so the State of Texas has stepped up in the federal government's absence.

In March, I launched Operation Lone Star and deployed personnel and resources from the Texas Department of Public Safety and Texas National Guard to high threat areas along the border. We will not allow the Biden Administration's failures to endanger the lives of innocent Texans, and I am grateful for our partnership with law enforcement and community leaders across the state to address this crisis and keep our communities safe.

As Texans, we must continue to focus on the important work which remains before us, and so I hope you can join me on Thursday, June 10th in Del Rio for our Border Security Summit.

Please RSVP using the link provided in the email by Tuesday, June 8th at 5:00 PM.

I look forward to seeing you on June 10th. Thank you for the vital role you play in keeping Texas safe and secure.

Sincerely,

Greg Abbott
Governor

GA:ntd

Attachment

Appx. 26

 

GOVERNOR
GREG ABBOTT

GOVERNOR
DOUG DUCEY

June 10, 2021

Dear Fellow Governors:

We write to you regarding our existing Emergency Management Assistance Compact, which empowers our States to help one another in times of *disaster* or *emergency*. Those two words aptly describe the current crisis at America's southern border. On behalf of Texas and Arizona, we respectfully but urgently request that you send all available law-enforcement resources to the border in defense of our sovereignty and territorial integrity.

Securing our border with Mexico is the federal government's responsibility. But the Biden Administration has proven unwilling or unable to do the job. This failure to enforce federal immigration laws causes harms that spill over into *every State*. The cartels will see to it that their deadly fentanyl and human-trafficking victims reach far and wide. The convicted criminals they smuggle into the homeland will bring recidivism with them to far too many of your communities. And although people are now coming to our border from as far away as Senegal, Bangladesh, and Uzbekistan, the cartels are not exactly screening for threats to public health or national security.

Of course, border states like Texas and Arizona are "ground zero" for this crisis and bear a disproportionate share of these burdens. For example, Texas has spent roughly $3.5 billion since 2014 to help secure the border and protect public safety. Since President Biden took office, Governor Abbott has deployed to the border a thousand troopers from the Texas Department of Public Safety, along with hundreds of soldiers from the Texas National Guard. Governor Ducey has taken similar action, deploying hundreds of soldiers from the Arizona National Guard to the border, and utilizing troopers from the Arizona Department of Public Safety and other law-enforcement partners as part of the Arizona Border Strike Force. Since its inception, the Arizona Border Strike Force has intercepted 284 pounds of fentanyl, which represents tens of millions of lethal doses that will never reach your streets, along with numerous illegal firearms and tens of thousands of pounds of other drugs.

In response to the ongoing surge of illegal border crossings, with the accompanying threats to private property and to the safety of our citizens, Governor Abbott has declared a disaster and Governor Ducey has declared an emergency. Among other legal consequences, these gubernatorial declarations allow our States to call in reinforcements under the Emergency Management Assistance Compact. *See* TEX. HEALTH & SAFETY CODE § 778.001 (enacting the Compact); ARIZ. REV. STAT. § 26-402 (same). Congress consented to the Compact on the heels of enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See* Pub.

L. 104-321.  With this consent, the terms of the Compact were "transform[ed] . . . into federal law," to be enforced by the States themselves.  *Cuyler v. Adams*, 449 U.S. 433, 440 (1981).

Article I of the Compact "provide[s] for mutual assistance between the [States] in managing any emergency or disaster that is duly declared by the governor of the affected [States], whether arising from natural disaster, . . . community disorders, insurgency, or enemy attack."  When it comes to the Biden Administration's open-border disaster, our greatest need is for additional law-enforcement personnel and equipment.  Pursuant to Article IV, therefore, any officers you can send to Texas or Arizona will be afforded "the same powers . . . , duties, rights, and privileges as are afforded forces of the state in which they are performing emergency services."

Crucially, this will include the power to arrest migrants who illegally cross the border into our territory.  Many of these crossings involve state-law crimes, such as criminal trespassing or smuggling of persons. *See, e.g.*, TEX. PENAL CODE §§ 20.01, 30.05; ARIZ. REV. STAT. § 13-1502; *see also* TEX. PENAL CODE § 12.50 (increasing punishment for criminal trespass in a disaster area). And most of them entail federal-law crimes, too, including illegal entry and illegal reentry.  As the U.S. Department of Justice opined in 1996—the same year the Compact won congressional consent—"state and local police may constitutionally detain or arrest aliens for violating the criminal provisions of the Immigration and Naturalization Act."  20 Op. O.L.C. 26.

Given the staggering number of violations now occurring in Texas and Arizona, additional manpower is needed from any State that can spare it.  With your help, we can apprehend more of these perpetrators of state and federal crimes, before they can cause problems in your State.  As required by Article III(B) of the Compact, authorized representatives from Texas and Arizona will be contacting their counterparts in your State to prepare an appropriately detailed request for law-enforcement assistance.  Texas and Arizona have stepped up to secure the border in the federal government's absence, and now the Emergency Management Assistance Compact gives your State a chance to stand strong with us.

Sincerely,

Greg Abbott
Governor of Texas

Douglas A. Ducey
Governor of Arizona

December 15, 2021

Merrick Garland, Attorney General
Lisa Monaco, Deputy Attorney General
Vanita Gupta, Associate Attorney General
Kristen Clarke, Assistant Attorney General
Christine Stoneman, Chief, Federal Coordination and Compliance
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C.  20530

*Via email*

Re:    **Texas Migrant Arrest Program under "Operation Lone Star"—Urgent Need for
       Investigation into Race and National Origin Discrimination by Texas Agencies**

Dear Attorney General Garland, Deputy Attorney General Monaco, Associate Attorney General
Gupta, Assistant Attorney General Clarke, and Ms. Stoneman,

        Anti-immigrant hate is on the rise in Texas, and state and local officials are fanning the
flames. Officials regularly use the same white supremacist rhetoric of "invasion" that led a
shooter to target Latinx residents of El Paso in 2019, murdering 23 people. Governor Greg
Abbott has claimed the state is under threat from migrants "from countries you haven't even
heard of before." The sheriff's office for Kinney County along the Texas border recently
approvingly shared a social media post comparing migrants to deer and suggesting they should
be shot.

        In this racist and xenophobic environment, officials are targeting migrants for criminal
arrest and prosecution—under the guise of state criminal trespass law but with the explicit, stated
goal of punishing migrants based on their immigration status. Using state criminal law, the state
of Texas and participating counties have created and are carrying out what is in reality a system
of state immigration enforcement that targets Black and Brown– primarily Latinx– individuals
for prosecution and enhanced punishment. Governor Greg Abbott explicitly contrasts this system
to federal immigration policy, calling the Texas program "arrest and jail."

        Pursuant to this program, sometimes called "Operation Lone Star" (OLS), Texas has
arrested more than 2,200 people on misdemeanor state criminal trespass charges. Texas has
created a separate criminal prosecution and detention system for these individuals, with separate
criminal dockets, separate public defender assignments, separate jails (converted state prisons),
and even a separate "criminal migrant processing facility" for booking. This separate system is
riddled with civil rights violations, including failure to appoint counsel, failure to timely file
charges, and even the unilateral replacement of judges. Hundreds of those arrested have waited
in jail for weeks or months without a lawyer or without a court date. In the end, the
overwhelming majority of cases are simply dropped–through dismissal, or declined prosecution.

Appx. 29

The trespass arrests themselves are pretextual and regularly lack probable cause—including cases in which law enforcement has directed individuals to a certain location, only to then arrest them for trespass once they get there. Arrest records show profiling based on race and national origin, including with numerous descriptions of observing or receiving reports of "undocumented migrants." Virtually all if not all of those arrested to date are Latinx and Black men and are migrants. And the nature of the program–state-sanctioned targeting of immigrants–has further fueled racist, anti-immigrant rhetoric and action, including attempts by Kinney County to partner with vigilante groups and to fund a private security force to target migrants.

Title VI of the Civil Rights Act of 1964 bars discrimination on the basis of race, color, or national origin in programs and activities that receive federal financial assistance.[1] By creating and implementing the OLS trespass arrest program, Texas state and local agencies that receive federal financial assistance—including the Texas Office of the Governor, Texas Department of Public Safety, Texas National Guard, Texas Parks and Wildlife Department, Texas Department of Criminal Justice, Texas Division of Emergency Management, Texas Office of Court Administration, Val Verde County, Kinney County, and Galveston County—are violating Title VI's prohibitions on discrimination. State and local officials began implementing the OLS trespass arrest program in July. The program is now backed by almost $2 billion in state funding for the next two years, with planned expansion to other counties. Officials have said they plan to continue the program for years; one state official recently termed it "indefinite."

Texas is the first state to operationalize a unilateral state immigration policy of this magnitude, using state criminal law to target Black and Brown immigrants for punishment. We respectfully request that the Department of Justice investigate Texas state and local agencies implementing the migrant arrest program and terminate federal funding to Texas agencies that engage in discrimination. There is an urgent need for federal action to protect the rights of Black and Brown migrants targeted by this unlawful system and to ensure that this kind of pretextual, discriminatory program does not flourish in Texas or spread to other states.

## I.     Overview: The OLS Trespass Arrest Program

The OLS trespass arrest program is one facet of the state of Texas's broader effort to unilaterally create a state immigration policy and unilaterally engage in immigration enforcement. In March 2021, Texas Governor Greg Abbott ordered the large-scale deployment of Texas Department of Public Safety ("DPS") troopers and members of the Texas National Guard to Texas communities along the border with Mexico.[2] By August, the state had deployed

---

[1] 42 U.S.C. § 2000d *et seq.*

[2] "Operation Lone Star" is, originally, the name for this deployment. Press Release, Office of the Texas Governor, *Governor Abbott, DPS Launch "Operation Lone Star" To Address Crisis At Southern Border*, Mar. 6, 2021, https://gov.texas.gov/news/post/governor-abbott-dps-launch-operation-lone-star-to-address-crisis-at-southern-border. In addition to the deployment of DPS and National Guard troops to implement the migrant trespass arrest program, OLS thus includes traffic stops by DPS and "apprehensions" of migrants by DPS troopers and National Guard troops along the border, most notably in the Rio Grande Valley. *See, e.g.*, Texas Department of Public Safety, Operation Lone Star Briefing, Dec. 2, 2021,

2

more than 1,250 DPS troopers to border communities and had also deployed National Guard troops, with plans to increase the National Guard presence to up to 2,500 troops.[3] In May 2021, Governor Abbott declared a state of "disaster" based on "federal government policies" and federal "inaction" that he claimed had led to "a dramatic increase in the number of individuals unlawfully crossing the international border." The disaster declaration described Operation Lone Star as intended to "deter[] illegal border crossings."[4] In addition to the OLS trespass arrest program, Texas's efforts to deter migration include Governor Abbott's July 2021 executive order barring ground transport of certain migrants in the state, including recently arrived asylum seekers,[5] and a state-funded border wall.[6]

      State and local officials, including Governor Abbott, have been crystal clear: the underlying purpose of the OLS trespass arrest program is to deter migration and punish migrants for coming to the United States.  From officials' public statements and the system's design and

---

https://www.facebook.com/ktabtv/videos/409242960930203/. Texas has a long history of surging DPS troopers to the border for what it terms "border security operations," reflecting the militaristic nature of the deployments. *See* Texas Legislative Budget Board, *Update: State Funding for Border Security, May 2016*, https://www.lbb.state.tx.us/Documents/Publications/Presentation/3248_Update_State_Funding_Border_Security.pdf. These surges regularly lead to increased stops for minor traffic violations and create an anti-immigrant environment where individuals fear travel because the saturation of state law enforcement places them at risk of deportation, including since the start of Operation Lone Star in March. *See, e.g.*, Tanvi Varma, *Records: Operation Lone Star Resulting in Increases as High as 1,000% in Minor Citations for Drivers in Starr County*, KRGV, Aug. 5, 2021, https://www.krgv.com/news/records-operation-lone-star-resulting-in-increases-as-high-as-1-000-in-minor-citations-for-drivers-in-starr-county/ (describing skyrocketing citations in the Rio Grande Valley under Operation Lone Star for "materials on a windshield" and "any transparent material on a windshield"); J. David Goodman, *Helicopters and High-Speed Chases: Inside Texas' Push to Arrest Migrants*, N.Y. Times, Dec. 11, 2021, https://www.nytimes.com/2021/12/11/us/texas-migrant-arrests-police.html (Containing statements by residents who have been routinely pulled over by DPS, including the mayor of Brackettville, who was told by DPS that he had been stopped because his license plate light was insufficiently bright); Debbie Nathan, *"They're Taking Everybody"* —*Videos Show Texas Troopers Ripping Apart Immigrant Families During Traffic Stops*, The Intercept, Dec. 10, 2017, https://theintercept.com/2017/12/10/theyre-taking-everybody-videos-show-texas-troopers-ripping-apart-immigrant-families-during-traffic-stops/.
[3] Texas House Appropriations Committee Hearing, H.B. 9, Relating to making supplemental appropriations relating to border security and giving direction regarding those appropriations, Aug. 24, 2021, 8:00 AM, https://tlchouse.granicus.com/MediaPlayer.php?view_id=46&clip_id=22334 (Testimony of Office of the Governor Budget Director Sarah Hicks at approximately 2:46:00) [hereinafter "Hearing on H.B. 9"].
[4] Gov. Greg Abbott, Proclamation by the Governor of the State of Texas, May 31, 2021, at 1-2, https://gov.texas.gov/uploads/files/press/DISASTER_border_security_IMAGE_05-31-2021.pdf.
[5] Gov. Greg Abbott, Executive Order GA-37, July 28, 2021, https://gov.texas.gov/uploads/files/press/EO-GA-37_transportation_of_migrants_during_COVID_IMAGE_07-28-2021.pdf. A federal court preliminarily enjoined enforcement of the order, on the basis that it is likely preempted, in litigation by the Department of Justice and individuals and organizations affected by the order. *United States v. Texas*, 3:21-cv-00173, Doc. 52 (W.D. Tex. Aug. 26, 2021).
[6] Press Release, Office of the Texas Governor, *Governor Abbott Announces Border Wall Construction Strategy*, June 16, 2021, https://gov.texas.gov/news/post/governor-abbott-announces-border-wall-construction-strategy.

Appx. 31

implementation, it's plain that the trespass program is a pretextual use of state criminal law, with the underlying interest of harming Black and Brown migrants.

Under the program, DPS officers collaborate with the Texas National Guard and county sheriff's offices to arrest Black and Brown migrants on state misdemeanor criminal trespass charges. Virtually all if not all[7] of those arrested on trespass charges are Black or Brown, the overwhelming majority of whom are Latinx, and virtually all if not all of those arrested are migrants. State troopers' affidavits evince racial profiling: they describe observing groups of "undocumented migrants" and note Latinx ethnicity as apparently relevant to arrest. Arrests lack probable cause: in many instances, law enforcement in fact directed those arrested to a particular place or otherwise gave them the impression they had permission to be on the property, only to then arrest them for trespassing. And the state is literally constructing the conditions for a criminal charge–at Governor Abbott's direction, the Texas National Guard has set up fences on private property for the purpose of establishing the "notice" element of state criminal trespass. In other words, the state is attempting to make crossing property criminal where it was not before, to enable the arrest of migrants.

Once arrested, individuals are channeled into a separate criminal system that is designed for migrants. Instead of being booked into the county jail, the ordinary site for pretrial detention, they are taken to a separate processing center specifically for the OLS trespass arrest program, which DPS terms the "criminal migrant processing center."[8] After magistration (the initial appearance), they are taken by the Texas Department of Criminal Justice ("TDCJ")—the state prison system—to one of two state prisons hours away that have been converted to jails to hold migrants. In June, the Dolph Briscoe Unit ("Briscoe"), located in Dilley, Texas, transferred prisoners to other facilities to make room for those arrested under the OLS trespass system.[9] Briscoe has capacity for about 1,000 people. When Briscoe became full, TDCJ also began holding individuals at the Segovia Unit in Edinburg, Texas.[10]

Counties then prosecute those arrested for state criminal trespass, on charges that prosecutors have enhanced by one misdemeanor class because of the disaster declaration predicated on migration and state law providing for disaster enhancements. The entire criminal

---

[7] Much information regarding the OLS trespass arrest program is difficult or impossible to access. We have been unable to secure access to records for all arrests to date, even though they are open records. In fact, the Kinney County Attorney has reportedly had delayed access to arrest files from DPS, in some cases reportedly receiving the files after the statutory deadline for filing charges has elapsed. Charlotte Cuthbertson, *In Pursuit of a Secure Border: Small Texas County Leads Charge Against Border Crime*, The Epoch Times, Nov. 11, 2021.

[8] Kinney County initially conducted en masse magistrations in a parking lot rather than sending individuals to the processing center for magistration. *See, e.g.*, Greg Abbott (@GregAbbott_TX), Twitter (Aug. 6, 2021, 11:35 AM), https://twitter.com/GregAbbott_TX/status/1423684063760719885.

[9] Reese Oxner, *Texas empties prison to prepare to detain immigrants arrested during ramped-up border enforcement*, The Texas Tribune, June 17, 2021, https://www.texastribune.org/2021/06/17/immigration-prison-border-jail/.

[10] Honest Austin News, *Texas Holds 850 Migrants on State Charges as it Opens Up More Prison Capacity*, Honest Austin, Sept. 27, 2021, https://www.honestaustin.com/2021/09/27/texas-prisons-operation-lone-star/.

process takes place in a separate criminal system specifically for the trespass arrests. Prosecutions take place along a separate track from ordinary criminal cases in the county, on dedicated dockets, with a different pool of public defenders and with different judges. The criminal process is under greater centralized state control than ordinary misdemeanor criminal trespass prosecutions, which are run by counties. In an unprecedented move, the state's Border Prosecution Unit assists with these misdemeanor prosecutions.

The criminal process is rife with civil rights violations that have led to extreme, outrageous delays in cases that overwhelmingly end in dismissal or nonprosecution. As of November 1, roughly 70% of resolved cases had been dropped; meanwhile, 53% of those jailed on November 1 had already been detained for more than 30 days.[11] Many of those detained have languished in jail for weeks without an attorney or without communicating with their attorney. Kinney County has waited more than a month to file charges against migrants, in violation of state law, leading to weeks-long delays before arraignments at which individuals may be released. Once a judge orders release, physical release from detention is likewise delayed.

***

In sum, state and local officials have created a separate state system intended to punish migrants and effectuate a state immigration policy, under the guise of state criminal trespass law. State and local law enforcement are targeting individuals for arrest and prosecution on state criminal trespass charges due to race and perceived immigration status. Virtually all if not all of those arrested to date are people of color. Once arrested, individuals are placed in a separate criminal process and in separate detention compared to the ordinary process and detention system for those arrested on state misdemeanor criminal charges. This separate system is rife with civil rights abuses, including failures to provide basic access to process that lead to people languishing in pretrial detention for weeks on misdemeanor trespass charges.

In September, the Texas Legislature passed and Governor Abbott signed H.B. 9, a bill which appropriated $1.8 billion in funding to the OLS trespass arrest system and other aspects of Operation Lone Star over the next two years. This funding includes more than $301 million for the Texas National Guard for a two-year period and almost $139 million for DPS for a one-year period.[12] The Kinney County Attorney has stated he expects the arrests to continue for the next

---

[11] Elizabeth Findell & Alicia A. Caldwell, *Texas Jails Fill With Migrants as Border Arrests Overwhelm Courts,* Wall Street Journal, Nov. 8, 2021, https://www.wsj.com/articles/texas-jails-fill-with-migrants-as-border-arrests-overwhelm-courts-11636376402.

[12] *An Act Relating to Making Supplemental Appropriations Relating to Border Security and Giving Direction Regarding Those Appropriations*, H.B. 9, 2d C.S. (2021), https://capitol.texas.gov/tlodocs/872/billtext/pdf/HB00009F.pdf#navpanes=0 (providing funding for aspects of the OLS trespass arrest program for a two-year period); Press Release, Office of the Texas Governor, *Governor Abbott Signs Border Security Funding Into Law*, Sept. 17, 2021, https://gov.texas.gov/news/post/governor-abbott-signs-border-security-funding-into-law.

Appx. 33

three years.[13] As a DPS official stated on December 4, Operation Lone Star is "indefinite." [14] The program is set up to continue for years, and state officials have repeatedly stated their intent to expand it beyond Val Verde and Kinney Counties to other counties in Texas.[15] Absent federal intervention, it provides a blueprint for other Texas localities and other states to join in similar use of the criminal system to discriminate against Black and Brown migrants and seek to effectuate a separate, punitive state immigration system.

## II.    Legal Background: Title VI

Title VI of the Civil Rights Act of 1964 bars discrimination on the basis of race, color, or national origin in any program or activity receiving federal financial assistance.[16] A federal "program or activity" is "all of the operations of" a state or local "department, agency . . . or other instrumentality," as well as a state or local entity that distributes federal financial assistance.[17] The non-discrimination requirement of Title VI applies to all noncitizens, including undocumented individuals, as Title VI bars discrimination against any "person in the United States."[18] Separate is never equal, and Title VI exists to guard against the precise discrimination unfolding in the state of Texas.

Pursuant to Title VI and its implementing regulations, a recipient of federal funds may not, among other prohibitions, "provide any disposition . . . to an individual which is different, or is provided in a different manner, from that provided to others under the program" or "subject an

---

[13] Charlotte Cuthbertson, *In Pursuit of a Secure Border: Small Texas County Leads Charge Against Border Crime*, The Epoch Times, Nov. 11, 2021, https://www.theepochtimes.com/in-pursuit-of-a-secure-border-small-texas-county-leads-charge-against-border-crime_4084276.html+&cd=1&hl=en&ct=clnk&gl=us (Kinney County Attorney Brent Smith saying, in the context of migrant arrests, "Now, will this Operation Lone Star continue for the next three years? Probably so. Unless the federal government decides to actually follow the laws passed by Congress– which at the moment they're not doing.").

[14] Operation Lone Star Briefing, Dec. 2, 2021, at 24:10, https://www.facebook.com/watch/live/?ref=watch_permalink&v=409242960930203.

[15] *E.g.*, Operation Lone Star Briefing, Oct. 28, 2021, at 12:34, https://www.conchovalleyhomepage.com/news/operation-lone-star-dps-to-hold-fifth-briefing/s DPS gives briefing on ongoing operations at the border (describing state officials' efforts to expand the OLS trespass arrest program to Brooks County,); Operation Lone Star Briefing, Nov. 18, 2021, at 5:41:00 https://www.valleycentral.com/news/local-news/texas-dps-to-hold-briefing-on-operation-lone-star-focus-on-apprehension-numbers/rrest numbers at the border | KVEO-TV (valleycentral.com), (DPS official stating that OLS trespass arrests began in Val Verde and Kinney Counties and that "soon we'll expand to other counties"); Hearing on H.B. 9, *supra* n.3 (Office of the Governor Budget Director Sarah Hicks testifying at 2:49:00, "The vision is that as we go and as we get the agreements in additional counties along the border, we could go up to 3 intake centers and up to 3 total jails.").

[16] 42 U.S.C. § 2000d.

[17] *Id.* § 2000d-4a.

[18] 42 U.S.C. § 2000d; *see also* U.S. Dep't of Justice, Civil Rights Division, *Title VI Legal Manual*, § V at 2 (Apr. 2021), https://www.justice.gov/crt/book/file/1364106/download ("It is well-settled that the word 'person' includes citizens and noncitizens alike and that undocumented individuals in the United States are protected from discrimination on the basis of race, color, and national origin.").

Appx. 34

individual to segregation or separate treatment in any matter related to his receipt of any disposition . . . under the program."[19] Nor may a recipient "utilize criteria or methods of administration which have the effect of" discriminating on the basis of race or national origin.[20]

Federal regulation provides that "[a]ny person who believes . . . any specific class of individuals to be subjected to discrimination prohibited" under Title VI may file a written complaint.[21] Any complaint or other information that "indicates a possible failure to comply with [Title VI]" triggers the requirement that the Department of Justice "make a prompt investigation."[22] "The investigation should include, whenever appropriate, a review of the pertinent practices and policies of the recipient," the underlying circumstances, and other relevant factors.[23]

## III.   State and Local Agencies Involved in the OLS Trespass Arrest Program

Because Operation Lone Star is a multi-agency operation, we request that the Department of Justice coordinate an investigation into each state and local agency involved with the program that receives federal funding for purposes of Title VI.[24] Relevant state and local agencies' federal funding sources and roles in the OLS trespass arrest program include:

**Texas Office of the Governor.** The Texas Office of the Governor received, by its own account, over $343 million in federal funds in Fiscal Year 2021, including $206,210,910 in funding through the Crime Victims Assistance Program (CFDA No. 16.575.000), $16,250,000 from the Edward Byrne Memorial Justice Assistance Grant program (CFDA No. 16.738.000), and $98,443,090 in Homeland Security Grant funding (CFDA No. 97.067.000).[25] In November 2021, the Office of the Governor also received $341,200,000 from the federal Coronavirus State Fiscal Recovery Fund established under the American Rescue Plan Act (ARPA), as allocated by the state of Texas.[26]

Governor Abbott initiated the OLS trespass arrest program, and the Office of the Governor encourages counties to participate and coordinates the program's implementation. Further, the Border Prosecution Unit housed within the Office of the Governor's Public Safety

---

[19] 28 C.F.R. § 42.104(b)(1)(ii), (iii).

[20] *Id.* § 42.104(b)(2).

[21] 28 C.F.R. § 42.107(b).

[22] *Id.* § 42.107(c).

[23] *Id.*

[24] We make this request pursuant to DOJ's role of "ensuring the consistent and effective implementation of Title VI across the federal government," which includes coordination of investigations into complaints that implicate multiple agencies, as well as pursuant to the federal funding sources named here that DOJ directly administers. *See* U.S. Dep't of Justice, Civil Rights Division, Title VI Legal Manual 1, 5 (2021), https://www.justice.gov/crt/book/file/1364106/download.

[25] Tex. Off. of the Gov., Federal Funds Supporting Schedule (2020), attached as Exhibit 1.

[26] Making Supplemental Appropriations and Giving Direction Regarding Appropriations, 2021 Tex. Sess. Law Serv. 3rd Called Sess. Ch. 10 §§ 2, 3, 24 (West).

