IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, | § | |
| **Plaintiffs, Individually and on** | § | |
| **Behalf of the Class of Those** | § | |
| **Similarly Situated,** | § | |
| | § | |
| **v.** | § | **Case No. 1:22-cv-00397-RP** |
| | § | |
| STEVEN MCCRAW in his individual | § | |
| capacity, *et al.*, | § | |
| **Defendants.** | § | |

## DEFENDANTS STEVEN MCCRAW, GREG ABBOTT, AND BRYAN COLLIER'S MOTION TO DISMISS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division

SHANNA MOLINARE
Chief, Law Enforcement Defense Division

BENJAMIN L. DOWER
Deputy Chief, General Litigation Division
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667

JASON T. BRAMOW
Assistant Attorney General
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

**Attorneys for Defendant**
**Governor Greg Abbott**

**Attorneys for Defendants**
**Executive Director Bryan Collier**
**Director Steven McCraw**

## TABLE OF CONTENTS

Table of Contents ................................................................................................................ ii

Table of Authorities ........................................................................................................... iii

I.   Background ...............................................................................................................1

  A.   Operation Lone Star .........................................................................................1

  B.   State Defendants ...............................................................................................3

    1.   Governor Greg Abbott ..............................................................................3

    2.   DPS Director Steven McCraw .................................................................. 4

    3.   TDCJ Executive Director Bryan Collier ...................................................5

  C.   Plaintiffs' Second Amended Complaint............................................................ 6

II.  Motion to Dismiss for Lack of Subject-Matter Jurisdiction....................................7

  A.   Standard of Review ...........................................................................................7

  B.   Arguments & Authorities ..................................................................................7

    1.   Standing.....................................................................................................7

    2.   Mootness ..................................................................................................10

    3.   Sovereign Immunity ................................................................................ 11

    4.   Legislative Immunity...............................................................................17

    5.   *Younger* Abstention ...............................................................................19

III.  Motion to Dismiss for Failure to State a Claim ................................................... 22

  A.   Standard of Review ......................................................................................... 22

  B.   Arguments & Authorities ................................................................................23

    1.   Plaintiffs have failed to plead a plausible Fourth Amendment violation........................23

    2.   Plaintiffs have failed to plead a plausible Sixth Amendment claim. ...............................27

    3.   Plaintiffs have failed to plead a plausible Due Process claim. ......................................... 30

    4.   Plaintiffs have failed to plead a plausible Equal Protection violation. ............................32

    5.   Plaintiffs have failed to plead a plausible Section 1983 conspiracy claim. ..................... 40

    6.   Plaintiffs have failed to plead a plausible Section 1985 conspiracy claim. ......................41

    7.   Plaintiffs' claims against State Defendants in their individual capacities cannot overcome the additional hurdles required to impose individual liability. ............................. 42

V.   Prayer ...................................................................................................................... 46

Certificate of Service...........................................................................................................47

<u>TABLE OF AUTHORITIES</u>

**FEDERAL CASES**

*Air Evac EMS Inc. v. Texas Dep't of Ins.*,
   851 F.3d 507 (5th Cir. 2017) ................................................................................................. 13

*Albright v. Oliver*,
   510 U.S. 266 (1994) ............................................................................................................ 31

*Alden v. Maine*,
   527 U.S. 706 (1999) ............................................................................................................ 11

*Allred's Produce v. U.S. Dept. Agriculture*,
   178 F.3d 743 (5th Cir. 1999) ............................................................................................... 33

*Argersinger v. Hamlin*,
   407 U.S. 25 (1972) .............................................................................................................. 28

*Arizona v. United States*,
   567 U.S. 387 (2012) ............................................................................................................ 24

*Arizonans for Official English v. Arizona*,
   520 U.S. 43 (1997) .............................................................................................................. 10

*Arsenaux v. Roberts*,
   726 F.2d 1022 (5th Cir. 1982) ............................................................................................. 40

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...............................................................................................22, 34, 45

*Atwater v. City of Lago Vista*,
   532 U.S. 318 (2001) ............................................................................................................ 25

*Baker v. McCollum*,
   443 U.S. 137 (1979) ............................................................................................................ 24

*Beeler v. Rounsavall*,
   328 F.3d 813 (5th Cir. 2003) ............................................................................................... 33

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 40

*Bennett v. Total Minatome Corp.*,
   138 F.3d 1053 (5th Cir. 1998) ............................................................................................. 36

*Bice v. La. Pub. Def. Bd.*,
   677 F.3d 712 (5th Cir. 2012) ...........................................................................................19, 20

*Bowlby v. City of Aberdeen*,
   681 F.3d 215 (5th Cir. 2012) ...........................................................................................33, 34

*Brennan v. Stewart*,
   834 F.2d 1248 (5th Cir. 1988) ...........................................................................................30, 37

*Brewer v. Williams,*
　430 U.S. 387 (1977) ...........................................................................................27

*Brown v. Callahan,*
　623 F.3d 249 (5th Cir. 2010) ............................................................................ 44

*Bryan v. City of Madison, Miss.,*
　213 F.3d 267 (5th Cir. 2000) ............................................................................33

*California v. Texas,*
　141 S. Ct. 2104 (2021) ................................................................................... 8, 9

*Cantú v. Moody,*
　933 F.3d 414 (5th Cir. 2019)............................................................................41

*Carswell v. Camp,*
　37 F.4th 1062 (5th Cir. 2022) .......................................................................... 44

*Cass v. City of Abilene,*
　814 F.3d 721 (5th Cir. 2016) ........................................................................... 44

*Center for Biological Diversity, Inc v BP America Production Co,*
　704 F3d 413 (5th Cir. 2013) .............................................................................10

*City of Austin v. Paxton,*
　943 F.3d 993 (5th Cir. 2019) ...................................................................... 12, 13

*Club Retro, L.L.C. v. Hilton,*
　568 F.3d 181 (5th Cir. 2009) ........................................................................... 24

*Cnty. of Sacramento v. Lewis,*
　523 U.S. 833 (1998) ........................................................................................31

*Coleman v. Hous. Indep. Sch. Dist.,*
　113 F.3d 528 (5th Cir. 1997) ...........................................................................35

*Collins v. City of Harker Heights,*
　503 U.S. 115 (1992) ........................................................................................31

*Collins v. Morgan Stanley Dean Witter,*
　224 F.3d 496 (5th Cir. 2000) .............................................................................1

*Compare 6th Street Bus. Partners, LLC v. Abbott,*
　No. 1:20-CV-706, 2020 WL 4274589 (W.D. Tex. 2020) .....................................9, 10

*Connick v. Thompson,*
　563 U.S. 51 (2011) ......................................................................................... 42

*Connors v. Graves,*
　538 F.3d 373 (5th Cir. 2008) ........................................................................... 40

*Coury v. Prot,*
　85 F.3d 244 (5th Cir. 1996) ...............................................................................7

State Defendants' Motion to Dismiss

*Darnell v. Sabo,*
    No. 4:19-CV-00871-O-BP, 2020 WL 3442057 (N.D. Tex. June 1, 2020) ............................... 20

*Davis v. Foley,*
    No. 3:17-CV-278-M-BN, 2018 WL 5723165 (N.D. Tex. Oct. 12, 2018)...................................34

*De Veau v. Braisted,*
    363 U.S. 144 (1960) ...........................................................................................................21

*DeSpain v. Johnston,*
    731 F.2d 1171 (5th Cir. 1984) ...........................................................................................21

*Devenpeck v. Alford,*
    543 U.S. 146 (2004) ......................................................................................................... 24

*District of Columbia v. Wesby,*
    138 S. Ct. 577 (2018) .........................................................................................................45

*Early v. So. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs,*
    252 F. App'x 698 (5th Cir. 2007) .....................................................................................12

*Edelman v. Jordan,*
    415 U.S. 651 (1974).......................................................................................................... 11

*Esmail v. Macrane,*
    53 F.3d 176 (7th Cir. 1995) ...............................................................................................35

*Espinoza v. Farah Mfg. Co.,*
    414 U.S. 86 (1973) ...........................................................................................................36

*Estelle v. Smith,*
    451 U.S. 454 (1981) .....................................................................................................27, 28

*Ex parte Young,*
    209 U.S. 123 (1908)................................................................................................. passim

*Fennell v. Marion Indep. Sch. Dist.,*
    804 F.3d 398 (5th Cir. 2015) .............................................................................................34

*Flanagan v. City of Dallas, Tex.,*
    48 F. Supp. 3d 941 (N.D. Tex. 2014) ................................................................................33

*Flores v. City of Palacios,*
    381 F.3d 391 (5th Cir. 2004) .............................................................................................43

*Freeman v. Cnty. of Bexar,*
    210 F.3d 550 (5th Cir. 2000)..............................................................................................25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,*
    528 U.S. 167 (2000) ........................................................................................................... 8

*FW/PBS, Inc. v. City of Dallas,*
    493 U.S. 215 (1990) ........................................................................................................... 8

*Gates v. Strain,*
  885 F.3d 874 (5th Cir. 2018) ................................................................................21

*Geders v. United States,*
  425 U.S. 80 (1976) ............................................................................................. 28

*Glass v. Paxton,*
  900 F.3d 233 (5th Cir. 2018) ...............................................................................37

*Graham v. Connor,*
  409 U.S. 386 (1989) ...........................................................................................31

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny,*
  442 U.S. 366 (1979) ...........................................................................................41

*Green Valley Special Utility District v. City of Schertz,*
  969 F.3d 460 (5th Cir. 2020) .........................................................................14, 15

*Griffin v. Breckenridge,*
  403 U.S. 88 (1971) .............................................................................................41

*Hafer v. Melo,*
  502 U.S. 21 (1991) ............................................................................................. 11

*Hamilton v. Alabama,*
  368 U.S. 52 (1961) ............................................................................................. 28

*Hare v. City of Corinth,*
  74 F.3d 633 (5th Cir. 1996)................................................................................ 40

*Harlow v. Fitzgerald,*
  457 U.S. 800 (1982) ....................................................................................36, 43

*Haverkamp v. Linthincum,*
  6 F.4th 662 (5th Cir. 2021) .................................................................................13

*Hewitt v. Helms,*
  482 U.S. 755 (1987)............................................................................................ 9

*Hey v. Irving,*
  161 F.3d 7 (5th. Cir. 1998) ................................................................................ 40

*Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.,*
  143 F.3d 1006 (5th Cir. 1998) ..............................................................................7

*Hope v. Pelzer,*
  536 U.S. 730 (2002) ...........................................................................................43

*Horaist v. Doctor's Hosp. of Opelousas,*
  255 F.3d 261 (5th Cir. 2001) ..............................................................................41

*Howery v. Allstate Ins. Co.,*
  243 F.3d 912 (5th Cir. 2001) ................................................................................7

*Hughes v. Tarrant Cnty.*,
  948 F.2d 918 (5th Cir. 1991) ................................................................. 17

*Illinois v. Gates*,
  480 U.S. 213 (1983) ........................................................................... 24

*In re Katrina Canal Breaches Litig.*,
  495 F.3d 191 (5th Cir. 2007) .................................................................. 1

*Johnson v. Norcross*,
  565 F. App'x 287 (5th Cir. 2014) ........................................................ 25, 27

*Johnson v. Rodriguez*,
  110 F.3d 299 (5th Cir. 1997) ................................................................. 37

*Jones v. City of Grand Prairie, Texas*,
  209 F.3d 718 (5th Cir. 2000) ................................................................ 27

*Jones v. Miss. Sec. of State*,
  812 F. App'x 235 (5th Cir. 2020) ........................................................... 35

*Jornaleros de Las Palmas v. City of League City*,
  945 F. Supp. 2d 779 (S.D. Tex. 2013) ...................................................... 39

