IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, | § | |
| *Plaintiffs, Individually and on* | § | |
| *Behalf of the Class of Those* | § | |
| *Similarly Situated,* | § | |
| | § | |
| v. | § | Case No. 1:22-cv-00397-RP |
| | § | |
| STEVEN MCCRAW in his individual | § | |
| capacity, *et al.*, | § | |
| *Defendants.* | § | |

## DEFENDANT GREG ABBOTT'S MOTION TO DISMISS
### FOR LACK OF SUBJECT-MATTER JURISDICTION & FAILURE TO STATE A CLAIM

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division

BENJAMIN L. DOWER
Deputy Chief, General Litigation Division
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667

**ATTORNEYS FOR DEFENDANT
GOVERNOR GREG ABBOTT**

# I.     MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

## A.     Standard of Review

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

## B.     Arguments & Authorities

### 1.     Standing

The requirement that the plaintiff have standing imposes a "fundamental limitation" upon a federal court's subject-matter jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). Here, Plaintiffs lack standing to sue Governor Abbott.

"Remedies . . . operate with respect to specific parties" and courts do not enjoin laws or executive orders; instead, they enjoin the state officials responsible for their enforcement. *See California*

*v. Texas*, 141 S. Ct. 2104, 2115 (2021). Courts do not enjoin the operation of laws "in the abstract." *Id.* Accordingly, Plaintiffs cannot establish standing to maintain a claim against a state official "who is without any power to enforce the complained-of [rule]." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc). The Fifth Circuit has applied this line of jurisprudence to dismiss claims against Governor Abbott challenging his executive orders, recognizing that the power "to issue, amend or rescind an executive order is not the power to enforce it." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020) (internal quotations omitted); *cf. Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). For both the "fairly-traceable" and "redressability" requirements of standing, an injury stems from the enforcing—not issuing—party. *See id.*

Here, Governor Abbott does not participate in the enforcement of Texas's criminal trespass statute which—even according to Plaintiffs' pleading—is the challenged enforcement mechanism of OLS. *See* Dkt. 10 at ¶¶ 31–32, ¶¶ 36–37. Nor is Governor Abbott involved in Plaintiffs' conditions of confinement or anything occurring while individuals are in the custody of Kinney County or TDCJ. *See Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). For purposes of standing, that is dispositive. Because Governor Abbott plays no role in enforcing the state laws under which other state officials are carrying out the objectives of OLS, Plaintiffs' alleged harm is neither fairly traceable to him nor redressable against him.  Plaintiffs will likely "argue that Abbott caused their injury because he drafted, enacted, and issued statements . . . directing his [directives] to be enforced.'" *Compare 6th Street Bus. Partners, LLC v. Abbott*, No. 1:20-CV-706, 2020 WL 4274589, at *3 (W.D. Tex. 2020) (Pitman, J.) (quoted language), *with* Dkt. 10 ¶ 38. But, as this Court held in a similar context, such argument is "foreclosed by current Fifth Circuit law." *6th Street*, 2020 WL 4274589 at *3; *see also Mi Familia Vota*, 977 F.3d at 467–68. "Plaintiffs cannot establish that [Governor Abbott] caused their enforcement-based injury or that enjoining certain activities by Abbott would redress their injury," and,

"[a]ccordingly, Plaintiffs have not met their burden to establish Article III standing to litigate their claims against Abbott in federal court." *6th Street*, 2020 WL 4274589 at *3.

### 2.      Mootness

Mootness can be described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). The only named Plaintiffs who are still in custody for pending criminal trespass charges as of June 27, 2022, are Israel Baylon Arellano, Jose Lopez Lozano, Miguel Lopez Lozano, Francisco Villalpando Ramos, and Cesar Galindo Escoto. Dkt. 10 at ¶ 70. To the extent that the other Plaintiffs seek an injunction to modify the arrest, detention, or incarceration practices of Defendants, their non-monetary claims are moot.

