### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.,* | § | |
| *Plaintiffs, Individually and on* | § | |
| *Behalf of the Class of Those* | § | |
| *Similarly Situated,* | § | |
| | § | |
| **v.** | § | **Case No. 1:22-cv-00397-RP** |
| | § | |
| STEVEN MCCRAW in his individual | § | |
| capacity, *et al.,* | § | |
| *Defendants.* | § | |

## DEFENDANT BRYAN COLLIER'S MOTION TO DISMISS

<div style="columns:2">

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Chief, Law Enforcement Defense Division

JASON T. BRAMOW
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

**ATTORNEYS FOR DEFENDANTS**
**EXECUTIVE DIRECTOR BRYAN COLLIER**
**DIRECTOR STEVEN MCCRAW**

</div>

## I.   MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

**A.   Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

**B.   Arguments & Authorities**

**1.   Standing**

The requirement that the plaintiff have standing imposes a "fundamental limitation" upon a federal court's subject-matter jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).

"Remedies . . . operate with respect to specific parties" and courts do not enjoin laws or executive orders; instead, they enjoin the state officials responsible for their enforcement.[1] *See California v. Texas*, 141 S. Ct. 2104, 2115 (2021). Courts do not enjoin the operation of laws "in the abstract." *Id.* Accordingly, Plaintiffs cannot establish standing to maintain a claim against a state official "who is without any power to enforce the complained-of [rule]." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc). Additionally, "a state official cannot be enjoined to act in any way that is beyond his authority to act in the first place." *Id.* at 427.

Here, Executive Director Collier is without authority to provide any redress to Plaintiffs' claims for injunctive relief based on over-detention, over-incarceration, or right to counsel. The Plaintiffs that are still detained in TDCJ facilities remain under the exclusive control of the Kinney County Sheriff, and any decisions regarding the release of these individuals remains the authority of the Kinney County Sheriff. *See* ECF No. 1-4 at 149; *see also* Exhibit A (Order Denying Ivan Nava's Motion for Finding of Contempt, *Ex parte Texas Department of Criminal Justice, et al.*, Cause No. 5118 (63rd Judicial Dist. June 16, 2022) (finding that "[TDCJ] . . . [has] no authority to release individuals.")).[2] Additionally, in Texas, judicial officers appoint counsel to indigent defendants. *See* Tex. Code Crim. Proc. Art. 26.04. Accordingly, Plaintiffs lack standing to bring their claims for injunctive relief regarding over-detention and over-incarceration against Executive Director Collier.

## 2.    Mootness

Mootness can be described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue

---

[1] That a plaintiff may seek relief under the Declaratory Judgment Act does nothing to alter the standing analysis. *California*, 141 S. Ct. at 2115-16. "Redress is sought *through* the court, but *from* the defendant." *Hewitt v. Helms*, 482 U.S. 755, 761 (1987) (emphasis in original). "This is no less true of a declaratory judgment suit than of any other action." *Id.*

[2] The 63rd District Court's Order is a matter of public record and therefore subject to judicial notice. *See Center for Biological Diversity, Inc v BP America Production Co*, 704 F3d 413, 422–23 (5th Cir. 2013).

throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). "[M]ootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004). "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). The only named Plaintiffs who are still in custody for pending criminal trespass charges as of June 27, 2022, are Israel Baylon Arellano, Jose Lopez Lozano, Miguel Lopez Lozano, Francisco Villalpando Ramos, and Cesar Galindo Escoto. Dkt. 10 at ¶ 70. The remaining Plaintiffs have either been released from custody or their claims have been adjudicated. *See id.* To the extent that these Plaintiffs seek an injunction to modify the practices of Executive Director Collier, their non-monetary claims are moot.