Office, as a "border program,"[27] supports OLS criminal trespass prosecutions by cross-deputizing prosecutors who are part of the Border Prosecution Unit to assist in OLS trespass cases.[28]

**Texas Department of Public Safety**. The Texas Department of Public Safety ("DPS") received millions of dollars in Fiscal Year 2021. It received $278,513 through the State and Local Implementation Grant Program (CFDA No. 11.549.000), $265,398 through the Public Safety Partnership and Community Policing Program (CFDA No. 16.710.000), $692,385 through the Forensic DNA Backlog Reduction Program (CFDA No. 16.741.00), and $147,803,386 in Hurricane Harvey Public Assistance (CFDA No. 97.036.002).[29]

In the OLS trespass arrest program, DPS is the primary agency that arrests individuals on criminal trespass charges. As of December 2, DPS had arrested 2,106 people for the OLS trespass arrest program.[30]

**Texas Parks and Wildlife Department.** The Texas Parks and Wildlife Department ("TPWD") estimated that it received $70.1 million in Fiscal Year 2021 "from the federal government in the form of apportionments, grants and contracts."[31] This includes funding allocated by formula under the Pittman-Robertson Wildlife Restoration Act, 16 U.S.C. § 669 et seq.; Texas received $31,095,765 in Pittman-Robertson funding in Fiscal Year 2021 (CFDA Nos. 15.611 and 15.626).[32] The TPWD also received $20,713,023 in Fiscal Year 2021 and is scheduled to receive $20,048,857 in Fiscal Year 2022 under the Dingell-Johnson Sport Fish Restoration Act, 16 U.S.C. § 777 et seq. (CFDA 15.605).[33]

The Texas Parks and Wildlife Department directly arrests migrants for the OLS trespass program and provides information to DPS to facilitate DPS arrests. To date, the Parks and

---

[27] *See* Tex. Gov't Code § 772.052 (providing that "[t]he governor shall establish the border prosecution unit within the criminal justice division. . . ."); State of Texas Border Prosecution Unit, Border Prosecution Unit Quick Facts, https://senate.texas.gov/cmtes/81/c640/1108-TomKrampitz-3.pdf (explaining that the Border Prosecution Unit was initially "administered as [a] trusteed grant program through [the] Criminal Justice Division of [the] Governor's Office"); *Border Programs*, Office of the Texas Governor, https://gov.texas.gov/organization/hsgd/border-programs (describing the Border Prosecution Unit's functions as one of the "Border Programs" within what is now the Public Safety Office of the Office of the Governor).
[28] Hearing on H.B. 9, *supra* n.3 (testimony of Border Prosecution Unit General Counsel Tom Krampitz at 3:51:00–3:52:00).
[29] Tex. Dep't of Public Safety, Federal Funds Supporting Schedule, attached as Exhibit 2.
[30] Operation Lone Star Briefing, December 9, 2021, ~ 2:28, https://www.facebook.com/watch/live/?ref=watch_permalink&v=277771827651145&t=0 (reporting and showing corresponding data for December 2, 2021).
[31] *See* Tex. Parks and Wildlife Dep't, Financial Overview 9 (2020), https://tpwd.texas.gov/publications/pwdpubs/media/pwd_rp_a0900_0679_12_20.pdf.
[32] *See* U.S. Dep't of the Interior, Fish and Wildlife Service, Budget Justifications and Performance Information, Fiscal Year 2022 at WR-7 (2021), https://www.doi.gov/sites/doi.gov/files/fy2022-fws-budget-justification.pdf.
[33] *See id.* at SF-9.

8

Wildlife Department has arrested more than 180 people for criminal trespass under the OLS program.[34]

**Texas Military Department** (**Texas National Guard**). The Texas National Guard, a component of the Texas Military Department, received funding through the Emergency Security Supplemental to Respond to January 6 Appropriations Act of 2021 (H.R. 3237 – 117th Congress).[35] The Emergency Security Supplemental Act appropriated $521 million to the National Guard to reimburse it for costs associated with deployment to the United States Capitol in the wake of the January 6, 2021 attack, including the Texas National Guard, which deployed over 1,000 troops.[36]

Governor Abbott has ordered the deployment of the Texas National Guard to arrest and assist in the arrest of individuals in the OLS trespass program, as well as to build fences to attempt to establish the notice element of criminal trespass under state law.

**Texas Department of Criminal Justice**. TDCJ received $8,644,147 in Fiscal Year 2021, through the Criminal Alien Assistance Program (CFDA Number 16.606.000) and has requested the same amount for Fiscal Year 2022.[37] It also received $359,673,191 from ARPA, as allocated by the state of Texas in November 2021.[38]

TDCJ provides prisons and staff for the OLS trespass arrest program.

**Texas Office of Court Administration**. The Texas Office of Court Administration ("OCA") receives federal funding distributed by the Office of the Governor. Grants that have been used to fund OCA include the Edward Byrne Memorial Justice Assistance Grant program (CFDA No. 16.738). OCA also received $16,942,446 from ARPA in November 2021, as allocated by the state of Texas.[39] OCA manages the separate court system created for the OLS trespass arrest program.

**Texas Division of Emergency Management.** The Texas Division of Emergency Management ("TDEM") received $297,889,727 in federal funds through Hurricane Harvey Public Assistance programming (CFDA No. 97.036.002), $5,862,529 through the Department of Homeland Security's Crisis Counseling program (CFDA No. 97.032.000), and $5,993,222 in

---

[34] *See* Dec. 9 Operation Lone Star Briefing, *supra* n. 30, at ~2:40 (reporting Texas Parks and Wildlife conducted criminal trespass arrests of 182 people).

[35] *See* Press Release, White House, Bill Signed: H.R. 3237 (July 30, 2021), https://www.whitehouse.gov/briefing-room/statements-releases/2021/07/30/bill-signed-h-r-3237/.

[36] *See* Wes Rapaport, *Texas National Guard Still Waiting for Reimbursement for Deployment to U.S. Capitol after January 6*, KXAN (July 27, 2021), https://www.kxan.com/news/texas-politics/texas-national-guard-still-waiting-for-reimbursement-for-deployment-to-u-s-capitol-after-january-6/.

[37] Tex. Dep't of Crim. J., Federal Funds Supporting Schedule, attached as Exhibit 3.

[38] Making Supplemental Appropriations and Giving Direction Regarding Appropriations, *supra* n. 26 at § 6(a); *see* Press Release, Office of the Texas Governor, Governor Abbott Signs Senate Bill 8, Allocating Federal American Rescue Plan Act Funding (Nov. 8, 2021), https://gov.texas.gov/news/post/governor-abbott-signs-senate-bill-8-allocating-federal-american-rescue-plan-act-funding (describing SB 8's allocation of "the nearly $16 billion federal American Rescue Plan Act (ARPA) funding awarded to the State of Texas earlier this year").

[39] Making Supplemental Appropriations and Giving Direction Regarding Appropriations, *supra* n. 26, at § 29(a)(2).

COVID-19 Emergency Management Performance Grants (CFDA No. 97.042.119).[40] It also received $300,000,000 from ARPA, as allocated by the state of Texas.[41] In addition, TDEM is responsible for managing the distribution of $1.85 billion in funding provided through the Coronavirus Economic Stabilization Act of 2020 ("CARES ACT").[42] TDEM Chief W. Nim Kidd testified to the Texas House Appropriations Committee in August that "our agency's responsible for about $12 billion of federal fund monitoring" in "grants that are passed through the division, through the state, back down to local governments."[43]

TDEM coordinates the "criminal migrant processing center"[44] used for booking individuals detained in OLS trespass arrests in lieu of county jails. It also contracts with vendors to support OLS trespass arrests.[45]

**Val Verde County - Sheriff's Office and County Attorney.** Val Verde County received $9,522,532 in ARPA funding in 2021.[46] Additionally, it budgeted $384,737 for FY 2021 that it received through the Department of Homeland Security's Operation Stonegarden (OPSG) program (CFDA No. 97.067).[47] In Fiscal Year 2021, the county also received $145,225 in funding through the Coronavirus Emergency Supplemental Funding (CESF) Program, and $457,850 from the Coronavirus Relief Fund, each established under the CARES Act.[48]

The Val Verde County Sheriff's Office has been directly involved with arresting individuals for the Operation Lone Star trespass arrest program, and the County Attorney has prosecuted those arrested.

---

[40] Tex. Dep't of Emergency Mgmt., Federal Funds Supporting Schedule, attached as Exhibit 4.

[41] Making Supplemental Appropriations and Giving Direction Regarding Appropriations, *supra* n. 26, at § 9.

[42] 15 U.S.C. § 116; *see also* Tex. Dep't Emergency Mgmt, *CARES Act: Coronavirus Relief Fund,* https://tdem.texas.gov/crf/#:~:text=Under%20the%20 CARES%20Act%2C%20the,Texas%20is%20approximately%20%2411%20billion.

[43] Hearing on H.B. 9, *supra* n. 3, at 3:55:00–3:55:15.

[44] Greg Abbott (@GregAbbott_TX), *supra* n. 8.

[45] *Id.* at 2:51:25–2:51:50 (TDEM Chief Kidd testifying, "As it relates to our assignments on the border, we've helped local officials establish and build an intake facility, we've sourced and procured raw materials, and we've brought in additional personnel from volunteer sources through contracts with through the emergency management assistance compact. Today we're working with 16 different vendors and 11 agencies to support our local government request.").

[46] *See* Val Verde County, Tex., Adopted Budget Fiscal Year 2021–2022 at 117 (2021), https://valverde.mygovcenter.com/uploads/cms/21_22AdoptedBudget-1634152325433-1634152341411.pdf.

[47] *Id.* at 115. Operation Stonegarden was first established by appropriation in the Consolidated Security, Disaster Assistance, and Continuing Appropriations Act. Pub. L. No. 110-329, 122 Stat. 3671 (2009). Val Verde County appears to be allocating the $1,161,183 it received through Operation Stonegarden in Fiscal Year 2019 over multiple years. *See* U.S. Dep't of Homeland Security, Federal Emergency Management Agency (FEMA), Final Allocation and Award Announcement, Fiscal Year 2019, State and Local Preparedness Grant Programs 10 (2019), https://www.dhs.gov/sites/default/files/publications/19_0801_ola_fy19-allocation-announcement.pdf.

[48] Val Verde County, Tex., Adopted Budget Fiscal Year 2021–2022, *supra* n. 46, at 120–21.

**Kinney County - Sheriff's Office and County Attorney.** The State of Texas directed $24,801 in federal funds received through the Edward Byrne Memorial Justice Assistance Grant Program (CFDA 16.738) to fund an interoperability project in 2021.[49] Additionally, Kinney County received funds from the United States Marshals through the Prisoner Transport program totaling over $9 million in Fiscal Year 2021.[50] The county has also received $19,569 in funding through the CARES Act, distributed through TDEM.[51] The Kinney County Sheriff's Office received several Operation Stonegarden grants in the last few years.[52] They are listed as one of the eligible counties for Stonegarden funds.[53] As of 2019, Kinney County Sheriff Brad Coe was using Stonegarden deputies for border enforcement.[54] The Kinney County Sheriff's Office in February 2021 publicly advertised on Facebook the open position "Part time - Stonegarden Deputy."[55]

The Kinney County Sheriff's Office is directly involved in arresting individuals for the Operation Lone Star trespass arrest program, and the County Attorney prosecutes people arrested in the County for trespassing.

**Galveston County - Sheriff's Office and County Constables.** The State of Texas directed $85,250 in federal funds received through the Edward Byrne Memorial Justice Assistance Grant Program (CFDA 16.738) to Galveston County to fund the purchase of body-worn cameras in 2021.[56] The county has also received $460,515 in funding through the CARES Act, distributed through TDEM.[57] Galveston County has received ARPA funds and has unilaterally funneled some of that money to "border security." In addition to authorizing the use of ARPA funds for "border security" generally, the County has authorized the transfer of up to

---

[49] *See* Office of Governor, Public Safety Office, Criminal Justice Division - Justice Programs, Justice Assistance - FY2021 at 6 (2021), https://gov.texas.gov/uploads/files/press/Justice_Assistance_-_FY2021_Grant_List.pdf.

[50] *See* Kinney County, Tex., Kinney County Budget, Fiscal Year October 1, 2021 through September 30, 2022 at 48,
http://www.co.kinney.tx.us/upload/page/0304/docs/Financial/Budget/Kinney%20County%20Budget.pdf.

[51] *See* Tex. Dep't Emergency Mgmt., *CRF Allocations for Texas Jurisdictions*, https://tdem.texas.gov/wp-content/uploads/2019/08/CRF-Allocations-for-Texas-Jurisdictions-10.23.2020-V10.pdf.

[52] *See* Kinney County, Tex., Kinney County Budget, *supra* n. 50, at 242.

[53] *Operation Stonegarden (OPSG) (Texas)*,
https://www.interoperabilitygrants.info/GrantDetails.aspx?gid=27244.

[54] Vanessa Croix, *Rise in Human Smuggling Cases Stretching Kinney Cty. Resources*, KENS 5 (June 27, 2019), https://www.kens5.com/article/news/human-smuggling-cases-stretching-kinney-county-resources/273-f2a5b625-1496-46b9-a51e-f2020199c207.

[55] Kinney County Sheriff's Office, *Kinney County Sheriff's Office is Now Hiring for Three Positions*, Facebook (Feb. 5, 2021),
https://www.facebook.com/KinneyCountySheriffsOffice/posts/876229279801482.

[56] *See* Office of Governor, Public Safety Office, Criminal Justice Division - Justice Programs, Justice Assistance - FY2021, *supra* n. 49, at 4.

[57] Tex. Dep't Emergency Mgmt., *CRF Allocations for Texas Jurisdictions*, *supra* n. 51, at 14.

$6.6 million, 10% of the funds allocated to the county under ARPA, to the construction of a state border wall.[58]

The Galveston County Sheriff's Office and Galveston County Constables have been directly involved in arresting individuals in Kinney County for the OLS trespass arrest program, using ARPA funds to fund their involvement in the OLS trespass arrest program.[59] Officials have discussed a memorandum of understanding between the Kinney County Sheriff's Office, the Galveston County Sheriff's Office, and Galveston County Constables' Office.[60] Further, Galveston County has posted videos on social media to highlight their arrest of migrants in collaboration with Kinney County.[61] Kinney County Sheriff Brad Coe has publicly thanked Galveston for sending "troops."[62]

## IV.   OLS Trespass Arrests: Targeting Migrants, Profiling, Arrests Lacking Probable Cause, and Result of Arresting Black and Brown Migrants

Under the OLS trespass arrest program, at the direction of Governor Abbott, state and local actors collaborate to target for state misdemeanor criminal trespass arrest individuals they believe to be adult male migrants traveling not as part of a family unit. The criminal trespass arrests have a one-level enhancement in misdemeanor class due to Governor Abbott's declaration of a state disaster based on migration, and prosecutors' understanding of state law enhancements. To date, over 2,200 people have been arrested on state criminal trespass charges under Operation Lone Star.[63]

Public statements by Governor Abbott, who created the OLS trespass arrest program, and other state and local officials demonstrate the program's intent to target individuals for arrest and

---

[58] Alejandro Serrano, *Galveston County Judge Mark Henry Issues Disaster Declaration in Response to Border Situation*, Houston Chron. (June 30, 2021), https://www.houstonchronicle.com/news/houston-texas/houston/article/Galveston-County-Judge-Mark-Henry-issues-disaster-16282889.php.

[59] Robert Arnold, *'Law Enforcement Down Here Is Over-Extended': Galveston County Constables Work Overtime to Assist at Border*, KPRC2 (Aug. 20, 2021) , https://www.click2houston.com/news/investigates/2021/08/20/law-enforcement-down-here-is-over-extended-galveston-county-constables-work-overtime-to-assist-at-border/; *see also* Robert Arnold, *Galveston County Constables Return to Help with Border Crisis in Kinney County*, KPRC2 (Sept. 30, 2021), https://www.click2houston.com/news/investigates/2021/09/30/galveston-county-constables-return-to-help-with-border-crisis-in-kinney-county/; J. David Goodman, *Helicopters and High-Speed Chases: Inside Texas' Push to Arrest Migrants*, N.Y. Times (Dec. 11, 2021), https://www.nytimes.com/2021/12/11/us/texas-migrant-arrests-police.html (describing Galveston constables staying in a ranch guesthouse in Kinney County "[f]or months").

[60] Commissioners Court of Kinney County, Texas, *Notice of Regular Open Meeting* at 3w (Sept. 13, 2021), https://cokinneytx.civicweb.net/document/18293.

[61] Galveston County, Texas, *Galveston County Law Enforcement Addressing the Crisis at the Border*, Facebook (Aug. 25, 2021), https://fb.watch/9UK5JyAkhY/.

[62] Kinney County Sheriff Brad Coe, *We are Thankful for Galveston County, Texas for Sending Their Troops to Help us Out!*, Facebook (Aug. 25, 2021), https://www.facebook.com/BradCoeForSheriff/posts/6240479125992327.

[63] Dec. 9 Operation Lone Star Briefing, *supra* n. 30, at 2:41.

punishment under state criminal trespass law based on national origin, including immigration status. Many arrests lack probable cause for criminal trespass–for example, in many cases because law enforcement directed individuals to or permitted their entry on private land. The state has also sought to criminalize conduct in order to arrest migrants by building fences on property near the border, to fulfill an element of the criminal trespass statute, and the arrest process is otherwise highly irregular, including in the Governor's authorization for the state National Guard to conduct misdemeanor trespass arrests. And in Kinney County, the county sheriff is both deeply involved in the OLS trespass arrests in his law enforcement role and a complaining witness, as a property manager, in multiple cases.

The outcome of the program is severe racial disparities: most if not all individuals arrested to date are people of color, primarily Latinx and also Black migrants. Affidavits from arresting DPS troopers indicate profiling, with descriptions of observing "undocumented migrants" and troopers' apparent presumption that Latino men are particular targets for arrest under the program. As this direct, indirect, and outcome-based evidence together shows, arrests under the migrant arrest program subject individuals to discrimination on the basis of race and national origin, including immigration status, in violation of Title VI.

### A.    Statements from State and Local Officials Regarding the OLS Trespass Arrest Program's Intent to Target Migrants for Arrest and to Punish Them for Traveling to the United States

State officials have been explicit: the goal of the OLS trespass arrest program is to arrest migrants. Statements from Governor Abbott and DPS officials make plain that state actors' intent in initiating and carrying out the OLS trespass arrest program is to target for arrest recently arrived migrants, using the vehicle of state criminal trespass law, in order to deter migration and to punish migrants for crossing into the United States—not to neutrally enforce state criminal trespass law. Statements from Governor Abbott to this effect include:

- In a news appearance, Governor Abbott stated, "We are employing state law, as opposed to federal law, because when we make an arrest under federal law we typically have to turn people over to the federal authorities, and they just release them, they go across the border, and they come back across the border, etc. So what we have done is we actually created additional jail cells and we created a court system down in South Texas. We are arresting people coming across the border illegally, and we are jailing them in jails in the state of Texas, sending the message that if they come across the border in the state of Texas, they're not going to be caught and released like under the Biden administration, they're going to be spending time behind bars."[64]
- In another news appearance, Governor Abbott similarly stated, "So what Texas is doing—we're not playing games anymore. I've deployed the National Guard as well as

---

[64] Greg Abbott (@GregAbbott_TX), Twitter (Sept. 28, 2021, 10:51 AM) https://twitter.com/GregAbbott_TX/status/1442879549692338191 (sharing an interview in which he provides this quote at 0:46–1:25).

the Texas Department of Public Safety, and we have a new program in place because the Biden administration plan is to catch and release. The Texas plan is to catch and to jail. So we are arresting and jailing, the program has already begun, it took a few weeks to set up because we actually had to set up an entirely new booking system, we had to get judges involved in the process, magistrates too—who would magistrate these people. We had to open up a former prison that has now a thousand jail beds that we're starting to fill up. We are arresting people every single day, and we're arresting for trespass."[65]

- Governor Abbott also stated in a news appearance, "I'm going to be back down on the border again tomorrow, working to make sure that we are accelerating the process of building the wall, accelerating the process of arresting these people who are coming across the border because somebody has to step up and secure the border, because the Biden administration has completely abandoned its responsibility to his fellow Americans."[66]

- A tweet from July 23 describes "the new program to arrest and jail illegal immigrants arrested for trespassing in Texas."[67]

- "Meeting with @TDEM, @TXMilitary, @TxDPS, & the Texas Commission on Jail Standards about our plan to catch and jail illegal migrants crossing the border. The Biden administration caused this crisis, Texas is stopping it."[68]

- "The Texas Dept. of Public Safety continues to arrest illegal migrants coming across the border and sending them to jail. Here is an example from this morning with @TxDPS working with the Kinney County Sheriff's Office." The tweet then shares a screenshot of a Kinney County Sheriff's Office Facebook post with several pictures of 17 men lined up, dressed in white jail garb in front of white vans and under the guard of law enforcement, stating, "This is happening! 17 illegals this morning. At the Kinney County Sheriff's Office. Judge Narci Villarreal magistrated each illegal alien. Thank you DPS for all your help."[69]

[65] Greg Abbott (@GregAbbott_TX), Twitter (July 25, 2021, 1:50 PM), https://twitter.com/GregAbbott_TX/status/1419369434414731266 (sharing a Fox News interview in which he provides this quote at 00:00–00:40).
[66] Greg Abbott (@GregAbbott_TX), Twitter (July 16, 2021, 3:46 PM), https://twitter.com/GregAbbott_TX/status/1416137109602250764 (sharing a Fox News interview in which he provides this quote at 00:30–00:51).
[67] Greg Abbott (@GregAbbott_TX), Twitter (July 23, 2021, 6:57 PM), https://twitter.com/GregAbbott_TX/status/1418722056003280896.
[68] Greg Abbott (@GregAbbott_TX), Twitter (July 26, 2021, 2:41 PM), https://twitter.com/GregAbbott_TX/status/1419744773200617478.
[69] Greg Abbott (@GregAbbott_TX), Twitter (Aug. 6, 2021, 11:35 AM), https://twitter.com/GregAbbott_TX/status/1423684063760719885.

Appx. 42

- "The Texas Department of Public Safety & Texas National Guard are taking unprecedented steps to ensure the safety of our communities & secure the border. Illegal immigrants caught trespassing into Texas will be arrested & sent to jail."[70]
- A video on the Governor's Twitter account includes a graphic, "SYSTEM TO ARREST AND JAIL ILLEGAL IMMIGRANTS," and an accompanying voiceover states, "We created a system to arrest and jail illegal immigrants who are trespassing in Texas."[71]
- "Texas National Guard is authorized to arrest illegal immigrants trespassing in Texas. They arrested these in the Rio Grande Valley. We opened thousands of jail beds for all of the new arrests. They are also working with @TxDPS to seal border regions." An accompanying photograph shows ten migrants seated on the ground, with two members of the Texas National Guard in the background.[72]
- "Texas Department of Public Safety & Texas National Guard arrest illegal immigrants trespassing on private property. We put them behind bars, not catch & release. Texas continues to secure our border."[73]
- "Texas Dept. of Public Safety arrest illegal immigrants hiding in rail cars. They will be put behind bars, not sent to Border Patrol for catch & release. @TxDPS, along with the Texas National Guard, have made thousands of arrests this year through #OperationLoneStar."[74]

An email from a DPS official on July 20, at the start of migrant arrests, recorded the agency's policy of "arresting . . . in Val Verde County for Criminal Trespass . . . only . . . adult males not traveling as family units."[75] DPS and Texas National Guard officials' public statements further confirm that the agencies are specifically targeting migrants for arrest:

- A DPS spokesperson explained in September, "Operation Lone Star . . . the reason why it began is the turn of, in January, we were seeing an influx of migrants coming in."[76] The spokesperson further explained that DPS is identifying areas "for the ones that are trying to avoid detection. They're doing it for a reason, and we're looking for them."[77]

---

[70] Greg Abbott (@GregAbbott_TX), Twitter (Sept. 28, 2021, 10:51 AM), https://twitter.com/GregAbbott_TX/status/1442879549692338191.
[71] Greg Abbott (@GregAbbott_TX), Twitter (Oct. 8, 2021, 10:33 AM), https://twitter.com/GregAbbott_TX/status/1446498871606059011 (sharing a video with the corresponding text and voiceover at ∼ 00:20).
[72] Greg Abbott (@GregAbbott_TX), Twitter (Oct. 10, 2021, 7:17 PM), https://twitter.com/GregAbbott_TX/status/1447355631309045761.
[73] Greg Abbott (@GregAbbott_TX), Twitter (Oct. 14, 2021, 12:30 PM), https://twitter.com/GregAbbott_TX/status/1448702868568088581.
[74] Greg Abbott (@GregAbbott_TX), Twitter (Oct. 26, 2021, 2:27 PM), https://twitter.com/GregAbbott_TX/status/1453080838648877064.
[75] Jay Root (@byjayroot), Twitter (Aug. 24, 2021, 12:54 PM), https://twitter.com/byjayroot/status/1430227046928719879.
[76] Tex. Dep't of Public Safety, Operation Lone Star Briefing, Sept. 16, 2021, ∼ 1:15, *available at* https://www.valleycentral.com/news/local-news/dps-tmd-to-give-updates-operation-lone-star-at-first-briefing/?fbclid=IwAR03g0OqcPMJEDp7l6gTMEENqA3MIIpUiqAFMjYenzctSnYzlKBR8Y63C28.
[77] *Id.* at ∼ 8:30.

Appx. 43

- In October, a DPS official described a proposed expansion of OLS trespass arrests to Brooks County, an idea that has since apparently been discarded. The official explained, "Once it's operational, it will be a partnership similar to what we're doing in Val Verde, along with the National Guard, and the purpose again is to identify these illegal immigrants that are trying to bypass the checkpoints. . . . Again, you gotta keep in mind that we don't know who these individuals are, we don't know their backgrounds until we actually apprehend them and find out who they are."[78]

- Also in October, a DPS official said, "We did speak to some of those individuals that were in the temporary processing center, and they did say that right now—what they're anticipating is, what they expect is that they're going to get turned over to USBP. And when they do, they get returned back to Mexico, and then they cross back days later or weeks later. But when they find out that they're being arrested by DPS for a state charge, their demeanor changes. They're not expecting that. So the message is getting across. They know that now it's a lot more challenging for them to get across because they will be arrested if they do encounter DPS."[79]

- In October, a Texas National Guard official said, "We are always trying to attempt to turn back and push or repel illegal immigration to an extent. There is times where they've already made land or they've already come onto the property and we can no longer turn back." In such cases, he stated, the National Guard will refer the individual to DPS in the first instance.[80]

- An October DPS press release described how "DPS has recently had significant interactions with migrants hiding in railcars to attempt to escape detection," including "an incident on Oct. 24, in which DPS personnel in Kinney County found 19 migrants" and one on October 25 when DPS encountered "20 migrants."[81]

- In an October statement, DPS Director Steven McCraw said, "We continue to work to secure the border and arrest people who have entered our country illegally and trespassed on private land."[82]

---

[78] Operation Lone Star Briefing, Oct. 21, 2021, ~ 11:15, *available at* https://www.facebook.com/watch/live/?ref=watch_permalink&v=1720890721432763&t=0.