*Joseph A. ex rel. Wolfe v. Ingram*,
  275 F.3d 1253 (10th Cir. 2002) .............................................................. 20

*Kaley v. United States*,
  571 U.S. 320 (2014) ........................................................................... 24

*Kimel v. Florida Bd. of Regents*,
  528 U.S. 62 (2000) ............................................................................ 11

*Kovacic v. Villarreal*,
  628 F.3d 209 (5th Cir. 2010) ................................................................ 43

*Kugler v. Helfant*,
  421 U.S. 117 (1975) ........................................................................... 21

*La. Env't Action Network v. U.S. E.P.A.*,
  382 F.3d 575 (5th Cir. 2004) ................................................................ 10

*Langan v. Abbott*,
  518 F. Supp.3d 948 (W.D. Tex. 2021) ....................................................... 13

*Lauderdale v. Tex. Dep't of Criminal Justice*,
  512 F.3d 157 (5th Cir. 2007) ................................................................ 36

*Leachman v. Stephens*,
  581 F. App'x 390 (5th Cir. 2014) ........................................................... 30

*Loftin v. City of Prentiss, Miss.*,
  33 F.4th 774 (5th Cir. 2022) ................................................................ 24

*Lucio v. Davis,*
    751 F. App'x 484 (5th Cir. 2018) ...................................................... 30

*Lujan v. Defs. Of Wildlife,*
    504 U.S. 555 (1992) ...................................................................... 8

*Marks v. Hudson,*
    933 F.3d 481 (5th Cir. 2019) ............................................................ 44

*Marlowe v. LeBlanc,*
    2022 WL 2101523 (5th Cir. June 10, 2022) ......................................... 45

*Massiah v. United States,*
    377 U.S. 201 (1964) ..................................................................... 28

*McKee v. Lang,*
    393 F. App'x 235 (5th Cir. Sep. 1, 2010) .............................................. 44

*Menchaca v. Chrysler Credit Corp.,*
    613 F.2d 507 (5th Cir. 1980) ............................................................ 7

*Mi Familia Vota v. Abbott,*
    977 F.3d 461 (5th Cir. 2020) ......................................................... 8, 9

*Michigan v. DeFillippo,*
    443 U.S. 31 (1979) ...................................................................... 24

*Minton v. St. Bernard Parish School Board,*
    803 F.2d 129 (5th Cir. 1986) ........................................................... 17

*Moore v. Sims,*
    442 U.S. 415 (1979) ............................................................ 21, 37, 38

*Moreno v. City of Brownsville,*
    Cause No. B-08-504, 2010 WL 11646748 (S.D. Tex. Sept. 16, 2010) ........... 35

*Morris v. Dearborne,*
    181 F.3d 657 (5th Cir. 1999) ........................................................... 31

*Morris v. Livingston,*
    739 F.3d 740 (5th Cir. 2014) ........................................................ 9, 12

*Mortensen v. First Federal Savings & Loan Ass'n,*
    549 F.2d 884 (3d Cir. 1977) ............................................................. 7

*Nobby Lobby, Inc. v. City of Dallas,*
    970 F.2d 82 (5th Cir. 1992) ............................................................ 19

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ................................................................ 16, 19

*Okpalobi v. Foster,*
    244 F.3d 405 (5th Cir. 2001) ........................................................ 8, 10

*Overton v. City of Austin*,
   871 F.2d 529 (5th Cir. 1989) ................................................................38

*Parker v. Blackwell*,
   23 F.4th 517 (5th Cir. 2022) ............................................................... 42

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ...........................................................................43

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984) ............................................................................. 11

*Pennzoil Co. v. Texaco, Inc.*,
   481 U.S. 1 (1987) ...............................................................................21

*Pers. Adm'r v. Feeney*,
   442 U.S. 256 (1979) ...........................................................................35

*Petta v. Rivera*,
   143 F.3d 895 (5th Cir. 1998) ...............................................................31

*Pfannstiel v. City of Marion*,
   918 F.2d 1178 (5th Cir. 1990) ............................................................ 40

*Piazza v. Mayne*,
   217 F.3d 239 (5th Cir. 2000) .............................................................. 24

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) ...............................................................23

*Quern v. Jordan*,
   440 U.S. 332 (1979) ...........................................................................12

*Ramming v. United States*,
   281 F.3d 158 (5th Cir. 2001) .................................................................7

*Reno v. Flores*,
   507 U.S. 292 (1993) .......................................................................... 30

*Reynolds v. Barrett*,
   685 F.3d 193 (2d Cir. 2012) ...............................................................41

*Rocky v. King*,
   900 F.2d 864 (5th Cir. 1990) ............................................................. 11

*Rothgery v. Gillespie Cnty.*,
   554 U.S. 191 (2008) ......................................................................27, 29

*Samuels v. Mackell*,
   401 U.S. 66 (1971) .......................................................................19, 32

*Schall v. Martin*,
   467 U.S. 253 (1984) ...........................................................................21

*Simi Inv. Co., Inc. v. Harris Cnty.*,
   236 F.3d 240 (5th Cir. 2000) ............................................................................ 30

*Specs Family Partners, Limited v. Nettles*,
   972 F.3d 671 (5th Cir. 2020) ............................................................................15

*Sprint Commc'n Inc. v. Jacobs*,
   571 U.S. 69 (2013) ..........................................................................................19

*Stockman v. Fed. Election Comm'n*,
   138 F.3d 144 (5th Cir. 1998) .............................................................................7

*Stringer v. Whitley*,
   942 F.3d 715 (5th Cir. 2019) ............................................................................16

*Sullivan v. Texas A&M Univ. Sys.*,
   986 F.3d 593 (5th Cir. 2021) ............................................................................ 11

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ......................................................................................... 8

*Tarter v. Hury*,
   646 F.2d 1010 (5th Cir. 1981) .......................................................................... 20

*Terry v. Ohio*,
   392 U.S. 1 (1968) ............................................................................................21

*Tex. Democratic Party v. Abbott*,
   961 F.3d 389 (5th Cir. 2020) ........................................................................8, 12

*Texas v. Kleinert*,
   855 F.3d 305 (5th Cir. 2017) ........................................................................... 24

*Texas v. United States*,
   --- F. Supp.3d ---, 2022 WL 2109204 (S.D. Tex. June 10, 2022) ............................39

*Thompkins v. Belt*,
   828 F.2d 298 (5th Cir. 1987) ........................................................................... 42

*U.S. v. Ash*,
   413 U.S. 300 (1973) ........................................................................................ 28

*U.S. v. LULAC*,
   793 F.2d 636 (5th Cir. 1986) ............................................................................37

*United States v. Armstrong*,
   517 U.S. 456 (1996) ...................................................................................33, 34

*United States v. Castro*,
   166 F.3d 728 (5th Cir. 1999) ........................................................................... 24

*United States v. Hall*,
   455 F.3d 508 (5th Cir. 2006) ............................................................................33

*United States v. Lawrence,*
 179 F.3d 343 (5th Cir. 1999) .................................................................................33

*United States v. Morrison,*
 449 U.S. 361 (1981) ................................................................................... 22, 28

*United States v. Wade,*
 388 U.S. 218 (1967) ...............................................................................................28

*Va. Office for Prot. & Advocacy v. Stewart,*
 563 U.S. 247 (2011) ...............................................................................................14

*Vann v. City of Southaven,*
 884 F.3d 307 (5th Cir. 2018) ............................................................................. 44

*Veasey v. Abbott,*
 830 F.3d 216 (5th Cir. 2016) .............................................................................38

*Verizon Md. Inc. v. Public Serv. Comm'n of Md.,*
 535 U.S. 635 (2002) ...............................................................................................14

*Village of Arlington Heights v. Metropolitan Housing Development Corp.,*
 429 U.S. 252 (1977) ........................................................................................38, 39

*Wallace v. Kato,*
 549 U.S. 384 (2007) ...............................................................................................16

*Wallace v. Kern,*
 520 F.2d 400 (2d Cir. 1975) ............................................................................. 20

*Warth v. Seldin,*
 422 U.S. 490 (1975) .........................................................................................16, 28

*Washington v. Davis,*
 426 U.S. 229 (1976) ........................................................................................37, 38

*Washington v. Glucksberg,*
 521 U.S. 721 (1997) ...............................................................................................31

*Wernecke v. Garcia,*
 591 F.3d 386 (5th Cir. 2009) ............................................................................. 44

*Wheeler v. Miller,*
 168 F.3d 241 (5th Cir. 1999) .............................................................................33

*White v. Pauly,*
 137 S. Ct. 548 (2017) ........................................................................................... 44

*Will v. Michigan Dep't of State Police,*
 491 U.S. 58 (1989) .................................................................................................11

*Williams ex rel. J.E. v. Reeves,*
 954 F.3d 729 (5th Cir. 2020) ........................................................................12, 14

*Williams v. Bramer*,
    180 F.3d 699 (5th Cir. 1999) ................................................................................33

*Wilson v. Stroman*,
    33 F.4th 202 (5th Cir. 2022) ...............................................................................25

*Younger v. Harris*,
    401 U.S. 37 (1971) ..................................................................................... passim

### TEXAS CASES

*Ex parte Sifuente*,
    639 S.W.3d 842 (Tex. App.—San Antonio 2022, pet. ref'd) ...........................27

*Ex parte Texas Department of Criminal Justice, et al.*,
    Cause No. 5118 (63rd Judicial Dist. June 16, 2022) ....................................... 11

*Hendee v. Dewhurst*,
    228 S.W.3d 354 (Tex. App.—Austin 2007, pet. denied) ...............................21

*State v. Curipoma*,
    2022 WL 580872 (Tex. App.—Austin 2022, pet. granted) .............................27

*Texas A&M Univ. Sys. v. Koseoglu*,
    233 S.W.3d 835 (Tex. 2007) .............................................................................14

### CONSTITUTIONAL PROVISIONS

TEX. CONST. art. VIII, § 6 ..........................................................................................17

TEX. CONST. art. XVI § 69 ........................................................................................18

U.S. Const. amend. IV ........................................................................................3, 23

U.S. Const. amend. VI ........................................................................................3, 27

### FEDERAL STATUTES

8 U.S.C. § 1357 ..........................................................................................................4, 5

### TEXAS STATUTES

Article IX, Sec. 14.04(d), Disaster Related Transfer Authority, House Bill No. 1, General
    Appropriations Act, 86th Legislature, R.S. 2019 ..........................................18

Article IX, Sec. 14.04(d), Disaster Related Transfer Authority, Senate Bill No. 1, General
    Appropriations Act, 87th Legislature, R.S. 2021 ..........................................18

S.B. 1, art. IX, § 14.04(g)(1) .......................................................................................18

Tex. Code Crim P. Art. 15.17 .....................................................................................16

TEX. GOV'T CODE § 317.001(1) ...............................................................................18

TEX. GOV'T CODE § 317.002(b) ...............................................................................18

**Federal Rules**

FED. R. CIV. P. 12(b)(1) ...................................................................................................7

FED. R. CIV. P. 12(b)(6)................................................................................................. 22

**Other Authorities**

Matthew R. Salzwedel, *The Lawyer's Struggle to Write*, 16 Scribes Journal of Legal Writing 69
    (2015) ..............................................................................................................................39

# I.   BACKGROUND

## A.   Operation Lone Star

Operation Lone Star ("OLS") is an initiative launched by Governor Abbott on March 6, 2021. *See* Dkt. 1-5 at 210–11.[1] OLS is not a state law, statute, or executive order; rather, it is an initiative that deploys state law enforcement to high-threat areas to ensure sufficient personnel are on hand to enforce preexisting Texas laws. *See id.*; Dkt. 10 at 2. On May 31, 2021, Governor Abbott issued a proclamation declaring a state of disaster pursuant to Texas Government Code Section 418.014 in certain counties, including Kinney County. Dkt. 1-2 at 22–25. As described by the declaration's findings, farmers, ranchers, and other Texans in the affected counties had reported suffering property damage to their crops, livestock, ranch fences, and homes due to criminal trespassers. Dkt, 1-2 at 22. "[E]scalating violence from the cartels, dramatically increased [] risk of human trafficking, and . . . a severe crisis of illegal drugs . . . pose[d] an ongoing and imminent threat of widespread and severe damage, injury, and loss of life and property including property damage, property crime, human trafficking, violent crimes, [and] threats to public health." *See* Dkt. 1-2 at 22, 24.