### 3.      Sovereign Immunity

Absent a valid waiver by the State, abrogation by Congress, or proper invocation of the *Ex parte Young* exception, sovereign immunity bars suit against states in federal court, regardless of the nature of the remedy sought. *See, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In enacting 42 U.S.C. § 1983, Congress did not abrogate sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), nor has the State of Texas voluntarily waived sovereign immunity for claims brought under Section 1983, *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). The same is true for Section 1985. *Early v. So. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs,* 252 F. App'x 698, 700 (5th Cir. 2007) (per curiam). Therefore, any Section 1983 or Section 1985 claim against Governor Abbott in his official capacity that seeks monetary damages is barred by sovereign immunity.

The *Ex parte Young* exception permits a litigant to maintain suit against a state official in his official capacity, but only "if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). When conducting an *Ex parte Young* inquiry, the Court must "first consider whether the plaintiff has named the proper defendant." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Id.* at 997 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). If the state official named as defendant "is not . . . tasked with enforcing the challenged [provision]," then the requisite connection is lacking and the *Young* analysis "ends." *Tex. Democratic Party*, 961 F.3d at 401. "[A]uthority to promulgate [a policy], standing alone, is not the power to enforce that policy," and, here, Plaintiffs' "operative complaint does not adequately plead that [Governor Abbott] [has] a 'sufficient connection [to] the enforcement of the challenged act'" to fall within the *Ex parte Young* exception. *See Haverkamp v. Linthincum*, 6 F.4th 662, 670–72 (5th Cir. 2021). As Governor Abbott lacks an enforcement connection to OLS, as explained in the context of standing, so the *Ex parte Young* exception to sovereign immunity does not apply. *See id.*; *see also Langan v. Abbott*, 518 F. Supp. 3d 948, 954 (W.D. Tex. 2021); *City of Austin*, 943 F.3d at 1002 (noting that the Article III standing analysis and *Ex parte Young* analysis significantly overlap). Plaintiffs' claims against Governor Abbott in his official capacity are barred in their entirety.

### 4.   *Younger* Abstention

Under *Younger*, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). The *Younger* principles of equity, comity, and federalism "counsel[] restraint against the issuance of injunctions

against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (quoting *Younger*, 401 U.S. at 46). "The *Younger* doctrine applies not only to suits for injunctive relief, as in *Younger* itself, but also extends to suits for declaratory relief." *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (citing *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

The *Younger* doctrine counsels federal courts to abstain from exercising jurisdiction when there are parallel state proceedings in one of three "exceptional circumstances: state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'n Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotation marks omitted). Abstention is required from a state criminal defendant's asserted federal claims if: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Here, all three *Younger* abstention requirements are satisfied, and this Court should decline jurisdiction.

a.     **Proceedings before this Court would necessarily interfere with ongoing state judicial proceedings.**

To determine whether the federal proceeding would interfere with the state proceeding, the court "look[s] to the relief requested and the effect it would have on the state proceedings." *Bice*, 677 F.3d at 717. "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* (quoting *Joseph A. ex rel. Wolfe v. Ingram,* 275 F.3d 1253, 1272 (10th Cir. 2002)). Here, the injunctive and declaratory relief sought by the Plaintiffs would necessarily interfere with ongoing state judicial proceedings because it would effectively compel TDCJ or Kinney County to release criminal defendants from jail and refrain from future prosecution or face "an ongoing federal

audit of state criminal proceedings." *See O'Shea*, 414 U.S.at 500. This is so because "[t]he enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order." *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981). Not only would such compliance reviews impose lengthy delays on the pending criminal prosecutions at issue, but this type of judicial oversight is also exactly what *Younger* sought to prohibit. *See O'Shea*, 414 U.S. at 500; *Wallace v. Kern*, 520 F.2d 400, 401 (2d Cir. 1975). In the live-pleading, several Plaintiffs allege they are still incarcerated under OLS. Dkt. 10 at 4.

>    b.    **The State of Texas has an important interest in enforcing its laws.**

There is no dispute that the State of Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws."); *Schall v. Martin*, 467 U.S. 253, 264 (1984) (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960) and *Terry v. Ohio*, 392 U.S. 1, 22 (1968)) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted.").