### 3. Sovereign Immunity

Absent a valid waiver by the State, abrogation by Congress, or proper invocation of the *Ex parte Young* exception, sovereign immunity bars suit against states in federal court, regardless of the nature of the remedy sought.[3] *See, e.g., Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–01 (1984); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). In enacting 42 U.S.C. § 1983, Congress did not abrogate sovereign immunity, *Quern v. Jordan*, 440 U.S. 332, 345 (1979), nor has the State of Texas voluntarily waived sovereign immunity for claims brought under Section 1983, *Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007). Section 1985 similarly does not abrogate sovereign immunity from suit. *Early v. So. Univ. & Agr. & Mech. Coll. Bd. of Sup'rs*, 252 F. App'x 698, 700 (5th Cir. 2007) (per curiam). Therefore, any Section 1983 or Section 1985 claim

---

[3] "[T]he Supreme Court has often used 'Eleventh Amendment immunity' as a synonym for the States' broader constitutional sovereign immunity." *Sullivan v. Texas A&M Univ. Sys.*, 986 F.3d 593, 596 n.1 (5th Cir. 2021). But this motion shall use the more accurate term "sovereign immunity."

against Executive Director Collier in his official capacity that seeks monetary damages is barred by sovereign immunity.

The *Ex parte Young* exception permits a litigant to maintain suit against a state official in his official capacity, but only "if the suit seeks prospective relief to redress an ongoing violation of federal law." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). When conducting an *Ex parte Young* inquiry, the Court must "first consider whether the plaintiff has named the proper defendant." *City of Austin v. Paxton*, 943 F.3d 993, 998 (5th Cir. 2019). "For the exception to apply, the state official, 'by virtue of his office,' must have 'some connection with the enforcement of the [challenged] act, or else [the suit] is merely making him a party as a representative of the state, and thereby attempting to make the state a party.'" *Id.* at 997 (quoting *Ex parte Young*, 209 U.S. 123, 157 (1908)). If the state official named as defendant "is not . . . tasked with enforcing the challenged [provision]," then the requisite connection is lacking and the *Young* analysis "ends." *Tex. Democratic Party*, 961 F.3d at 401. An official's "general duty to see that the laws of the state are implemented" is insufficient to establish the requisite connection to enforcement. *Morris*, 739 F.3d at 746. Rather, the official sued must bear "the particular duty to enforce the [provision] in question," alongside a demonstrated willingness to enforce it. *Id.*

Here, as discussed in the context of standing, Executive Director Collier is without authority to provide any redress to Plaintiffs' claims for injunctive relief based on over-detention and over-incarceration. The Plaintiffs that are still detained in TDCJ facilities remain under the exclusive control of the Kinney County Sheriff, and any decisions regarding the release of these individuals remains the authority of the Kinney County Sheriff. *See* ECF No. 1-4 at 149; *see also* Exhibit A (Order Denying Ivan Nava's Motion for Finding of Contempt, *Ex parte Texas Department of Criminal Justice, et al.*, Cause No. 5118 (63rd Judicial Dist. June 16, 2022) (finding that "[TDCJ] . . . [has] no authority to release individuals.")).

Defendant Bryan Collier's Motion to Dismiss                                                           4

4.      **Younger Abstention**

Under *Younger*, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). The *Younger* principles of equity, comity, and federalism "counsel[] restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (quoting *Younger*, 401 U.S. at 46). "The *Younger* doctrine applies not only to suits for injunctive relief, as in *Younger* itself, but also extends to suits for declaratory relief." *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (citing *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

The *Younger* doctrine counsels federal courts to abstain from exercising jurisdiction when there are parallel state proceedings in any one of three "exceptional circumstances: state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'n Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotation marks omitted). Abstention is required from a state criminal defendant's asserted federal claims if: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Applicable here, "[f]ederal courts consistently have abstained from ruling on cases that involve ongoing state criminal prosecutions except in the most unusual cases and only after there has been a showing of great and immediate harm." *Darnell v. Sabo*, No. 4:19-CV-00871-O-BP, 2020 WL 3442057, at *2 (N.D. Tex. June 1, 2020), rep't & rec. adopted, No. 4:19-CV-871-O, 2020 WL 3440885 (N.D. Tex. June 23,

2020). All three *Younger* abstention requirements are satisfied by this case, and this Court should decline to exercise jurisdiction over Plaintiffs' lawsuit.

> ### a.   Proceedings before this Court would necessarily interfere with ongoing state judicial proceedings.