[79] Operation Lone Star Briefing, Oct. 28, 2021, ~ 10:30, *available at* https://www.valleycentral.com/news/local-news/operation-lone-star-dps-holds-fifth-briefing/?fbclid=IwAR2pCBMhmfjH4T5bcs8nE7N7XGSzMX4ULXStzuSeUI1JQSiVUXtXbGpIL_s.

[80] *Id.* at ~ 15:50.

[81] Press Release, Tex. Dep't of Public Safety, *DPS, TMD Discuss Railcars, Staging Personnel at OLS Weekly Briefing*, Oct. 28, 2021, https://www.dps.texas.gov/news/dps-tmd-discuss-railcars-staging-personnel-ols-weekly-briefing.

[82] Press Release, Tex. Dep't of Public Safety, *TMD, DPS Provide Update on Progress of OLS at Weekly Briefing*, Oct. 14, 2021, https://www.dps.texas.gov/news/tmd-dps-provide-update-progress-ols-weekly-briefing.

- In a November statement, Director McCraw similarly said, "The state of Texas is sending a message to anyone who is thinking of crossing into our country illegally: If you are caught on private property, you will be arrested for criminal trespass and put in jail."[83]

Statements from county officials further confirm that the intent of the OLS trespass arrest program is to target migrants for arrest—not to neutrally enforce state criminal trespass laws. Val Verde County Sheriff Joe Frank Martinez testified before the Texas House Appropriations Committee that people in his jurisdiction have asked him, regarding migrants on their property, "When can I shoot?" and that he believes that migrants "should be arrested versus them getting shot."[84]

This understanding among state and local actors that the OLS trespass arrest program is about punishing migrants—in other words, punishing certain noncitizens in Texas—makes plain that state and local entities have designed the program to target migrants and implement it accordingly.

### B.      Unlawful Arrests and Irregularities in the OLS Trespass Arrest Process

State officials, in seeking to ensnare migrants in the OLS trespass arrest program, have sought to criminalize conduct in ways that violate migrants' rights and entrap them in unlawful arrests. Additionally, the OLS trespass arrest system has serious irregularities in charging decisions and authorization for the Texas National Guard to arrest in the state for state misdemeanor crimes.

First, OLS trespass arrests regularly violate the Fourth Amendment because they lack probable cause–including numerous cases in which law enforcement agents have directed individuals to private property or given them the impression that they have permission to be on the property. Many migrants arrested under the OLS criminal trespass program described state officials directing groups *toward* private land, where men were then arrested for criminal trespass, or welcoming them onto private land where they were then arrested:

- A Latino Venezuelan migrant arrested for trespass under OLS was jailed for 63 days on an eventually dismissed trespass charge after law enforcement motioned him through an open gate.[85] He recounted in an affidavit that he and two other Venezuelan men "saw people in green camouflage military uniforms standing by an open gate. We approached the officers and they stepped aside and gestured for us to enter the gate. The officers asked us in English where we were from and we responded Venezuela. They did not ask us any other questions but said that they were calling the authorities."[86]

---

[83] Press Release, Tex. Dep't of Public Safety, *DPS, TMD, & TDCJ Discuss OLS Arrest and Detention Process*, Nov. 19, 2021, https://www.dps.texas.gov/news/dps-tmd-tdcj-discuss-ols-arrest-and-detention-process.
[84] Hearing on H.B. 9, *supra* n. 3, ~ 1:48:53.
[85] Declaration of A.V.O., ¶ 3.
[86] *Id.* ¶ 2.

Appx. 45

- A Latino Venezuelan migrant was likewise detained on a trespass charge for 63 days after officers beckoned him through an open gate; the charge was eventually dismissed.[87] He described, "I was walking along the road near Del Rio . . . with several other Venezuelan male asylum-seekers. We noticed two officials dressed head-to-toe in camouflage. They were standing on the other side of a fence, near an open gate in the fence. We were outside of the fence, and they were standing inside the fence. We believed them to be immigration officials and we thought maybe we could ask them for asylum. These officials signaled to us to come toward them. So, obeying their hand signals, we walked through the gate to talk to them. I told them I was seeking asylum, and they said to me in English, 'sit down here.'" After a law enforcement official arrived, "he told us that we had committed the crime of trespass to private property and that we would be taken to jail as prisoners. I was so confused because all I had done was walk through an open door toward officials who were signaling to me to walk towards them. I walked towards the officials because I thought they would help us seek safety. I had no idea I was on private property."[88]

- A Latino Nicaraguan migrant was detained for 37 days before his charges were dismissed before his first hearing.[89] He too was invited through an open gate by law enforcement. He recounted, "My brother and I arrived at an open gate with a sign that said 'no trespassing' in English. On the other side of the gate, we saw two young men wearing tan and gray uniforms. The two appeared to be American soldiers and they had a little camp set up . . . . We called out to them from outside the gate, said 'we are here to apply for asylum' and waved our blue and white Nicaraguan flag to try to get their attention. The soldiers invited us to come to the other side of the gate. They started to approach us and said in Spanish, 'Vengan aqui' (come over here) and 'tranquilo' (stay calm). We hesitated at first because of the 'no trespassing' sign, but as the soldiers continued to insist and walked to meet us at the gate, eventually we followed their instructions and went to meet them on the other side of the gate. We felt safe entering the gate because they had invited us. . . . We told them that we wanted to speak to Border Patrol and they made a phone call." The individual did not realize he was being arrested, thinking instead–through the point that he was handcuffed and placed in a van–"I was just going through the normal process at the border."[90]

- A Latino Venezuelan migrant was detained for 41 days after he was arrested for trespass under OLS; his charges too were dismissed.[91] He described, "I was alone, lost and wanted to ask for help, so when I saw police officers nearby I got the officers' attention and said 'Help, I am Venezuelan, I need help please.' The officers told me to come over

---

[87] Declaration of A.M., ¶ 2.
[88] *Id.* ¶¶ 5-7.
[89] Declaration of O.A.C.-G., ¶ 1.
[90] *Id.* ¶¶ 4-6.
[91] Declaration of Z.A.M., ¶ 5.

to where they were. . . . I thought the officers would take me to immigration but the officers told me that I had entered on private property and was going to be arrested."[92]

- The Val Verde County attorney has dropped cases for arrests that lacked probable cause. For example, in one set of dropped cases, troopers waved people through a gate, with "body language [that] was welcoming," as the Val Verde County attorney described the body camera footage, and then–after they walked through the gate–arrested them for trespass.[93]

- In another case, migrants arrested under the OLS trespass program described DPS troopers arresting them for criminal trespass after they were already detained by local Border Patrol and, while detained, required to climb over a fence onto a ranch.[94]

- In another set of cases dropped by the Val Verde County attorney, a group of migrants had walked up to an open gate near which state troopers were standing, the officers stood aside to let the group pass, and the officers then arrested the single adult man in the group.[95]

As these cases show, numerous arrests of Black and Brown men under the Operation Lone Star trespass program in fact lack probable cause for a trespass arrest. Yet such arrests have led to lengthy jailing, in some cases for more than two months.

Second, Texas is attempting to criminalize travel that previously was not, by putting up fences to establish the element of notice for state criminal trespass. One element of criminal trespass in Texas is "notice that the entry was forbidden," which may be fulfilled by "fencing or other enclosure obviously designed to exclude intruders or to contain livestock."[96] Governor Abbott has thus directed the Texas National Guard to set up fences on private land along the border, in order to create the conditions for criminal trespass charges where they did not exist before.[97]

Third, under the OLS trespass arrest program, DPS troopers arrest for and prosecutors charge criminal trespass with a one-level enhancement–typically, from a Class B to a Class A misdemeanor. This is because in May 2021 Governor Abbott declared a "disaster" due to migration across the Texas-Mexico border.[98] Under Texas law, in a disaster area penalties are

---

[92] *Id.* ¶¶ 2, 21.

[93] Findell & Caldwell, *Texas Jails Fill With Migrants*, *supra* n. 11.

[94] Jolie McCullough, *Texas Prosecutor Drops Charges After Migrants Claim They Were Marched to Private Property, Then Arrested for Trespassing*, Tex. Tribune, Oct. 5, 2021, https://www.texastribune.org/2021/10/05/texas-migrants-arrest-charges-dropped/.

[95] Findell & Caldwell, *Texas Jails Fill With Migrants*, *supra* n. 11.

[96] Tex. Penal Code § 30.05(a)(1), (b)(2)(B).

[97] Hearing on H.B. 9, *supra* n. 3, ~ 2:44:55 (Texas Office of the Governor budget and policy director testifying, regarding temporary fencing, "again, it provides the notice of criminal trespass, with enhanced penalties where a disaster is declared").

[98] Gov. Greg Abbott, Proclamation by the Governor of the State of Texas, May 31, 2021, https://gov.texas.gov/uploads/files/press/DISASTER_border_security_IMAGE_05-31-2021.pdf.

Appx. 47

enhanced to those for "the next higher category of offense."[99] Through his "disaster" declaration, based on migration, Governor Abbott has thus enhanced the potential punishment of the offense for the migrants whom the state arrests. Thus, those arrested and prosecuted under OLS–i.e., those targeted as noncitizens–are subject to more severe penalties, a violation of equal protection principles.

Fourth, in July Governor Abbott ordered the Texas National Guard to conduct arrests under Operation Lone Star.[100] This is a highly unusual deployment of the military to combat the commitment of–and engage in state arrests for–alleged misdemeanor state criminal violations. As DPS Director McCraw told the Center for Immigration Studies,[101] "Nobody's ever really used the guard before in this capacity."[102]

Finally, specific to Kinney County: the Kinney County sheriff is both the top law enforcement official involved in the migrant arrests for the county and, also, the complaining witness in multiple criminal trespass cases. Our analysis of arrest affidavits unearthed three cases in Kinney County in which Sheriff Brad Coe was the complaining witness–that is, the person pressing charges for criminal trespass. Sheriff Coe has signed a criminal trespass affidavit agreeing to pursue charges against those who trespass on property he manages.[103] We are unaware of Sheriff Coe publicly disclosing his involvement in the OLS trespass arrests as a complaining witness pressing charges as well as sheriff. We are likewise unaware of either Sheriff Coe or DPS taking any steps to identify problems associated with this conflict of interest or take remedial measures. In any event, this dual involvement raises serious conflict of interest questions in light of Sheriff Coe's significant role in Kinney County's involvement in the OLS trespass arrest program–and serious concerns as to both Kinney County's and DPS's apparent failure to identify and attempt to counteract this conflict of interest. It is yet another deeply concerning irregularity in arrests under the OLS trespass program.

The way that arrests are conducted in the OLS trespass program–with arrests lacking Fourth Amendment probable cause, attempts at entrapment, and significant departures from the

---

[99] Tex. Penal Code § 12.50(b)(7). Governor Abbott specifically noted this increase in punishment "for certain criminal offenses committed in an area for which a disaster has been declared, including for criminal trespass" in his declaration of a disaster based on migration. Gov. Greg Abbott, Proclamation, May 31, 2021, at 2.

[100] Letter from Gov. Greg Abbott to Adjutant General Major General Tracy R. Norris, July 27, 2021, https://gov.texas.gov/uploads/files/press/O-NorrisTracy20210727.pdf.

[101] The Southern Poverty Law Center has designated the Center for Immigration Studies a hate group due in part to "its repeated circulation of white nationalist and antisemitic writers and "its record of publishing reports that hype the criminality of immigrants." Southern Poverty Law Center, *Center for Immigration Studies*, https://www.splcenter.org/fighting-hate/extremist-files/group/center-immigration-studies.

[102] Todd Bensman, *In Historic United States First, National Guard Soldiers Start Arresting Illegal Migrants on the Texas-Mexico Border*, Center for Immigration Studies, Oct. 20, 2021, https://cis.org/Bensman/Historic-United-States-First-National-Guard-Soldiers-Start-Arresting-Illegal-Migrants

[103] Two affidavits describe the relevant property as "the Rio Grande Cattle Company ranch"; one describes it as "a private property managed by Sheriff Brad Coe."

Appx. 48

norm for misdemeanor criminal arrests in Texas–all further evince unlawful discrimination against migrants in implementing the program, in violation of Title VI.

### C. Outcomes: Mass Arrests of People of Color and Evidence of Targeting Individuals for Arrest Based on Race and National Origin

Arrests under Operation Lone Star are severely racially disparate: the overwhelming majority (if not all) arrests are of Black and Brown men. Trespass arrest affidavits authored by DPS troopers reveal these racial disparities and also show clear indications of profiling based on race and national origin. This analysis is based on DPS trooper affidavits providing arresting officers' accounts of 168 arrests—72 in Val Verde County and 96 in Kinney County.[104]

First, the affidavits demonstrate stark racial disparities in arrests: *all* arrests are of people of color, and almost all are of Latino men. 98% were recorded as "H/M" (Hispanic male) and 2% as "B/M" (Black male). In 57% of cases in Val Verde County, the arrest narrative describes the individual's perceived ethnicity, country of origin, and/or perceived immigration status: 17% include perceived ethnicity, 37.5% include country of origin, and 39% include perceived immigration status. For Kinney County, of the 96 arrest affidavits analyzed, 33% describe country of origin and/or perceived immigration status: 29% include perceived immigration status, and 8% include country of origin. (These totals for each category equal more than 100% because some narratives include for example, both perceived race and perceived immigration status.)[105]

Second, beyond these bare statistics the descriptions in the affidavits' arrest narratives strongly indicate racial profiling. For example, the affidavits for five individuals state, "Trooper Austin Melvin responded . . . in reference to multiple people seen trespassing by National

---

[104] While affidavits in the OLS trespass arrest program, like similar arrest records, are in theory available to the public, in practice, obtaining them has proven highly challenging. The affidavits that we have been able to obtain, through records requests and provision by attorneys, represent a sliver of the more than 2,000 OLS trespass arrests. We are reportedly not the only ones with difficulty gaining access to this information: local news states that the Kinney County attorney has "[i]n some cases . . . received the arrest files from DPS on day 29 [after arrest], or even beyond day 30 [after arrest, the date when charges must be filed in certain criminal cases]." Charlotte Cuthbertson, *In Pursuit of a Secure Border: Small Texas County Leads Charge Against Border Crime*, The Epoch Times, Nov. 11, 2021, https://www.theepochtimes.com/in-pursuit-of-a-secure-border-small-texas-county-leads-charge-against-border-crime_4084276.html.

[105] No arrest affidavits that we analyzed for Kinney County include a description of perceived race or ethnicity, but we have been able to analyze only a small subset of the hundreds of arrests in the county. The Kinney County affidavits are less illuminating: 44 of the arrest affidavits we analyzed for Kinney County pertained to the Kinney County Rail Port or Union Pacific location–a railyard in the county–and those arrest affidavits, unlike those for other properties, tend to have cursory descriptions of the arrests.

Appx. 49

Guardsmen posted on the property. Upon arriving, I[106] observed multiple Spanish[107] males sitting near the following latitude/longitude." Affidavits for several men state, "Trooper Jimenez saw 6 Hispanic males trespassing on the Bordelon Crossing property. . . . I saw a Hispanic male open the closed gate to the residential property. The six adult males were undocumented migrants UDM's from Venezuela."[108] Both sets of affidavits suggest that the individual's perceived ethnicity was relevant to the DPS trooper's understanding that that person was not welcome on the property. Two other affidavits also describe observing, and then arresting, Latino men.

DPS troopers' arrest narratives also strongly indicate profiling on the basis of national origin, including perceived immigration status. The arrest narrative in two affidavits states, "I . . . was advised of a group of non-citizens trespassing on X Bar H Ranch in Kinney County." Several arrest narratives describe observing "undocumented migrants." For example, the arrest narrative in one complaint states, "I observed a group of undocumented persons (UDPS) cross over a chain that enclosed the property." For three affidavits, the narrative states that a member of the National Guard informed the affiant "that 22 undocumented migrants (UDMs) emerged from marked private property" and states, "upon arriving, I saw 22 UDMs." Others describe "undocumented migrants seen trespassing by National Guardsmen" and "I observed 13 undocumented migrants traveling through the . . . [p]roperty." Another arrest narrative recounts, "I . . . was notified by [a DPS trooper] of several undocumented migrants trespassing on the property. . . . Upon arrival, I located three undocumented migrants."

DPS troopers' emphasis on perceived immigration status evinces discriminatory policing in two ways. First, troopers' statements that they are observing "undocumented migrants"— where the overwhelming majority of those they arrest are Latinx—indicate that they are instead using racial profiling to identify those they term "undocumented migrants," whom they in turn target for arrest and prosecution. The use of ethnicity as a proxy for immigration status is evident in an arrest narrative that states that a member of the National Guard informed the trooper "that a group of 4 undocumented migrants were seen trespassing on the Bordelon Crossing property . . . . While on patrol, I saw one adult Hispanic male sitting and that was found to be single and not part of a family unit." There is no way to ascertain immigration status through sight, and the narratives' conclusory assertions indicate that officers are instead relying on racial profiling. Second, it indicates that DPS troopers view immigration status as relevant to these state law enforcement arrests for state criminal trespass violations.

Notably, Kinney County Attorney Brent Smith recognizes that the troopers' references to immigration status are indicia of racial profiling. In response to criticism that the migrant arrest

---

[106] While the affiant is Trooper Melvin, the affidavit—like several others—is written in both the first and third person.

[107] This is best read in the context of south Texas' sociopolitical environment as a description of perceived Latinx ethnicity rather than perceived nationality.

[108] While the affidavit refers to six men, Val Verde County records only include affidavits for five men.

Appx. 50

cases are racially motivated, he falsely claimed that "[t]he criminal complaints make no mention of immigration status."[109]

***

Thus, statements by public officials regarding the intent of the program, the implementation of the program, and the outcomes of that implementation demonstrate that arrests under the OLS trespass arrest program are discriminatory on the bases of race and national origin, including perceived immigration status. This evidence of discrimination in criminal trespass arrests under Operation Lone Star triggers the requirement of Title VI and its implementing regulations that the federal government investigate whether termination of federal funds is warranted.

## V.    The OLS Trespass Arrest Program's Separate Criminal Process and Detention System with Rampant, Systemic Civil Rights Violations.

Once individuals are arrested under the OLS trespass program, they are channeled into a criminal system that is entirely separate and distinct from the ordinary criminal legal process and pretrial detention system for state misdemeanor charges. Those arrested under the OLS trespass program are not taken to county jails, as is the ordinary process for misdemeanor arrests; instead, they are booked into a separate processing facility in Val Verde County, which DPS calls a "criminal migrant processing facility."[110] At the processing facility, they are magistrated by judges designated specifically for the OLS trespass program. From the processing facility, they are then transported to state prisons that state actors have converted to pretrial jails specifically for OLS. They are assigned public defenders through a separate system established by the state specifically for OLS arrests, not through a common pool of public defenders shared with others arrested in Val Verde and Kinney Counties. They are placed on separate dockets specifically for OLS criminal trespass arrests, with separate arraignments.

In the separate criminal system that state and local officials have established specifically for trespass arrests under Operation Lone Star, there have been systemic violations of individual rights. Among other shortcomings, state and local officials have failed to vindicate individuals' right to counsel, have failed to timely file charges, and have failed to timely release individuals from custody. Snapshot data shows the extreme delays in this separate system. The Wall Street Journal reported that 53% of the 1,006 people detained on November 1 under the OLS trespass arrest program (533 people) had been jailed longer than 30 days, 14% (141 people) longer than 60 days, and 2 people–both Cuban migrants–for 98 days. By contrast, guilty pleas to trespass under the OLS program have typically resulted in sentences of roughly 15 days–much less than the time hundreds of people have been forced to spend waiting for process.[111]

Moreover, most cases under the OLS trespass program–70% of those resolved as of November 1–have been dismissed or otherwise dropped. Of the remaining cases, all involved

---

[109] Press Release, Kinney County Attorney, Oct. 26, 2021, https://www.facebook.com/photo/?fbid=125607406514360&set=a.125607456514355.

[110] Nov. 18 Operation Lone Star Briefing, *supra* n. 15, ~ 1:45, https://www.valleycentral.com/news/local-news/texas-dps-to-hold-briefing-on-operation-lone-star-focus-on-apprehension-numbers/.

[111] Findell & Caldwell, *Texas Jails Fill With Migrants*, *supra* n. 11.

23

guilty pleas, and in none were individuals sentenced to more than time already served.[112] The breakdowns in the criminal system under the OLS trespass program deny due process and, in doing so, harshly punish Black and Brown migrants jailed in cases that overwhelmingly end up being in some way thrown out.[113]

### A.      Separate System for Appointment of Counsel

People arrested under the OLS trespass program are appointed counsel through a byzantine process orchestrated at the statewide level that is completely separate from the appointment system for the same or similar offenses for all other people arrested in the participating counties. In Texas, every county is required to establish an Indigent Defense Plan (IDP), which controls all procedures related to eligibility for and involving appointed counsel for indigent people accused of crimes.[114] Each county involved in OLS accordingly has an IDP prescribing the county's methods for appointment of counsel, which predates its participation in OLS. But individuals arrested under OLS are not appointed counsel according to the local IDP.[115]

Instead, the Texas Supreme Court has issued an order purporting to modify statutory provisions of the Code of Criminal Procedure specifically "for individuals arrested under Operation Lone Star." This order purports to modify Texas law "to authorize the Executive Director of the Texas Indigent Defense Commission ('TIDC') to approve procedures for appointing counsel that differ from an affected county's procedures"; "to waive . . . requirements to maintain a public appointment list and to appoint only from that list"; "to authorize TIDC to approve and establish an alternative program for appointing counsel"; and "to authorize TIDC as an additional entity permitted to designate an existing governmental entity or nonprofit corporation" as a public defender's office and also as "a managed assigned counsel program to appoint counsel."[116] The purported legal basis of this order is a state statute that permits the supreme court to "modify . . . procedures for the conduct of any court proceeding affected by a disaster,"[117] and Governor Abbott's declaration of disaster based on migration.

---

[112] *Id.*

[113] Detained individuals who do not speak Spanish reportedly have experienced language barriers in court proceedings and detention centers, and they have not been provided access to interpreters. *See* Declaration of O.A.C.-G., ¶ 11; Declaration of A.V.O., ¶ 14.

[114] Tex. Code Crim. P. art. 26.04

[115] Texas Indigent Defense Commission, Procedures for Appointment, Supervision, and Compensation of Counsel to Defendants Arrested Under Operation Lone Star Pursuant to the Texas Supreme Court's Border Security State of Disaster Emergency Order (Sep. 24, 2021), *available at* http://www.tidc.texas.gov/media/8d98da945cd5899/ols-counsel-appointment-procedures-9-24-21.pdf.

[116] Emergency Order Regarding Indigent Defense and the Border Security State of Disaster, Misc. Docket No. 21-9104 (Tex. Aug. 30, 2021), https://www.txcourts.gov/media/1452716/219104.pdf; Renewed Emergency Order Regarding Indigent Defense and the Border Security State of Disaster, Misc. Docket No. 21-9123 (Tex. Oct. 12, 2021), https://www.txcourts.gov/media/1453005/219123.pdf.

[117] Tex. Gov't Code Ann. § 22.035(b) (West 2019); Emergency Order Regarding Indigent Defense and the Border Security State of Disaster, *supra* n. 116, § 1 (citing this statutory provision as authority).

Appx. 52

Accordingly, counsel is instead appointed by retired judges across the state who have temporary authorization from the Texas Supreme Court to perform magistration hearings, but who are not "appointing authorities," according to the local IDP.[118] Once these retired judges have appointed counsel, lawyers are assigned through a statewide system orchestrated by state agencies, most notably OCA and TIDC, both of which are based in Austin, in coordination with TDEM, which operates the Val Verde Processing Center. TIDC has contracted with the Lubbock Private Defenders Office (LPDO), a nonprofit organization, to manage assignment of counsel for OLS prosecutions but not for any other prosecutions in the "participating counties."[119] The LPDO is based in Lubbock, 350 miles north of the Val Verde Processing Facility where initial magistration hearings occur. Lawyers appointed to represent OLS trespass defendants maintain offices throughout the state of Texas, and virtually all cases are assigned to lawyers who are *not* approved to take criminal cases through the IDPs of the "participating counties."[120]

In short, no part of the process for appointing counsel that applies to people arrested under the OLS trespass program is the same as the procedure used for any other person arrested in those exact same counties whose arrest is not designated as being related to OLS. Instead of adding attorneys for Val Verde and Kinney Counties, to whom anyone on the docket may be assigned, the state has created a separate system specifically for these cases.

## B.     Failure to Timely Appoint Counsel and Denial of Meaningful Access to Counsel

Individuals prosecuted under OLS have a right to counsel under both the federal Constitution[121] and Texas law.[122] The United States Supreme Court has specifically held that in Texas, the initial bail-setting hearing is a point at which the Sixth Amendment right to counsel attaches and that counsel must be appointed within a reasonable time after that hearing.[123] State law requires the appointment of counsel within three working days of a request for appointed counsel.[124]

Despite these legal requirements, there have been widespread, egregious failures to appoint counsel in the OLS trespass arrest program. People arrested pursuant to the OLS trespass program have faced dramatic delays in, and in some cases outright refusal of, appointed counsel.

---

[118] Emergency Order Regarding Indigent Defense and the Border Security State of Disaster, *supra* n. 116, § 1.

[119] *See* Jolie McCullough, *Thanks to local politics and a railroad, rural Kinney County accounts for most of Texas' migrant arrests*, Tex. Tribune, Sept. 2, 2021, https://www.texastribune.org/2021/09/02/texas-immigration-arrests-jail-kinney-county/.

[120] These attorneys are quite literally spread throughout the entirety of the state, including in Bowie County, Dallas County, Harris County, and Travis County.

[121] *See generally Gideon v. Wainwright*, 372 U.S. 335 (1963) (establishing right to appointed counsel in state criminal prosecutions).

[122] Tex. Code Crim. Pro. Ann. art. § 1.051(c) (providing right to appointed counsel for all indigent people charged with crimes).

[123] *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 213 (2008).

[124] Tex. Code Crim. P. art. 1.051(i).