Governor Abbott's disaster declaration directed the Texas Department of Public Safety "to use available resources to enforce *all applicable federal and state laws* to prevent the criminal activity, including criminal trespassing" in the affected counties. Dkt. 1-2 at 24 (emphasis added).

---

[1] Plaintiffs' Second Amended Complaint (Dkt. 10) does not re-file the appendix attached to their original complaint (Dkt. 1-2 through Dkt. 1-11). But the Second Amended Complaint cites that Appendix (*e.g.* Dkt. 10 at 2 n.1, 13 n.29, 39 n. 75, 40 n.78, 42 n.90, 45 n.109, 46 n.111–12, 51 n.116). The attachments therefore remain part of Plaintiffs' pleadings. *See In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). To avoid confusion, this motion cites the Appendix by the ECF page numbers because the internal pagination contains a repetition for different documents. *Compare* Dkt. 1-4 at 2–23 (Appx. 123–44), *with* Dkt. 1-4 at 24–45 (Appx. 123–44).

Governor Abbott "deployed personnel and resources from the Texas Department of Public Safety ['DPS'] and Texas National Guard to high threat areas along the border." Dkt. 1-2 at 26. "State agencies were directed to work with local law enforcement, communities and private landowners to prevent, detect, and interdict transnational *criminal activity* flowing between the ports of entry." Dkt. 1-5 at 206 (emphasis added). Specifically, "DPS, with the assistance of the Texas National Guard, would begin arresting individuals trespassing on private property." Dkt. 1-5 at 207.

Kinney County had already issued a declaration of local disaster in April 2021, finding that Kinney County residents were "under imminent harm." Dkt. 1-7 at 18. Kinney County officials believed the declaration was necessary because Kinney County had become overrun by criminal activity such as stolen property and human smuggling. Dkt. 1-7 at 19. Due to the influx of individuals into the criminal justice system in the high threat region targeted by OLS, "a jail booking facility was opened in July 2021 in Val Verde County" where "individuals who are arrested for committing border related crimes in the surrounding region are booked and magistrated, then transferred to the Briscoe or Segovia [Texas Department of Criminal Justice ('TDCJ')] unit." Dkt. 1-5 at 207. As a result of the number of individuals committing state offenses, Kinney County requested that "TDCJ temporarily house all persons arrested by the Kinney County Sherriff's Department related to criminal trespass and other border related crimes." Dkt. 1-4 at 50. A second booking facility was launched in Jim Hogg County in February 2022. Dkt. 1-5 at 207; Dkt. 1-8 at 22.

As of March 10, 2022, OLS resulted in 12,100 criminal charges, including more than 9,600 felony charges against sex offenders, weapons traffickers, drug dealers, and other wanted criminals. Dkt. 1-7 at 6.

### B.    State Defendants

#### 1.    Governor Greg Abbott

Greg Abbott is the Governor of the State of Texas. Plaintiffs name Governor Abbott as a party to challenge the constitutionality of OLS. Dkt. 10 at ¶¶ 44–68. Plaintiffs assert that the underlying purpose behind Governor Abbott's "OLS trespass arrest program is to deter migration and punish migrants for coming to the United States." Dkt. 10 at ¶ 31. Plaintiffs contend that OLS violates the Fourth Amendment and the Equal Protection Clause because individuals are purportedly arrested based on their immigration status or based on their race, color, or national origin. Dkt. 10 at ¶¶ 59, 61. Plaintiffs contend that Governor Abbott is directly involved with the enforcement of OLS. Dkt. 10 at ¶¶ 67–68. In this regard, Plaintiffs sue Governor Abbott in both his official and individual capacities. Dkt. 10 at 30.

Plaintiffs also bring suit against Governor Abbott in his official and individual capacities under 42 U.S.C. § 1983 for claimed violations of the Fourth Amendment, Equal Protection Clause, Due Process Clause, Sixth Amendment, as well as the Eighth and Fourteenth Amendments. Dkt. 10 at ¶¶ 66–75. Specifically, Plaintiffs contend that the arrests or detentions under OLS are unconstitutional because they lack probable cause; are supported by false probable cause affidavits; are based on the individual's color, race, or national origin, deny Plaintiffs' right to due process, deny Plaintiffs' right to counsel; and constitute unconstitutional overincarceration under the Fourth, Eighth, and Fourteenth Amendments. Plaintiffs allege Governor Abbott personally violated their constitutional rights through his appropriation of funding for OLS, his May 2021 disaster declaration, and through various public statements and social media posts about OLS.

Although Plaintiffs' amended pleading drops their stand-alone preemption claim, instead alleging a violation of the Fourth Amendment, they continue to assert the legal conclusion that

Governor Abbott has consciously and deliberately violated 8 U.S.C. § 1357 and other federal immigration laws and has failed to train and supervise state law enforcement officials. *Compare* Dkt. 1 at 32, *with* Dkt. 10 at ¶¶ 58, 145. Finally, Plaintiffs contend that Governor Abbott entered into conspiracies with Kinney County Sheriff Brad Coe and DPS Director Steven McCraw to engage in immigration enforcement without the involvement of the federal government based upon race, color, or immigration status and to implement OLS specifically to deprive a class of persons of equal protection of the laws. Dkt. 10 at ¶¶ 159, 161. In this regard, Plaintiffs name Governor Abbott only in his individual capacity. Dkt. 10 at 66.

### 2.    DPS Director Steven McCraw

Steven McCraw is the Director of DPS and is sued in both his individual and official capacities. Dkt. 10 at 30. Plaintiffs allege that DPS officers collaborate with the Texas National Guard and county sheriff's offices to arrest migrants on state misdemeanor criminal trespass charges. Dkt. 10 at ¶ 32. Plaintiffs contend that state troopers' affidavits show discriminatory racial profiling because they note Latino ethnicity, national origin, perceived immigration status, or whether adult males appear to not be traveling as part of family units. Dkt. 10 at ¶¶ 32, 37. Plaintiffs further contend that the arrests themselves lack probable cause because law enforcement directed individuals to specific property and then arrested them for trespassing, essentially entrapping them. Dkt. 10 at ¶ 32. Once arrested, Plaintiffs allege that instead of being booked into the county jail, individuals are taken to a separate processing center specifically for the OLS arrest program. Dkt. 10 at ¶ 32.

Plaintiffs claim that the arrests for criminal trespass violate the Fourth Amendment, the Equal Protection Clause, and the Due Process Clause. Dkt. 10 at ¶¶ 55–65. Plaintiffs state that

McCraw has deliberately violated 8 U.S.C. § 1357. Dkt. 10 at ¶ 146. Further, Plaintiffs contend that McCraw failed to train and supervise state officers with respect to the constitutional implications of arrests. Dkt. 10 at ¶ 146. Plaintiffs additionally allege that a conspiracy exists between all the named defendants. Dkt. 10 at ¶¶ 159, 161. Plaintiffs cite the purported "agreement" between Governor Abbott, McCraw and Sheriff Coe to engage in "immigration enforcement" without the federal government and the purportedly unconstitutional implementation of OLS. Dkt. 10 at ¶¶ 159, 161.

### 3.    TDCJ Executive Director Bryan Collier

Bryan Collier is the Executive Director of TDCJ, and he is sued in both his individual and official capacities. Dkt. 10 at ¶¶ 95–126, 147–48. Plaintiffs allege that after the initial appearance, arrestees are taken by TDCJ to one of two county jails, the Dolph Briscoe Unit and Segovia Unit. Dkt. 10 at ¶ 32. The arrestees that are detained in these facilities remain under the exclusive control of the Kinney County Sheriff, who retains authority over any decisions regarding time-calculations and release. ECF No. 1-4 at 149.

Plaintiffs allege that Collier has established a *de facto* policy of over-incarceration, resulting in ongoing violations of constitutional rights. Dkt. 10 at ¶ 147. Some Plaintiffs allege that physical release of detainees was purposefully delayed after a judge ordered release, and that Collier was deliberately indifferent because of his conscious refusal to release the detainees. Dkt. 10 at ¶¶ 33, 147. Further, Collier allegedly failed to train and or supervise TDCJ employees regarding the duty to release detainees who Plaintiffs claim were legally entitled to release. Dkt. 10 at ¶ 148. Plaintiffs contend that the alleged over-incarceration violates the Fourth Amendment, the Eighth Amendment, and the Equal Protectional Clause. Dkt. 10 at ¶ 141. Plaintiffs assert that a conspiracy exists between all the named defendants. Dkt. 10 at ¶ 160, 162. Specifically, Plaintiffs claim that

Sheriff Coe and Collier agreed to deny detainees the right to counsel and refused to release individuals who were legally entitled to release. Dkt. 10 at ¶¶ 160, 162.

## C.    Plaintiffs' Second Amended Complaint

Because Plaintiffs' Second Amended Complaint is 89 pages long, to aid the Court, State Defendants offer this additional summary regarding its organization. The complaint contains two putative classes and arranges its claims around that structure. *See generally* Dkt. 10 at 17–87. The claims at issue in Plaintiffs' first putative class claims fall under Section "V. Operation Lone Star (OLS) is Unconstitutional." *See* Dkt. 10 at ¶¶ 44–78. Plaintiffs claim that arrests made pursuant to OLS violate the Fourth Amendment (¶¶ 55–59) and Equal Protection (¶¶ 60–65).[2] Plaintiffs' first putative class brings claims against only Governor Abbott and Director McCraw in their individual and official capacities. *Id.* at ¶¶ 66–68.

Plaintiffs' second putative class claims fall under Section "VI. Arrest and Incarceration Pursuant to OLS." *See* Dkt. 10 at ¶¶ 79–162. Plaintiffs contend that their arrests and detentions violate the Fourth Amendment (¶¶ 127–32), Equal Protection (¶¶ 133–38), and Due Process (¶ 138). Plaintiffs further allege that their right to counsel under the Sixth Amendment has been denied (¶ 139), and that their over-incarceration violates the Fourth, Eighth, and Fourteenth Amendments (¶¶ 140–47). For these claims, Plaintiffs name Governor Abbott, Director McCraw, and Executive Director Collier in their individual capacities only. *Id.* at 66 (section header specifying individual capacity); *see also id.* at ¶¶ 145–47. Plaintiffs also bring Section 1983 claims against Kinney County and Sheriff Coe in his individual capacity only. *Id.* at ¶¶ 149–58. Finally,

---

[2] While a header also lists due process, Plaintiffs do not mention due process in the substance of the first putative class pleadings. *Compare* Dkt. 10 at 24, *with id.* ¶¶ 44–78.

Plaintiffs bring conspiracy claims against Governor Abbott, Director McCraw, and Sheriff Coe

under both 42 U.S.C. § 1983 and § 1985. *Id.* at ¶¶ 159–62.