>    c.    **Plaintiffs have an adequate opportunity to raise their constitutional challenges in their pending state proceedings.**

To overcome the presumption in favor of abstention, Plaintiffs must show that they have *no opportunity* to litigate the asserted federal issues in state court. *DeSpain*, 731 F.2d at 1178. Under this prong, "abstention is appropriate unless state law *clearly bars the interposition of the constitutional claims*." *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) (emphasis added); *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights"); *Gates v. Strain*, 885

F.3d 874, 880 (5th Cir. 2018) ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court.") (emphasis in original).

In each criminal proceeding, Plaintiffs can raise challenges to arrests and continued detention under the Fourth Amendment and due process challenges under the Fourteenth Amendment in a pre-trial writ of habeas corpus under Article 11 of the Texas Code of Criminal Procedure, at an examining trial under Article 16.01 of the Texas Code of Criminal Procedure, or at a hearing to challenge the probable cause for arrest. Plaintiffs' challenges under the Sixth Amendment can be remedied by the exclusion of evidence, where appropriate, or may be disregarded as harmless error. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (collecting cases). Such challenges must be determined on a case-by-case basis. There are adequate opportunities for Plaintiffs to raise these challenges in their pending state proceedings. Governor Abbott asks this Court to abstain under *Younger*.

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Standard of Review

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### B.   Arguments & Authorities

#### 1.   Plaintiffs have failed to plead a plausible Fourth Amendment violation.

Plaintiffs allege that their Fourth Amendment rights have been violated. Plaintiffs have sought to form two classes based on: (a) arrests and detention based upon race, immigration status, or national origin, Dkt. 10 at ¶¶ 55–59; and (b) over-incarceration of individuals legally entitled to release, *id.*

¶¶ 127–32. Against Governor Abbott, Plaintiffs have not alleged facts sufficient to state a Fourth Amendment claim under either theory because they have not alleged facts sufficient to create the reasonable inference that either he was involved in arresting, detaining, or incarcerating Plaintiffs. For the same reasons that Plaintiffs lack standing to sue Governor Abbott, they fail to state a plausible Fourth Amendment claim against him.

For an additional, more specific reason, Plaintiffs have also failed to plead a violation of the Fourth Amendment relating to arrests and incarcerations based upon race, immigration status, or national origin. Based on the factual allegations and reasonable inferences drawn therefrom, Plaintiffs were arrested for violation of Texas' criminal trespass statute and not based upon race, immigration status, or national origin. The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or by probable cause. U.S. Const. amend. IV. "The constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *see also Baker v. McCollum*, 443 U.S. 137, 144–45 (1979). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017).

"To determine whether probable cause existed for an arrest, the court examines the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause." *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 780 (5th Cir. 2022) (internal quotations omitted). The probable cause inquiry focuses on the facts known to the arresting officer at the time of arrest, not subsequent developments that might disprove the correctness of a previous police determination that probable cause exists. *Devenpeck v. Alford*, 543

U.S. 146, 152 (2004); *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). "Critically, 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Loftin*, 33 F.4th at 780 (quoting *Illinois v. Gates*, 480 U.S. 213, 243 n.13 (1983)). "Thus, probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

"As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). "If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Id.* However, Plaintiffs' Complaint makes clear that the detentions and arrests at issue in this case are not based on Plaintiffs' removability. Rather, they are based on violation of Texas state law; namely, criminal trespass. Dkt. 10 at 2. "If an officer has probable cause to believe that an individual has committed *even a very minor criminal offense in his presence*, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (emphasis added).