To determine whether the federal proceeding would interfere with the state proceeding, the court "look[s] to the relief requested and the effect it would have on the state proceedings." *Bice*, 677 F.3d at 717. "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* (quoting *Joseph A. ex rel. Wolfe v. Ingram,* 275 F.3d 1253, 1272 (10th Cir. 2002)). Here, the injunctive and declaratory relief sought by the Plaintiffs would necessarily interfere with ongoing state judicial proceedings because it would effectively require TDCJ or Kinney County to release criminal defendants from jail and refrain from any future prosecution or face "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500. This is so because "[t]he enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order." *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981). Not only would such compliance reviews impose lengthy delays on the pending criminal prosecutions at issue, but this type of judicial oversight is also exactly what *Younger* sought to prohibit. *See O'Shea*, 414 U.S. at 500*; Wallace v. Kern*, 520 F.2d 400, 401 (2d Cir. 1975).

> ### b.   The State of Texas has an important interest in enforcing its laws.

There is no dispute that the State of Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws."); *Schall v. Martin*, 467 U.S. 253, 264 (1984) (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960) and *Terry v. Ohio*,

392 U.S. 1, 22 (1968)) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted."). Therefore, the second *Younger* abstention factor is satisfied.

> c.  **Plaintiffs have an adequate opportunity to raise their constitutional challenges in their pending state proceedings.**

To overcome the presumption in favor of abstention, Plaintiffs must show that they have *no opportunity* to litigate the asserted federal issues in state court. *DeSpain*, 731 F.2d at 1178. Under this prong, "abstention is appropriate unless state law *clearly bars the interposition of the constitutional claims*." *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) (emphasis added); *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights"); *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) ("The relevant question is whether the would-be federal plaintiff has the *opportunity* to raise his federal claims in state court.") (emphasis in original).

Within their own pending criminal proceedings, the individual Plaintiffs can raise their challenges to their arrests and continued detention under the Fourth Amendment and their challenges under the Fourteenth Amendment in a pre-trial writ of habeas corpus under Article 11 of the Texas Code of Criminal Procedure, at an examining trial under Article 16.01 of the Texas Code of Criminal Procedure, or at a hearing to challenge the sufficiency of probable cause to arrest. Plaintiffs' challenges under the Sixth Amendment can be remedied by the exclusion of evidence, where appropriate, or may be disregarded as harmless error. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (collecting cases). Such challenges, whether made under the Fourth, Sixth, or Fourteenth Amendment, must necessarily be determined on a case-by-case basis. Accordingly, to the extent that Plaintiffs are still involved in ongoing prosecutions, there exists adequate opportunities for them to raise each of their challenges in

the pending state proceedings. *See Ex parte Sifuente*, 639 S.W.3d 842, 845 n.1, 849 (Tex. App.—San Antonio 2022, pet. ref'd) (reversing the trial court's order denying the habeas corpus applications of the four appellants arrested pursuant to OLS who had not yet "bonded out" or pled "no contest or guilty to the charges"); *cf. State v. Curipoma*, 2022 WL 580872, at *1 (Tex. App.—Austin 2022, pet. granted) (describing a successful habeas application filed by an arrestee who was purportedly arrested pursuant to OLS).

For all of these reasons, Executive Director Collier asks this Court to abstain under *Younger* to the extent Plaintiffs seek injunctive or declaratory relief.

## II.  Motion to Dismiss for Failure to State a Claim

### A.  Standard of Review

Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### B.  Arguments & Authorities

#### 1.  Plaintiffs have failed to plead a plausible Sixth Amendment claim.

"[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 194–95 (2008) (citing *Brewer v. Williams*, 430 U.S. 387, 398–399 (1977)); *see also Estelle v. Smith*, 451 U.S. 454, 469 (1981).

Once the right to counsel attaches, the accused "is entitled to the presence of appointed counsel during any 'critical stage' of the post attachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Rothgery*, 554 U.S. at 212. Not every event following the inception of adversary judicial proceedings constitutes a "critical stage." *E.g.*, *U.S. v. Ash*, 413 U.S. 300, 321 (1973) (holding that the Sixth Amendment did not grant the right to counsel at the post-indictment photographic display used to test witness identification prior to trial). "Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.'" *Id.* at 323.[4] Where the denial of the Sixth Amendment right to counsel results in no "demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *U. S. v. Morrison*, 449 U.S. at 365. This is so because there exists "no effect of a constitutional dimension which needs to be purged to make certain that [a criminal defendant] has been effectively represented and not unfairly convicted." *Id.*, at 366.