Hundreds of indigent arrestees have waited more than a month to be appointed counsel after requesting a lawyer at their initial bail-setting appearance.[125] In September, an attorney at Restoring Justice, a public defense organization with many clients in the OLS trespass arrest program, stated that most of their assigned clients had "sat in prison without attorneys for nearly six weeks."[126] Most of these individuals were unaware of any aspect of the criminal process and their rights, including that they could bond out.[127]

Because people detained receive no notice from the court or detention facility of who their court-appointed lawyer is or whether someone has been appointed at all, they frequently resort to calling non-profit organizations to try to determine whether they have a lawyer and who it might be. The problem is so endemic that LPDO has established a separate toll-free phone number exclusively for OLS detainees to call and inquire whether they have a lawyer yet and who that might be.[128] Hundreds of people arrested under OLS were detained without counsel and without charging documents for longer than state law allows them to be detained without being formally charged with a crime.[129]

Individuals detained at Briscoe and Segovia who have contacted the Texas Jail Project have consistently reported a lack of meaningful access to counsel. Of the detained individuals who have contacted the Jail Project, dozens have reported having never been assigned counsel. Many of those assigned counsel have never spoken with their lawyer.[130] Some have reported being held in jail for three months without ever speaking to counsel.[131] Of the 68 men in the Jail Project's database, 47 men—69%—reported not having or being unaware of having an attorney.[132] Those who had not been assigned counsel reported being in jail for longer than two months.[133] The Jail Project staffer responsible for OLS detainee calls describes the men he has communicated with as "generally weary, scared, and defeated."[134] He reports that at the detention

---

[125] Jolie McCullough, *Migrants arrested by Texas in border crackdown are being imprisoned for weeks without legal help or formal charges*, Tex. Tribune, Sept. 27, 2021, https://www.texastribune.org/2021/09/27/texas-border-migrants-jail/.

[126] *Id.*

[127] *Id.*

[128] Operation Lone Star Indigent Defense, Lubbock Private Defenders Office, https://www.lpdo.org/projects-8.

[129] *Compare* Findell & Caldwell, *Texas Jails Fill With Migrants, supra* n. 11 (tallying time in detention under Operation Lone Star) *with* Tex. Code Crim. P. art. 17.151 (establishing mandatory release timelines).

[130] Decl. of Benjamin L. Drachman, attached as Exhibit 5, ¶ 6.

[131] *Id.* This is consistent with messages passed by people detained under Operation Lone Star to CNN on behalf of fellow detained individuals. One person told CNN that unrepresented people detained with him said, "Ask about us. Tell them we have 90 days, 80 days and we haven't seen an attorney. We don't know anything and here we are[.]" Rosa Flores, *Texas Gov. Greg Abbott's Anti-Migrant Plan: Many Arrested, Many Detained, Few Prosecuted*, CNN, Oct. 25, 2021, https://www.cnn.com/2021/10/24/us/texas-migrant-trespass-detentions/index.html.

[132] Drachman Decl, ¶ 9.

[133] *Id.*

[134] *Id.*, ¶ 10.

facilities they are provided with no answers to their questions, and "generally no information is shared about the legal process."[135]

At least one subset of 155 people arrested in Kinney County in August were forced to submit involuntary waivers of counsel at the magistration (the initial appearance).[136] The county judge, Tully Shahan, presided over the initial bail-setting hearings for the first several weeks of arrests in Kinney County.[137] Judge Shahan performed these hearings in groups, under a tree in a parking lot, using a sheriff's deputy to interpret parts of the proceeding.[138] He required everyone to submit a waiver of appointed counsel in English, a language that most of those detained under the OLS trespass arrest program do not understand with fluency; the waiver had already been filled out by a county employee before the hearing began, and Judge Shahan did not provide the opportunity to change it.[139] Those who "submitted" a waiver were only able to request counsel weeks later, from the Briscoe prison unit, and then waited several more weeks to actually have an attorney appointed to represent them.[140]

## C.    Denial of Due Process, Including Unlawful Delays of Weeks or Months, in Criminal Proceedings

Within this separate, makeshift criminal system, state and local agencies are failing to follow basic rules of criminal procedure and to protect the rights of those charged. Kinney and Val Verde County prosecutors denied due process guarantees by failing even to file charges for a huge number of people who were detained. For hundreds of people, that failure, in combination with severely dilatory appointment of counsel, resulted in weeks of detention past the date at which release was required.[141] Delays across the criminal process continue. Most recently, on November 30, 2021, the *Texas Tribune* reported that more than 90 men arrested under the OLS

---

[135] *Id.*

[136] Jolie McCullough, *Thanks to local politics and a railroad, rural Kinney County accounts for most of Texas' migrant arrests*, Tex. Tribune, Sept. 2, 2021, https://www.texastribune.org/2021/09/02/texas-immigration-arrests-jail-kinney-county/.

[137] *See* Tex. Judicial Branch, About Tex. Courts, https://www.txcourts.gov/about-texas-courts/trial-courts/ (explaining, "The Texas Constitution provides for a county court in each of the 254 counties of the state, though all such courts do not exercise judicial functions. In the more populous counties, the county judge may devote his or her full attention to the administration of county government.").

[138] Jolie McCullough, *Thanks to local politics and a railroad, rural Kinney County accounts for most of Texas' migrant arrests*, Tex.as Tribune, Sept. 2, 2021, https://www.texastribune.org/2021/09/02/texas-immigration-arrests-jail-kinney-county/.

[139] Jolie McCullough, *Migrants arrested by Texas in border crackdown are being imprisoned for weeks without legal help or formal charges*, Tex. Tribune, Sept. 27, 2021, https://www.texastribune.org/2021/09/27/texas-border-migrants-jail/.

[140] Jolie McCullough, *Thanks to local politics and a railroad, rural Kinney County accounts for most of Texas' migrant arrests*, Tex. Tribune, Sept. 2, 2021, https://www.texastribune.org/2021/09/02/texas-immigration-arrests-jail-kinney-county/.; Decl. of Benjamin L. Drachman, ¶¶ 6-7.

[141] Arelis Hernández et al., *Hundreds of migrants held for weeks without charges as Texas's border crackdown overwhelms justice system*, Wash. Post, Sept. 30, 2021, https://www.washingtonpost.com/nation/2021/09/30/texas-migrant-arrests-release/.

Appx. 55

trespass program had their first court date canceled because two Kinney County officials tested positive for COVID-19.[142] An October press release by Kinney County even referred to "the piles of cases that have stacked up as a result of Operation Lone Star."[143]

### 1.    Failure to Timely File Charges

Texas law requires prosecutors to file charges within a certain timeframe, the number of days varying depending on the classification of the charge, or to allow the person to be released on a personal bond if charges have not been filed within the timeframe.[144] Alternatively, prosecutors can allow the bond to be reduced to an amount affordable for the defendant.[145] As University of Texas law professor Jennifer Laurin recently put it, the goal of this law is to protect criminal defendants' right to a speedy trial,[146] a fundamental aspect of due process.[147] While trespassing is typically a Class B misdemeanor, for which state law requires the filing of charges within fifteen days, with enhancement to a Class A misdemeanor–as may occur if the alleged offense allegedly took place in a declared disaster area–prosecutors argue that state law extends the filing deadline to thirty days.[148] Those detained pursuant to OLS must therefore be released either on bond or by a reduced bail amount if the state is not prepared to prosecute within 15 or, at most, 30 days.[149]

Yet, several hundred individuals arrested under the OLS trespass program were detained far past either filing deadline. By September 27, 2021, Brent Smith, the Kinney County misdemeanor prosecutor, had filed charges against, at most, 75 people out of over 700 who had been arrested by Kinney County under the OLS trespass program and were still detained.[150] A

---

[142] Jolie McCullough, *Coronavirus shuts down legal proceedings in latest misstep for Texas border crackdown*, Tex. Tribune, Nov. 30, 2021, https://www.texastribune.org/2021/11/30/texas-migrants-arrests-coronavirus/?mc_cid=be5170f623&mc_eid=612589b377.

[143] Press Release, Kinney County Attorney, *supra* n. 109.

[144] Tex. Code Crim. Proc. art. 17.151; *Ex Parte Gill*, 413 S.W.3d 425 (Tex. Crim. App. 2013) (holding that the judge abused his discretion when he failed to comply with art. 17.151).

[145] *See id*. Presumably, that would also include a personal bond if a judge has determined the person is indigent as is the case with the majority, if not the entirety, of the people who have been arrested as part of Operation Lone Star.

[146] Jolie McCullough, *After Delay, Texas to Begin Releasing Migrants Held in Violation of State Law under Gov. Greg Abbott's Border Crackdown*, Tex. Tribune (Oct. 1, 2021), https://www.texastribune.org/2021/10/01/texas-migrants-jail-greg-abbott/.

[147] *Barker v. Wingo*, 407 U.S. 514, 515 (1972) (citing *Kloper v. North Carolina*, 386 U.S. 213 (1967)).

[148] Tex. Penal Code § 30.05 (criminal trespass); Tex. Penal Code § 12.50 (enhancement for committing a crime in a declared disaster area). Governor Abbott declared and continues to renew and expand his declaration stating that all border counties are disaster areas. Proclamation, *Governor Abbott Renews Border Security Disaster Declaration in October 2021* (Oct. 28, 2021), https://gov.texas.gov/news/post/governor-abbott-renews-border-security-disaster-declaration-in-october-2021.

[149] Tex. Code of Crim Proc. art. 17.151(2), (3).

[150] Jolie McCullough, *Migrants Arrested by Texas in Border Crackdown are Being Imprisoned for Weeks without Legal Help or Formal Charges*, Tex. Tribune (Sept. 27, 2021), https://www.texastribune.org/2021/09/27/texas-border-migrants-jail/.

Appx. 56

generous estimate places Smith's charging rate at that time at slightly above 10 percent, meaning that the County likely violated state statute and the due process guarantees of the federal and state constitutions with respect to nearly 90 percent of the Kinney County OLS trespass arrests during this period.[151] Smith blamed the failure to file charges by the statutory deadline on missing information in the probable-cause affidavits, or other information necessary to make a charging decision. Neither explanation excuses Kinney County from its statutory obligations, nor acknowledges that the County could have complied with the statute by reducing the bail amount or requesting a personal bond.[152]

      The lack of charges in these cases further frustrated detainees' due process rights first because many of them sat waiting for a lawyer beyond the date at which they were entitled to release and then because the attorneys who finally were appointed were stymied from applying for clients' release. Attorneys were told they could not file habeas petitions on behalf of their clients—simply because clerks had no case numbers for the unfiled misdemeanors, even though pretrial writs of habeas corpus are distinct legal matters. Criminal defense attorneys at Texas RioGrande Legal Aid persisted and filed an application for pretrial writs of habeas corpus on behalf of 300 clients they had been appointed to represent, each of whom had been arrested and detained beyond the statutory deadline without charges being filed–and thus for each of whom ongoing detention was illegal.[153] Though each person had been arrested and magistrated for misdemeanor criminal trespass, not a single one had been formally charged.[154] After the writs were filed, Val Verde and Kinney County prosecutors agreed to the release of 243 people who had not been charged at either the 15- or 30-day mark.[155] The district judge granted the

---

[151] *See* Hernández et al., *Hundreds of Migrants Held for Weeks Without Charges as Texas's Border Crackdown Overwhelms Justice System*, Wash. Post, *supra* n. 141.

[152] *Id.*

[153] Verified Application for Pretrial Writs of Habeas Corpus, Ex Parte Augustin Chavarria-Uribe, et al., Cause 5121 (63rd Judicial Dist. Sept. 22, 2021). When release was ordered at the September 28 hearing, petitioners had been detained between 29 and 60 days. *Id.* At the hearing, petitioners took the stance that they were entitled to release at 15 days and Kinney County argued that the offense had already been enhanced so the petitioners were being held under the Class A misdemeanor criminal offense of trespass. District Judge Andrade agreed with the County and found prosecutors had 30 days to file charges. Jolie McCullough, *Texas Court Orders Release of More than 200 Migrants Imprisoned in Gov. Greg Abbot's Border Security Clampdown*, Tex. Tribune (Sept. 28, 2021), https://www.texastribune.org/2021/09/28/texas-migrants-prison-release/. The distinction was ultimately irrelevant for these petitioners, however, because of the amount of time that had passed between filing and the hearing.

[154] Verified Application for Pretrial Writs of Habeas Corpus at 2, Ex Parte Augustin Chavarria-Uribe, et al., Cause 5121 (63rd Judicial Dist. Sept. 22, 2021).

[155] Jolie McCullough, *Texas Court Orders Release of More than 200 Migrants Imprisoned in Gov. Greg Abbot's Border Security Clampdown*, Tex. Tribune (Sept. 28, 2021), https://www.texastribune.org/2021/09/28/texas-migrants-prison-release/. Based on the agreements with county prosecutors, people arrested in Val Verde County were to be released after 15 days and people arrested in Kinney County were to be released after 30 days. Jolie McCullough, *After Delay, Texas to Begin Releasing Migrants Held in Violation of State Law Under Gov. Greg Abbott's Border Crackdown*, Tex. Tribune (Oct. 1, 2021), https://www.texastribune.org/2021/10/01/texas-migrants-jail-greg-abbott/.

Appx. 57

petitioners' motion for release on no-cost bond, agreeing that prosecutors were required to file charges within the statutory limit and had not done so in the vast majority of cases.[156] This hearing, and the eventual releases, provided relief for a portion of those who had experienced weeks and months of denial of due process and loss of liberty in this shadow criminal system. Despite this public loss on a grand scale, prosecutors for Kinney County continue to fail to file charges entirely in some cases.[157]

## 2.    Deficient Charging Documents Lacking Essential Information Regarding Charges

In cases in which Kinney County prosecutors *are* filing charges, a related issue—which also has due process implications—of filing deficient charging documents without essential information has emerged.[158] Defense attorneys have challenged many of the charging documents filed by Kinney County prosecutors for lacking necessary information, such as the location of the trespass, entirely, or for only including vague descriptions.[159] In some cases, the deficient charging documents forced prosecutors to dismiss the cases entirely, though not until the men arrested in those cases were detained and deprived of liberty for months without a court hearing.[160]

The state has provided funding for Border Prosecution Unit (BPU) Embedded prosecutors to supplement the local prosecutorial staff.[161] These additional prosecutors have not necessarily made the wheels of justice turn any faster, and in fact their addition to the prosecutorial team has slowed it down at times. The rotating list of prosecutors has made it difficult for defense attorneys to know who to contact and can delay urgent communications like bond negotiations.[162] In a hearing on the morning of December 13, BPU prosecutors James Sales and Laurie English were unprepared to respond to a writ properly filed by a defense attorney in

---

[156] *See id.*

[157] Jolie McCullough, *In Latest Blunder, Charges Dropped Against Migrants Arrested in Texas Governor's Border Crackdown Because of Faulty Paperwork*, Tex. Tribune (Nov. 4, 2021), https://www.texastribune.org/2021/11/04/texas-border-migrants-charges-dropped/ (reporting on thirty dismissed cases and an unknown number of releases on November 2 because no charges had been filed within thirty days).

[158] *Id.*

[159] *Id.*

[160] *Id.*

[161] Charlotte Cuthbertson, *In Pursuit of a Secure Border: Small Texas County Leads Charge Against Border Crime* (Nov. 11, 2021), Epoch Times, https://www.theepochtimes.com/in-pursuit-of-a-secure-border-small-texas-county-leads-charge-against-border-crime_4084276.html; Office of the Texas Governor, Border Programs (https://gov.texas.gov/organization/hsgd/border-programs) (summarizing the Border Prosecution Unit).

[162] Jolie McCullough, Coronavirus shuts down legal proceedings in latest misstep for Texas border crackdown, Tex. Tribune (Nov. 30, 2021), https://www.texastribune.org/2021/11/30/texas-migrants-arrests-coronavirus/?mc_cid=be5170f623&mc_eid=612589b377.

Appx. 58

November.[163] Though Mr. Sales and the defense attorney were in regular communication, the defense attorney had not been informed Mr. Sales would be handling hearings on December 13 and had not known to send him courtesy copies of writs filed for that day, and the Kinney County Attorney's Office had forwarded the relevant writ to Mr. Sales and Ms. English only after court had already begun. After a recess to confer on the writ, Mr. Sales said, "I am only a minion," before deferring to his colleague, Ms. English, who said she was on the same footing as Mr. Sales and made a brief argument that included a request for more time to gather a witness. The BPU prosecutors are also contributing to other systemic due process violations, such as the aforementioned filing of faulty charging documents.[164]

### 3.  Irregular Judicial Assignments, Including the Kinney County Judge's Improper Purported Removal of Judges

The irregularities in this system extend even to the judicial assignments process and the identity of the judges themselves. The state courts reassigned judges to process, on dockets separate from ordinary county misdemeanor cases, OLS trespass arrest cases in the two counties in which the arrests occur, Val Verde and Kinney. In Kinney County, in the face of unfiled charges and speedy trial violations, those judges have granted motions for release. Kinney County officials have grown dissatisfied, and, in recent days, County Judge Shahan, who has repeatedly invoked white supremacist tropes and expressed gratitude for white supremacist militias,[165] has begun–outside of the process provided for by Texas law and beyond the powers given to him–to refashion the bench as he sees fit by illegally replacing visiting judges.

What started as a funneling of judges to border counties to handle OLS trespass cases has now transmuted into a power grab by Judge Shahan. Judge Shahan's actions in seeking to remove duly-appointed visiting judges with whom he disagrees and instead seat his preferred replacements threaten to undermine the independence of the judiciary in OLS trespass cases, and other cases. Texas law vests the power to reassign multiple judges to handle cases in counties with a backlog of cases in two people: the Chief Justice of the Supreme Court and the Presiding

---

[163] All information from the December 13 hearing is based on statements made on the record by officers of the court. The court proceedings began at approximately 9:30 a.m. CT on December 13 and were broadcast via a livestream that is not made available once the court proceedings have concluded. 63rd District Court, 63rd District Court's Personal Meeting Room, https://www.youtube.com/watch?app=desktop&v=9ophJ_cT-Ms.

[164] Jolie McCullough, *In Latest Blunder, Charges Dropped Against Migrants Arrested in Texas Governor's Border Crackdown Because of Faulty Paperwork*, Tex. Tribune (Nov. 4, 2021), https://www.texastribune.org/2021/11/04/texas-border-migrants-charges-dropped/ (reporting on thirty dismissed cases and an unknown number of releases on November 2 because no charges had been filed within thirty days).

[165] *See infra* VI.A, C, VII.B.

Appx. 59

Judge of the administrative judicial region where the backlogged county is located.[166] A county judge, by contrast, may appoint one visiting judge to handle cases when county dockets are overstretched.[167] If the county judge seeks to appoint a visiting judge to a pending case, they must show good cause.[168] Under these circumstances, the parties are entitled to notice and a hearing.[169] Pursuant to this statutory scheme, in July 2021, the Chief Justice of the Supreme Court of Texas assigned dozens of judges to conduct magistration in border counties.[170] Then, in August and September 2021, the presiding judge of the relevant administrative judicial region– Judge Stephen Ables–assigned three judges to hear misdemeanor cases for one year in Kinney County.[171] Kinney County Judge Shahan did not seek to appoint a judge. Confronted with mass civil rights violations, the three visiting judges appointed by Judge Ables granted release in a number of cases.[172] On December 7, 2021, Kinney County Attorney Brent Smith filed an Application for Writ of Prohibition and Motion for Stay of Proceedings Below, referencing the visiting judges' decisions in favor of detained people and seeking to prevent all three from granting any further relief in pending cases.[173] The same day, before any decision had been issued on the Writ, County Judge Shahan, citing neither any authority nor grounds showing good cause, purported to unilaterally relieve the visiting judges appointed by Judge Ables and cancel the court dates scheduled before them.[174] He did so while claiming paradoxically that the county

---

[166] Tex. Gov't Code §§ 74.052, 74.054, 74.056, and 74.057.  The duration of the assignment is dictated by the terms of the assignment order.  *See Mangone v. State*, 156 S.W.3d 137, 139–40 (Tex. App.—Fort Worth 2005, pet. ref'd).

[167] Tex. Gov't. Code § 26.024(a).

[168] Tex. Gov't Code § 26.022(a).

[169] Tex. Gov't Code § 26.022(b). These rules apply in counties where there are no statutory county courts and all duties of the county court rest with the county judge. Tex. Gov't Code. § 26.021.

[170] Judicial Assignments for Proceedings under Article 15.17, Code of Criminal Procedure, Misc. Docket 21-9080, (Tex.., July 20, 2021), https://www.txcourts.gov/media/1452518/219080.pdf.

[171] Presiding Judge Ables' assignment orders for Schild, Torres, Wright, Exhibit 8.

[172] Findell & Caldwell, *Texas Jails Fill With Migrants*, *supra* n. 11; Jolie McCullough, *Hundreds of migrants accused of trespassing languish in Texas prisons. A county judge's new approach might prolong their detention*, Tex. Tribune (Dec. 10, 2021), https://www.texastribune.org/2021/12/10/texas-border-security-migrant-prisons/

[173] Application for Writ of Prohibition and Motion for Stay of Proceedings Below, *In re State ex rel. Brent Smith*, Ct. of Crim. App. Tex., WR-93, 354-01 (Dec. 7, 2021), at 1-2, 5-6, attached as Exhibit 6. In the Application for a Writ of Prohibition and Motion for Stay of Proceedings Below, Smith fails to supply either an account of occurrences or documents from any individual case to justify the issuance of a writ or imposition of a stay. Devoid of facts, the filing fails to satisfy the threshold requirements for a petition seeking extraordinary relief. *See* Tex. R. App. P. 52.3(g).

[174] Shahan Order and Letter, attached as Exhibit 7. This purported termination clearly conflicted with the one-year duration specified in each of the visiting assignment orders issued by Presiding Judge Ables. Since the period of these three judges' assignment had not elapsed, not even Judge Ables, let alone Judge Shahan, had authority to terminate their authority over their cases. *See Beard v. Beard*, 49 S.W.3d 40, 50 (Tex. App.—Waco 2001, pet. denied) (finding no provision "that authorizes a presiding judge to remove an assigned judge or to terminate his authority, once given," asserting that the assignment order controls as to the parameters of the assignment, and noting that to give the presiding judge authority to replace one

Appx. 60

was handling a larger volume of cases than it could hear without outside help.[175] After arrogating to himself the power to remove the duly assigned visiting judges, Judge Shahan then apparently handpicked not one, but five judges to serve in Kinney County.[176] Judge Ables explained that he believed these five judges to be "friends" of Judge Shahan whom Shahan thought "underst[ood] West Texas."[177] Judge Shahan's actions subvert the distribution of judicial assignment power under Texas law, threaten to subject detained people to still further delays, and severely undermine the bench's integrity and appearance of impartiality. These outrageous developments only reinforce the dire need for federal investigation.

### D.    Failure to Timely Release

Irregular delays in proceedings persist even after individuals are ordered released. The Kinney County Sheriff's Office and TDCJ have repeatedly failed to timely release OLS arrestees. Time and again, those who have been granted personal bond, paid bail, or had their cases dismissed have remained confined in the absence of any legal authority for their detention and, in at least one instance, in the face of a court order mandating release. In short, in this separate system, unlawful prolonged detention is routine.

Across the course of OLS, judges have granted personal bonds and dismissed cases in large numbers, entitling detainees to release.[178] Still more detainees have had their bail paid, giving them the right to go free. But legal entitlement to release has only resulted in further detention for many of them. To try to effectuate release, defense attorneys who have learned that their clients remain detained have been forced to shuttle for days between the County Sheriff's Office; the newly devised Val Verde Processing Center; and the TDCJ facilities, Briscoe and Segovia.[179] In many cases, defense attorneys' release advocacy has been stymied not just by

---

assigned judge with another at any time would "undermine the judicial independence of all assigned judges").

[175] *Id.*

[176] Jolie McCullough, *Hundreds of Migrants Accused of Trespassing Languish in Texas Prisons. A county judge's new approach might prolong their detention*, Tex. Tribune (Dec. 10, 2021).

[177] *Id.* The rationale of West Texas familiarity is specious for at least two reasons. First, since all judges across the state are charged with applying the United States Constitution and Texas Law, "underst[anding] West Texas" has no bearing on a visiting judge's ability to discharge that judge's duties. Second, one of the three judges Judge Shahan seeks to remove, Kitty Schild, is herself from El Paso, in West Texas. *See* Assignment Order by Judge Ables, attached as Exhibit 8 (describing her regular seat as "El Paso County Court at Law No. 4"). Judge Shahan's reason for wanting to appoint his chosen five judges, then, can presumably be reduced to their friendship with him and their shared beliefs about West Texas.

[178] *Supra* Sections V, V.c.1.

[179] Respondents' Response in Opposition to Relator's Emergency Petition for Writ of Mandamus, at 3–4, *In re* [REDACTED]*, Relators*, No. 21-0918, 2021 WL 5177611 (Tex. Oct. 25, 2021) (No. 21-0918) (defense counsel submitted an affidavit attesting that she spent eight days communicating with the Sheriff's Office, Processing Center, and TDCJ Facility, trying in vain to secure clients' release after issuance of personal bonds).

Appx. 61

OLS' improvised and convoluted custodial arrangements, but by misinformation from TDCJ as to their clients' release status. Attorneys who have won personal bonds for their clients report having been told by TDCJ that their clients had been released from custody only to find, days later, that those same clients had in fact been transferred to another TDCJ facility, with no plan for their release.[180]

In the most pointed instance, even a court order mandating the release of a man detained under the OLS trespass program to his attorney did not suffice to prevent his transfer to the custody of federal immigration officials without a valid federal immigration detainer or indeed any authority at all to continue detention. In direct defiance of a court order to release him, with criminal charges having been dismissed three days before, prison officials instead transported the man to CBP custody even as his lawyer waited outside the prison facility to meet him.[181]

In this system, even once those arrested have surmounted the considerable obstacles to having counsel appointed, the procedural requirements of the Texas Criminal Code followed, and release ordered, their freedom is not secured. Rampant disregard for the most basic right of people arrested under the OLS trespass program—to be free from illegal confinement—and for the authority of the courts calls out for federal intervention.