## II.  MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

### A.  Standard of Review

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-

matter jurisdiction. FED. R. CIV. P. 12(b)(1). "Federal courts are courts of limited jurisdiction, and

absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed.*

*Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed

for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to

adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010

(5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on

the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001);

*Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against

subject matter jurisdiction that must be rebutted by the party bringing an action to federal court."

*Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996). "A 'facial attack' on the complaint requires the

court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction,

and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v.*

*Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980) (citing *Mortensen v. First Federal Savings &*

*Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

### B.  Arguments & Authorities

#### 1.  Standing

For the reasons set forth below, Plaintiffs lack standing to bring claims against Governor

Abbott. The requirement that the plaintiff have standing imposes a "fundamental limitation" upon

a federal court's subject-matter jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). "[S]tanding is perhaps the most important of the jurisdictional doctrines." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (internal quotation omitted). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).

"Remedies . . . operate with respect to specific parties" and courts do not enjoin laws or executive orders; instead, they enjoin the state officials responsible for their enforcement. *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (holding that the plaintiffs lacked standing because they could not show that the defendants would enforce the challenged provisions of the Affordable Care Act). Put another way, courts do not enjoin the operation of laws "in the abstract." *Id.* Accordingly, Plaintiffs cannot establish standing to maintain a claim against a state official "who is without any power to enforce the complained-of [rule]." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc). The Fifth Circuit has applied this line of jurisprudence to dismiss claims against Governor Abbott challenging his executive orders, recognizing that the power "to issue, amend or rescind an executive order is not the power to enforce it." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020) (internal quotations omitted); *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020) ("Because the plaintiffs have pointed to nothing that outlines a relevant enforcement role for Governor Abbott, the plaintiffs' injuries likely cannot be

fairly traced to him."). For both the "fairly-traceable" and "redressability" requirements of standing, an injury stems from the enforcing—not issuing—party.[3] *See id.*

Here, Governor Abbott does not participate in the enforcement of Texas's criminal trespass statute which—even according to Plaintiffs' pleading—is the challenged enforcement mechanism of OLS. *See* Dkt. 10 at ¶¶ 31–32, ¶¶ 36–37. Nor is Governor Abbott involved in Plaintiffs' conditions of confinement or anything occurring while individuals are in the custody of Kinney County or TDCJ. *See Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014) (finding that TDCJ is the agency responsible for the administration and enforcement of the detention system, not the Texas governor). For purposes of standing, that is dispositive. Because Governor Abbott plays no role in enforcing the state laws under which other state officials are carrying out the objectives of OLS, Plaintiffs' alleged harm is neither fairly traceable to him. In rebuttal, Plaintiffs will likely "argue that Abbott caused their injury because he drafted, enacted, and issued statements . . . directing his [directives] to be enforced.'" *Compare 6th Street Bus. Partners, LLC v. Abbott*, No. 1:20-CV-706, 2020 WL 4274589, at *3 (W.D. Tex. 2020) (Pitman, J.) (quoted language), *with* Dkt. #10 ¶ 38 (noting "[p]ublic statements by Governor Abbott, who created and implemented the OLS trespass arrest program with the Assistance of Director McCraw"). But, as this Court held in a similar context, such argument is "foreclosed by current Fifth Circuit law." *6th Street*, 2020 WL 4274589 at *3; *see also Mi Familia Vota*, 977 F.3d at 467–68. "Plaintiffs cannot establish that [Governor Abbott] caused their enforcement-based injury or that enjoining certain

---

[3] That a plaintiff may seek relief under the Declaratory Judgment Act does nothing to alter the standing analysis. *California*, 141 S. Ct. at 2115-16. "Redress is sought *through* the court, but *from* the defendant." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original). "This is no less true of a declaratory judgment suit than of any other action." *Id.*

activities by Abbott would redress their injury," and, "[a]ccordingly, Plaintiffs have not met their burden to establish Article III standing to litigate their claims against Abbott in federal court." *6th Street*, 2020 WL 4274589 at *3.

Similarly, Executive Director Collier and Director McCraw are without authority to provide any redress to Plaintiffs' claims for injunctive relief based on over-detention and over-incarceration. *See Okpalobi*, 244 F.3d at 427 ("[A] state official cannot be enjoined to act in any way that is beyond his authority to act in the first place."). The Plaintiffs that are still detained in TDCJ facilities remain under the exclusive control of the Kinney County Sheriff, and any decisions regarding the release of these individuals remains the authority of the Kinney County Sheriff. *See* ECF No. 1-4 at 149; *see also* Exhibit A (Order Denying Ivan Nava's Motion for Finding of Contempt, *Ex parte Texas Department of Criminal Justice, et al.*, Cause No. 5118 (63rd Judicial Dist. June 16, 2022) (finding that "[TDCJ] . . . and [DPS] have no authority to release individuals."))[4] Accordingly, Plaintiffs lack standing to bring their claims for injunctive relief regarding over-detention and over-incarceration against Executive Director Collier or Director McCraw.

### 2. Mootness

Mootness can be described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). "[M]ootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004). "An action is moot where (1) the controversy is no

---

[4] The 63rd District Court's Order is a matter of public record and therefore subject to judicial notice. *See Center for Biological Diversity, Inc v BP America Production Co*, 704 F3d 413, 422–23 (5th Cir. 2013).

longer live or (2) the parties lack a personal stake in its outcome." *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). The only named Plaintiffs who are still in custody for pending criminal trespass charges as of June 27, 2022, are Israel Baylon Arellano, Jose Lopez Lozano, Miguel Lopez Lozano, Francisco Villalpando Ramos, and Cesar Galindo Escoto. Dkt. 10 at ¶ 70. The remaining Plaintiffs have either been released from custody or their claims have been adjudicated. *See id.* To the extent that these Plaintiffs seek an injunction to modify the arrest, detention, or incarceration practices of Defendants, their non-monetary claims are moot.

### 3.    Sovereign Immunity

"[F]or over a century now, [the Supreme Court has] made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Absent a valid waiver by the State, abrogation by Congress, or proper invocation of the *Ex parte Young* exception, sovereign immunity bars suit against states in federal court, regardless of the nature of the remedy sought.[5] *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

---

[5] "[T]he Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity." *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 596 n.1 (5th Cir. 2021). "The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden v. Maine*, 527 U.S. 706, 713 (1999). As such, this motion shall use the more accurate term "sovereign immunity."

In enacting 42 U.S.C. § 1983, Congress did not abrogate sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), nor has the State of Texas voluntarily waived sovereign immunity for claims brought under Section 1983, *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). Section 1985 similarly does not abrogate sovereign immunity from suit. *Early v. So. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs,* 252 F. App'x 698, 700 (5th Cir. 2007) (per curiam) (determining that Congress has not abrogated the States' sovereign immunity under Section 1985). Therefore, as a preliminary matter, any Section 1983 or Section 1985 claim against State Defendants in their official capacities that seeks monetary damages is barred by sovereign immunity.

The *Ex parte Young* exception admittedly permits a litigant to maintain suit against a state official in his official capacity, but only "if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). When conducting an *Ex parte Young* inquiry, the Court must "first consider whether the plaintiff has named the proper defendant." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Id.* at 997 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). If the state official named as defendant "is not . . . tasked with enforcing the challenged [provision]," then the requisite connection is lacking and the *Young* analysis "ends." *Tex. Democratic Party*, 961 F.3d at 401. An official's "general duty to see that the laws of the state are implemented" is insufficient to establish the requisite connection to enforcement. *Morris*, 739 F.3d at 746. Rather, the official sued must bear "the

particular duty to enforce the [provision] in question," alongside a demonstrated willingness to enforce it. *Id.*

### a.  Governor Abbott in his official capacity is entitled to sovereign immunity because *Ex parte Young* does not apply.

The Fifth Circuit "has acknowledged that [] Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin*, 943 F.3d at 1002 (quoting *Air Evac EMS Inc. v. Texas Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)). "[A]uthority to promulgate [a policy], standing alone, is not the power to enforce that policy," and, here, Plaintiffs' "operative complaint does not adequately plead that [Governor Abbott] [has] a 'sufficient connection [to] the enforcement of the challenged act'" to fall within the *Ex parte Young* exception. *See Haverkamp v. Linthincum*, 6 F.4th 662, 670–72 (5th Cir. 2021). As Governor Abbott lacks an enforcement connection to OLS, as explained above in the context of standing, so the *Ex parte Young* exception to sovereign immunity does not apply. *See id.*; *see also Langan v. Abbott*, 518 F. Supp.3d 948, 954 (W.D. Tex. 2021) (holding that Governor Abbott was entitled to sovereign immunity because the plaintiffs did not demonstrate that he had a sufficient enforcement connection to the challenged statute) (Pitman, J.). Regardless of the relief sought, Plaintiffs' claims against Governor Abbott in his official capacity are barred.

### b.  McCraw in his official capacity is entitled to sovereign immunity to the extent Plaintiffs seek non-monetary relief regarding past conduct.

As discussed in the context of mootness, only five plaintiffs remain in custody for pending criminal trespass charges: Israel Baylon Arellano, Jose Lopez Lozano, Miguel Lopez Lozano, Francisco Villalpando Ramos, and Cesar Galindo Escoto. Dkt. 10 at 33. But for *Ex parte Young* to apply, the complaint must "allege[] an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645

(2002). "As long as the claim seeks prospective relief for ongoing harm, the fact that a current violation can be traced to a past action does not bar relief under . . . *Young.*" *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 738 (5th Cir. 2020). There are three problems with how Plaintiffs have framed the alleged "ongoing violations of federal law." First, there cannot be any ongoing violation of the rights of Plaintiffs whose criminal charges have been adjudicated and who have been released from custody because their harm is not "ongoing." Second, the Plaintiffs who remain in custody have not alleged that they are experiencing ongoing violations of federal law because they challenge their past arrests, not their current conditions. Third, Plaintiffs cannot allege that a hypothetical group of persons could potentially be arrested and detained for criminal trespass and use those hypothetical arrests to contend that they have experienced ongoing violations of federal law.[6]

Consider two recent cases in which the plaintiffs properly invoked *Ex parte Young.* In *Va. Office for Prot. & Advocacy v. Stewart*, a state agency sued state officials in their official capacities when those officials refused to produce requested medical records to which the state agency was entitled under federal law and sought an injunction compelling production. 563 U.S. 247, 255 (2011). The state officials' refusal to produce the records was the purported violation of federal law and the ongoing harm from that violation would be redressed by the injunction. In *Green Valley Special Utility District v. City of Schertz*, the state officials unlawfully decertified a special utility district's territory and sought an injunction to prohibit those officials from allowing another utility to serve any area decertified. 969 F.3d 460, 473 (5th Cir. 2020). While describing it as a "close question," the Fifth Circuit held that the de-certification was the violation of law and the ongoing

---

[6] These reasons apply equally to Governor Abbott, and further support that Plaintiffs official capacity claims against the Governor are barred by sovereign immunity.

harm from that violation (the curtailment of territory where the plaintiff maintained it provided service) would be redressed by the injunction. *Id.*

By contrast, in *Specs Family Partners, Limited v. Nettles*, the Fifth Circuit upheld a district court ruling that a plaintiff did not allege an ongoing harm when a liquor store chain operator ("Spec's") sued the Texas Alcoholic Beverage Commission ("TABC") seeking "a declaration that Defendants violated its rights and that TABC's interpretations of various statutes and rules [were] incorrect," as well as "an injunction prohibiting TABC from repeating actions that Spec's alleges violated its rights." 972 F.3d 671, 681 (5th Cir. 2020). Critically, Spec's neither alleged that TABC was still engaged in any of the purported illegal behaviors nor that any such actions were imminent. *Id.* In holding that Spec's had not overcome sovereign immunity, the Fifth Circuit emphasized that the investigation and proceedings forming the basis of Spec's allegations were completed and that "[t]he injunctive relief sought focus[ed] on past behavior." *Id.*

The allegations in this case are similar to *Specs Family Partners* and unlike *In Va. Office for Prot. & Advocacy* or *Green Valley Special Utility District*. With regarding to ongoing harm, Plaintiffs generally allege those who remain in custody "as a result of the OLS program are suffering a direct and current injury as a result of their arrest and detention." Dkt. 10 at ¶ 33. However, Plaintiffs do not provide more than a bare-bones assertion as to how there are ongoing violations of the rights of Israel Baylon Arellano, Jose Lopez Lozano, Miguel Lopez Lozano, Francisco Villalpando Ramos, and Cesar Galindo Escoto. They importantly do not allege that McCraw is currently engaged in those behaviors towards them or that they are in imminent danger of a further violation of their rights by McCraw. The Plaintiffs who remain in custody are essentially requesting a

declaration that McCraw violated federal law when they were previously arrested pursuant to Texas' criminal trespass laws without disputing that these Plaintiffs were in fact trespassing.