To succeed on a claim of false arrest based on a deficient probable cause affidavit, the plaintiff must demonstrate that the defendants (1) "knowingly or recklessly omitted exculpatory information from the affidavits they submitted in support of the warrant applications" and, (2) that there would not have been probable cause for the arrest "if the omitted information had been included in the affidavits." *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (citing *Freeman v. Cnty. of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000)); *see also Wilson v. Stroman*, 33 F.4th 202, 206–07 (5th Cir. 2022). If the affidavit adds false facts or omits exculpatory facts, but a corrected affidavit would still give probable cause for arrest, then the arrest is constitutional. *Johnson*, 565 F. App'x at 289. Here, arrests took place pursuant to probable cause based on individuals' unlawful presence on private property.

The affidavits cited in Plaintiffs' own pleading show that arresting officers had sufficient knowledge to believe the individuals arrested committed criminal trespass.[1] Plaintiffs never assert that

---

[1] Ivan Ruano Nava's Arrest Affidavit states that he trespassed on a private ranch where barbed-wired

the arrestees did not engage in the unlawful conduct they are charged with, criminally trespassing. Rather, Plaintiffs argue that affidavits and arrest narratives indicate racial profiling because they note perceived ethnicity or perceived immigration status. Even if the affidavits contain information regarding an individual's perceived ethnicity or perceived immigration status, it is unimportant when analyzing whether there was sufficient probable cause for arrests based on criminal trespass. The officers only needed to be aware of information that caused belief that the individual had already committed a crime or was committing a crime.

Further, Plaintiffs make no factual allegations that officers submitted "false facts" or omitted "exculpatory facts," other than including a generic section in their Complaint labeled, "False Probable Cause Affidavits." Dkt. 10 at 69. Plaintiffs allege no false statements by officers regarding their unlawful presence on private property. Including identifying information, such as race, helps *prevent*— not cause—false arrests. Indeed, in *Jones v. City of Grand Prairie, Texas*, the Fifth Circuit held that *withholding* the perpetrator's race (per the victim) from the information presented to the magistrate "vitiated" probable cause because the inclusion of that "clearly critical information" would have prevented a false arrest. 209 F.3d 718 (Table), at *2–4 (5th Cir. 2000). Plaintiffs fail to allege facts that create a reasonable inference that the probable cause affidavits without such "false facts" (perceived

---

fence surrounded the entire property and that Nava admitted he crossed the fence. Dkt. 1-4 at 48. Erasto Arroyo Barcenas' Arrest Affidavit states that he was found trespassing on a private ranch and the owner wanted to press charges for criminal trespass. Dkt. 1-4 at 40. Melvin Amador Rodas' Arrest Affidavit states that he was located on property enclosed by a fence where he was found more than 100 feet from the nearest property boundary, and he did not have permission to enter or remain on the property. Dkt. 1-4 at 38. Jose Carlos Gomez-Colorado's Arrest Affidavit states he was found on a private ranch and would have had to cross many barriers to access the ranch. The ranch owner wanted to press charges for criminal trespass. Dkt. 1-4 at 41. Oscar Serrano Martinez's Arrest Affidavit states he was found on a railway and did not have permission to be on the property. Dkt. 1-4 at 49. Jesus Curipoma's Arrest Affidavit states that he was found riding on a train car where there were "no trespassing" signs posted on the entry points to the rail yard and he did not have permission to enter or remain in the rail yard or any of the trains. Dkt. 1-4 at 44. Melvin Joel Amaya Zelaya's Arrest Affidavit states that he was in a rail yard that contained "no trespassing" signs on the entry points and did not have permission to enter or remain in the rail yard or any of the trains. Dkt. 1-4 at 39.

race or immigration status) or that included such "exculpatory facts" would have left officers without probable cause to arrest. *See Johnson*, 565 F. App'x at 289. And Plaintiffs do not contest that they were illegally trespassing, but rather that the arrest affidavits contain information that Plaintiffs deem irrelevant. This is not enough.