Here, Plaintiffs do not allege that they are forced to engage in "critical stage" proceedings without the assistance of counsel. Rather, they complain of the delay in appointment of counsel, alleging that "[a]ppointment of counsel after arrest is routinely delayed and ranges between 2 and 139 days." Dkt. 10 at 49. Plaintiffs also complain that they did not receive counsel immediately after requesting representation, despite having no critical stage proceedings where the right to counsel would be needed or harm would occur without such representation.

---

[4] Among the stages of a criminal proceeding deemed to be a "critical stage" are arraignments, *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961); post-indictment interrogations, *Massiah v. United States*, 377 U.S. 201, 205–06 (1964); post-indictment identification lineups, *United States v. Wade*, 388 U.S. 218, 236–37 (1967); entry of a guilty plea, whether to a misdemeanor or a felony, *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972); closing summation, *Herring v. New York*, 422 U.S. 853, 858 (1975); overnight recess between direct and cross-examination of a defendant, *Geders v. United States*, 425 U.S. 80, 91 (1976); and court-ordered psychiatric examinations to determine competency to stand trial and future dangerousness, *Estelle*, 451 U.S. at 470.

A delay in the appointment of counsel, standing alone, does not present any demonstrable prejudice. In fact, Plaintiffs do not allege that the delay hindered the ability of appointed counsel from providing adequate representation in any way. Most importantly, there are no allegations by any of the above Plaintiffs who complain that their Sixth Amendment rights were violated that they were forced to engage in a critical stage proceeding without assistance of counsel. This is a significant omission because the Supreme Court has declined to consider whether even a six-month delay in appointment of counsel would prejudice Sixth Amendment rights, nor consider what standards might apply. *Rothgery v. Gillespie Cnty., Tex*, 554 U.S. 191, 213 (2008)[5]; *see also Lucio v. Davis*, 751 F. App'x 484, 490 n.3 (5th Cir. 2018) (per curiam) (citing *Rothgery* and concluding that "jurists of reason could not debate the potential for fairminded disagreement as to whether [a] three-month delay violated [the] Sixth Amendment right to counsel"). And in *Leachman v. Stephens*, the Fifth Circuit highlighted the fact that the Supreme Court has never "held that speedy-trial concerns determinatively bear on the denial-of-counsel inquiry, *or* that a defendant suffers an independent violation of the right to counsel because he requests appointment of counsel not given to him until his arrival to answer pending state charges." 581 F. App'x 390, 400 (5th Cir. 2014) (emphasis added).

In addition, in Texas, judicial officers appoint counsel to indigent defendants. *See* Tex. Code Crim. Proc. Art. 26.04. Thus, Plaintiffs have not alleged a plausible Sixth Amendment violation against Executive Director Collier.

---

[5] Justice Alito's concurring opinion is even more clear on this point: "Texas counties need only appoint counsel as far in advance of trial, and as far in advance of any pretrial 'critical stage,' as necessary to guarantee effective assistance at trial." *Rothgery*, 554 U.S. at 218 (Alito, J., concurring) (quoting the majority opinion's statement that "counsel must be appointed within a reasonable time after attachment *to allow for adequate representation at any critical stage before trial, as well as at trial itself*" (emphasis added by Justice Alito)).

2.      **Plaintiffs have failed to plead a plausible Due Process claim.**

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted). "Substantive due process analysis," the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The alleged liberty interest must be "carefully formulat[ed]" and must be "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 721, 722 (1997). To violate substantive due process, the defendant's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8). "If this standard is met, a court must next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Id.*

However, only "a plaintiff whose claim is not susceptible to proper analysis with reference to a specific constitutional right may still state a claim under § 1983 for a violation of his or her Fourteenth Amendment substantive due process right, and have the claim judged by the constitutional standard which governs that right." *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 409 U.S. 386, 395 (1989)).