### E.    Egregious Detention Conditions in the Separate Criminal System for Noncitizens

Unlike ordinary pretrial detention, those arrested under the OLS trespass program are detained at Briscoe and Segovia, already troubled state prisons converted to jails specifically for this program. In fact, TDCJ prisoners serving prison sentences remain at Briscoe.[182] Briscoe is particularly notorious for its terrible conditions. In July 2020, prisoners rioted due to poor conditions, including understaffing and the inability to make telephone calls.[183] In November 2021, TDCJ officers deployed chemical agents against individuals detained at Briscoe during unrest reportedly prompted by poor conditions and a lack of court access. TDCJ informed a journalist that this occurred "in a building separate from where the illegal detainees are being held."[184]

---

[180] Affidavit of Neha Dubey, attached as Exhibit 8.

[181] Suzanne Gamboa, *Texas Prison Officials Stall Release of Migrants Despite Judge's Order*, NBC (Oct. 1, 2021), https://www.nbcnews.com/news/latino/texas-prison-officials-stall-release-migrants-judges-order-rcna2518; Motion for Finding of Contempt, at 1–3, *Ex Parte Texas Department of Criminal Justice, Brad Coe (Kinney Co. Sheriff), Maria Ramirez (Dolph Briscoe Unit Warden)., Department of Public Safety*, Cause No. 5118, (63rd Dist. Ct., Kinney Co., Tex., Oct.  20, 2021), attached as Ex. 9.

[182] Nov. 18 Operation Lone Star Briefing, *supra* n. 15, ~ 9:00.

[183] Keri Blakinger, *Breaking Out With A Bar of Soap*, The Marshall Project, Aug. 11, 2020, https://www.themarshallproject.org/2020/08/11/breaking-out-with-a-bar-of-soap.

[184] Keri Blakinger (@keribla), Twitter (Nov. 16, 2021, 10:25 AM), https://twitter.com/keribla/status/1460645209335808006.

As of November 18, 1,071 people were detained under Operation Lone Star, with 535 at Briscoe and 536 at Segovia.[185]

The Texas Jail Project has gathered facts regarding the egregious prison conditions from about 68 detained people at Briscoe and Segovia and their family members.[186] Benjamin Drachman, the Jail Project staffer who speaks with detainees and family members, concludes "that people in Briscoe and Segovia are desperate," explaining that they "had not received any help for months and were eager to talk to [him]. Some of the stories are traumatizing."[187] In addition, seven people arrested under OLS have provided declarations detailing similarly atrocious conditions.[188] Food, medical care, and telephone access are all inadequate. Detained people have also reported racist and xenophobic remarks by prison guards.

### 1.   Inadequate Food for Detained People

Detained individuals report inadequate food at OLS trespass arrest jails. The Texas Commission on Jail Standards mandates, "except in emergency situations, meals shall be served in accordance with a written menu approved and reviewed annually for compliance with nationally recognized allowances for basic nutrition . . . This approval and review shall be documented and should be performed by a licensed or provisional licensed dietitian."[189] Care should also be taken to ensure that hot foods are served reasonably warm and cold foods are served reasonably cold.[190]

Nevertheless, those detained have reported that the food at Briscoe and Segovia is "insufficient," "often rotten," and "served at inconsistent and inappropriate times."[191] They have reported that they are served small, often spoiled portions of beans and that they rarely receive meat. Detained people have reported being served raw food,[192] frozen food,[193] and even food with worms.[194] Diabetic people have been especially harmed by this insufficient diet. One detained person even reported that he lost 15 kilos—or about 33 pounds—in two months,[195] and another detained person stated that he lost 16 pounds during the 42 days he was detained.[196]

Furthermore, the Texas Commission on Jail Standards requires that food is served "three times in any 24-hour period."[197] In addition, "[n]o more than 14 hours shall pass between meals

---

[185] Nov. 18 Operation Lone Star Briefing, *supra* n. 15, ~ 10:00. This total may include individuals detained for smuggling or other non-trespass crimes at Briscoe.
[186] *See generally* Drachman Decl.
[187] *Id.* at ¶ 10.
[188] A.J.S.A., A.M., A.V.O., G.G.S.C., O.A.C.-G., R.D.A., and Z.A.M. Decls.
[189] 37 Tex. Admin. Code § 281.3.
[190] *Id.* § 281.5.
[191] Drachman Decl., ¶ 9. *See* O.A.C.-G. Decl., ¶ 18; Declaration of R-D-A, ¶ 15(b), (c).
[192] *Id.*; Declaration of A.J.S., ¶ 12.
[193] Declaration of A.J.S. ¶ 12.
[194] Declaration of Z.A.M., ¶ 14.
[195] *Id. See also* Declaration of GGSC, ¶ 10.
[196] Declaration of Z.A.M., ¶ 14.
[197] 37 Tex. Admin. Code § 281.1.

Appx. 63

without supplemental food being served."[198] However, detained people have generally reported more than 14 hours between meals, with breakfast regularly being served between 3 and 4 AM, lunch sometimes skipped, and dinner provided as late as 9 PM.[199] On a day where lunch is skipped and dinner is not served until 9 PM, at least 17 hours pass between meals, and detained people report no supplemental food being served. Many have reported that they are hungry a lot of the time.[200] This reported practice blatantly violates the Texas Commission on Jail Standards requirement, and detained people fear retaliation if they speak up. When one man complained about the 3 AM breakfast, guards struck him and put him in segregated housing with no windows.[201]

Moreover, the facilities are unsanitary. The Texas Commission on Jail Standards requires "the maintenance of all . . . utensils with which food or drink comes into contact in a clean condition and in good repair."[202] Detained people have reported unwashed cutlery and no access to disinfectant,[203] which is yet another violation of Commission standards–further evidence of the discriminatory nature of OLS.

## 2.    Inadequate Medical Care

Detained individuals report inadequate medical care at Briscoe and Segovia. According to the Texas Commission on Jail Standards, facilities "shall provide medical, mental, and dental services in accordance with the approved health services plan."[204] Each health plan shall:

(1) provide procedures for regularly scheduled sick calls;
(2) provide procedures for referral for medical, mental, and dental services;
(3) provide procedures for efficient and prompt care for acute and emergency situations;
(4) provide procedures for long-term, convalescent, and care necessary for disabled inmates; . . .[205]

However, the Texas Jail Project has concluded from its intakes that "[c]are for illness and injuries is essentially nonexistent."[206] Those detained under the OLS trespass program have reported "lack of attention to pinkeye, lacerations, diabetes, and kidney-related illness."[207] Many have also reported being denied medication. For example, in November 2021, the son of a person detained at Briscoe called the Texas Jail Project and reported that his 62-year-old father had kidney problems, and he, like many other detained peoples, had not received medical care,

---

[198] *Id.*
[199] Declaration of Benjamin L. Drachman, ¶ 9.
[200] Z.A.M. Decl., ¶ 14.
[201] *Id.*
[202] 37 Tex. Admin. Code § 279.1(6).
[203] Drachman Decl., ¶ 9.
[204] 37 Tex. Admin. Code § 273.1.
[205] *Id.* § 273.2.
[206] Drachman Decl., ¶ 9.
[207] *Id.*

despite requests.[208] One individual reported that they were denied prescribed depression medication for an entire month in Briscoe[209] and another stated that they were denied HIV medication.[210] Detained individuals lack access to information and do not know where to take medical complaints.[211] Even for those able to request medical care via written request, they have had to wait up to one week for medical care. When they are examined by medical staff, there is no follow-up.[212] Sometimes doctors' orders, such as ensuring pills are taken with a snack or at medication administration times, are reportedly not followed.[213] And despite the COVID-19 pandemic, not all staff wear masks. One individual jailed under the OLS trespass arrest program described a COVID-19 outbreak in his dorm "because the guards failed to separate sick people."[214]

### 3. Inadequate Telephone Access

Those detained under the OLS trespass arrest program report inadequate phone access. The Texas Commission on Jail Standards states that "[a] telephone and telephone directory shall be available for inmates' use within the processing area."[215] In addition, "[t]he inmate should be advised that he will be allowed to contact any attorney upon reasonable request."[216]

But people detained at Briscoe and Segovia have reported being allowed only one phone call per day.[217] Some have stated that they were only allowed to make phone calls for "two minutes every four days"[218] or "around one to two times a week."[219] They were not given the opportunity to make more than one phone call at a time, and this rule was enforced even when it came to contacting attorneys.[220] Further, "there is no mechanism to purchase phone time or additional funds into a phone account."[221]

---

[208] Id. ¶ 6. See also A.M. Decl., ¶ 23-24 (explaining that mental health treatment was not provided after detained person requested help and that adequate treatment for a kidney stone was also denied); R-D-A Decl., ¶ 24 (detailing four written medical requests that went unanswered).
[209] A.J.S.A. Decl., ¶ 4.
[210] Declaration of A.V.O., ¶ 9.
[211] Id. ¶ 9; see also Declaration of AVO ¶ 19.
[212] 37 Tex. Admin. Code § 273.2(1).
[213] Declaration of A.V.O., ¶¶ 16-17.
[214] Declaration of O.A.C.-G, ¶ 21.
[215] 37 Tex. Admin. Code § 265.7.
[216] Id. § 265.8.
[217] Id.
[218] Declaration of Z.A.M., ¶ 18.
[219] Declaration of Z.A.M., ¶ 13.
[220] Id.
[221] Declaration of Benjamin L. Drachman, ¶ 9.

### 4.    Racist and Xenophobic Language from Guards

People detained under the OLS trespass program have reported that guards used racist and xenophobic language. This includes guards using slurs–for example, reportedly calling detained people *mojados* (wetbacks)[222] and *mugrosos* (dirty people)[223]–and saying to them that they should "go back to [their] country"[224] and that they were "invading" the United States.[225] A person who was detained at Briscoe stated that at the beginning of breakfast, they once heard an officer say that "the monkeys are coming in."[226] One person who was detained at Briscoe noted that they didn't hear "officers speak this way to the other inmates in the prison who were not immigrants."[227] Another person who was detained observed, "the other inmates at the prison who weren't immigrants were treated differently than we [immigrants] were. The guards respected them more."[228]

Detained individuals report that "the detainees that were singled out for the worst treatment were the ones with the darkest skin, like the Senegalese men and black Hondurans."[229] Guards reportedly referred to Black immigrants from Honduras, Cuba, and Senegal as "monkeys" and "pinche negros" (f***ing Black people).[230]

*** 

No one should be detained in these inhumane and disturbing conditions–including Black and Brown migrants. Nor should anyone be subjected to the racist and anti-immigrant animus evinced by guards at Briscoe.

## VI.    State and Local Decision-Makers Have Evinced Extremist Anti-Immigrant Animus

State and local officials implementing the OLS trespass arrest policy have grounded their actions in racist and anti-immigrant rhetoric. This includes the same rhetoric that not only has undergirded prior anti-immigrant governmental actions in Texas but also has led to deadly violence, including the white supremacist mass murder at an El Paso Wal-Mart in 2019.

---

[222] Declaration of Z.A.M., ¶ 11; Declaration of O.A.C.-G., ¶ 14; Declaration of A.M., ¶ 16(c).
[223] Declaration of A.V.O., ¶ 10.
[224] Z.A.M. Decl., ¶ 11.
[225] A.J.S. Decl., ¶ 11; *see also* R.D.A. Decl., ¶ 14.
[226] A.V.O. Decl., ¶ 10.
[227] G.G.S.C. Decl., ¶ 9; *see also* A.M. Decl., ¶ 17.
[228] G.G.S.C. Decl., ¶ 9.
[229] O.A.C.-G. Decl., ¶ 15.
[230] A.M. Decl., ¶ 16(c).

A.   **State and Local Leadership Has Used Racist, Nativist Rhetoric of "Invasion"**
     **that Echoes Extremist Rhetoric Used to Justify Past White Supremacist**
     **Violence in Texas**

Texas state and local officials regularly use white supremacist rhetoric of invasion to
justify their anti-immigrant actions, including the OLS trespass arrest program. For example,
Kinney County officials have repeatedly relied on this rhetoric while linking migration to
Texas's war of independence from Mexico in the 1830s. The drumbeat of anti-immigrant
rhetoric in the county traces back at least to a local disaster declaration issued in April.

Kinney County Judge Tully Shahan and County Attorney Brent Smith issued a local
declaration of disaster due to migration on San Jacinto Day, the day of the final battle of Texas'
war with Mexico–citing the choice of San Jacinto Day as significant.[231] As the local disaster
declaration put it, "Today in Kinney County we are declaring a Local State of Disaster due to the
thousands of illegal aliens invading our great State of Texas...Today, 185 years later, Texas is
once again under siege, as thousands upon thousands of illegal aliens invade our State through
our border with Mexico."[232] The declaration stated, "The ongoing border crisis has resulted in
thousands of illegal aliens invading Kinney County…"[233] Officials have pushed the false and
demeaning narrative that migration across the Texas-Mexico border is not a humanitarian
challenge but an "invasion." County leadership also termed migration a "siege." Both the Kinney
County website and a website run by the county soliciting funds to pay for private contractors to
deter migrants[234] announce, "KINNEY COUNTY IS DRAWING A LINE IN THE SAND!
WILL YOU CROSS IT AND STAND WITH US?"[235] The "line in the sand" is a reference to the
story, well known in Texas, that the Texas commander of the Alamo drew a line in the sand with
his sword and called on his soldiers to cross it to defend the Alamo until death.[236] In Texas'
sociopolitical context, these statements by Kinney County officials are thinly veiled white
supremacist remarks.

Kinney County Attorney Brent Smith frequently describes the humanitarian situation in
the county as "an invasion" by Latinx and Black migrants that requires a response of force and

---

[231] Kinney County Judge Tully Shahan, *Declaration of Local State of Disaster*, April 21, 2021,
https://cokinneytx.civicweb.net/document/16670/3.e%20Declaration%20of%20Local%20State%20of%2
0Disaster%20for%20Kin.pdf?handle=B7DFA16D4B5F44CE9DBFA7466939E756;
Brent Smith, *Op-Ed: Texas, as a Sovereign State, Has the Right to Defend Its Own Borders; Here's What
Needs to Happen Now*, San Marcos Corridor News, (June 26, 2021), https://smcorridornews.com/op-ed-
texas-as-a-sovereign-state-has-the-right-to-defend-its-own-borders-heres-what-needs-to-happen-now/
(Kinney County Attorney stating, "It is no coincidence that we waited to file [the disaster declaration] on
San Jacinto Day").
[232] *Id*.
[233] *Id*.
[234] Defend Our Borders, Kinney County Official Webpage (December 14, 2021),
https://defendourborders.org/ S
[235] *Id*.; see also Kinney County Website, http://www.co.kinney.tx.us/
[236] See, e.g., Randy Roberts & James S. Olson, A Line in the Sand: The Alamo in Blood and Memory
(2001).

Appx. 67

aggression. In promoting the local disaster declaration, Smith told local media, "We're being invaded."[237] On his personal Facebook page, Smith shared a post calling on Texans to take up arms. "It's time to equip Texas Militias. It's time to equip Texas citizens…. The federal government has abandoned Texas…The Haitian migrants have stated that they are ready for war. Are we?"[238] In another post, Smith shared an image of a U.S. Border Patrol agent on horseback using ropes as whips against a Haitian migrant in Del Rio, Texas. The image included text which read: "Del Rio's Newest Hero."[239] Mr. Smith has described "two different types of invasions that are going on," one in "Val Verde County, where the Haitians were," where people "want to claim asylum" and one in Kinney County where, purportedly, people do not want to claim asylum.[240] Mr. Smith explained that the County recently declared anew a state of disaster "with the amount of Haitians and caravans coming this way"--particularly evincing racist animus in his focus on Black Haitian migrants since the overwhelming number of those arrested for traveling through the county are Latinx.[241] These statements from the Kinney County Attorney are public expressions of racist, including anti-Black and anti-immigrant, ideas by the prosecutor for the county with by far the most arrests under Operation Lone Star.

Kinney County Judge Tully Shahan has also described migration as an "invasion," including during public county meetings. During the opening prayer of a special Kinney County Commissioners Meeting, Judge Shahan prayed for, "Protection from the [pause] non-citizens coming our way."[242] When a militia leader claimed at a county meeting that migration was an "invasion" and described the county as "a powder keg waiting to explode," Judge Shahan reportedly told him, "You're preaching to the choir."[243]

Similarly, Val Verde County Sheriff Martinez testified on the trespass arrest program to the Texas House Appropriations Committee, "This crisis is not going to stay on the border. It's going to affect all of us, all of us in the state of Texas and all of us in the United States. . . . Whatever gets through us, it's coming to you all, to your constituents. . . . So the border's

---

[237] Vanessa Croix, *Kinney Co. officials issue disaster declaration, calling on state leaders for help*, CBS Kens5, April 21, 2021, https://www.kens5.com/article/news/special-reports/at-the-border/kinney-co-officials-issue-disaster-declaration-calling-on-state-leaders-for-help/273-1ac31fd5-c37d-4221-8675-d201ab40f6d3.

[238] Brent Smith, *Chad Prather Post*, Facebook (October 9, 2021), https://www.facebook.com/permalink.php?story_fbid=10110887423143708&id=16717258.

[239] Brent Smith, *Del Rio's New Hero*, Facebook (September 21, 2021), https://www.facebook.com/permalink.php?story_fbid=10110849118601318&id=16717258.

[240] Gateway Pundit, *Kinney Co. TX Sheriff TX Takes Historic Action to Fight Back Against Illegal Invasion*, YouTube, Oct. 18, 2021, https://www.youtube.com/watch?v=jiTvH3jOXzE&list=UUMaLetBcZ8fqsoIryB015og&index=4&ab_channel=GatewayPundit.

[241] *Id*.

[242] Kinney County Commissioners meetings are accessible through a live conference line and there are no public recordings of these meetings available. This note was made during a direct observation of the meeting held on October 25, 2021.

[243] Karen Gleason, *News – North Texas Militia Vows Protection for Kinney County*, The 830 Times (October 19, 2021), https://830times.com/news-north-texas-militia-vows-protection-for-kinney-county/.

Appx. 68

basically, we're at the tip of the spear in fighting this crisis."[244] Sheriff Martinez specifically clarified that his testimony was "speaking for Val Verde County."[245] The "tip of the spear" is a war metaphor used in the military: it means the first to enter into combat. Kinney County Sheriff Brad Coe has also described his county as the "tip of the spear."[246] Sheriff Martinez's depiction of migrants as a threat coming to American communities and the two sheriffs' use of this war metaphor are additional examples of local officials' use of the racist, xenophobic rhetoric of invasion.

State officials have also used the racist language of invasion to describe migration. In rhetoric paralleling language used by the white supremacist killer in the El Paso Wal-Mart shooting, Texas Lieutenant Governor Dan Patrick claimed that "in 18 years if every one of them has two or three children, you're talking about millions and millions of new voters" and that this is part of a purported "silent revolution" by Democrats to "take over our country without firing a shot."[247] Both Lieutenant Governor Patrick and Governor Abbott have used the rhetoric of invasion to justify measures such as the construction of a border wall.[248] Perhaps most alarmingly, State Representative Bryan Slaton told Kinney County residents at a meeting about border issues in May, "If your elected officials are not going to stand up and fight for what's right, maybe God is paving the way for you to step in, and for you to do it"--a veiled call to vigilantism.[249] Representative Slaton is a co-author of H.B. 9, the recently enacted border funding legislation.[250]

This rhetoric mirrors the vitriol that fueled the mass shooting in El Paso two years ago. In 2019, a white supremacist drove 10 hours across the state of Texas to a Wal-Mart in El Paso and opened fire with a weapon, killing 20 people and injuring many more.[251] Before the El Paso shooting, the shooter posted a manifesto online which stated: "…this attack is a response to the

---

[244] Hearing on H.B. 9, *supra* n. 3, ~ 12:28.

[245] *Id*.

[246] *Kinney Co. TX Sheriff TX Takes Historic Action to Fight Back Against Illegal Invasion*, YouTube (Oct. 18, 2021), ~ 16:30, https://www.youtube.com/watch?v=jiTvH3jOXzE&list=UUMaLetBcZ8fqsoIryB015og&index=4&ab_channel=GatewayPundit.

[247] James Barragán, *Dan Patrick warns democrats are allowing in immigrants for "silent revolution," mirroring language of far-right extremists*, The Tex. Tribune (Sept. 17, 2021), https://www.texastribune.org/2021/09/17/texas-dan-patrick-immigrants-democrats-haitians.

[248] Heidi Pérez-Moreno and James Barragán, *Critics denounce Greg Abbot and Dan Patrick's "invasion" rhetoric on immigration, saying it will incite violence*, The Tex. Tribune (June 17, 2021), https://www.texastribune.org/2021/06/17/greg-abbott-dan-patrick-el-paso-invasion-immigration/.

[249] Charlotte Cuthbertson, *Amid Federal Inaction, Texans Push for Control of Own Border*, The Epoch Times (June 10, 2021), https://www.theepochtimes.com/amid-federal-inaction-texans-push-for-control-of-own-border_3849867.html.

[250] *See* Tex. Legis. Online, *Authors* (Aug. 19, 2021), https://capitol.texas.gov/BillLookup/Authors.aspx?LegSess=872&Bill=HB9 (listing authors of HB 9).

[251] Tim Arango, Nicholas Bogel-Burroughs and Katie Benner, *Minutes Before El Paso Killing, Hate-Filled Manifesto Appears Online*, The N.Y. Times (Aug. 3, 2019), nytimes.com/2019/08/03/us/patrick-crusius-el-paso-shooter-manifesto.html.

41

Hispanic invasion of Texas."[252] The idea of an invasion at the border had been propagated by state officials and by then-President Donald Trump.[253] Federal officials are prosecuting the shooter for federal hate crimes due to national origin discrimination.[254]

In fact, following the El Paso shooting, Governor Abbott said "mistakes were made" in a mailer he sent out shortly before the shooting calling on Texans to "DEFEND" the border. Governor Abbott said that he had spoken with El Paso legislators about "the importance of making sure that rhetoric will not be used in any dangerous way."[255] Yet, Governor Abbott has returned to precisely that rhetoric that he suggested in the wake of the shooting was "dangerous" and termed a "mistake," and other state officials have returned to it as well--fanning the flames of anti-immigrant animus in the state of Texas again.

### B. Officials Have Framed Arrests of Migrants as Trophies and Have Even Suggested Texas Residents May Shoot Migrants

State and local officials have in fact further dehumanized migrants through xenophobic social media posts about capturing or even "hunting" migrants.

Alarmingly, in November, the Kinney County Sheriff's Office's Facebook page re-shared a video depicting a group of brown-skinned people walking through brushland captioned, "Gotta love deer hunting in South Texas…Age and score please."[256] One comment on the post reads, "Looks like deer to me." Comments on the post, including one by County Public Information Officer Matt Benacci, make clear that viewers of the KCSO Facebook page understand the people in the video to be migrants. The post is particularly concerning given that Kinney County Attorney Brent Smith has asked, "What do you think's going to happen when illegal aliens, hundreds of thousands of illegal aliens, are on those properties while [hunters are] trying to hunt?"[257] Kinney County officials are, through their rhetoric, normalizing the idea of private individuals shooting migrants.

---

[252] Peter Baker and Michael D. Shear, *El Paso Shooting Suspect's Manifesto Echoes Trump's Language*, The N.Y. Times (Aug. 4, 2019) nytimes.com/2019/08/04/us/politics/trump-mass-shootings.html?searchResultPosition=8.

[253] Alexia Fernández Campbell, *Trump described an imaginary "invasion" at the border 2 dozen times in the past year*, Vox (Aug. 7, 2019), https://www.vox.com/identities/2019/8/7/20756775/el-paso-shooting-trump-hispanic-invasion.

[254] *U.S. v. Patrick Wood Crusius*, 2020 WL 6572331 (W.D. Tex. 2020) (superseding indictment listing hate crime charges). *See* Jim Parker, *Walmart mass shooting suspect now faces additional federal charges*, ABC 7 KVIA (July 9, 2020) https://kvia.com/news/crime/2020/07/09/walmart-mass-shooting-suspect-now-faces-additional-federal-charges/.

[255] Alex Samuels, *Gov. Greg Abbott Says "Mistakes Were Made" in his Fundraising Letter Before the El Paso Shooting*, The Tex. Tribune (Aug. 29, 2019), https://www.texastribune.org/2019/08/29/texas-gov-greg-abbott-admits-mistakes-immigration-rhetoric/.

[256] Kinney County Sheriff's Office, Facebook (Nov. 17, 2021, 1:10 pm), https://m.facebook.com/story.php?story_fbid=1054471385310603&id=159181914839559.

[257] Robert Montoya, *Border County Struggles with Security as Abbott Postures*, Tex. Scorecard (July 15, 2021), https://texasscorecard.com/state/border-county-struggles-with-security-as-abbott-postures/.

Appx. 70

Governor Abbott regularly tweets photos of people of color whom state law enforcement have detained or arrested. In one such post in October, the Governor retweeted a DPS photo of nine brown-skinned people sitting on the ground in Kinney County and tweeted: "These illegal immigrants thought they were going to make it through by wearing camouflage clothing. [Three 'faces with tears of joy' emojis]."[258] In another, the Governor tweeted a photograph of three brown-skinned people crouched in front of a soldier in the Texas National Guard, who is standing and holding a large gun.[259] These tweets dehumanize migrants by framing their arrests as trophy moments for arresting officers, similar to hunting or cartel photos.

### C.    Officials Have Otherwise Evinced Extremist Anti-Immigrant Animus

State and local officials have made plain their xenophobia toward migrants coming to Texas. Kinney County Judge Shahan has claimed, "Biden is diffusing all of these people in our country to change our culture."[260] In describing migrants' countries of origin, officials have singled out certain countries and areas as particularly unfamiliar and threatening. In June, Governor Abbott warned Texans that migrants are coming "in from countries you haven't even heard of before. It comes [sic] from 160 different countries across the entire globe. Senegal, Bangladesh, Ubezikstan [sic]."[261] In April, Kinney County Attorney Brent Smith wrote in an op-ed, "individuals who unlawfully enter our country originate from many different countries from around the world, including the Middle East."[262]

## VII.    Kinney County is Undertaking Additional Efforts to Target Migrants, Including by Seeking to Hire Private Security and Partnering with Militias

Kinney County provides an encapsulation of how government officials are using extremist racist, anti-immigrant rhetoric to justify the OLS trespass arrest program and, in turn, using the trespass arrest program to fuel further anti-immigrant actions and escalating anti-immigrant rhetoric. Kinney County has the highest number of arrests and prosecutions of people

---

[258] Greg Abbott, @GregAbbott_TX, Twitter (Oct. 19, 2021, 9:08 pm), https://twitter.com/GregAbbott_TX/status/1450645075885703169.
[259] Greg Abbott, @GregAbbott_TX, Twitter (Aug. 27, 2021, 3:27 PM), https://twitter.com/GregAbbott_TX/status/1431352778945929223.
[260] Aaron Nelsen, *Kinney County Has Embraced Greg Abbott's Operation Lone Star Like Nowhere Else. It's Fueling the Hysteria of Some Locals*., Tex. Monthly (Oct. 29, 2021), https://www.texasmonthly.com/news-politics/operation-lone-star-kinney-county/.
[261] KPRC 2 Click2Houston, *TX Gov. Gregg Abbott hosts Border Security Summit in Del Rio, announces actions to secure the border*, YouTube (June 10, 2021), https://www.youtube.com/watch?v=lNe-AZKN-uM; *see* Press Release, Gov. Greg Abbott, Governor Abbott Hosts Border Security Summit, Announces Comprehensive Border
Security Plan to Crack Down on Unlawful Border Crossings (June 10, 2021), https://gov.texas.gov/news/post/governor-abbott-hosts-border-security-summit-announces-comprehensive-border-security-plan-to-crack-down-on-unlawful-border-crossings.  .
[262] Brent Smith, *Kinney County Attorney Says Texans' Must Protect Own Borders*, 830 Times (Apr. 8, 2021),  https://830times.com/opinion-kinney-county-attorney-says-texans-must-protect-own-borders/.