While the current detentions are related to the initial arrests, like the *Spec's* case, the arrests are completed for purposes of the straightforward inquiry of whether there is an ongoing violation of rights.[7] *See Wallace v. Kato,* 549 U.S. 384, 389–90 (2007) (distinguishing arrest from detention at the point "when legal process was initiated against" the defendant, such as "when, for example, he is bound over by a magistrate or arraigned on charges"). These Plaintiffs solely allege that they remain detained in a TDCJ facility in the custody of the Kinney County Sheriff, pursuant to their appearance before a magistrate who determined that sufficient probable cause existed to support their arrest and set their bond amounts pending further criminal proceedings. *See* Dkt. 10 at ¶ 91 (alleging that persons arrested pursuant to the OLS program appear before a magistrate who conducts "proceedings pursuant to Tex. Code Crim P. Art. 15.17" and sets bond before the arrested persons are taken to the Briscoe and Segovia Units).

Assuming the Plaintiffs who remain in custody can legitimately articulate an ongoing violation of *their* rights, they cannot speak on behalf of all hypothetical persons who could be theoretically arrested, prosecuted, and detained for criminal trespass in the future under the guise of an "ongoing violation" and thereby invoke sovereign immunity's narrow *Ex parte Young* exception. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[A] plaintiff generally must assert his

---

[7] And the plaintiffs who have already gone through the process cannot rest their claims on a possibility of re-arrest. *See O'Shea v. Littleton*, 414 U.S. 488, 496–98 (1974) (holding that the plaintiffs who sought to challenge a bail proceeding could not rest on a likelihood of re-arrest); *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (holding that the plaintiffs who had allegedly been deprived of their right to simultaneous voter registration lacked standing because they could not demonstrate a substantial risk of experiencing that injury again in the future).

own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."). In the cases where the Court has found an ongoing violation of rights, the rights in question belonged to those who filed suit and were experiencing ongoing violation of *their* rights.

Because Plaintiffs are essentially requesting a declaration that McCraw violated federal law when the named Plaintiffs were arrested, prosecuted, and detained pursuant to Texas' criminal trespass laws in the past, Plaintiffs are not truly seeking prospective relief and McCraw is entitled to sovereign immunity as to the claims brought against him in his official capacity (the claims brought by the first putative class). *See* Dkt. 10 at ¶¶ 55–68.

### 4.   Legislative Immunity

Governor Abbott is also entitled to legislative immunity for claims stemming from the appropriation of funds to support OLS. Plaintiffs allege that Governor Abbott violated their constitutional rights in large part by appropriating funds or signing bills passed by the Texas Legislature appropriating funds that made OLS possible. Dkt. 10, ¶¶ 3, 34, 67. Legislative immunity not only protects legislators, it also protects officials fulfilling legislative functions. *Hughes v. Tarrant Cnty.*, 948 F.2d 918, 920 (5th Cir. 1991) (citing *Minton v. St. Bernard Parish School Board*, 803 F.2d 129, 135 (5th Cir. 1986)). The immunity extends to actions by an official that are functionally legislative, including actions based on general facts regarding a general policy. *Id.* at 921. Here, Governor Abbott's activities related to appropriating funds for OLS were legislative functions.

Generally, the Legislature is responsible for the appropriation of state treasury funds. Tex. Const. art. VIII, § 6; *see also*, *Hendee v. Dewhurst*, 228 S.W.3d 354, 359–63 (Tex. App.—Austin 2007, pet. denied). Appropriation means a grant of money made by the legislature for a purpose

other than the payment of a judgment or a preexisting debt incurred by the state. TEX. GOV'T CODE § 317.001(1). The Governor can propose transferring or repurposing appropriated state agency funds during states of emergency or declared disasters, subject to approval by the Legislative Budget Board. TEX. GOV'T CODE § 317.002(b). The Legislature has also created a process for state agencies to request the transfers of appropriated funds during declared states of disaster, subject to the approval of the Legislative Budget Board and the Governor.[8] TEX. CONST. art. XVI § 69. The agency requesting funds must submit a recommended plan of transfer to the Governor, Legislative Budget Board, Comptroller, and any other agency involved in the transfer. S.B. 1, art. IX, § 14.04(g)(1). Upon approval from the Legislative Budget Board and Governor Abbott, the Comptroller "shall [then] transfer the funds as recommended." *Id.* at (g)(2). This process was followed by the state agencies requesting OLS related funding.[9]

Here, any claim based on Governor Abbott signing legislation that appropriated funds for OLS is barred by legislative immunity. Similarly, Governor Abbott's participation in the process set forth by the Legislature to appropriate funds in response to declared disasters is also a legislative activity for which he is immune. Therefore, any attempt by Plaintiffs to impose liability or enjoin Governor Abbott in this lawsuit based on his involvement with appropriations for OLS is barred by legislative immunity.

---

[8] Article IX, Sec. 14.04(d), Disaster Related Transfer Authority, House Bill No. 1, General Appropriations Act, 86th Legislature, R.S. 2019 (available at https://tinyurl.com/GAA86thLeg); and Article IX, Sec. 14.04(d), Disaster Related Transfer Authority, Senate Bill No. 1, General Appropriations Act, 87th Legislature, R.S. 2021 (available at https://tinyurl.com/GAA87thLeg).

[9] This Court can take judicial notice of public records, such as the Disaster Funding Approval letter found at: https://tinyurl.com/DisasterFundingLetter; *see also* Fed. R. Evid. 201(b), (f); *e.g.*, *Hawk Aircargo, Inc. v. Chao*., 418 F.3d 453, 457 (5th Cir. 2005) (taking judicial notice of approval by the National Mediation Board published on the agency's website); *Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (per curiam) (Fifth Circuit taking judicial notice of Texas agency's website).

### 5.    *Younger* Abstention

Under *Younger*, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). The *Younger* principles of equity, comity, and federalism "counsel[] restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (quoting *Younger*, 401 U.S. at 46). "The *Younger* doctrine applies not only to suits for injunctive relief, as in *Younger* itself, but also extends to suits for declaratory relief." *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (citing *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

The *Younger* doctrine counsels federal courts to abstain from exercising jurisdiction when there are parallel state proceedings in any one of three "exceptional circumstances: state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'n Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotation marks omitted). Abstention is required from a state criminal defendant's asserted federal claims if: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Applicable here, "[f]ederal courts consistently have abstained from ruling on cases that involve ongoing state criminal prosecutions except in the most unusual cases and only after there has been a showing of great and immediate harm." *Darnell v. Sabo*, No. 4:19-CV-00871-O-

BP, 2020 WL 3442057, at *2 (N.D. Tex. June 1, 2020), rep't & rec. adopted, No. 4:19-CV-871-O, 2020 WL 3440885 (N.D. Tex. June 23, 2020). All three *Younger* abstention requirements are satisfied by this case, and this Court should decline to exercise jurisdiction over Plaintiffs' lawsuit.

### a.    Proceedings before this Court would necessarily interfere with ongoing state judicial proceedings.

To determine whether the federal proceeding would interfere with the state proceeding, the court "look[s] to the relief requested and the effect it would have on the state proceedings." *Bice*, 677 F.3d at 717. "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* (quoting *Joseph A. ex rel. Wolfe v. Ingram,* 275 F.3d 1253, 1272 (10th Cir. 2002)). Here, the injunctive and declaratory relief sought by the Plaintiffs would necessarily interfere with ongoing state judicial proceedings because it would effectively require TDCJ or Kinney County to release criminal defendants from jail and refrain from any future prosecution or face "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500. This is so because "[t]he enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order." *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981). Not only would such compliance reviews impose lengthy delays on the pending criminal prosecutions at issue, but this type of judicial oversight is also exactly what *Younger* sought to prohibit. *See O'Shea*, 414 U.S. at 500*; Wallace v. Kern*, 520 F.2d 400, 401 (2d Cir. 1975).

### b.    The State of Texas has an important interest in enforcing its laws.

There is no dispute that the State of Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731

F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws.");

*Schall v. Martin*, 467 U.S. 253, 264 (1984) (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960) and *Terry v. Ohio*, 392 U.S. 1, 22 (1968)) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted."). Therefore, the second *Younger* abstention factor is satisfied.

### c.   Plaintiffs have an adequate opportunity to raise their constitutional challenges in their pending state proceedings.

To overcome the presumption in favor of abstention, Plaintiffs must show that they have *no opportunity* to litigate the asserted federal issues in state court. *DeSpain*, 731 F.2d at 1178. Under this prong, "abstention is appropriate unless state law *clearly bars the interposition of the constitutional claims*." *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) (emphasis added); *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights"); *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court.") (emphasis in original).

Within their own pending criminal proceedings, the individual Plaintiffs can raise their challenges to their arrests and continued detention under the Fourth Amendment and their due process challenges under the Fourteenth Amendment in a pre-trial writ of habeas corpus under Article 11 of the Texas Code of Criminal Procedure, at an examining trial under Article 16.01 of the Texas Code of Criminal Procedure, or at a hearing to challenge the sufficiency of probable

cause to arrest. Plaintiffs' challenges under the Sixth Amendment can be remedied by the exclusion of evidence, where appropriate, or may be disregarded as harmless error. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (collecting cases). Such challenges, whether made under the Fourth, Sixth, or Fourteenth Amendment, must necessarily be determined on a case-by-case basis. Accordingly, to the extent that Plaintiffs are still involved in ongoing prosecutions, there exists adequate opportunities for them to raise each of their challenges in the pending state proceedings. *See Ex parte Sifuente*, 639 S.W.3d 842, 845 n.1, 849 (Tex. App.—San Antonio 2022, pet. ref'd) (reversing the trial court's order denying the habeas corpus applications of the four appellants arrested pursuant to OLS who had not yet "bonded out" or pled "no contest or guilty to the charges"); *cf. State v. Curipoma*, 2022 WL 580872, at *1 (Tex. App.—Austin 2022, pet. granted) (describing a successful habeas application filed by an arrestee who was purportedly arrested pursuant to OLS).

For all of these reasons, State Defendants ask this Court to abstain under *Younger* to the extent Plaintiffs seek injunctive or declaratory relief.