### 2. Plaintiffs have failed to plead a plausible Sixth Amendment claim.

"[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty.,* 554 U.S. 191, 194–95 (2008) (citing *Brewer v. Williams*, 430 U.S. 387, 398–399 (1977)). "[T]he right to counsel granted by the Sixth Amendment means that a person is entitled to the help of a lawyer at or after the time that adversary judicial proceedings have been initiated against him." *Estelle v. Smith*, 451 U.S. 454, 469 (1981). Once the right to counsel attaches, the accused "is entitled to the presence of appointed counsel during any 'critical stage' of the post attachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Rothgery*, 554 U.S. at 212. Not every event following the inception of adversary judicial proceedings constitutes a "critical stage." *E.g.*, *U.S. v. Ash*, 413 U.S. 300, 321 (1973). "Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.'" *Id.* at 323. Where the denial of the right to counsel results in no "demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Morrison*, 449 U.S. at 365.

The Supreme Court has declined to consider whether even a six-month delay in appointment of counsel would prejudice Sixth Amendment rights, nor consider what standards might apply. *Rothgery*, 554 U.S. at 213; *Lucio v. Davis*, 751 F. App'x 484, 490 n.3 (5th Cir. 2018) (per curiam). And in *Leachman v. Stephens*, the Fifth Circuit highlighted the fact that the Supreme Court has never "held that speedy-trial concerns determinatively bear on the denial-of-counsel inquiry, *or that a defendant*

suffers an independent violation of the right to counsel because he requests appointment of counsel not given to him until his arrival to answer pending state charges." 581 F. App'x 390, 400 (5th Cir. 2014) (emphasis added). Here, Plaintiffs do not allege that they are forced to engage in "critical stage" proceedings without the assistance of counsel. Rather, they complain of the delay in appointment of counsel, alleging that "[a]ppointment of counsel after arrest is routinely delayed and ranges between 2 and 139 days." Dkt. 10 at 49. Plaintiffs also complain that they did not receive counsel immediately after requesting representation, despite having no critical stage proceedings where the right to counsel would be needed or harm would occur without representation.[2] A delay in the appointment of counsel, standing alone, does not present any demonstrable prejudice. There are no allegations that Plaintiffs were forced to engage in a critical stage proceeding without assistance of counsel. As such, they fail to state a claim generally. And for Governor Abbott specifically, the factual allegations do not plausibly link him to the appointment of counsel process or timing thereto. For both reasons, the Sixth Amendment claim should be dismissed.

### 3.     Plaintiffs have failed to plead a plausible Due Process claim.

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (cleaned up). "Substantive due process analysis,"

---

[2] Ivan Ruano Nava was arrested for criminal trespass on July 25, 2021, and was appointed counsel on September 20, 2021, and "remained in custody without a court date or case filed against him during that time." Dkt. 10 at ¶ 102. Christian Ruiz-Rodriguez was arrested for criminal trespass on September 24, 2021, and was not assigned counsel until October 8, 2021. *Id.* ¶ 101. Noliz Leyva-Gonzalez was arrested for criminal trespass on October 14, 2021, and "requested appointed counsel at magistration, but no attorney was appointed until March 2022." *Id.* ¶ 105. Jose Carlos Gomez-Colorado was arrested for criminal trespass on October 14, 2021, and "requested appointed counsel at magistration, but no attorney was appointed until March 2022." *Id.* ¶ 106. Jose Luis Dominguez-Rojas was arrested for criminal trespass on December 24, 2021, and was appointed counsel on March 4, 2022, "despite requesting representation at magistration." *Id.* ¶ 100.  Melvin Joel Amaya Zelaya was arrested for criminal trespass on December 25, 2021, and was appointed counsel on March 4, 2022.[2] *Id.* ¶ 103.

the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The alleged liberty interest must be "carefully formulat[ed]" and must be "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 721, 722 (1997).  To violate substantive due process, the defendant's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.7 (1998)). "If this standard is met, a court must next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Id.* Only "a plaintiff whose claim is not susceptible to proper analysis with reference to a specific constitutional right may still state a claim under § 1983 for a violation of his or her Fourteenth Amendment substantive due process right, and have the claim judged by the constitutional standard which governs that right." *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998).