Here, Plaintiffs make only passing references to their due process rights allegedly being violated, which make it difficult to discern the nature of their due process claim(s). *See* Dkt. 10 at ¶¶ 86–87, 138. In each of these references, however, the right allegedly infringed upon is explicitly

Defendant Bryan Collier's Motion to Dismiss                                                    11

protected enumerated in another Amendment. For example, Plaintiffs claim that there have been delays in filing criminal charges against arrested individuals, in violation of the "right to a speedy trial, a fundamental aspect of due process." Dkt. 10 at ¶ 86. However, the right to a speedy trial is specifically guaranteed by the Sixth Amendment. Similarly, Plaintiffs claim that their detentions/arrests violated their due process rights because "[t]he federal statutory structure instructs when it is appropriate to arrest an alien during the removal process." *Id.* at ¶ 138. However, the Fourth Amendment governs the standard for probable cause necessary to effect a detention and arrest, and Plaintiffs were arrested for criminal trespass, not to effectuate the federal removal process.

Accordingly, because Plaintiffs have failed to allege a deprivation of their rights to due process that is separate and apart from a right not otherwise protected by another Amendment, this claim must be dismissed. And, of course, if Plaintiffs have a purely procedural due process issue with their criminal prosecutions, the proper mechanism to raise those due process concerns is through the state judiciary. *Cf. Younger*, 401 U.S. at 46 (emphasizing "the fundamental policy against federal interference with state criminal prosecutions," in which "even irreparable injury is insufficient" to warrant intrusion). The process afforded through the Texas criminal justice system *is* their due process.

### 3.   Plaintiffs have failed to plead a plausible Equal Protection violation.

#### a.   Plaintiffs Have Not Alleged That Similarly Situated Individuals Were Treated Differently or That a Discriminatory Purpose Motivated Operation Lone Star.

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). As a prerequisite to such a claim, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). Plaintiffs

appear to be asserting racial profiling or a selective enforcement equal protection claim. Under either theory, Plaintiffs fail to state a claim.

A racial profiling claim under the Equal Protection Clause draws upon "ordinary equal protection standards." *United States v. Armstrong*, 517 U.S. 456, 465 (1996). "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (quoting *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000)); *see also United States v. Lawrence*, 179 F.3d 343, 349 (5th Cir. 1999); *United States v. Hall*, 455 F.3d 508, 523 (5th Cir. 2006). An equal protection claim based on profiling similarly requires a plaintiff to allege that he was treated differently than similarly situated individuals. *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012)).

Plaintiffs have not alleged that they were treated differently than similarly situated individuals. There are no allegations that individuals of different races or national origins were trespassing on private property but not arrested. To the contrary, the diversity of Plaintiffs' origins, including Mexico, Honduras, and El Salvador, indicate that no national origin was targeted. Dkt. 10 at ¶¶ 6–14. And "no equal protection violation is alleged where a plaintiff 'fails to allege any facts showing that [others were] similarly situated.'" *Davis v. Foley*, No. 3:17-CV-278-M-BN, 2018 WL 5723165, at *9 (N.D. Tex. Oct. 12, 2018), report and rec. adopted, No. 3:17-CV-278-M, 2018 WL 5717426 (N.D. Tex. Oct. 31, 2018) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015)). None of the Plaintiffs meaningfully dispute that they engaged in unlawful conduct by trespassing on private property. Their failure to allege different treatment of other trespassers in Kinney County requires dismissal of their equal protection claim.

Additionally, Plaintiffs fail to demonstrate that an invidious discriminatory purpose that the Equal Protection Clause guards against underlies OLS. A discriminatory purpose (sometimes referred to as discriminatory intent) "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Bowlby*, 681 F.3d at 227. Purposeful discrimination "involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft*, 556 U.S. at 676-7; *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979). "[A] § 1983 plaintiff must additionally plead and prove which actions of the individual defendant caused the harm." *Jones v. Miss. Sec. of State*, 812 F. App'x 235, 239 (5th Cir. 2020) (citation omitted). "[D]iscriminatory intent of one official may [not] be imputed to another for purposes of imposing individual liability under the civil rights laws." *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997).

Here, Plaintiffs have not sufficiently alleged that Director Collier undertook OLS for the purpose of adversely affecting anyone based on national origin. Courts have recognized that enforcing laws in a "concentrated effort to allocate scarce resources to the most egregious violations," which is the purpose of OLS, does not amount to an equal protection violation. *Moreno v. City of Brownsville*, Cause No. B-08-504, 2010 WL 11646748 at * 8-9 (S.D. Tex. Sept. 16, 2010) (citing *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995)).