Appx. 71

in the OLS trespass arrest program.[263] From August through December, the county arrested and prosecuted 1,327 individuals for criminal misdemeanors under Operation Lone Star.[264] As described above, to justify these actions, county officials–including Sheriff Brad Coe, County Attorney Brent Smith, and County Judge Tully Shahan–have created a dangerous echo chamber of hate speech against Latinx and Black migrants, echoing nativist language such as that of "invasion" to stir up anti-immigrant hysteria. They have sought to partner with extreme anti-immigrant vigilante groups, including by apparently–in collaboration with DPS–partnering with an extremist group to thermally track and apprehend migrants and by exploring deputizing private militia members. Further, they are soliciting funds into a county bank account for "border defense" and have explored hiring private security forces to deter and arrest migrants.

### A.      Kinney County Leadership Has Expressed Support for Using Vigilante Groups in Anti-Immigrant Efforts

Kinney County leadership has expressed support for both vigilante groups specifically and hyper-militarization of the border generally. County Attorney Brent Smith has been especially vocal. After the county's issuance of a local disaster declaration in April, Smith called for additional law enforcement at the border, saying, "An important thing for us to do is the prevention of the illegal entries, and that means boots on the ground near the border."[265] In August, Smith said in an interview, "State officials need to realize that this crisis has surpassed that of a law enforcement issue. The solution will have to include aspects of a military operation." He went on to express support for militias as a potential solution, saying, "If it wasn't for militias, we wouldn't have a country today . . . . Militias was what freed Texas from the Mexican government."[266]

Kinney County officials' rhetoric appears to be influencing private actors. Similar calls for troops at the border followed the County Attorney's post. A video posted by "Frank Lopez Jr. – U.S. Border Patriot" called for veterans to join the "Kinney County Defense Forces" as requested by the "Kinney government."[267] The video mentions a meeting at the Brackettville

---

[263] Guzman Decl., Ex. 10, ¶ 5. According to public records available on iDocket.com, 1,327 criminal misdemeanor prosecutions have been filed in Kinney County Court from August 22, 2021 through December 8, 2021. In comparison, only four criminal misdemeanor charges from January - August 2021, one charge in 2020, seven in 2019, nine in 2018, and 23 in 2017.

[264] *Id.*

[265] Vanessa Croix, *Kinney Co. officials issue disaster declaration, calling on state leaders for help*, CBS Kens5, April 21, 2021, https://www.kens5.com/article/news/special-reports/at-the-border/kinney-co-officials-issue-disaster-declaration-calling-on-state-leaders-for-help/273-1ac31fd5-c37d-4221-8675-d201ab40f6d3.

[266] Charlotte Cuthbertson, The New Wild West: Texas Border County's Desperate Bid to Curb Illegal Immigration, The Epoch Times, Aug. 21, 2021, https://www.theepochtimes.com/the-new-wild-west-texas-border-countys-desperate-bid-to-curb-illegal-immigration_3955137.html.

[267] Kim Keeler, *Calling All Veteran's*, YouTube (Oct. 14, 2021), https://www.youtube.com/watch?v=3G2EJuwkTu4.

44

Civic Center and indicates Sheriff Coe would provide further instructions.[268] Smith frequently shares posts by Frank Lopez Jr.[269]

### B.    Kinney County Leadership Has Actively Sought Partnerships with Vigilante Groups

Acting on this rhetoric, Kinney County has repeatedly actively sought to partner with vigilante actors, including the extremist groups Women Fighting for America (WFFA) and Patriots for America. Both of these groups are strongly anti-immigrant, and both supported the January 6, 2021, attack on the United States Capitol.

WFFA is an organization headed by a January 6 insurrectionist[270] who was previously active in anti-immigrant border efforts in Arizona.[271] In November, the WFFA leader live-streamed a ride-along with Kinney County Sheriff Coe, which she described as "working with the sheriff[] hand in hand and doing some proof of concepts out here, basically, to help facilitate closing down our borders."[272] She filmed nighttime apprehensions by DPS and Kinney County as she was riding in the car with Sheriff Coe. According to the WFFA leader's statements during the live stream, WFFA provided Kinney County with thermal technology. As the WFFA head put it, the group is "working with border town sheriffs who really want this program. . . . Our dr–our systems were only up for less than 15 minutes, and we found over 16 [migrants]. And we're literally following and apprehending and assisting with the apprehension and finding these illegals who are coming over here . . . . We're able to thermotrack these guys." She explained that state arrest is preferable to migrants passing to Border Patrol custody because, she explained inaccurately, as a result of the state arrest migrants "will not be able to ever get their citizenship, because they have an arrest record." The video of WFFA's trip makes clear that WFFA believed itself to be an equal partner in the Kinney County arrests. At one point, for example, the WFFA founder instructed someone to "light the drone." Both the Kinney County Sheriff's Office and DPS were involved in the arrest of the migrants that WFFA says were apprehended due to its thermal tracking.

WFFA's brief video of the set of nighttime arrests shows the organization's anti-immigrant hate. At one point, the head of the organization described migrants as "either rapists,

---

[268] *Id.*
[269] *See, e.g.,* Brent Smith, *Carrizo Springs Influx Care Facility Invasion Update!* Facebook (Sept. 26, 2021), https://www.facebook.com/permalink.php?story_fbid=10110860661554148&id=16717258.
[270] Right Wing Watch, *"Are You Ready to Start a Revolution?" Women Fighting for America Founder Tells Trumpists to Advance the Line on Eve of Insurrection,* Jan. 17, 2021, https://www.rightwingwatch.org/post/are-you-ready-to-start-a-revolution-women-fighting-for-america-founder-tells-trumpists-to-advance-the-line-on-eve-of-insurrection/.
[271] Freddy Cruz, *White Nationalists, Jan. 6 Protesters and QAnon: What You Need to Know About Border Vigilantes Along the Border*, Southern Poverty Law Center Dec. 2, 2021, https://www.splcenter.org/hatewatch/2021/12/02/white-nationalists-jan-6-protesters-and-qanon-what-you-need-know-about-border-vigilantes.
[272] WFFA, *LIVE Apprehension!!! Text fight to 91776*, Facebook, Nov. 8, 2021, https://fb.watch/9AciBsCVfp/.

Appx. 73

murderers, terrorists, drug smugglers, all of those things," as well as "some who just want to come over here and sneak into our country and not be caught and just disappear." At another point, WFFA stated, "We have to take back our country. We the people. We're the answer. This is action right here . . . working hand in hand with law enforcement and those who really do care about our country and our sovereignty." WFFA was very clear that the purpose of its actions is to target migrants using state law. At one point, the group's leader described the purpose of broader white supremacist efforts as "to apprehend illegals who are trying to get away, who are either trying illegally to get into our country." Further, WFFA was clear that it sought a long-term private-public partnership with Kinney County and other border counties.

Kinney County leadership has also expressed a desire to partner with the vigilante group Patriots for America, which is active in the county–including floating the idea of deputizing vigilante group members through the Kinney County Sheriff's Office. Patriots for America's founder and president attended an October county commission meeting to promote the group's presence in the county, using the same rhetoric of "invasion" as that used by county and state officials. He summed up the situation in the county as, "This is a powder keg waiting to explode, and it's not a matter of if but when."[273] Judge Shahan asked the group leader if he "…[had] been able to sit down with the sheriff?" The group leader replied, "multiple conversations." Judge Shahan responded, "We really, really appreciate your offer, glad you came, you're preaching to the choir, and we appreciate you coming and appreciate you being here, and we will take your help the right way." Later that month, the group leader posted a video on YouTube of a group of armed militia members and called for more individuals to travel to Kinney County as reinforcements.[274]

Sheriff Coe has described the militia members he has "recently met" in the county as "well-trained" and "Christian-based," saying militias have kind of gotten "a bad name and a bad rap."[275] By fostering governmental relationships with armed vigilante groups that seek to target migrants, Kinney County leadership is discriminating against migrants. These efforts increase the chances of violence against Black and Brown individuals in Kinney County. If effectuated, they will continue to lead to unlawful and discriminatory actions on the basis of race and national origin by vigilante groups functioning as state actors.

---

[273] Karen Gleason, *News – North Texas Militia Vows Protection for Kinney County*, The 830 Times, October 19, 2021, https://830times.com/news-north-texas-militia-vows-protection-for-kinney-county/.
[274] *Id.*
[275] Gateway Pundit, *Kinney Co. TX Sheriff TX Takes Historic Action to Fight Back Against Illegal Invasion*, YouTube, Oct. 18, 2021, https://www.youtube.com/watch?v=jiTvH3jOXzE&list=UUMaLetBcZ8fqsoIryB015og&index=4&ab_channel=GatewayPundit.

Appx. 74

C.    **County Officials Seek Private Security to Expand Efforts to Arrest Migrants and Deter Migration**

Kinney County has repeatedly sought to engage private contractors or a private defense force to supplement its efforts to arrest migrants. Shortly after the county attorney publicly declared the county's intent to contract private companies to supplement border security in the county,[276] the County issued a letter of intent to contract with Garrison Trading Associates, Inc. (Garrison), a company that also operates as a wartime security contractor. The letter of intent provided that Garrison would "provide, as a service to Kinney County, Texas, Border Mitigation and Deterrence Support which is designed and implemented to deter non-United States personnel from entering the US without constraint, restriction, or monitoring." The letter provided that Garrison would provide one armed individual and one emergency medical technician. Along with the letter, Garrison provided Kinney County with the resumes of employees who had previously worked in Iraq and Afghanistan.[277] While Kinney County initially approved the letter of intent, several weeks later, Garrison indicated a misunderstanding with the county, and the commission moved to withdraw the letter of intent.[278]

However, Kinney County is still seeking to engage private groups to arrest migrants for border enforcement. In October, Sheriff Coe told a news outlet that he was preparing to sign an agreement for a "defensive security force" to move into the county, voicing his hope that there would be about 600 members and stating, "We'll try to get them deputized or something to get the ball rolling." Sheriff Coe made clear that he intended this group to engage in "processing" migrants.[279]

D.    **Kinney County Officials Are Raising Money Using Their Racist, Anti-Immigrant Rhetoric**

The same county officials are utilizing anti-immigrant hate speech to solicit donations. Kinney County has created a county donation page with a county bank account named "Kinney

---

[276] Robert Montoya, *Border County Struggles With Security as Abbott Postures*, Texas Scorecard, July 15, 2021, https://texasscorecard.com/state/border-county-struggles-with-security-as-abbott-postures/.
[277] LETTER OF INTENT TO CONTRACT (July 12, 2021), https://cokinneytx.civicweb.net/document/17977/Letter%20of%20Intent%20to%20Contract%20Garrison%20Trading.pdf?handle=F497D8AC0D1B401A867AB73F2B36E1F0.
[278] NOTICE OF REGULAR OPEN MEETING OF THE COMMISSIONERS COURT OF KINNEY COUNTY, TEXAS COMPLETE AGENDA, Nov. 22, 2021, https://cokinneytx.civicweb.net/document/19114.
[279] Charlotte Cuthbertson, *Emotions Run High as Texas Border Residents Feel Abandoned, Fear for Their Lives*, The Epoch Times, Oct. 13, 2021, https://www.theepochtimes.com/emotions-run-high-as-texas-border-residents-feel-abandoned-fear-for-their-lives_4047807.html.

Appx. 75

County Border Security."[280] The webpage for electronic donations is
https://defendourborders.org/, and it calls for donations with the scare tactic of an invasion:

> Texas is running out of time to secure the southern border! Each day, thousands of
> illegal aliens are invading Texas and spreading into the interior of the United States.
> Texans have had enough. Kinney County wants your help to secure our own border
> and stop relying on the federal government to save us. It is time for patriots to step
> up and SAVE THE UNITED STATES! [281]

The Kinney County government home page displays a similar statement and directs visitors "to
visit our Border Crisis webpage and make a donation."[282] The Kinney County attorney has
described the fund as set up to support "personnel."[283] It is fundraising for money to hire private
contractors to deter migration using the language of white supremacy.

    The misleading and discriminatory language on which Kinney County officials base their
need for money singles out immigrants and in particular Latinx immigrants for animosity. By
engaging in and promoting hate speech against migrants, allowing it to be publicly displayed on
an official's page and in official public meetings, Kinney County officials promote the
accompanying discriminatory narrative and encourage others to do so as well. The same officials
who seek to use this rhetoric to further anti-immigrant actions manage the county's participation
in the OLS trespass arrest program.

### E.    The OLS Trespass Arrest Program, Combined with Kinney County Officials' Rhetoric, Has Contributed to a Volatile Environment with the Potential for Violence

    The escalating xenophobic rhetoric and actions from state and local officials have created
a highly volatile environment that normalizes violence against migrants–nowhere more so than
in Kinney County. As described above, Val Verde County Sheriff Martinez has noted that people
in Val Verde County have asked him, regarding migrants on their property, "When can I
shoot?"[284] Violent rhetoric is especially prevalent in Kinney County. As described above, the
Kinney County Sheriff's Office shared a post likening brown-skinned men walking on a ranch to
deer to be shot. One local rancher told a news outlet, "I feel like there's only two ways that this
problem is going to get solved. And it's either going to be 'We the People' or the people up top. I

---

[280] NOTICE OF SPECIAL OPEN MEETING OF THE COMMISSIONERS COURT OF KINNEY
COUNTY, TEXAS COMPLETE AGENDA, Oct. 25, 2021,
https://cokinneytx.civicweb.net/document/18837.
[281] Defend Our Borders, https://defendourborders.org/ (last visited Nov. 23, 2021).
[282] Kinney County, Texas, http://www.co.kinney.tx.us/ (last visited Dec. 14, 2021).
[283] Gateway Pundit, *Kinney Co. TX Sheriff TX Takes Historic Action to Fight Back Against Illegal
Invasion*, YouTube, Oct. 18, 2021,
https://www.youtube.com/watch?v=jiTvH3jOXzE&list=UUMaLetBcZ8fqsoIryB015og&index=4&ab_channel=GatewayPundit.
[284] Hearing on H.B. 9, *supra* n. 3.

Appx. 76

sure don't like to think about 'We the People' taking care of it, but who knows."[285] Reportedly, this rancher in September asked four people to patrol his ranch, and those individuals unlawfully detained seven migrants.[286]

Kinney County officials' rhetoric and actions have dangerously contributed to creating and perpetuating the county's volatile, anti-immigrant environment. Kinney County's involvement in the OLS trespass arrest program demonstrates how state and local actors have not only (1) targeted Black and Brown noncitizens for arrest and (2) funneled them into a separate criminal process rife with civil rights abuses but also (3) in doing so, fueled anti-immigrant hate and contributed to creating a volatile atmosphere in Texas.

*** 

Accordingly, pursuant to Title VI and its implementing regulations, we urgently request that your office investigate the Texas Office of the Governor, Texas Department of Public Safety, Texas National Guard, Texas Parks and Wildlife Department, Texas Department of Criminal Justice, Texas Division of Emergency Management, Texas Office of Court Administration, Val Verde County, Kinney County, and Galveston County for engaging in discrimination prohibited by Title VI. The information detailed in this complaint triggers the "prompt investigation" requirement of Title VI's implementing regulations. We further request the termination of federal funding for all Texas agencies engaging in discrimination.

---

[285] Charlotte Cuthbertson, *Texas Ranchers Live in Fear as Encounters With Illegal Aliens Increase*, The Epoch Times, June 2, 2021, https://www.theepochtimes.com/texas-ranchers-live-in-fear-as-encounters-with-illegal-aliens-increase_3829471.html.

[286] The rancher told local news that DPS called him the next day and informed him that these actions were "not even legal" and "technically kidnapping," and that in future they would not take people so detained into custody. The article indicates that DPS did take the seven individuals apprehended by private citizens that night into custody, however. *See* Charlotte Cuthbertson, *Border Sheriff Says State Threatened to Pull Resources If He Didn't Stop Militia*, The Epoch Times, Oct. 27, 2021, https://www.theepochtimes.com/mkt_app/border-sheriff-says-state-threatened-to-pull-resources-if-he-didnt-stop-militia_4072144.html.

Appx. 77

These state and local agencies in Texas are targeting individuals for arrest based on race and national origin, including perceived immigration status, and are then placing those arrested individuals in a separate, criminal process and detention system that disregards their rights. Title VI forbids this discrimination. Please do not hesitate to contact us for additional information or to discuss any of these matters further.

Sincerely,

Kathryn Huddleston, Staff Attorney
Savannah Kumar, Attorney
Andre Segura, Legal Director
ACLU of Texas
P.O. Box 8306
Houston, TX  77288
713.942.8146
khuddleston@aclutx.org
skumar@aclutx.org
asegura@aclutx.org

Maya Chaudhuri, Legal Fellow
Camilla Hsu, Managing Attorney, Litigation
Amanda Woog, Executive Director
Texas Fair Defense Project
314 E. Highland Mall Blvd #204
Austin, TX  78582
512-637-5220
mchaudhuri@fairdefense.org
chsu@fairdefense.org
awoog@fairdefense.org

Laura Peña, Legal Director, Racial and
Economic Justice
Kassandra Gonzalez, Manne Family Fellow
Alexis Bay, Justice Catalyst Fellow
Texas Civil Rights Project
P.O. Box 219
Alamo, TX  78516
(956) 787-8171 ext. 125
laura@texascivilrightsproject.org
kassandra@texascivilrightsproject.org
bay@texascivilrightsproject.org

American Civil Liberties Union
Detention Watch Network
Immigrant Legal Resource Center
LatinoJustice PRLDEF
National Immigrant Justice Center
National Immigration Law Center
National Immigration Project (NIPNLG)

50

Appx. 78

February 23, 2022

Merrick Garland, Attorney General
Lisa Monaco, Deputy Attorney General
Vanita Gupta, Associate Attorney General
Kristen Clarke, Assistant Attorney General
Christine Stoneman, Chief, Federal Coordination and Compliance
United States Department of Justice
950 Pennsylvania Ave. NW
Washington, D.C.  20530

*Via email*

Re:    **Texas Migrant Arrest Program under "Operation Lone Star"—Continued Urgent Need for Investigation into Race and National Origin Discrimination**

Dear Attorney General Garland, Deputy Attorney General Monaco, Associate Attorney General Gupta, Assistant Attorney General Clarke, and Ms. Stoneman,

Over two months ago, we filed a federal civil rights complaint with the Department of Justice regarding Texas's "Operation Lone Star" (OLS) migrant arrest program. Against a backdrop of rising anti-immigrant hate in Texas, state and local officials have created a system to arrest and punish Black and Brown migrants. As we explained in our initial complaint, this is a system of state immigration enforcement under the guise of state criminal law. It targets Black and Brown migrants for arrest and prosecution on state criminal trespass charges, channeling them into a separate criminal system in which civil rights violations are rampant. State and local officials have been clear about the racist and xenophobic purpose of the program: to punish migrants for coming to the United States. Meanwhile, OLS trespass arrests continue apace, with more than 2,600 arrests to date.

In December, Texas was implementing this program in two counties. Now, Governor Abbott has begun awarding millions of dollars to more counties to join, and the program is rapidly expanding—currently poised to essentially double in size and expand to a new area of the state. The state is adding a second "processing center" for booking migrants into custody in Jim Hogg County, just north of the Rio Grande Valley. The current expansion is into counties that are not adjacent to the border itself, Jim Hogg and Uvalde. Yet, the goal will be the same—to somehow also identify and target migrants for arrest on misdemeanor trespass charges.

In December, we warned that, absent federal intervention, the OLS trespass arrest program would not only continue but would expand. That has now come to pass. Every day, the program tramples on the rights of Black and Brown migrants and contributes to the escalation of a volatile situation in south Texas as vigilante groups seek to hunt down migrants. Yet the Department of Justice (DOJ) is publicly silent. Our December complaint provided more than

enough information to trigger DOJ's duty to investigate Texas state and local agencies for violations of Title VI of the Civil Rights Act of 1964. However, in an ABC News article published on February 5, DOJ declined to comment as to whether the federal government has opened an investigation into OLS.[1]

We submit this addendum to our complaint to provide this and other new information. First, since December, we have analyzed 316 additional accounts of arrests by arresting officers and continued to monitor state and local agencies' implementation of the OLS trespass arrest program. As we detail, the program has continued to target Black and Brown migrants and continued to violate their rights in the program's separate criminal system. Second, we have learned that the Patriots for America vigilante group is directly collaborating with the Kinney County Sheriff's Office, including through repeated meetings and–in at least one instance–in detaining migrants, and that on at least one occasion they seem to have collaborated with the Texas National Guard as well. Third, we have uncovered new evidence that extremist local officials in Kinney County may have been central to the creation of the OLS trespass arrest program–as they are to its implementation. Kinney County officials first proposed a program of arresting migrants on state trespass charges in May 2021–months before the state program went into effect–and reportedly met repeatedly with the governor before the state program's implementation. In light of this new information, we provide additional evidence of Kinney County officials' racist and xenophobic motivations and actions–including the Kinney County Sheriff's meeting with the Patriots for America militia and the Sheriff's Office's partnership with the militia in detaining migrants.

The OLS trespass arrest program is dangerous, oppressive, and illegal. It must end. We request that you investigate the OLS trespass arrest program as swiftly as possible, including immediately initiating a formal investigation under Title VI, if you have not already. We further request that you state publicly, within the next two weeks, whether you have opened an investigation and that you provide a timeline for the expected DOJ determinations of whether, and when and how, to engage regarding the trespass arrest program. The expansion of the OLS trespass arrest program provides a renewed urgency to our prior request. As we explained in December, federal action is urgently necessary to protect the rights of Black and Brown migrants in Texas and to ensure that this kind of pretextual, discriminatory program does not continue to flourish in Texas or spread to other states.

---

[1] Armando Garcia, *Suicides, Living Conditions Spark Concern Among Texas National Guard Deployed at Border*, ABC News (Feb. 5, 2022, 10:03 AM), https://abcnews.go.com/US/suicides-living-conditions-spark-concern-texas-national-guard/story?id=82540700.

I.      **OLS Trespass Arrest Program Expansion: Opening of a Second Processing Center in Jim Hogg County, Expansion to Uvalde County, Anti-Immigrant State Rhetoric in Arizona**

In light of state and local officials' rapid expansion of the program in Texas and the spread to Arizona of the white supremacist "invasion" rhetoric that underpins the OLS trespass arrest program, investigation for violation of federal anti-discrimination protections is even more urgently necessary.

Jim Hogg County–located in south Texas, near the Rio Grande Valley––has accepted a $3.4 million award from the Office of the Governor "for law enforcement, jail operations, and court administration activities in direct support of Operation Lone Star."[2] A new processing center in Jim Hogg County, similar to that in Val Verde County, is now fully operational, managed by the Texas Division of Emergency Management.[3] Officials have stated that DPS troopers will begin arresting migrants in the county on state misdemeanor criminal trespass charges.[4] The purpose of the program, to target individuals for arrest and punishment based on race and national origin, is the same as elsewhere in the state: according to the Jim Hogg County judge, law enforcement "will be finding these noncitizens, and bringing them in before they come into the community."[5]

The OLS trespass arrest program has also expanded to Uvalde County, which has accepted a $3.3 million grant in return for adopting the program. The county sheriff has stated that DPS will begin making criminal trespass arrests. As the local news article describing the roll-out put it, "Similar to Kinney County, Uvalde County will now be participating in prosecuting immigrants suspected to have entered the country illegally for trespassing."[6]

While both Uvalde and Jim Hogg Counties do not directly border Mexico, Governor Abbott has reiterated that the purpose of the OLS trespass arrest program is to arrest individuals based on their national origin, including immigration status, in violation of Title VI. In announcing the additional funding used to support the two counties, Governor Abbott stated that

---

[2] Juan Carlos Guerra JIM HOGG County JUDGE, *Governor Abbott Office of the Governor Awards Jim Hogg County $3.4 Million In Funding for Operation Lone Star*, Facebook (Jan. 18, 2022), https://www.facebook.com/144671662907821/photos/a.144695389572115/917763645598615/.
[3] *Id.*; Michael Gibson, *Migrant Processing Center in Jim Hogg Now Officially Operational*, KIII (Feb. 9, 2022), https://www.kiiitv.com/article/news/local/migrant-processing-center/503-06915df3-73fe-4def-8f1f-bd6c3d3aaa53.
[4] *Id.*
[5] *Id.* (video at ~ 0:00:45).
[6] Julye Keeble, *County Gets $3.3 Million*, Uvalde Leader-News (Feb. 13, 2022), https://www.uvaldeleadernews.com/articles/county-gets-3-3-million/.

he has "creat[ed] a system to arrest and jail illegal migrants trespassing or committing other state crimes in Texas" and described the purpose of OLS as in part "deterring illegal immigration."[7]

There is every indication that, absent federal intervention, state and local officials in Texas will continue to expand their use of the state criminal system to illegally target Black and Brown migrants for arrest and for placement in a separate criminal process that tramples on their civil rights. Funding is currently plentiful: Governor Abbott announced in late December that his office would award $38.4 million in funding to localities for OLS.[8] The grant to Uvalde County is for two years.[9] And state officials have ambitions for further expansion of the OLS trespass arrest program. The state is reportedly negotiating with local officials in Brooks County–also just north of the Rio Grande Valley–over the potential construction of a third processing center.[10]

Beyond Texas, the white supremacist rhetoric that motivates the OLS trespass arrest program is spreading to other states. On February 7, 2022, the Arizona attorney general issued an opinion that claimed that Arizona may "engage in war" at the state's southern border in light of an "invasion"—laundering the same racist rhetoric that state and local officials in Texas have used to justify the OLS trespass arrest program into a purported legal justification.[11] This kind of dangerous political posturing is growing—fueled in part by the use of that rhetoric around Operation Lone Star.