### III.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A.   Standard of Review

Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true

conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

**B.     Arguments & Authorities**

**1.     Plaintiffs have failed to plead a plausible Fourth Amendment violation.**

Plaintiffs allege that their Fourth Amendment rights have been violated. Plaintiffs have sought to form two classes based on: (a) arrests and detention based upon race, immigration status, or national origin, Dkt. 10 at ¶¶ 55–59; and (b) over-incarceration of individuals legally entitled to release, Dkt. 10 at ¶¶ 127–32. Against Governor Abbott, Plaintiffs have not alleged facts sufficient to state a Fourth Amendment claim under either theory because they have not alleged facts sufficient to create the reasonable inference that either he personally (for the individual-capacity claim) or the Office of the Governor (for the official-capacity claim) was involved in arresting, detaining, or incarcerating Plaintiffs. For the same reasons that Plaintiffs lack standing to sue Governor Abbott, they fail to state a plausible Fourth Amendment claim against him. Against all three State Defendants, Plaintiffs have failed to plead a violation of the Fourth Amendment relating to arrests and incarcerations based upon race, immigration status, or national origin.[10] Based on the factual allegations and reasonable inferences drawn therefrom, Plaintiffs were arrested for violation of Texas' criminal trespass statute and not based on their immigration status.

The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or by probable cause. U.S. Const. amend. IV. "The constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir.

---

[10] State Defendants submit that the overincarceration claim is subject to dismissal for lack of subject-matter jurisdiction pursuant to lack of standing and the *Younger* abstention doctrine to the extent injunctive or declaratory relief is sought and is otherwise barred by qualified immunity to the extent Plaintiffs name State Defendants in their individual capacities.

2009); *see also Baker v. McCollum*, 443 U.S. 137, 144–45 (1979). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017) (quoting *United States v. Castro*, 166 F.3d 728, 733 (5th Cir. 1999) (en banc)).

"To determine whether probable cause existed for an arrest, the court examines the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause." *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 780 (5th Cir. 2022) (internal quotations omitted). The probable cause inquiry focuses on the facts known to the arresting officer at the time of the arrest, not subsequent developments that might disprove the correctness of a previous police determination that probable cause exists. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). "Critically, 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Loftin*, 33 F.4th at 780 (quoting *Illinois v. Gates*, 480 U.S. 213, 243 n.13 (1983)). "Thus, probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

As a general rule, it is not a crime for a removable alien to remain present in the United States. *Arizona v. United States*, 567 U.S. 387, 407 (2012). "If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Id.* However, Plaintiffs' Complaint makes clear that the detentions and arrests at issue in this case are not based

solely (or at all) on Plaintiffs' removability. Rather, they are based on violation of Texas state law; namely, criminal trespass. Dkt. 10 at 2. "If an officer has probable cause to believe that an individual has committed *even a very minor criminal offense in his presence*, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (emphasis added).

To succeed on a claim of false arrest based on a deficient probable cause affidavit, the plaintiff must demonstrate that the defendants (1) "knowingly or recklessly omitted exculpatory information from the affidavits they submitted in support of the warrant applications" and, (2) that there would not have been probable cause for the arrest "if the omitted information had been included in the affidavits." *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (citing *Freeman v. Cnty. of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000)); *see also Wilson v. Stroman*, 33 F.4th 202, 206–07 (5th Cir. 2022). If the affidavit adds false facts or omits exculpatory facts, but a corrected affidavit would still give probable cause for arrest, then the arrest is constitutional. *Johnson*, 565 F. App'x at 289.

Here, arrests took place pursuant to probable cause based on individuals' unlawful presence on private property. For example:

- Ivan Ruano Nava's Arrest Affidavit states that he trespassed on a private ranch where barbed-wired fence surrounded the entire property and that Nava admitted he crossed the fence. Dkt. 1-4 at 48.

- Erasto Arroyo Barcenas' Arrest Affidavit states that he was found trespassing on a private ranch and the owner wanted to press charges for criminal trespass. Dkt. 1-4 at 40.

- Melvin Amador Rodas' Arrest Affidavit states that he was located on property enclosed by a fence where he was found more than 100 feet from the nearest property boundary, and he did not have permission to enter or remain on the property. Dkt. 1-4 at 38.

- Jose Carlos Gomez-Colorado's Arrest Affidavit states he was found on a private ranch and would have had to cross many barriers to access the ranch. The ranch owner wanted to press charges for criminal trespass. Dkt. 1-4 at 41.

- Oscar Serrano Martinez's Arrest Affidavit states he was found on a railway and did not have permission to be on the property. Dkt. 1-4 at 49.
- Jesus Curipoma's Arrest Affidavit states that he was found riding on a train car where there were "no trespassing" signs posted on the entry points to the rail yard and he did not have permission to enter or remain in the rail yard or any of the trains. Dkt. 1-4 at 44.
- Melvin Joel Amaya Zelaya's Arrest Affidavit states that he was in a rail yard that contained "no trespassing" signs on the entry points and did not have permission to enter or remain in the rail yard or any of the trains. Dkt. 1-4 at 39.

The affidavits cited in Plaintiffs' own Complaint show that arresting officers had sufficient knowledge to believe the individuals arrested committed criminal trespass. Thus, the arresting officers had probable cause.

Plaintiffs' Complaint even concedes these grounds for arrest for its class representatives. Plaintiffs never assert that the arrestees did not engage in the unlawful conduct they are charged with, criminally trespassing. Rather, Plaintiffs argue that affidavits and arrest narratives indicate racial profiling because they note perceived ethnicity or perceived immigration status. Even if the affidavits contain information regarding an individual's perceived ethnicity or perceived immigration status, it is unimportant when analyzing whether there was sufficient probable cause for arrests based on criminal trespass. The arresting officers only needed to be aware of information that caused belief that the individual had already committed a crime or was committing a crime, and they were.

Further, Plaintiffs make no factual allegations that officers submitted "false facts" or omitted "exculpatory facts," other than including a generic section in their Complaint labeled, "False Probable Cause Affidavits." Dkt. 10 at 69. This section simply contains case law regurgitating Fourth Amendment requirements. Plaintiffs allege no false statements by officers regarding their unlawful presence on private property. Including identifying information, such as

race, helps *prevent*—not cause—false arrests. Indeed, in *Jones v. City of Grand Prairie, Texas*, the Fifth Circuit held that *withholding* the perpetrator's race (per the victim) from the information presented to the magistrate "vitiated" probable cause because the inclusion of that "clearly critical information" would have prevented a false arrest. 209 F.3d 718 (Table), at *2–4 (5th Cir. 2000).

Moreover, Plaintiffs fail to allege facts that create a reasonable inference that the probable cause affidavits without such "false facts" (as their perceived race or immigration status) or that included such "exculpatory facts" would have left officers without probable cause to arrest. *Johnson*, 565 F. App'x at 289. And again, Plaintiffs do not contest that they were illegally trespassing, but rather that the arrest affidavits contain information that Plaintiffs deem irrelevant. This is not enough to plead a violation of the Fourth Amendment relating to the contested arrests and detentions, and thus those claims must be dismissed.

### 2.     Plaintiffs have failed to plead a plausible Sixth Amendment claim.

The Sixth Amendment guarantees "the Assistance of Counsel" to the accused in "all criminal prosecutions." U.S. Const. amend. VI. "[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty.,* 554 U.S. 191, 194–95 (2008) (citing *Brewer v. Williams*, 430 U.S. 387, 398–399 (1977)). "[T]he right to counsel granted by the Sixth Amendment means that a person is entitled to the help of a lawyer at or after the time that adversary judicial proceedings have been initiated against him. . . ." *Estelle v. Smith*, 451 U.S. 454, 469 (1981).

Once the right to counsel attaches, the accused "is entitled to the presence of appointed counsel during any 'critical stage' of the post attachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Rothgery*, 554 U.S. at 212. Not every event

following the inception of adversary judicial proceedings constitutes a "critical stage." *E.g.*, *U.S. v. Ash*, 413 U.S. 300, 321 (1973) (holding that the Sixth Amendment did not grant the right to counsel at the post-indictment photographic display used to test witness identification prior to trial). "Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.'" *Id.* at 323.[11] Where the denial of the Sixth Amendment right to counsel results in no "demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *U. S. v. Morrison*, 449 U.S. at 365. This is so because there exists "no effect of a constitutional dimension which needs to be purged to make certain that [a criminal defendant] has been effectively represented and not unfairly convicted." *Id.*, at 366.

Here, Plaintiffs do not allege that they are forced to engage in "critical stage" proceedings without the assistance of counsel. Rather, they complain of the delay in appointment of counsel, alleging that "[a]ppointment of counsel after arrest is routinely delayed and ranges between 2 and 139 days." Dkt. 10 at 49. Plaintiffs also complain that they did not receive counsel immediately after requesting representation, despite having no critical stage proceedings where the right to counsel would be needed or harm would occur without such representation.

- Ivan Ruano Nava was arrested for criminal trespass on July 25, 2021, and was not appointed counsel until September 20, 2021, and "remained in custody without a court date or case filed against him during that time." Dkt. 10 at ¶ 102.

---

[11] Among the stages of a criminal proceeding deemed to be a "critical stage" are arraignments, *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961); post-indictment interrogations, *Massiah v. United States*, 377 U.S. 201, 205–06 (1964); post-indictment identification lineups, *United States v. Wade*, 388 U.S. 218, 236–37 (1967); entry of a guilty plea, whether to a misdemeanor or a felony, *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972); closing summation, *Herring v. New York*, 422 U.S. 853, 858 (1975); overnight recess between direct and cross-examination of a defendant, *Geders v. United States*, 425 U.S. 80, 91 (1976); and court-ordered psychiatric examinations to determine competency to stand trial and future dangerousness, *Estelle*, 451 U.S. at 470.

- Christian Ruiz-Rodriguez was arrested for criminal trespass on September 24, 2021, and was not assigned counsel until October 8, 2021. Dkt. 10 at ¶ 101.

- Noliz Leyva-Gonzalez was arrested for criminal trespass on October 14, 2021, and "requested appointed counsel at magistration, but no attorney was appointed until March 2022." Dkt. 10 at ¶ 105.

- Jose Carlos Gomez-Colorado was arrested for criminal trespass on October 14, 2021, and "requested appointed counsel at magistration, but no attorney was appointed until March 2022." Dkt. 10 at ¶ 106.

- Jose Luis Dominguez-Rojas was arrested for criminal trespass on December 24, 2021, and was appointed counsel on March 4, 2022, "despite requesting representation at magistration."[12] Dkt. 10 at ¶ 100.

- Melvin Joel Amaya Zelaya was arrested for criminal trespass on December 25, 2021, and was appointed counsel on March 4, 2022.[13] Dkt. 10 at ¶ 103.

A delay in the appointment of counsel, standing alone, does not present any demonstrable prejudice. In fact, Plaintiffs do not allege that the delay hindered the ability of appointed counsel from providing adequate representation in any way. Most importantly, there are no allegations by any of the above Plaintiffs who complain that their Sixth Amendment rights were violated that they were forced to engage in a critical stage proceeding without assistance of counsel. This is a significant omission because the Supreme Court has declined to consider whether even a six-month delay in appointment of counsel would prejudice Sixth Amendment rights, nor consider what standards might apply. *Rothgery v. Gillespie Cnty., Tex*, 554 U.S. 191, 213 (2008)[14]; *see also*

---

[12] Plaintiffs' Complaint mistakenly lists the date of appointment of counsel as March 4, 2020, but the correct date is March 4, 2022.

[13] Plaintiffs' Complaint mistakenly lists the date of appointment as March 4, 2020.

[14] Justice Alito's concurring opinion is even more clear on this point: "Texas counties need only appoint counsel as far in advance of trial, and as far in advance of any pretrial 'critical stage,' as necessary to guarantee effective assistance at trial." *Rothgery*, 554 U.S. at 218 (Alito, J., concurring) (quoting the majority opinion's statement that "counsel must be appointed within a reasonable time after attachment *to allow for adequate representation at any critical stage before trial, as well as at trial itself*" (emphasis added by Justice Alito)).