Here, Plaintiffs make only passing references to their due process rights allegedly being violated, which make it difficult to discern the nature of their due process claim(s). *See* Dkt. 10 at ¶¶ 86–87, 138. In each of these references, however, the right allegedly infringed upon is explicitly protected enumerated elsewhere. For example, Plaintiffs claim that there have been delays in filing criminal charges against arrested individuals, in violation of the "right to a speedy trial, a fundamental aspect of due process." Dkt. 10 at ¶ 86. However, the right to a speedy trial is specifically guaranteed by the Sixth Amendment. Plaintiffs claim that their detentions/arrests violated their due process rights because "[t]he federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Id.* at ¶ 138. But the Fourth Amendment governs the standard for probable cause necessary to effect a detention and arrest. Because Plaintiffs have failed to allege a deprivation of their rights to due process that is separate and apart from a right not otherwise protected by another Amendment, this claim must be dismissed. And, of course, if Plaintiffs have a purely procedural due

process issue with their criminal prosecutions, the proper mechanism to raise those due process concerns is through the state judiciary. *Cf. Younger*, 401 U.S. at 46. The process afforded through the criminal justice system *is* their due process.

> **4.** **Plaintiffs have failed to plead a plausible Equal Protection violation.**
>
> **a.** **Plaintiffs Have Not Alleged That Similarly Situated Individuals Were Treated Differently or That a Discriminatory Purpose Motivated Operation Lone Star.**

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). As a prerequisite to such a claim, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). Plaintiffs appear to be asserting racial profiling or a selective enforcement equal protection claim. Under either theory, Plaintiffs fail to state a claim.

A racial profiling claim under the Equal Protection Clause draws upon "ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (quoting *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000)); *see also United States v. Lawrence*, 179 F.3d 343, 349 (5th Cir. 1999); *United States v. Hall*, 455 F.3d 508, 523 (5th Cir. 2006). An equal protection claim based on profiling similarly requires a plaintiff to allege that he was treated differently than similarly situated individuals. *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012)).

Plaintiffs have not alleged that they were treated differently than similarly situated individuals. There are no allegations that individuals of different races or national origins were trespassing on private property but not arrested. To the contrary, the diversity of Plaintiffs' origins, including Mexico, Honduras, and El Salvador, indicate that no national origin was targeted. Dkt. 10 at ¶¶ 6–14. And "no equal protection violation is alleged where a plaintiff 'fails to allege any facts showing that [others were] similarly situated.'" *Davis v. Foley*, No. 3:17-CV-278-M-BN, 2018 WL 5723165, at *9 (N.D. Tex. Oct. 12, 2018), report and rec. adopted, No. 3:17-CV-278-M, 2018 WL 5717426 (N.D. Tex. Oct. 31, 2018) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015)). None of the Plaintiffs meaningfully dispute that they engaged in unlawful conduct by trespassing on private property. Their failure to allege different treatment from other trespassers in Kinney County requires dismissal of their equal protection claim.

Additionally, Plaintiffs fail to demonstrate that an invidious discriminatory purpose that the Equal Protection Clause guards against underlies OLS. A discriminatory purpose (or intent) "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Bowlby*, 681 F.3d at 227. Purposeful discrimination "involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft*, 556 U.S. at 676–77; *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979). "[A] § 1983 plaintiff must additionally plead and prove which actions of the individual defendant caused the harm." *Jones v. Miss. Sec. of State*, 812 F. App'x 235, 239 (5th Cir. 2020). "[D]iscriminatory intent of one official may [not] be imputed to another for purposes of imposing individual liability under the civil rights laws." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).

Here, Plaintiffs have not plausibly alleged that Governor Abbott undertook OLS for the purpose of adversely affecting anyone based on national origin. OLS deploys state law enforcement

to ensure personnel are available in counties where increased criminal activity has resulted in disaster declarations. Dkt. 1-2 at 22–25; Dkt. 1-5 at 210–11. Courts have recognized that enforcing laws in a "concentrated effort to allocate scarce resources to the most egregious violations" does not amount to an equal protection violation. *Moreno v. City of Brownsville,* 2010 WL 11646748, at * 8–9 (S.D. Tex. Sept. 16, 2010) (citing *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995)).