But, at most, Plaintiffs allegations suggest that Executive Director Collier's actions were motivated by their immigration status. But immigration status is not a protected class under the Equal Protection Clause. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* And the phrase "national origin" does not embrace citizenship. *Espinoza v. Farah Mfg.*

*Co.*, 414 U.S. 86, 92-94 (1973) (holding that Title VII does cover citizenship status).[6] Rather, "the term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Id.* at 88. "Although citizenship and national origin may be highly correlated, they should not be equated with one another" and "[b]y themselves, the facts upon which [Plaintiffs] relies simply do not support an inference of national origin or race discrimination." *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059–60 (5th Cir. 1998). Therefore, since no classification protected by the Equal Protection Clause is implicated by Plaintiffs' claim, "then the [state's] action—even if irrational—does not deny them equal protection of the laws." *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (citation omitted).

> **b.** **Plaintiffs Cannot Establish an Equal Protection Claim Based Solely on Disparate Impact.**

"The Constitution forbids only purposeful discrimination." *U.S. v. LULAC*, 793 F.2d 636, 646 (5th Cir. 1986). As such, "disparate impact alone cannot suffice to state an Equal Protection violation." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *Pers. Adm'r*, 442 U.S. at 272 (noting that "uneven effects upon particular groups within a class are ordinarily of no constitutional concern" and "even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"); *Washington v. Davis*, 426 U.S. 229, 239 (1976). A showing of disparate impact only bears on an Equal Protection analysis in the rarest case where "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action[.]" *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). Under *Arlington Heights*, the "starting point" of the inquiry is whether the challenged action "bears more heavily on one race than another."

---

[6] "[T]he inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (internal quotation marks and citations omitted)

*Id.* at 266. (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). If the disparate impact is clearly "unexplainable on grounds other than race," then a court may infer racial animus. *Arlington Heights,* 429 U.S. at 266. If not, the court must perform "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*

Five factors guide this inquiry: "(1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history, especially where there are contemporary statements by members of the decision-making body." *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (en banc) (plurality opinion) (quoting *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989)). These factors are not exhaustive, and the ultimate determination requires examining "the totality of the circumstances." *Veasey*, 830 F.3d at 230, 235. Awareness of a disparate impact on a protected group is not enough: the law must be passed because of that disparate impact. *Pers. Adm'r of Mass.*, 442 U.S. at 279.

Here, the Court may not infer racial animus based on Plaintiffs' allegations that OLS disparately impacts Latino and "Black" individuals because the impact is explainable on grounds other than race: namely, that illegal aliens[7] are primarily committing criminal trespass in Kinney County, and they are also largely Latino or "Black" individuals. An equal protection claim similar to that put forth by Plaintiffs was rejected in *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013). There, the city's special order called for increased enforcement of criminal trespassing and

---

[7] State Defendants "understand[] that some may find the terms 'alien' and 'illegal alien' offensive, and [their] intent is certainly not to offend." *Texas v. United States*, --- F. Supp.3d ---, 2022 WL 2109204, at *2 n.2 (S.D. Tex. June 10, 2022). "These terms are used in this [motion] because they are contained in the statutes as well as official government documents quoted by the Supreme Court in a seminal immigration case." *Id.*; *see also* Matthew R. Salzwedel, *The Lawyer's Struggle to Write*, 16 Scribes Journal of Legal Writing 69, 76 (2015) ("[I]llegal alien has going for it both history and well-documented, generally accepted use.").

other statutes against day laborers. As the court recognized, the special order therefore disproportionately impacted Latino men since it was undisputed that day laborers are almost exclusively Latino men. But this fact did not demonstrate racial or ethnic animus sufficient to support an equal protection claim. *Id.* "Day laborers were not targeted based on who they were, but on what they did." *Id.* Therefore, the plaintiffs' equal protection claim based on race and national origin failed. *Id.* at 800–801. The same is true here: Plaintiffs were arrested because of what they did—criminally trespass in Kinney County—not who they were.