The OLS trespass arrest program and its violations of civil rights law are only becoming more entrenched. DOJ must urgently open an investigation to protect the rights of Black and Brown migrants and to prevent the further spread of this kind of pretextual, discriminatory program—both within Texas and to other states.

## II.    Continued Accumulation of Evidence that the OLS Trespass Arrest Program Violates Title VI

In the absence of federal intervention, the discrimination against Black and Brown migrants that we described in our initial complaint continues apace. Specifically, law enforcement continues to target migrants and engage in profiling. And the separate criminal system riddled with civil rights abuses in which those arrested for trespass under OLS are placed continues to flourish.

---

[7] Press Release, Office of the Texas Governor, Governor Abbott Announces An Additional $38.4 Million In Funding For Operation Lone Star (Dec. 20, 2021), https://gov.texas.gov/news/post/governor-abbott-announces-an-additional-38.4-million-in-funding-for-operation-lone-star.
[8] *Id.*
[9] Keeble, *supra* note 6.
[10] Gibson, *supra* note 3.
[11] *Re: The Federal Government's Duty to Protect the States and the States' Sovereign Power of Self-Defense When Invaded*, Ariz. Att'y Gen. Op. I22-001 (R21-015) (Feb. 7, 2022), https://www.azag.gov/sites/default/files/2022-02/I22_001b.pdf.

### A.  Ongoing Profiling and Targeting of Migrants in Arrests

### 1.      Probable Cause Affidavits and Unlawful Arrests

Our original complaint analyzed DPS trooper affidavits providing arresting officers' accounts of 168 OLS trespass arrests and concluded that there were severe racial disparities and clear indications of profiling based on race and national origin. We have now analyzed an additional 316 trespass arrests affidavits —277 from arrests in Kinney County and 38 from arrests in Val Verde County. These affidavits support our previous conclusion that trespass arrests under Operation Lone Star are severely racially disparate and evince racial profiling. They further raise serious concerns about irregularities in the Kinney County sheriff's and Kinney County attorney's role as complainants in trespass cases on property that they manage— at the same time that they are key implementers of the trespass program.

These additional arrest affidavits further confirm that almost all arrests under the OLS trespass arrest program are of Latino men. In fact, 100% of the arrests in Kinney County were recorded as "H/M" (Hispanic male). In Val Verde, all but two arrests were recorded as "H/M." The two exceptions were coded as W (white) but had surnames that are typically associated with Latinx identity[12]—suggesting that they may have been miscoded, a practice that is not uncommon among law enforcement officers.[13] For Val Verde County, 58.3% describe country of origin and/or perceived immigration status: 50% note perceived immigration status and 10.5% specify country of origin. (Some narratives include both immigration status and country of origin.) In 31% of cases in Kinney County, the arrest narrative describes the individual's country of origin and/or perceived immigration status: 7% specify country of origin and 24% note perceived immigration status. At least one analyzed affidavit in Kinney County specifies race, stating, "I made contact with the Hispanic males and found they were not part of a family unit and were undocumented migrants from Mexico." The lower numbers for Kinney County are in part because many affidavits from arrests in the county, particularly the many involving arrests at the county rail yard, tend to be barebones and boilerplate.

---

[12] *See Melendres v. Arpaio*, 989 F. Supp. 2d 822, 837 n.29 (D. Ariz. 2013) (explaining, in a racial profiling case,  that "Hispanic names are not a perfect indicator of Hispanic identity" but holding, for purposes of the racial profiling litigation, that "[a] Hispanic surname is nevertheless probative of Hispanic identity"). The last names here are Castillo Cruz and Lopez Perez.

[13] *See, e.g.*, Richard A. Webster, *"If Everybody's White, There Can't Be Any Racial Bias": The Disappearance of Hispanic Drivers From Traffic Records*, ProPublica (Nov. 22, 2021, 7:00 AM), https://www.propublica.org/article/if-everybodys-white-there-cant-be-any-racial-bias-the-disappearance-of-hispanic-drivers-from-traffic-records; Fifteenth Report, Independent Monitor for the Maricopa County Sheriff's Office at 64, *Melendres*, 2:07-cv-02513 (D. Ariz. May 7, 2018) (Dkt. 2279 at 64) (describing "deputies' failure to properly document the race or ethnicity of passengers").

As before, beyond these bare statistics, the descriptions in the arrest affidavits indicate racial profiling. First, descriptions from arresting officers imply that individuals' perceived immigration status was relevant to the decision to initiate law enforcement action or to arrest. For example, one affidavit states, "I . . . apprehended four suspected illegal aliens. After further investigation, Texas DPS confirmed the four individuals were trespassing on the Burr Ranch and were illegal aliens." Another affidavit says, "While working Operation Lone Star at the gravel pit, National Guard Randy Cantu encountered possible non-citizens. Cantu escorted the non-citizens to Trooper Sylvia Alaniz and Prob. Trooper Cassandra Armas. The non-citizens were identified as . . . " A third describes how law enforcement was "advised of a group of non-citizens trespassing." A fourth states, "Trooper Melvin made contact with the males and identified them as undocumented persons from Mexico."

As is evident from the above, as before, numerous affidavits casually describe individuals as "undocumented" or otherwise describe their perceived immigration status—often apparently based on sight or, as above, appearing to find immigration status as relevant to the arrest determination. For instance, one affidavit states, "I observed 3 undocumented adult males walking." Another narrates, "I saw seven undocumented adult males jumping a clearly marked fence with a 'no trespassing' sign." A third describes other law enforcement informing the affiant "that a total of 2 undocumented male migrants were located." Yet another says, "I arrived on scene and observed 5 UDAs [undocumented adults]" and describes how "all other UDAs [except a family unit] were placed under arrest." This list is far from exhaustive.

Finally, specific to Kinney County, both the county attorney and the county sheriff are complaining witnesses in some affidavits. Kinney County Attorney Brent Smith is the complaining witness—that is, the person pressing charges for criminal trespass—in at least five cases. Further, in July 2021, Kinney County Sheriff Brad Coe publicly mentioned three arrests for trespass on County Attorney Smith's ranch, pursuant to Kinney County's efforts to begin arresting migrants for trespass—presumably making Mr. Smith the complaining witness in those cases as well. Our original complaint documented three cases in which Sheriff Coe was the complaining witness. In these additional affidavits, we have found five additional cases in which Sheriff Coe was the complaining witness.

We are unaware of either County Attorney Smith or Sheriff Coe publicly disclosing their involvement in the OLS trespass arrests as a complaining witness as a potential conflict of interest, or of either of them taking any remedial measures associated with actual or perceived conflicts of interest. This dual involvement is, as we explained in December regarding Sheriff Coe, at minimum yet another concerning irregularity. It is especially so given Kinney County's possible key role in creating as well as implementing the OLS trespass arrest program, described *infra*. The dual involvement raises the possibility that this discriminatory program's design stems

from law enforcement with underlying biases related to their own property, in addition to racism and xenophobia.

### 2.    Texas Attorney General Ken Paxton's Legal Guidance Providing a Green Light for Racial Profiling

In January 2022, Texas Attorney General Ken Paxton released guidance for "local officials, law enforcement officers, and private property owners" on "basic legal concepts to consider" in light of a purported "border crisis."[14] This guidance, from the top law enforcement official in the state, is a green light for state and local authorities to engage in profiling on the basis of race and national origin. In fact, Attorney General Paxton's guidance mischaracterizes Supreme Court rulings erroneously suggesting that discrimination on the basis of race and national origin is permissible so long as it is hidden.

The guidance's mischaracterization of Supreme Court precedent leaves the reader with the impression that veiled discrimination, including profiling, is permissible. Two of the four Supreme Court cases it chooses to highlight are *Wren v. United States*[15] and *Trump v. Hawaii*.[16] The guidance states, "Under *Wren*, an officer who makes an otherwise permissible arrest—one supported by probable cause—will be able to support that arrest even if a defendant claims that it was motivated by his immigration status. Officers should not be deterred from their duties due to the federal government's refusal to enforce federal immigration law."[17] This is, of course, inaccurate: *Wren* is relevant only to whether an arrest violates the Fourth Amendment, and an arrest consistent with the Fourth Amendment may still violate the Fourteenth Amendment's protections against discrimination on the basis of race, national origin, gender, or other characteristics.[18]

As to *Trump*, the guidance states that the case "counsels law-enforcement agencies to avoid statements which can be unfairly construed as demonstrating prejudice against a race, ethnicity, religion, or other identifiable group. . . . In passing new local laws, ensure they are neutral on their face and in application. And avoid the misimpression that any law or its application is motivated by animus toward a particular group."[19] This is, essentially, an explanation of how to conceal discriminatory animus. Later on, the guidance states, "Texas

---

[14] Tex. Att'y Gen. Ken Paxton, Border Crisis: Liberty & Justice for Texas (Jan. 24, 2022), https://www.texasattorneygeneral.gov/sites/default/files/images/child-support/OAG_border_crisis_packet%20(final%20draft%2001.24.2022).pdf.

[15] 517 U.S. 806 (1996).

[16] 138 S. Ct. 2392 (2018).

[17] Paxton, *supra* note 14, at 2.

[18] *See Wren*, 517 U.S. at 813 ("We of course agree . . . that the Constitution prohibits selective enforcement of the law based on considerations such as race. . . . [T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause.").

[19] Paxton, *supra* note 14, at 3.

Police Officers and Sheriffs . . . may arrest anyone that they have probable cause to believe has committed a crime."[20] The document does not discuss the illegality of profiling, and its only mention of race is in its description of *Trump*.

In other words, the guidance facilitates law enforcement's ongoing, deliberate targeting of Black and Brown migrants under the OLS trespass arrest program. Further, the same white supremacist rhetoric regarding migrants—fear-mongering and dehumanizing—regularly used by state and local officials to justify Operation Lone Star is also present in the guidance. Attorney General Paxton's claims that Black and Brown migrants are dangerous criminals who carry disease are the same false assertions that racist, nativist politicians have made in the United States since the 1900s.[21] As the guidance demonstrates, state officials in Texas continue to use racist and xenophobic rhetoric to justify discriminatory actions against Black and Brown migrants.[22]

### B.  A Criminal System Becoming More Separate

#### 1.  Separate Standards for Assigned Counsel

Since our original complaint, the distinctions between the criminal system established for OLS prosecutions and that for every other criminal case have deepened. The OLS system not only continues to operate with its own process for appointment of counsel, but now even applies its own standards for assigned counsel. On January 21, 2022, the Chief Justice of the Supreme Court of Texas issued an order authorizing lawyers licensed by other states, but not by Texas, to practice in the state solely for the purpose of representing indigent people charged with state criminal misdemeanors under OLS, but not any other cases.[23] These developments only underscore and entrench the separateness of the system by which OLS arrestees are prosecuted.

#### 2.  Continued Rights Violations in the Separate Criminal System

---

[20] Id. at 4.

[21] *Id.* at 1 ("Hundreds of thousands of illegal aliens are pouring over our border. They are temporarily detained—if at all—before being released, and then make their way through your counties, cities, and property. They bring with them property destruction, theft, financial costs, risks of disease, crime, and the cartels.").

[22] Attorney General Paxton is also fueling the vigilantism that accompanies the OLS trespass arrest program and that local officials such as those in Kinney County have encouraged: the guidance solicits from the public "any illegal immigration- or border-related information, complaints, tips, leads, or recommendations," providing an email address to send the information to the Office of the Attorney General. Paxton, supra note 14, at 1.

[23] Emergency Order Regarding Indigent Defense and the Border Security State of Disaster Permitting Out-of-State Lawyers to Practice in Texas Temporarily, Misc. Docket No. 21-9104 (Tex. Jan. 21, 2022), https://www.txcourts.gov/media/1453498/229007.pdf.

Outcomes for migrants' criminal cases have been as expected after the remaking of the bench in Kinney County in December 2021. As we explained in our initial complaint, after the Presiding Judge of the Sixth Administrative Judicial Region, Stephen Ables, assigned visiting judges to Kinney County to deal with accumulated cases, those judges granted relief to many migrants seeking release. Kinney County Judge Shahan removed those judges unilaterally in December, without citing any legal authority. He then installed judges of his own choosing. Progress in migrants' cases in the months since has borne out advocates' concerns over the new makeup of the Kinney County judiciary. In contrast to the visiting judges assigned by Judge Ables, judges handpicked by Judge Shahan have denied all applications for release.[24]

With Kinney County prosecutors dilatory in filing charges and Judge Shahan's chosen judges denying applications for relief, migrants have continued to be detained for long periods of time.[25] The results of prolonged pretrial detention in dire conditions are hardly surprising. In one illustrative instance, around 150 men against whom the Kinney County prosecutor had failed to file charges during the statutorily prescribed period of time filed a joint writ of habeas corpus in district court. When the writ was heard on December 13, 2021, the men had been held for between 76 and 107 days.[26] At the hearing, the prosecutor's office did not refute that it had failed to file timely charges.[27] The court nonetheless denied the writ. By the time the appellate court issued an emergency decision reversing that denial on January 24, 2022, all but four of the appellants no longer had live claims.[28] Of the moot cases, 133 had been resolved by pleas of no contest or guilty, according to defense lawyers, to ensure an end to detention.[29] 131 of those who entered pleas had been held for over 100 days.[30] This in spite of the fact that prosecutors never even purported to have filed charges within the required timeframe of 15 or 30 days. Similar delays continue: one individual in custody as of mid-February had been held more than 164 days.

While in custody, individuals continue to report a lack of meaningful access to counsel, even when counsel is assigned. For example, the Texas Jail Project has received reports from four people in the past two months who have been detained for over four months without any

---

[24] J. David Goodman, *Cases Dismissed, Judges Replaced: Texas Struggles to Prosecute Migrants*, New York Times, Jan. 27, 2022, https://www.nytimes.com/2022/01/27/us/texas-migrants-operation-lone-star.html.

[25] *Id.* If prosecutors fail to file charges within 15, or, at most, 30 days for misdemeanors of the kind charged in OLS prosecutions, Texas law requires that the defendants be released on personal bond or that their existing bonds be reduced to affordable amounts. *See* Original Complaint at 28.

[26] *EX PARTE [NAME REDACTED], et al.*, No. 04-21-00579-CR, 2022 WL 202720 at *1, (Tex. App.Jan. 24, 2022).

[27] *Id.* at 3.

[28] *Id.* at 2.

[29] Advisory for Suggestion of Mootness for 140 Appellants and Response for Remaining Four Appellants, at 1, *EX PARTE [NAME REDACTED], et al.*, No. 04-21-00579-CR, 2022 WL 202720 (Tex. App. Jan. 24, 2022). https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=be2db5cb-a9fe-441a-b147-61943ce69f74&coa=coa04&DT=Response&MediaID=f8f5d3dd-926e-46ec-94f0-45470bef60f9..

[30] *Id.*

contact with their assigned counsel.[31] Lacking contact with counsel, detained individuals continue to report having no knowledge of the status of their cases.[32] Several detained individuals have expressed being unaware that their cases are criminal rather than civil.[33] Without even the most basic information about their cases, detained individuals are largely powerless to challenge their pretrial detention within the separate criminal system in which they are being processed. In light of all this, it is clearer than ever that federal investigation is required.

### 3.    Inhumane Conditions of Confinement Worsen

The conditions of confinement for people held at the two converted state prisons used for the OLS arrest program–the Dolph Briscoe Unit in Dilley, Texas, and the Segovia Unit in Edinburg, Texas–have further deteriorated since December. The Texas Jail Project has continued to track detained people's reports of conditions at both facilities, including inadequate medical care and food.[34] A lack of adequate medical care at both prisons has put detained people's lives and well-being at risk.[35] Several detained people have reported a continued lack of in-person medical treatment from doctors or nurses.[36] Instead, any illness is treated with what appears to be Tylenol.[37] At least one prison is not practicing adequate COVID safety, including failure to comply with CDC isolation guidance.[38] Detained people suffering from mental illness are also denied necessary treatment or attention.[39] One detained person watched another detained individual, who appeared to be mentally ill, scoop garbage into a cup and drink the mixture as guards watched and did nothing.[40]

Detained people continue reporting inadequate food at both OLS trespass arrest prisons. Detained people have continued to receive meals at bizarre times and in small portions, noting that they are given two to five minutes to eat these meals.[41] One man reported finding worms in his beans on at least two occasions.[42] Another detained person explained that anyone is not able to finish their meal in the allotted minutes, they are forced to discard the remains and go hungry.[43]

---

[31] Sec. Decl. of Benjamin L. Drachman, ¶ 4(a).
[32] *Id.*
[33] *Id.*
[34] *Id.* ¶ 4(b).
[35] *Id.*
[36] *Id.*
[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.*
[41] *Id.* ¶ 9
[42] *Id.*
[43] *Id.*

As of February 19, 2022, Texas Jail Project has received no response from the Texas Commission on Jail Standards regarding complaints it sent in December 2021 documenting the inhumane conditions of confinement at Briscoe and Segovia.[44] These inhumane conditions are continuing to put the health and well-being of detained people at serious risk, further urgently necessitating federal investigation.

### C. Continued Collusion by Kinney County with Vigilante Groups and Private Citizens to Target Migrants

New information about the scope of the Kinney County Sheriff's Office's partnership with private individuals, particularly close partnership with the Patriots for America vigilante group that includes arrests of migrants, underscores the urgent need for federal investigation and intervention.

### 1.    Kinney County's Collaboration with Patriots for America

There appears to be a thriving partnership between the Kinney County Sheriff's Office and Patriots for America–one that includes the arrest of migrants and that the Sheriff's Office contemplates continuing for years. As one militia member put it, "I was in a meeting when I was down there with Samuel Hall [the leader of Patriots for America], meeting with the sheriff. That sheriff supports our organization, supports the Patriots for America 110%."[45] Mr. Hall told the *Wall Street Journal* in December that he works closely with Sheriff Coe.[46] For his part, Sheriff Coe informed the *Wall Street Journal* that he periodically meets with Mr. Hall.[47] On December 13, 2021, Mr. Hall posted photos from such a meeting on Facebook, including one in which Sheriff Coe has his arm around Mr. Hall.[48] Mr. Hall wrote that Patriots for America "had a great meeting with Sheriff Coe this morning" and described Patriots for America as "doing all we can to stand in the gap . . . to do what our Federal and State government refuses to do and stand up for our own!!"[49]

This partnership between the Kinney County Sheriff's Office and Patriots for America extends to arrests of migrants and to patrols by the vigilante group. In December, Mr. Hall told the *Wall Street Journal* that Patriots for America calls the Kinney County Sheriff's Office

---

[44] *Id.* ¶ 5.
[45] Rodney Elijah, *My experience at the Texas Border with Patriots for America militia*, Facebook (Dec. 30, 2021), at ~ 9:15, https://www.facebook.com/rodney.perez.96/videos/5078830938817149.
[46] Elizabeth Findell, *In a Texas Border Town, Armed Groups Arrive to Look for Migrants*, Wall Street Journal, Dec. 16, 2021, https://www.wsj.com/articles/in-a-texas-border-town-armed-groups-arrive-to-look-for-migrants-11639668989.
[47] *Id.*
[48] Sanuel Hal, Facebook (Dec. 13, 2021), https://www.facebook.com/permalink.php?story_fbid=419203376602027&id=100055371055772. Mr. Hall goes by "Sanuel Hal" on Facebook, possibly in an effort to evade deplatforming.
[49] Id.

whenever they encounter migrants in the county.[50] A member of Patriots for America stated in a video posted online that the group keeps the sheriff's office apprised as to where they are in the county.[51]

For example, on December 18, Patriots for America detained three migrants and turned them over to a Kinney County sheriff's deputy.[52] Video footage shows Mr. Hall's group stopping and getting out of their vehicles and repeatedly calling, in Spanish, "sit down!" The individuals addressed by this call sat down. The militia members, at least some of whom were dressed in tactical vests, did not identify themselves as private citizens to the migrants or otherwise make clear that they were not law enforcement. Instead, they questioned those apprehended about their reasons for coming to the United States, their journey, and their families. After Patriots for America detained the migrants, a Kinney County Sheriff's Office deputy arrived on the scene to take the migrants into custody. Following the migrants' transfer to Kinney County Sheriff's Office custody, the deputy thanked the militia members and shook hands with them.[53]

### 2. Dangers Posed by Kinney County's Collaboration with Patriots for America

The Kinney County Sheriff's Office's collaboration with Patriots for America is a recipe for rights violations and potential violence due to both the vigilante group's actions, which place migrants and Black and Brown residents of Kinney County at risk of unlawful detention and physical danger, and its underlying white supremacist beliefs. First, the vigilante group "patrols" with firearms. The presence of weapons–in one video, being pointed by a militia member off the side of a vehicle[54]–introduces a high degree of volatility and the potential for violence.

Second, in addition to carrying weapons, Patriots for America members embark on their missions in military-style tactical equipment and, by Mr. Hall's own admission, leave migrants with the impression that members of the group are law enforcement.[55] Mr. Hall has described his group's goal as "to disrupt and frustrate" migrants.[56] Video of Patriots for America's December

---

[50] Findell, *supra* note 46.

[51] Rgvtruth, *Answering the call*, Rumble (Dec. 26, 2021), https://rumble.com/vrgfqh-answering-the-call.html (video at ~ 47:30).

[52] Sanuel Hal, Facebook (Dec. 18, 2021),
https://www.facebook.com/permalink.php?story_fbid=422509159604782&id=100055371055772.

[53] Rgvtruth, *Patriots for America militia finds illegals on patrol*, Rumble (Jan. 11, 2022),
https://rumble.com/vsed7k-patriots-for-america-militia-finds-illegals-on-patrol.html. This video is plainly the same set of detentions as in the video posted by Mr. Hall to Facebook on December 18.

[54] Rgvtruth, *Answering the call*, *supra* note 51 (video at ~ 29:00).

[55] As the *Wall Street Journal* put it, "Mr. Hall said he doesn't forcibly detain anyone, which would be illegal. That said, he said he realizes that foreigners encountering heavily armed people may not understand that." Findell, *In a Texas Border Town, Armed Groups Arrive to Look for Migrants*, *supra* note 46.

[56] *E.g.*, Rgvtruth, *Answering the call*, *supra* note 51 (video at ~ 6:30).

18 detention of three migrants clearly shows that those individuals assumed that the militia members were authority figures–asking for help seeking asylum, for example. The repeated directions to them to "sit down," the military-style gear, and the assumption of authority through–for example–their questioning of the migrants all left the unspoken impression that Patriots for America was in fact law enforcement and that those directed to sit down were not free to leave. With the Kinney County Sheriff's Office taking over the detention, Patriots for America functioned as unofficial immigration or law enforcement.[57] Another member of the militia has noted, "Our presence alone . . . we deter them from taking the route that they're taking. . . . They don't know who we are. They don't know if we're law enforcement."[58] Patriots for America members' recognition that migrants may have the impression that the militia members are law enforcement, combined with the group's commands to migrants, questioning as if they were authority figures, and appearance in military-style gear and with guns all add up to detention of migrants–resulting in "disrupt[ion] and frustrat[ion]"--by creating an impression of being law enforcement. Ironically, militia members' actions in detaining migrants can in fact be criminal.[59]

Finally, Kinney County's entanglement with Patriots for America is horrifying due to the group's white supremacist ideology. Mr. Hall uses the racist rhetoric of "invasion."[60] A fundraising page set up to support Patriots for America falsely claims an "invasion" of Black migrants: "At this moment an invasion of approximately 80,000 Haitians is headed toward our Texas border . . . . Patriots for America is now trying to protect and to secure Kinney County."[61] One member of the militia has publicly described the origins of his involvement as rooted in white supremacy: as stemming from opposition to the Black Lives Matter movement for racial justice and, specifically, the triggering event of Parker County Commissioners considering removing the Confederate statue on the courthouse lawn in Weatherford, Texas. He described bringing a weapon prepared for violence to that protest—"I remember getting mad, and I said, not here . . . and I pumped the shotgun" and drove to Weatherford—and meeting like-minded others that provided the entry point to a movement.[62] Another member of the militia described the group's mission in racist terms, saying, "What's happening at the border is coming this way . . . to our community, to our neighborhood, to our states . . . and we have to stop it." He went on to expand, further relying on racist tropes: "There are some really bad people that are coming across," claiming that many people are coming from countries other than Mexico "and not all of

---

[57] Rgvtruth, *Patriots for America militia finds illegals on patrol*, *supra* note 53.
[58] Rodney Elijah, Facebook (Dec. 30, 2021),
https://www.facebook.com/rodney.perez.96/videos/5078830938817149.
[59] *See, e.g.*, Tex. Penal Code §§ 20.01(1), 20.02(a).
[60] Rgvtruth, *Answering the call*, *supra* note 51 (video at ~ 6:30).
[61] Jeff Hauk, *Border Call Relief Fund for Patriots for America*, GiveSendGo,
https://givesendgo.com/G2B6U?utm_source=sharelink&utm_medium=copy_link&utm_campaign=G2B6
U&fbclid=IwAR0leRhXqO5u0jLMRo-sPmfDr4AUEjGdOFIzxTICEe7CKXzLsRBcd8WX5OI.
[62] Rgvtruth, *Answering the call*, *supra* note 51 (video at ~ 25:00).

them are good." He then repeated racist tropes about migrants' purported lack of morals, ethics, and "heart" due to a "different upbringing," as well as racist beliefs about migrants' inherent criminality.[63]

But, notwithstanding the enormous problems with a group of private armed individuals seeking out migrants, the Kinney County Sheriff's Office evidently plans for its collaboration with the vigilante group to be a long one. The Patriots for America webpage states that "Kinney County Sheriff Brad Coe anticipates the need for help for an additional 3 years."[64] Moreover, the Sheriff's Office may have played a role in the vigilante group's presence in the county from early on. A militia member recounted that she became involved because another member "called me up one day at 11:00 and said meet us at the Sheriff's Office at 4, and so I was on the road by noon, coming down here to meet people I'd never laid eyes on before."[65]

### 3.    Need for Federal Intervention to End Law Enforcement Collaboration with White Supremacist Vigilante Groups

As with the OLS trespass arrest program broadly, there is an urgent need for federal action to ensure that collaboration with white supremacist vigilante groups and the potential for violence created by white supremacist vigilantism do not flourish in Kinney County or spread elsewhere. Both are currently occurring.