State Defendants' Motion to Dismiss

*Lucio v. Davis*, 751 F. App'x 484, 490 n.3 (5th Cir. 2018) (per curiam) (citing *Rothgery* and concluding that "jurists of reason could not debate the potential for fairminded disagreement as to whether [a] three-month delay violated [the] Sixth Amendment right to counsel"). And in *Leachman v. Stephens*, the Fifth Circuit highlighted the fact that the Supreme Court has never "held that speedy-trial concerns determinatively bear on the denial-of-counsel inquiry, *or* that a defendant suffers an independent violation of the right to counsel because he requests appointment of counsel not given to him until his arrival to answer pending state charges." 581 F. App'x 390, 400 (5th Cir. 2014) (emphasis added).

For all these reasons, Plaintiffs have not alleged a plausible Sixth Amendment violation as to any State Defendant. And, of course, all these deficiencies apply with even greater force to Governor Abbott and Director McCraw, for whom there is a lack of factual allegations plausibly linking them to the appointment of counsel process or timing thereto. Governor Abbott and Director McCraw therefore additionally asks the Court to dismiss this claim against them based on the lack of factual allegations linking their conduct to the purported Sixth Amendment violation.

### 3.  Plaintiffs have failed to plead a plausible Due Process claim.

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted). "Substantive due process analysis," the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The alleged liberty interest must be "carefully formulat[ed]" and must be

"deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 721, 722 (1997).

In cases dealing with the specific actions of a governmental officer, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (internal quotations omitted). Thus, to constitute a substantive due process violation, the governmental officer's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8). "If this standard is met, a court must next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Id.*

The Supreme Court has "always been reluctant to expand the concept of substantive due process." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 409 U.S. 386, 395 (1989)). Consequently, only "a plaintiff whose claim is not susceptible to proper analysis with reference to a specific constitutional right may still state a claim under § 1983 for a violation of his or her Fourteenth Amendment substantive due process right, and have the claim judged by the constitutional standard which governs that right." *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998).

Here, Plaintiffs make only passing references to their due process rights allegedly being violated, which make it difficult to discern the nature of their due process claim(s). *See* Dkt. 10 at

¶¶ 86–87, 138. In each of these references, however, the right allegedly infringed upon is explicitly protected enumerated in another Amendment. For example, Plaintiffs claim that there have been delays in filing criminal charges against arrested individuals, in violation of the "right to a speedy trial, a fundamental aspect of due process." Dkt. 10 at ¶ 86. However, the right to a speedy trial is specifically guaranteed by the Sixth Amendment. Similarly, Plaintiffs claim that their detentions/arrests violated their due process rights because "[t]he federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Id*. at ¶ 138. However, the Fourth Amendment governs the standard for probable cause necessary to effect a detention and arrest, and Plaintiffs were arrested for criminal trespass, not to effectuate the federal removal process.

Accordingly, because Plaintiffs have failed to allege a deprivation of their rights to due process that is separate and apart from a right not otherwise protected by another Amendment, this claim must be dismissed. And, of course, if Plaintiffs have a purely procedural due process issue with their criminal prosecutions, the proper mechanism to raise those due process concerns is through the state judiciary. *Cf. Younger*, 401 U.S. at 46 (emphasizing "the fundamental policy against federal interference with state criminal prosecutions," in which "even irreparable injury is insufficient" to warrant intrusion). The process afforded through the Texas criminal justice system *is* their due process.

### 4.    Plaintiffs have failed to plead a plausible Equal Protection violation.

#### a.    Plaintiffs Have Not Alleged That Similarly Situated Individuals Were Treated Differently or That a Discriminatory Purpose Motivated Operation Lone Star.

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected

class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). As a prerequisite to such a claim, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999).

Plaintiffs appear to be asserting racial profiling or a selective enforcement equal protection claim. A racial profiling claim under the Equal Protection Clause draws upon "ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (quoting *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000)). "[I]t must be shown that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Id.* (quoting *Allred's Produce v. U.S. Dept. Agriculture*, 178 F.3d 743, 748 (5th Cir. 1999)). A party must still demonstrate that the enforcement had a discriminatory effect and was motivated by an invidious purpose. *United States v. Lawrence*, 179 F.3d 343, 349 (5th Cir. 1999); *United States v. Hall*, 455 F.3d 508, 523 (5th Cir. 2006). An equal protection claim based on profiling similarly requires a plaintiff to allege that he was treated differently than similarly situated individuals. *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012)). This is because establishing discriminatory effect requires a claimant to demonstrate that

a law or regulation was enforced against him, but not against similarly situated individuals of other races or national origins. *Armstrong*, 517 U.S. at 465.

Regardless of the theory underlying Plaintiffs' equal protection claim, they fail to state a claim for which relief can be granted because Plaintiffs have not alleged that they were treated differently than similarly situated individuals. There are no allegations that individuals of different races or national origins were trespassing on private property but not arrested. To the contrary, the diversity of Plaintiffs' origins, including Mexico, Honduras, and El Salvador, indicate that no national origin was targeted. Dkt. 10 at ¶¶ 6–14. And "no equal protection violation is alleged where a plaintiff 'fails to allege any facts showing that [others were] similarly situated.'" *Davis v. Foley*, No. 3:17-CV-278-M-BN, 2018 WL 5723165, at *9 (N.D. Tex. Oct. 12, 2018), report and rec. adopted, No. 3:17-CV-278-M, 2018 WL 5717426 (N.D. Tex. Oct. 31, 2018) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015)). None of the Plaintiffs meaningfully dispute that they engaged in unlawful conduct by trespassing on private property. Their failure to allege different treatment from other trespassers in Kinney County requires dismissal of their equal protection claim.

Additionally, Plaintiffs fail to demonstrate that an invidious discriminatory purpose that the Equal Protection Clause guards against underlies OLS. A discriminatory purpose (sometimes referred to as discriminatory intent) "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Bowlby*, 681 F.3d at 227. Purposeful discrimination "involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft*, 556 U.S. at 676-7. The facts must

State Defendants' Motion to Dismiss                                                              34

offer more than "intent as volition or intent as awareness of consequences." *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979). "[A] § 1983 plaintiff must additionally plead and prove which actions of the individual defendant caused the harm." *Jones v. Miss. Sec. of State*, 812 F. App'x 235, 239 (5th Cir. 2020) (citation omitted). "[D]iscriminatory intent of one official may [not] be imputed to another for purposes of imposing individual liability under the civil rights laws." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).

Here, Plaintiffs have not sufficiently alleged that Governor Abbott or Director McCraw undertook OLS for the purpose of adversely affecting anyone based on national origin. OLS is an initiative that deploys state law enforcement to high-threat areas to ensure sufficient personnel are on hand to enforce already existing Texas laws in counties where increased criminal activity has resulted in disaster declarations. Courts have recognized that enforcing laws in a "concentrated effort to allocate scarce resources to the most egregious violations" does not amount to an equal protection violation. *Moreno v. City of Brownsville,* Cause No. B-08-504, 2010 WL 11646748 at * 8-9 (S.D. Tex. Sept. 16, 2010) (citing *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995)). There are no allegations demonstrating that Governor Abbott or Director McCraw acted with intent to discriminate against individuals based on their race or national origin. Plaintiffs' operative Complaint is replete with references to media coverage and statements by Governor Abbott and Director McCraw, yet Plaintiffs do not provide a single factual allegation that the purpose behind OLS is to discriminate based on race or national origin.[15]

---

[15] To be sure, by Plaintiffs' own count only 7% of Kinney County arrest affidavits made reference to the arrestee's national origin, which does not support an equal protection claim based on national origin. Dkt. 10, ¶ 134.

At best, Plaintiffs allege that Governor Abbott and Director McCraw instituted OLS to curb immigrants, based on their actual or perceived immigration status, from trespassing on private property after illegally entering Texas. Dkt. 10, ¶¶ 1, 29, 30, 31, 35, 37, 39, 40, 44. But immigration status is not a protected class under the Equal Protection Clause. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). Immigration status is not "an immutable characteristic since it is the product of conscious, indeed unlawful, action . . . ." *Id.* "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* Nor does the law treat immigration status as synonymous with race or national origin. The Supreme Court has specifically recognized that the phrase "national origin" does not embrace citizenship. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 92-94 (1973) (holding that Title VII does not provide protection from discrimination based on citizenship status).[16] Rather, "the term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Id.* at 88.

Yet Plaintiffs have not even alleged their national origin, nor have they asserted that the Defendants are acting with the intent to discriminate against individuals from particular countries of origin. "Although citizenship and national origin may be highly correlated, they should not be equated with one another" and "[b]y themselves, the facts upon which [Plaintiffs] relies simply do not support an inference of national origin or race discrimination." *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059–60 (5th Cir. 1998). Therefore, since no classification protected by the

---

[16] The Fifth Circuit recognizes that "Section 1983 and [T]itle VII are [often] parallel causes of action. Accordingly, the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (internal quotation marks and citations omitted)

Equal Protection Clause is implicated by Plaintiffs' claim, "then the [state's] action—even if irrational—does not deny them equal protection of the laws." *Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988) (citation omitted). When the Court is "confronted with a state action which does not so classify or distinguish, we need not consider whether there is a 'rational basis' for that action because such state actions are not subject to Equal Protection scrutiny."[17] *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).

### b.    Plaintiffs Cannot Establish an Equal Protection Claim Based Solely on Disparate Impact.

"The Constitution forbids only purposeful discrimination." *U.S. v. LULAC*, 793 F.2d 636, 646 (5th Cir. 1986). As such, "disparate impact alone cannot suffice to state an Equal Protection violation." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *Pers. Adm'r*, 442 U.S. at 272 (noting that "uneven effects upon particular groups within a class are ordinarily of no constitutional concern" and "even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"); *Washington v. Davis*, 426 U.S. 229, 239 (1976) (noting that the Supreme Court has "not embraced the proposition that a law or other official act, without regard to whether it reflects a racially discriminatory purpose, is unconstitutional solely because it has a racially disproportionate impact").

---

[17] Even if rational basis were required, enforcing state trespass law meets the low bar of rationality. *See Glass v. Paxton*, 900 F.3d 233, 245 (5th Cir. 2018) ("When applying rational basis doctrine to a dismissal for failure to state a claim, a . . . classification must be treated as valid if a court is able to hypothesize a legitimate purpose to support the action," and "when conceiving of hypothetical rationales for a [government action], the assumptions underlying those rationales may be erroneous so long as they are 'arguable.'") (internal quotations omitted).

While disparate impact can be an important starting point for establishing an equal protection claim, it is rarely enough on its own. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977). Discriminatory impact alone is only sufficient in the rarest case where "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action[.]" *Id.* at 266. Under *Arlington Heights*, the "starting point" of the inquiry is whether the challenged action "bears more heavily on one race than another." *Id.* at 266. (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). If the disparate impact is clearly "unexplainable on grounds other than race," then a court may infer racial animus. *Arlington Heights,* 429 U.S. at 266. If not, the court must perform "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*

The Supreme Court has provided five factors to guide this inquiry: "(1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history, especially where there are contemporary statements by members of the decision-making body." *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (en banc) (plurality opinion) (quoting *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989)). These factors are not exhaustive, and the ultimate determination requires examining "the totality of the circumstances." *Veasey*, 830 F.3d at 230, 235. Awareness of a disparate impact on a protected group is not enough: the law must be passed because of that disparate impact. *Pers. Adm'r of Mass.*, 442 U.S. at 279.