Plaintiffs' pleading is replete with references to media coverage and statements by Governor Abbott.[3] But, at most, these allegations suggest that Governor Abbott's actions were motivated by immigration status. But immigration status is not a protected class under the Equal Protection Clause. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* And the phrase "national origin" does *not* embrace citizenship. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 92–94 (1973) (holding that Title VII does not cover citizenship status).[4] Rather, "the term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Id.* at 88. "Although citizenship and national origin may be highly correlated, they should not be equated with one another" and "[b]y themselves, the facts upon which [Plaintiffs] relies simply do not support an inference of national origin or race discrimination." *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059–60 (5th Cir. 1998). Since no protected classification is implicated, "then the [state's] action—even if irrational—does not deny them equal protection of the laws." *See Brennan v. Stewart,* 834 F.2d 1248, 1257 (5th Cir. 1988) (citation omitted); *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997).[5]

---

[3] To be sure, by Plaintiffs' own count only 7% of Kinney County arrest affidavits made reference to the arrestee's national origin, which does not support the inference they urge. *See* Dkt. 10, ¶ 134.

[4] "[T]he inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (internal quotation marks and citations omitted)

[5] Even if rational basis were required, enforcing state trespass law meets the low bar of rationality. *See Glass v. Paxton*, 900 F.3d 233, 245 (5th Cir. 2018) (noting a "classification must be treated as valid if a

      b.      **Plaintiffs Cannot Establish an Equal Protection Claim Based Solely on Disparate Impact.**

"The Constitution forbids only purposeful discrimination." *U.S. v. LULAC*, 793 F.2d 636, 646 (5th Cir. 1986). As such, "disparate impact alone cannot suffice to state an Equal Protection violation." *Johnson*, 110 F.3d at 306; *Pers. Adm'r*, 442 U.S. at 272 (noting "even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"); *Washington v. Davis*, 426 U.S. 229, 239 (1976). A showing of disparate impact only bears on an Equal Protection analysis where "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action[.]" *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). Under *Arlington Heights*, the "starting point" of the inquiry is whether the challenged action "bears more heavily on one race than another." *Id.* at 266 (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). If the disparate impact is clearly "unexplainable on grounds other than race," then a court may infer racial animus. *Arlington Heights,* 429 U.S. at 266. If not, the court must perform "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*

Five factors guide this inquiry: "(1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history, especially where there are contemporary statements by members of the decision-making body." *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (en banc) (plurality opinion) (quoting *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989)). These factors are not exhaustive; the ultimate determination requires examining "the totality of the

---

court is able to hypothesize a legitimate purpose to support the action," and "when conceiving of hypothetical rationales for [the action], the assumptions underlying those rationales may be erroneous so long as they are 'arguable.'") (internal quotations omitted).

circumstances." *Veasey*, 830 F.3d at 230, 235. Awareness of a disparate impact on a protected group is not enough; the disparate impact must be the motivation. *Pers. Adm'r of Mass.*, 442 U.S. at 279.

Here, the Court may not infer racial animus based on Plaintiffs' allegations that OLS disparately impacts Latino and "Black" individuals because the impact is explainable on grounds other than race: namely, that illegal aliens are primarily committing criminal trespass in Kinney County, and they are also largely Latino or "Black" individuals. An equal protection claim similar to that put forth by Plaintiffs was rejected in *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013). There, the city's special order called for increased enforcement of criminal trespassing and other statutes against day laborers. As the court recognized, the special order disproportionately impacted Latino men since it was undisputed that day laborers are almost exclusively Latino men. But this fact did not demonstrate racial or ethnic animus sufficient to support an equal protection claim. *Id.* "Day laborers were not targeted based on who they were, but on what they did." *Id.* Therefore, the plaintiffs' equal protection claim based on race and national origin failed. *Id.* at 800–01. The same is true here: Plaintiffs were arrested because of what they did—criminally trespass—not who they were.