### 4. Plaintiffs have failed to plead a plausible Section 1983 conspiracy claim.

"In order to prevail on a section 1983 conspiracy claim, a plaintiff must establish (1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *overturned on other grounds by Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996). "A conspiracy by itself, however, is not actionable under section 1983." *Id.*; *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008) (noting that an actual violation of section 1983 is required for a conspiracy claim). Here, Plaintiffs have failed to state any viable Section 1983 claim against any of the individually named defendants, and their Section 1983 conspiracy claim necessarily fails. Additionally, Plaintiffs have not sufficiently alleged that the Executive Director Collier conspired specifically to violate Plaintiffs' rights. "To establish a cause of action based on conspiracy a plaintiff must show that the defendants agreed to commit an illegal act.*" Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (citation omitted). General conclusory charges of conspiracy with "no specific allegation of facts tending to show a prior agreement" cannot survive a motion to dismiss. *Id.* at 1023–24. Nor is "an allegation of parallel conduct and a bare assertion of conspiracy" sufficient. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 556–57 (2007); *see also Hey v. Irving*, 161 F.3d 7 (5th. Cir. 1998). Here, there are no factual allegations that

create a reasonable inference that Executive Director Collier agreed to violate Plaintiffs' constitutional rights.

### 5.    Plaintiffs have failed to plead a plausible Section 1985 conspiracy claim.

To state a Section 1985 claim, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001). Plaintiffs' Section 1985 claim based on *national origin* must therefore be dismissed. Moreover, just as Plaintiffs cannot proceed on a disparate impact theory of liability under the equal protection clause, they cannot do so under Section 1985. *See Reynolds v. Barrett*, 685 F.3d 193 (2d Cir. 2012). The alleged facts do not create the plausible inference that Executive Director Collier's actions were motivated by a racially discriminatory purpose for the reasons described in the context of Plaintiffs' equal protection claim, nor that he conspired with others to further a plan to deprive Plaintiffs of equal protection based on their race.

### 6.    Plaintiffs' claims against Executive Director Collier in his individual capacity cannot overcome the additional hurdles required to impose individual liability.

Plaintiffs also cannot overcome the additional hurdles that apply to the claims against Executive Director Collier in his individual capacity: the need to establish supervisor liability and overcome qualified immunity. "Under [S]ection 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). "A failure to supervise or train claim arises when the plaintiff shows that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the

infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). Deliberate indifference is "a stringent standard of fault," requiring the official to "disregard a known or obvious consequence of his actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Here, Plaintiffs have not plausibly alleged that Executive Director Collier's conduct caused the infringement of a constitutional right and that he consciously disregarded a known or obvious consequence of his actions. As such,

Similarly, Plaintiffs cannot overcome qualified immunity. Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). The qualified immunity analysis has two steps, which can be taken in either order: (1) whether a constitutional right would have been violated on the facts alleged, and (2) "whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). *Flores v. City of Palacios,* 381 F.3d 391, 395 (5th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Finally, the court "asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). Here, Plaintiffs cannot overcome qualified immunity for any claim against Executive Director Collier in his individual capacity.

## V. **Prayer**

For all these reasons, Executive Director Collier respectfully asks the Court to dismiss the claims against him in both his official and individual capacity.

Respectfully submitted,

| | |
|---|---|
| **KEN PAXTON** | /s/ *Jason T. Bramow* |
| Attorney General of Texas | **JASON T. BRAMOW** |
| | Texas State Bar No. 24101545 |
| **BRENT WEBSTER** | jason.bramow@oag.texas.gov |
| First Assistant Attorney General | Attorney-in-Charge |
| | |
| **GRANT DORFMAN** | **Jessica L. Weltge** |
| Deputy First Assistant Attorney General | Texas Bar No. 24118585 |
| | jessica.weltge@oag.texas.gov |
| **SHAWN COWLES** | |
| Deputy Attorney General for Civil Litigation | **Marlayna M. Ellis** |
| | Texas Bar No. 24123448 |
| **SHANNA MOLINARE** | marlayna.ellis@oag.texas.gov |
| Chief, Law Enforcement Defense Division | Assistant Attorneys General |

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994
**ATTORNEYS FOR DEFENDANTS
EXECUTIVE DIRECTOR BRYAN COLLIER
DIRECTOR STEVEN MCCRAW**

## Certificate of Service

I hereby certify that on July 19, 2022, a true and correct copy of the foregoing document was

served via the Court's ECF system to all counsel of record.

/s/ *Jason T. Bramow*
**JASON T. BRAMOW**
Assistant Attorney General