Other vigilante groups are also attracted to Kinney County by the OLS trespass arrest program. In addition to Patriots for America and Women Fighting for America,[66] a North Texas vigilante group called the Patriot Boys has also been present in Kinney County. One of its leaders was arrested in Kinney County in December for allegedly engaging in violence against law enforcement at the January 6 attack on the U.S. Capitol, including by swinging a large metal pole; recruiting others to join the group and travel to Washington, D.C. for the attack; and engaging in further recruitment afterward.[67] He was reportedly in Kinney County in response to an interview of Sheriff Coe on Kinney County's efforts to engage in immigration enforcement by a far-right media outlet: he had traveled to the county himself and mobilized other members of the group to travel with him.[68]

---

[63] Rodney Elijah, Facebook (Dec. 30, 2021), https://www.facebook.com/rodney.perez.96/videos/5078830938817149.

[64] Patriots for America, *Patriots for America*, https://www.patriotsforamericamilitia.com/.

[65] Rgvtruth, *Answering the call*, *supra* note 51 (video at ~ 17:30).

[66] *See* Original Complaint at 45-46.

[67] *See* Findell, *supra* note 46; Press Release, Department of Justice, *Two Texas Men Charged With Assault on Law Enforcement During Jan. 6 Capitol Breach*, Dec. 14, 2021, https://www.justice.gov/usao-dc/pr/two-texas-men-charged-assault-law-enforcement-during-jan-6-capitol-breach.

[68] Jordan Green, *Two Patriot Boys Arrested on Jan. 6 Charges*, Raw Story, Dec. 14, 2021, https://www.rawstory.com/officer-michael-fanone-2656040043/.

And other law enforcement agencies may be beginning to collaborate with vigilante groups–a dangerous practice that will, as in Kinney County, result in rights violations and, potentially, violence against migrants. It appears that the Texas National Guard may be collaborating with Patriots for America. A video on Mr. Hall's Facebook page appears to show him getting out of the same car as a member of the Texas National Guard, responding to migrants arriving from an area with a fire. As the migrants arrive, Mr. Hall appears to assume control, asking them, "Y'all okay? Y'all need any medical?" Three members of the National Guard and a boat with law enforcement are present; the members of the National Guard stand silently.[69] It is unclear from the video whether this incident occurred in Kinney County or elsewhere.

The atmosphere has, since December, only become more volatile in south Texas. One Patriots for America militia member has described, "We'll do what we have to do to protect us, our neighbors, and our community."[70] Meanwhile, vigilante group activity appears to be flourishing, and Kinney County itself is deepening its collaboration with private individuals to pursue migrants. On January 10, 2022, the Kinney County Commissioners Court met and approved the purchase of a drone in the amount of $19,316.00 for the Kinney County Sheriff's Department.[71] During the meeting, the commissioners discussed an evening demonstration with the drone, noting that over 20 migrants were found. To pay for the drone, the county chose to rely on donated funds from Granite Defense Technologies, a Texas corporation that sells drones.[72] This further militarization of the border via collaboration with private citizens places Black and Brown individuals in south Texas's border areas in jeopardy–whether or not they are migrants. The potential for violence is very real.

### III.    Kinney County: Officials' Apparent Role in Creating the OLS Trespass Arrest Program, and Additional Evidence of Racist, Anti-Immigrant Animus

Since the filing of our initial complaint, we have learned that Kinney County officials proposed a trespass arrest program for migrants in May 2021, before Governor Abbott had even declared a state of disaster; that Kinney County officials have stated that they began arresting migrants for criminal trespass by July 19, 2021, before the state of Texas began doing so; and that Kinney County officials repeatedly met with the governor before the announcement of the

---

[69] Sanuel Hal, Facebook (Feb. 12, 2022),
https://www.facebook.com/permalink.php?story_fbid=456202799568751&id=100055371055772.
[70] Rodney Elijah, Facebook (Dec. 30, 2021),
https://www.facebook.com/rodney.perez.96/videos/5078830938817149.
[71] Agenda, Notice of Regular Open Meeting of the Commissioners Court of Kinney Co., Texas (Jan. 10, 2022), https://cokinneytx.civicweb.net/Portal/MeetingInformation.aspx?Org=Cal&Id=271 (Item I addresses Kinney County's purchase of a drone).
[72] *Our Story*, Granite Defense, https://www.granitedefense.com/about (stating that Granite Defense Technologies was founded in 2017 "to serve the Military and Public Safety Communities.") (last accessed Feb. 23, 2020).

state trespass arrest program. In short, it appears likely that Kinney County officials influenced the development of or even suggested the creation of the OLS trespass arrest program. In our initial complaint, we described rhetoric by state and local officials, in implementing the OLS trespass arrest program, that evinces extremist racist and anti-immigrant animus. We also described how Kinney County officials' rhetoric and actions encapsulate the interrelationship between racism and xenophobia, on the one hand, and the OLS trespass arrest program, on the other. Based on this new information, Kinney County officials' extremist rhetoric and actions appear to be not only at the heart of the trespass arrest program's implementation in their county but also of its very creation.

### A.  Kinney County Officials' Discussion of a Trespass Arrest Program

In May 2021—two months before Texas state and local officials began implementing the migrant arrest program, and days before Governor Abbott declared a disaster due to immigration—Kinney County held a rally in Brackettville regarding border issues. A flyer for the event, which included the county seal, stated, "COME JOIN YOUR FELLOW TEXANS AND HELP TAKE BACK OUR STATE!" Speakers included Kinney County Attorney Brent Smith, Kinney County Sheriff Brad Coe, and Texas State Rep. Bryan Slaton, as well as private individuals such as Jaeson Jones of Newsmax and George Rodriguez, host of the El Conservador radio show.[73] At the event, Sheriff Coe stated that after working with the county attorney, the county judge, and "several others," he was "going to start here, locally, we catch them, we're going to start prosecuting these people that are trespassing on y'all's property." He further explained:

> And it's going to be something new. We're going to try for a quick turn-around process—
> get them in, book them, magistrate them, take them to court, all to do within 24 to 48 hours.
> They may be released after time served, but it will give them a criminal record. So if they
> ever try to apply for something later on in their life, that will flag them.[74]

Further, at a "border security forum" hosted by Texas Rep. Bryan Slayton at the Texas Legislature in July 2021, Sheriff Coe stated that the county had "met with the Governor several times" and that Sheriff Coe and County Attorney Smith had "come up with a plan that we've been trying to implement . . . we formulated this back in April . . . anybody that we catch on

---

[73] The flyer is visible as the backdrop to a May 24, 2021 Facebook post on the Kinney County, Texas page titled "Kinney County Border Crisis Rally." Kinney County, Texas, Facebook (May 24, 2021), https://www.facebook.com/Kinney-County-Texas-106656308026808/.

[74] Be Free, *Border Crisis Rally*, Brackettville Texas, YouTube (May 24, 2021), https://www.youtube.com/watch?v=DmFr3BBVvfU&ab_channel=BeFree.

private property, we will prosecute for criminal trespass." He described the limiting factors for the Kinney County trespass plan as "jail space" and "lack of funding."[75]

With the exception of the provided time frame of 24 to 48 hours, the migrant arrest program described by the Kinney County Sheriff in May 2021 was essentially that adopted by Governor Abbott and implemented via state agencies beginning in July 2021. In fact, the Office of the Governor stated–following Sheriff Coe's own rationale–that for the trespass program, "the goal is . . . to make it less attractive to cross the border" and that the program "has the potential to impact your ability to get citizenship."[76] In light of Sheriff Coe's description of repeated meetings with Governor Abbott and his portrayal of a migrant arrest program before Governor Abbott had declared a state of disaster, it appears likely that Kinney County officials were directly involved in the initial development and creation of the OLS trespass arrest program.[77] In short, ideas for how to operationalize white supremacist rhetoric are filtering from the counties to the state and back, creating a self-reinforcing system in which state and local authorities move in lockstep to arrest and detain migrants.

## B.    Additional Evidence of Kinney County Officials' Racist and Anti-Immigrant Animus

Particularly in light of Kinney County Sheriff Coe's and County Attorney Smith's apparent roles in helping create the migrant arrest program, these additional examples of Sheriff Coe's and County Attorney Smith's association with white supremacists and use of white supremacist rhetoric regarding migrants provide further evidence of discrimination on the basis of race and national origin necessitating a Title VI investigation. These examples include the expression of racist and xenophobic ideas to justify the migrant arrest program.

Much of the rhetoric used by Sheriff Coe and County Attorney Smith—and others involved in the OLS trespass arrest program—is premised on the false and inflammatory claim that migration across the Texas-Mexico border constitutes an "invasion." This is white supremacist rhetoric deeply entrenched in American history. The charge of "invasion" is one that

---

[75] Bryan Slaton, *Border Security Forum at Capitol with border officials*, Facebook (July 20, 2021), ~ 2:07:00, https://www.facebook.com/BryanSlatonForTexas/videos/899779100883992/. Sheriff Coe's testimony indicates that Kinney County began implementing a version of the OLS trespass arrest program earlier than was previously known—he states that arrests were occurring in Kinney County at least as early as July 19, 2021. *Id.*, ~ 2:07:30 (stating, "Well, our dreams came true—we had three yesterday, and they happened to be on his [gesturing at County Attorney Smith] property").
[76] Texas House Appropriations Committee Hearing, H.B. 9, Relating to making supplemental appropriations relating to border security and giving direction regarding those appropriations, Aug. 24, 2021, 8:00 AM, https://tlchouse.granicus.com/MediaPlayer.php?view_id=46&clip_id=22334 (testimony of Office of the Governor Budget Director Sarah Hicks at approximately 3:24:30 and 3:28:45).
[77] Sheriff Coe also stated at the rally that the county was going to start filing child endangerment charges on parents traveling with children. To our knowledge, this policy has not been implemented to date, either by Kinney County or by any state or local agency in the state of Texas.

has, historically, been levied against Chinese, Japanese, Jewish, German, Mexican, and Muslim immigrants in turn, as well as undocumented immigrants generally.[78] While Kinney County officials and others attempt to portray this characterization as a legal one, it is in fact the recycling of a deeply racist cultural trope.

### 1.    Association with Racist and Anti-Immigrant Extremists

In addition to making the direct racist and xenophobic statements detailed below, Sheriff Coe and County Attorney Smith have repeatedly associated in a professional capacity with people expressing extremist racist and anti-immigrant ideas. The May 2021 rally hosted by the Kinney County government featured numerous such speakers, many of whom made extremist statements at the event itself. Since May 2021, both Sheriff Coe and County Attorney Smith have continued to appear in a professional capacity with people expressing extremist views, including those who did so at the rally.

Speakers at Kinney County's "border crisis rally" repeatedly expressed racist and anti-immigrant ideas with no pushback or evidence of disagreement from county officials. Most notably, anti-immigrant radio host George Rodriguez said while speaking at the rally, "My family has been here in Texas for generations, and they were angry with the *mojados* [a slur equivalent to "wetbacks"]—or as my grandmother, *fijate*, my grandmother used to call them, *los pinche mojados* ["the f–ing wetbacks"]." This line generated significant laughter, so much so that Mr. Rodriguez commented on it. At no point did any county official intervene in the event over the use of this racist slur. Mr. Rodriguez further commented that immigration is bringing about a "clash of cultures" because "across the river, *la mordida*—the bribe—it's common. The value of life is zilch. . . . It is a question of culture. We do not need lower-class cultures."[79] Sheriff Coe and County Attorney Smith have subsequently appeared on Mr. Rodriguez's radio show.[80]

Also at the county-sponsored rally, Warriors for Ranchers founder Mike Miller described how he and County Attorney Smith had stayed up talking until 1:00 in the morning. Mr. Miller then went on to claim that a Border Patrol agent told him that Hondurans "have been capturing kids and harvesting their organs."[81] Warriors for Ranchers is an anti-immigrant group that

---

[78] In fact, the state and local disaster declarations issued to claim "invasion" and justify Operation Lone Star are particularly sound in anti-immigrant animus. As historian Erika Lee points out, "Xenophobia has often used the language of natural disasters to define immigration as a threat." Erika Lee, *America for Americans: A History of Xenophobia in the United States* at 126 (Basic Books, 2019).
[79] Be Free, *Border Crisis Rally*, *supra* note 74.
[80] The El Conservador Radio with George Rodriguez, Jan. 29, 2022, https://www.listennotes.com/podcasts/el-conservador/1-29-22-the-el-conservador-WYh-4iMIftu/.
[81] Be Free, *Border Crisis Rally*, *supra* note 74 (video at ~ 1:15:00). In January 2022, there was yet another far-right, anti-immigrant rally in the Rio Grande Valley organized by a militia group leader. *See* Dina

frequently promotes extremist conspiracy theories.[82] In the following months, County Attorney Smith went on to speak at similar border-focused events outside Kinney County with Mr. Miller.[83]

Other speakers at the May 2021 Kinney County rally repeatedly portrayed immigration as an "invasion" and migrants as inherently criminal. Goliad County Sheriff Roy Boyd claimed that Texas is experiencing "a Marxist invasion."[84] An attorney asserted, "You will not take down our statues, you will not invade our country, and you will not practice and continue to support illegal immigration."[85] Another speaker exhorted the crowd to applause, "Call it a border invasion."[86] Newsmax correspondent and former Texas Department of Public Safety officer Jaeson Jones warned, "The world is coming now. . . . We have more people coming from around the world than ever before," invoking "countries with a terrorism nexus."[87] Again, all of these comments occurred at a county-sponsored event, with no public pushback from county officials.

Further, as detailed above, Sheriff Coe appeared on Steve Bannon's War Room podcast twice in fall 2021 to discuss migration in Kinney County and unilateral state and local immigration enforcement. Bannon has repeatedly advocated racist, anti-immigrant positions using his media platforms—including during the shows in which Sheriff Coe appeared.[88] He has told far-right politicians, "Let them call you racist. Let them call you xenophobes. Let them call you nativist. Wear it as a badge of honor."[89] In addition on December 21, 2021, the founder of Patriots for America spoke at a Val Verde County Commissioners' meeting, stating that the militia group had been working "very closely"[90] with Sheriff Coe in Kinney County during the

Arevalo, '*We Stand America' rally comes to a close*, My RGV News (Jan. 30, 2022), https://myrgv.com/featured/2022/01/30/we-stand-america-rally-comes-to-a-close/.
[82] *See, e.g.*, Facebook, *Warriors for Ranchers*, https://www.facebook.com/warriorsforranchers/.
[83] Cari Golyzniak, *Gravity Check Hosts Border Invasion Awareness Rally*, Bandera Bulletin, https://www.banderabulletin.com/article/news/gravity-check-hosts-border-invasion-awareness-rally; Warriors for Ranchers, Facebook (Aug. 7, 2021) https://www.facebook.com/warriorsforranchers/photos/158075609772053 (flyer for event in Pleasanton, Texas featuring Mr. Miller and Mr. Smith).
[84] Be Free, *Border Crisis Rally*, *supra* note 74  (video at ~ 36:00).
[85] Be Free, *Border Crisis Rally*, *supra* note 74  (video at ~ 1:52:00)
[86] Be Free, *Border Crisis Rally*, *supra* note 74  (video at ~ 1:44:00).
[87] Be Free, *Border Crisis Rally*, *supra* note 74 (video at ~ 2:12:00).
[88] *See, e.g.*, Frances Stead Sellers and David A. Fahrenthold, *"Why Even Let 'Em In?" Understanding Bannon's Worldview and the Policies That Follow*, Wash. Post, Jan. 31, 2017, https://www.washingtonpost.com/politics/bannon-explained-his-worldview-well-before-it-became-official-us-policy/2017/01/31/2f4102ac-e7ca-11e6-80c2-30e57e57e05d_story.html.
[89] Morgan Winsor, *Steve Bannon: "Let Them Call You Racist . . . Wear It as a Badge of Honor,"* ABC, Mar. 10, 2018, https://abcnews.go.com/Politics/steve-bannon-call-racist-wear-badge-honor/story?id=53656814.
[90]*Val Verde County Commissioners Court Meeting*, YouTube, ~ 1:30,  (Dec. 21, 2021), https://www.youtube.com/watch?v=axMHJ8zntqo.

"last two and a half, almost three months,"[91] further showing the sheriff's ongoing association with extremists.

In sum, both Sheriff Coe's and County Attorney Smith's choices to repeatedly speak at events or on podcasts that include extreme white supremacist rhetoric, and Kinney County's choice to host and unquestioningly entertain the ideas of the speakers at the May border meeting, indicate that county leadership is acting based upon white supremacist beliefs.

### 2.    Kinney County Sheriff Brad Coe: Direct Statements

Kinney County Sheriff Brad Coe has made racist and xenophobic statements, including appearing on white nationalist Steve Bannon's podcast and claiming that "cartels" and "George Soros and crew" are "pushing" migrants into the United States to "change" the country's "dynamics," which will in his view lead to the United States "ending up being . . . a Fourth World country." In addition to the statements we detailed in our initial complaint, these include:

- In speaking to state legislators at a forum at the State Capitol, Sheriff Coe claimed that the "culture" of "illegals" was jeopardizing Kinney County jail personnel's safety: "My jailers . . . and they're having to put up with these illegals—these smugglers and everybody—in our jail, and it puts them at high risk []—based on the culture, the language barrier, etc."[92]
- In September 2021, Sheriff Coe appeared on Mr. Bannon's podcast and voiced a commonly held white supremacist theory that global elites are changing countries' demographics through migration[93]: "The true part that's out of control is the fact that the cartels—this is created by the cartels and, I would say, George Soros and crew to push these people in here to try to change the dynamics, the schematics of the United States. We're going to end up being not a Third World country but a Fourth World country because Biden wants to let them all in. . . . A bunch of these coming in, they're just here because they think the American dream is we come here, we find a city, and we just sit around and collect money."[94]
- Sheriff Coe appeared a second time on Mr. Bannon's podcast in October. In that episode, he claimed that the migration of people across the southern border is, legally, "an invasion," saying, "That's exactly what this is." He also posited that "smallpox," among

[91] *Id.* (video at ~ 1:37).

[92] Bryan Slaton, *Border Security Forum at Capitol with border officials*, ~ 2:08:00.

[93] *See* James Barragán, *Dan Patrick Warns Democrats Are Allowing in Immigrants for "Silent Revolution," Mirroring Language of Far-Right Extremists*, Tex. Tribune, (Sept. 17, 2021), https://www.texastribune.org/2021/09/17/texas-dan-patrick-immigrants-democrats-haitians/ (describing the Texas lieutenant governor's similar amplification of this theory in sympathetic media).

[94] Steve Bannon's War Room, *Episode 1,283 – Listen to the Witnesses (w/ Rudy Giuliani, Matt Salmon, Kris Kobach, Sheriff Brad Coe, Eddie Gallagher)*, Sept. 23, 2021, ~ 34:00, https://harkaudio.com/p/bannons-war-room-warroomorg/episode-1283-listen-to-the-witnesses-with-rudy-giuliani-matt-salmon-kris-kobach-sheriff-brad-coe-eddie-gallagher-warroomorg.

other diseases, is "out there and is coming across the southern border."[95] Smallpox is, of course, eradicated worldwide, but the racist and xenophobic idea that non-white migrants carry disease is deeply entrenched. In this episode, Bannon called Sheriff Coe "one of the heroes and patriots that's on the border."[96]

- In a brief video regarding Galveston County law enforcement's presence in Kinney County, Sheriff Coe again used the rhetoric of invasion and suggested that migrants pose a threat: "If they get through here—like I said, going to affect us today, going to affect the interior tomorrow." He also characterized every single migrant as transporting marijuana, claiming: "The aliens that we're not catching, that the Border Patrol's not catching, they're walking through—that's what scares me. For every one we don't catch, that means somebody's getting dope in another city."[97]

### 3.  Kinney County Attorney Brent Smith: Direct Statements

Kinney County Attorney Brent Smith has likewise made racist and xenophobic statements, including repeatedly using rhetoric of "invasion" and expressing support for the widely condemned, racist actions of Border Patrol officers in Del Rio in menacing migrants with horses and rope:

- In April 2021, County Attorney Smith appeared on a radio show and espoused his view that continued migration would lead to "losing our country": "I've always known that, you know, illegal aliens were an issue in this county . . . It's literally like an invasion, something you would normally think you would see on *Red Dawn* or something. . . . And so with illegal immigration, that's one of the things, there's something we've got to do. . . . This is not sustainable for four years; we cannot do this. We will lose our country, we will lose our state, we will lose our county. It won't look the same way." In this appearance, County Attorney Smith also suggested that Texas may unilaterally enforce immigration law, using as an illustration the Texas Rangers' unilateral deportations of individuals to Mexico in 1915.[98] This is a troubling example in any event given the clearly established law preventing such actions by state and local law enforcement, and

---

[95] Steve Bannon's War Room, *Episode 1,309 – Incoming Border Insurgence Has Texas County On High Alert (w/ Sheriff Brad Coe, Sophie Mann, Joe Allen)*, Oct. 4, 2021, ~ 29:00, 31:00, https://www.listennotes.com/podcasts/bannons-war-room/episode-1309-incoming-border-wX0YZzh2dpR/.

[96] *Id.* (audio at ~ 28:00).

[97] BPS, *Galveston County – Border Crisis*, YouTube (Aug. 25, 2021) (video at ~ 2:30), https://www.youtube.com/watch?v=2U_FF6nxN6w.

[98] The El Conservador Radio with George Rodriguez, Apr. 24, 2021, (audio at  ~ 43:30), https://www.listennotes.com/podcasts/el-conservador/4-24-21-the-el-conservador-i0xKetC3DHR/.

especially so given the Texas Rangers' widespread abuses of those of Mexican descent in south Texas during this time period.[99]

- On his Facebook page, County Attorney Smith shared a post with a picture of a Border Patrol agent maneuvering a horse toward a Black migrant and menacing the individual with the horse's reins, captioned "Del Rio's newest hero [raised hands emoji]." County Attorney Smith said in a separate post, "These Haitians take advantage of our hospitality, trash our land, and act entitled to be here. The ONLY thing they are entitled to is deportation!"[100]

- On his YouTube channel, County Attorney Smith shared a video of a pursuit of people who jumped out of a vehicle. The video shows the use of excessive force in subduing an individual, with the individual lying on the ground with at least one deputy on top of him. Sheriff Coe appears to be present at the arrest and does not intervene. The video is titled "Kinney County Bailout."[101]

## IV.    Conclusion: Urgent Need for Immediate DOJ Action

Since our initial complaint two months ago, the need for immediate federal action to investigate violation of Title VI by Texas state and local agencies under the OLS trespass arrest program–and to terminate federal funding for all agencies violating federal anti-discrimination law via the program–has only grown more acute. The OLS trespass arrest program is now expanding to additional counties and a new geographic region of the state, with ambitions for further expansion. The white supremacist rhetoric that fuels the program is spreading throughout the country. The rampant violation of migrants' civil rights by state and local agencies continues. And new evidence demonstrates that Kinney County officials' extreme racist, anti-immigrant views may be at the heart not only of the implementation but also of the creation of the program.

As detailed in our initial complaint and above, state and local officials' intent to target Black and Brown migrants for arrest and punishment in a separate criminal system is clear. State and local agencies have created a state immigration enforcement system under the guise of state

---

[99] *See, e.g.*, Simon Romero, *Lynch Mobs Killed Latinos Across the West. The Fight to Remember These Atrocities is Just Starting.*, NY Times, Mar. 2, 2019, https://www.nytimes.com/2019/03/02/us/porvenir-massacre-texas-mexicans.html; Ryan Reft, *The Legacy of the Texas Rangers: A Look at the Long History of Violence at the Border*, PBS SoCal VOCES, Oct. 10, 2019, https://www.pbssocal.org/shows/voces/legacy-texas-rangers-look-long-history-violence-border; Julia Craven, *The Ugly History Behind Those Border Agents Chasing Haitian Migrants on Horseback*, Slate, Sept. 25, 2021, https://slate.com/news-and-politics/2021/09/border-patrol-horseback-haitian-migrants-del-rio.html.

[100] Brent Smith, Facebook (Sept. 21, 2021), https://www.facebook.com/profile.php?id=16717258.

[101] BPS, *Kinney County Bailout*, YouTube (May 26, 2021), https://www.youtube.com/watch?v=jIech6VGTyc&ab_channel=BPS. "Bailout" is a common slang term in south Texas for a situation in which passengers flee a vehicle that is being pursued by law enforcement, with the implication that they have done so because they are undocumented.

criminal law, fueled by racism and xenophobia. That system is in turn contributing to a volatile atmosphere in south Texas counties with the potential for violence—including private vigilante groups. The OLS trespass arrest program has flourished over the past two months. Absent federal intervention, Texas's system to punish Black and Brown migrants will only grow and spread— not only throughout the state but potentially throughout the country.

In light of the OLS trespass arrest program's expansion, we respectfully request that you publicly state that DOJ has begun or will immediately begin investigating state and local agencies' involvement in the OLS trespass arrest program pursuant to Title VI. Similarly, we respectfully request that you provide a timeline for the completion of the DOJ investigation. We ask that, in the interests of transparency and in light of the urgent threat to Black and Brown migrants' rights, you provide this information within the next two weeks. There is a grave need for federal civil rights intervention. Please do not hesitate to contact us for additional information or to discuss any of these matters further.

Sincerely,

Kathryn Huddleston, Staff Attorney
Savannah Kumar, Attorney
Andre Segura, Legal Director
ACLU of Texas
P.O. Box 8306
Houston, TX  77288
713.942.8146
khuddleston@aclutx.org
skumar@aclutx.org
asegura@aclutx.org

Erin Thorn, Senior Attorney
Kassandra Gonzalez, Manne Family Fellow
Texas Civil Rights Project
P.O. Box 219
Alamo, TX  78516
(956) 787-8171 ext. 125
erin@texascivilrightsproject.org
kassandra@texascivilrightsproject.org

Maya Chaudhuri, Legal Fellow
Camilla Hsu, Managing Attorney, Litigation
Amanda Woog, Executive Director
Texas Fair Defense Project
314 E. Highland Mall Blvd #204
Austin, TX  78582
512-637-5220
mchaudhuri@fairdefense.org
chsu@fairdefense.org
awoog@fairdefense.org

American Civil Liberties Union
Detention Watch Network
Immigrant Legal Resource Center
LatinoJustice PRLDEF
National Immigrant Justice Center
National Immigration Law Center
National Immigration Project (NIPNLG)