Here, the Court may not infer racial animus based on Plaintiffs' allegations that OLS disparately impacts Latino and "Black" individuals because the impact is explainable on grounds

other than race: namely, that illegal aliens[18] are primarily committing criminal trespass in Kinney County, and they are also largely Latino or "Black" individuals. An equal protection claim similar to that put forth by Plaintiffs was rejected in *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013). There, the city's special order called for increased enforcement of criminal trespassing and other statutes against day laborers. As the court recognized, the special order therefore disproportionately impacted Latino men since it was undisputed that day laborers are almost exclusively Latino men. But this fact did not demonstrate racial or ethnic animus sufficient to support an equal protection claim. *Id.* "Day laborers were not targeted based on who they were, but on what they did." *Id.* Therefore, the plaintiffs' equal protection claim based on race and national origin failed. *Id.* at 800–801. The same is true here: Plaintiffs were arrested because of what they did—criminally trespass in Kinney County—not who they were.

Plaintiffs cannot otherwise carry their burden of proof under *Arlington Heights*. There is no circumstantial or direct evidence of intent to discriminate based on race or national origin. Rather, OLS was enacted to address increased criminal activity in Kinney County and other counties along the United States' border, it is not a law or statute, and there are no contemporaneous statements by Governor Abbott, Director McCraw, or other individually named Defendants evidencing intent to discriminate based on race or national origin.

---

[18] State Defendants "understand[] that some may find the terms 'alien' and 'illegal alien' offensive, and [their] intent is certainly not to offend." *Texas v. United States*, --- F. Supp.3d ---, 2022 WL 2109204, at *2 n.2 (S.D. Tex. June 10, 2022). "These terms are used in this [motion] because they are contained in the statutes as well as official government documents quoted by the Supreme Court in a seminal immigration case." *Id.*; *see also* Matthew R. Salzwedel, *The Lawyer's Struggle to Write*, 16 Scribes Journal of Legal Writing 69, 76 (2015) ("[I]llegal alien has going for it both history and well-documented, generally accepted use.").

5.      **Plaintiffs have failed to plead a plausible Section 1983 conspiracy claim.**

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *overturned on other grounds by Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996). "A conspiracy by itself, however, is not actionable under section 1983." *Id.*; *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008) (noting that an actual violation of section 1983 is required for a conspiracy claim).

As explained above, Plaintiffs have failed to state any viable Section 1983 claim against any of the individually named Defendants, and the Section 1983 conspiracy claim necessarily fails. Additionally, Plaintiffs have not sufficiently alleged that the Defendants conspired specifically to violate Plaintiffs' rights. "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act*." Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (citation omitted). General conclusory charges of conspiracy with "no specific allegation of facts tending to show a prior agreement" cannot survive a motion to dismiss. *Id.* at 1023–24. Nor is "an allegation of parallel conduct and a bare assertion of conspiracy" sufficient. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 556–57 (2007). The complaint must include specific factual allegations showing a prior agreement, plan, or meeting of the minds to violate the plaintiff's constitutional rights or engage in an illegal act. *Hey v. Irving*, 161 F.3d 7 (5th. Cir. 1998).

Here, there are no factual allegations that create a reasonable inference that Governor Abbott, Director McCraw, or the other Defendants made a prior agreement to violate any of Plaintiffs' constitutional rights. Plaintiffs' conclusory allegations of an undefined agreement are insufficient to plausibly allege a conspiracy.

6.    **Plaintiffs have failed to plead a plausible Section 1985 conspiracy claim.**

Section 1985 (3) prohibits conspiring to deprive a person of equal protection of the laws or of equal privileges and immunities under the laws on the basis of race. *Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). "Section 1985(3) provides no substantive rights itself," and a deprivation of a constitutional right is a required object of a conspiracy under 1985(3). *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372 (1979). To state a Section 1985 claim, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001).

The Fifth Circuit recognizes Section 1985 conspiracy claims only when racial "invidiously discriminatory animus behind the conspirators' action" is involved. *Cantú v. Moody,* 933 F.3d 414 (5th Cir. 2019). Plaintiffs' Section 1985 claim based on national origin discrimination must therefore be dismissed. Moreover, just as Plaintiffs cannot proceed on a disparate impact theory of liability under the equal protection clause, they cannot do so under Section 1985. *See Reynolds v. Barrett*, 685 F.3d 193 (2d Cir. 2012) (citing *Griffin*, 403 U.S. at 102–03 (noting that a plaintiff cannot proceed under a disparate impact for Section 1981, 1983, 1985, or 1986 claims)). The alleged facts do not create the plausible inference that State Defendants' actions were motivated by a racially discriminatory purpose for the reasons described in the context of Plaintiffs' equal protection claim. This same deficiency also defeats Plaintiffs' Section 1985 conspiracy claim. And

Plaintiffs have not plausibly alleged that State Defendants conspired with one another to further their purported plan to deprive Plaintiffs of equal protection based on their race. For all these reasons, State Defendants ask the Court to dismiss Plaintiffs' Section 1985 claim.

> **7.    Plaintiffs' claims against State Defendants in their individual capacities cannot overcome the additional hurdles required to impose individual liability.**

State Defendants conclude their motion by focusing on the claims raised against them in their *individual* capacities.

### a.    Supervisor Liability

"Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "A failure to supervise or train claim arises when the plaintiff shows that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). "The infringement of the plaintiff's constitutional rights must be an 'obvious' and 'highly predictable' consequence of the failure to train." *Id.* "Additionally, relief will not typically be available absent a showing of a pattern of constitutional violations, as opposed to a single incident." *Id.* Deliberate indifference is "a stringent standard of fault," requiring the official to "disregard a known or obvious consequence of his actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Plaintiffs have not alleged facts sufficient to create the reasonable inference that Governor Abbott, Director McCraw, or Executive Director Collier personally targeted them for arrest, conducted their arrests, processed them after arrest, or were involved in their conditions of

confinement. Instead, Plaintiffs seek to impose personal liability upon these state officials presumably based on their supervisory authority. *See* Dkt. 10 at ¶¶ 145–48. But even assuming that Plaintiffs have plausibly alleged that *someone* violated *some* constitutional right, which State Defendants dispute, Plaintiffs have not plausibly alleged that Governor Abbott, Director McCraw, or Executive Director Collier's conduct caused the infringement of a constitutional right and that they consciously disregarded a known or obvious consequence of their actions. As such, Plaintiffs have not met the standard for supervisory liability.

### b.    Qualified Immunity

To impose individual liability upon Governor Abbott, Director McCraw, or Executive Director Collier, Plaintiffs also must overcome qualified immunity. Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). Here, Plaintiffs cannot meet that burden.

The qualified immunity analysis has two steps, which can be taken in either order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "First, [the Court should] assess whether a statutory or constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios,* 381 F.3d 391, 395 (5th Cir. 2004). Second, the Court should "determine whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Finally, the court "asks whether qualified immunity is still appropriate because the defendant's actions were objectively

reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Id.*

A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that his conduct is unlawful and violates the right in question. *Wernecke v. Garcia,* 591 F.3d 386, 392–93 (5th Cir. 2009). "[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016) (per curiam)). "Because nonprecedential opinions do not establish any binding law for the circuit, they cannot be the source of clearly established law for qualified immunity analysis." *Marks v. Hudson*, 933 F.3d 481, 486 (5th Cir. 2019) (quotation omitted). "Where public officials assert qualified immunity in a motion to dismiss, a district court must rule on the immunity question at that stage" and "cannot defer that question until summary judgment" or "permit discovery against the immunity-seeking defendants before it rules on their defense." *Carswell v. Camp*, 37 F.4th 1062, 1066 (5th Cir. 2022).

Here, State Defendants assert entitlement to qualified immunity to Plaintiffs' claims. *See Carswell*, 37 F.4th at 1064, 1066. (recognizing that the defendants could assert qualified immunity to a claim under Section 1983); *McKee v. Lang*, 393 F. App'x 235, 238 (5th Cir. Sep. 1, 2010) (per curiam) (recognizing that the defendants could assert qualified immunity to claims under Section

1985 (3)). In so doing, State Defendants shift the burden to Plaintiffs to overcome that immunity. As set forth above, Plaintiffs have failed to state viable claims for which relief can be granted against any State Defendant, which demonstrates State Defendants' entitlement to qualified immunity. Moreover, qualified immunity is a defendant-specific inquiry, and Plaintiffs must plead facts substantiating that each defendant, "through the official's own individual actions, has violated the Constitution." *See Iqbal*, 556 U.S. at 676; *see also Marlowe v. LeBlanc*, 2022 WL 2101523, at *2 (5th Cir. June 10, 2022) (per curiam) (emphasizing that "the [qualified immunity] inquiry should be conducted for each defendant individually, not on a group-wide basis," including for the seven "Supervisor Defendants"). When the Court focuses on each individual's conduct—not generalized or conclusory allegations, but what each individual person purportedly did—it is apparent that Defendants were not deliberately indifferent to the violation of any clearly-established constitutional right.

All these deficiencies, which apply to all three State Defendants, are particularly true for Governor Abbott—against whom Plaintiffs seek to impose monetary damages based primarily on his press releases and Tweets. *See, e.g.*, Dkt. 10 at ¶¶ 29, 32, 37, 40, 67. Not every reasonable official in the Governor's position would know that engaging in these alleged actions violated—for example—Plaintiffs' right to counsel under the Sixth Amendment or the Eighth Amendment's prohibition of excessive bail, excessive fines, or cruel and unusual punishments. *Compare id.*, *with District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (noting that the rule derived from the controlling authority or robust consensus of cases must be so specific that the unlawfulness of the official's conduct follows immediately from the conclusion that the rule was firmly established). Plaintiffs have not alleged facts sufficient to overcome State Defendants' qualified immunity for

State Defendants' Motion to Dismiss                                                                 45

their Fourth Amendment (¶¶ 44–78, 127–32), Equal Protection (¶¶ 60–58, 133–38), Due Process (¶ 138), Sixth Amendment (¶ 139), Fourth, Eighth, and Fourteenth Amendments (¶¶ 140–47), or conspiracy claims (¶¶ 159–62).

## V.    PRAYER

For all these reasons, State Defendants respectfully ask the Court to dismiss the claims against them in both their official and individual capacities.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**SHAWN COWLES**
Deputy Attorney General for Civil Litigation

**CHRISTOPHER D. HILTON**
Chief, General Litigation Division

/s/ *Benjamin L. Dower*
**Benjamin L. Dower**
Deputy Chief, General Litigation Division
Texas State Bar No. 24082931
benjamin.dower@oag.texas.gov
Attorney-in-Charge

**Kimberly Gdula**
Texas Bar No. 24052209
kimberly.gdula@oag.texas.gov

**William D. Wassdorf**
Texas Bar No. 24103022
will.wassdorf@oag.texas.gov

**SHANNA MOLINARE**
Chief, Law Enforcement Defense Division

/s/ *Jason T. Bramow*
**Jason T. Bramow**
Texas State Bar No. 24101545
jason.bramow@oag.texas.gov
Attorney-in-Charge

**Jessica L. Weltge**
Texas Bar No. 24118585
jessica.weltge@oag.texas.gov

**Marlayna M. Ellis**
Texas Bar No. 24123448
marlayna.ellis@oag.texas.gov
Assistant Attorneys General

**Allison M. Collins**
Texas Bar No. 24127467
Allison.collins@oag.texas.gov
Assistant Attorneys General

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667
**ATTORNEYS FOR DEFENDANT**
**GOVERNOR GREG ABBOTT**

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994
**ATTORNEYS FOR DEFENDANTS**
**EXECUTIVE DIRECTOR BRYAN COLLIER**
**DIRECTOR STEVEN MCCRAW**

**CERTIFICATE OF SERVICE**

I hereby certify that on July 18, 2022, a true and correct copy of the foregoing document

was served via the Court's ECF system to all counsel of record.

*/s/ Benjamin L. Dower*
**Benjamin L. Dower**
Deputy Chief, General Litigation Division