### 5.   Plaintiffs have failed to plead a plausible Section 1983 conspiracy claim.

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *overturned on other grounds by Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996). "A conspiracy by itself, however, is not actionable under section 1983." *Id.*; *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008) (noting that an actual violation of section 1983 is required for a conspiracy claim). Here, Plaintiffs have failed to state any viable Section 1983 claim against any of the individually named defendants, and the Section 1983 conspiracy claim necessarily fails. Plaintiffs have also not sufficiently alleged that Governor Abbott conspired specifically to violate Plaintiffs' rights. "To establish a cause

of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act." *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (citation omitted). General conclusory charges of conspiracy with "no specific allegation of facts tending to show a prior agreement" cannot survive a motion to dismiss. *Id.* at 1023–24. Nor is "an allegation of parallel conduct and a bare assertion of conspiracy" sufficient. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 556–57 (2007); *see also Hey v. Irving*, 161 F.3d 7 (5th. Cir. 1998). Here, the factual allegations are insufficient to create the reasonable inference that Governor Abbott agreed to violate Plaintiffs' constitutional rights.

### 6. Plaintiffs have failed to plead a plausible Section 1985 conspiracy claim.

To state a Section 1985 claim, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001). Plaintiffs' Section 1985 claim based on *national origin* must, therefore, be dismissed. And just as Plaintiffs cannot proceed on a disparate impact theory of liability under the equal protection clause, they cannot do so under Section 1985. *See Reynolds v. Barrett*, 685 F.3d 193, 201–02 (2d Cir. 2012). The alleged facts do not create the plausible inference that Governor Abbott was motivated by a racially discriminatory purpose, nor that he conspired with others to further a plan to deprive Plaintiffs of equal protection based on race.

### 7. Plaintiffs' claims against Governor Abbott in his individual capacity cannot overcome the additional hurdles required to impose individual liability.

Plaintiffs also cannot overcome the additional hurdles that apply to the claims against Governor Abbott in his individual capacity: the need to establish supervisor liability and overcome qualified immunity. "Under [S]ection 1983, supervisory officials are not liable for the actions of

subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "A failure to supervise or train claim arises when the plaintiff shows that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). Deliberate indifference is "a stringent standard of fault," requiring the official to "disregard a known or obvious consequence of his actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Plaintiffs have not plausibly alleged that Governor Abbott's conduct caused the infringement of a constitutional right and that he consciously disregarded a known or obvious consequence of their actions.

The qualified immunity analysis has two main steps, which can be taken in either order: (1) whether a constitutional right would have been violated on the facts alleged, and (2) "whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Flores v. City of Palacios,* 381 F.3d 391, 395 (5th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Finally, the court "asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). Here, Plaintiffs cannot overcome qualified immunity for any claim against Governor Abbott in his individual capacity.

## V.   <u>PRAYER</u>

For all these reasons, Governor Abbott respectfully asks the Court to dismiss all claims against him in both his official and individual capacity.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

CHRISTOPHER D. HILTON
Chief, General Litigation Division

/s/ Benjamin L. Dower
BENJAMIN L. DOWER
Deputy Chief, General Litigation Division
Texas State Bar No. 24082931
benjamin.dower@oag.texas.gov
Attorney-in-Charge

KIMBERLY GDULA
Deputy Chief, General Litigation Division
Texas Bar No. 24052209
kimberly.gdula@oag.texas.gov

William D. Wassdorf
Texas Bar No. 24103022
will.wassdorf@oag.texas.gov

ALLISON M. COLLINS
Texas Bar No. 24127467
Allison.collins@oag.texas.gov
Assistant Attorneys General

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 / Fax (512) 320-0667

ATTORNEYS FOR DEFENDANT
GOVERNOR GREG ABBOTT

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2022, a true and correct copy of the foregoing document was

served via the Court's ECF system to all counsel of record.

/s/ Benjamin L. Dower
Benjamin L. Dower
Deputy Chief, General Litigation Division