**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **ERASTO ARROYO BARCENAS;** | § | |
| **MELVIN AMADOR RODAS; IVAN RUANO** | § | |
| **NAVA; NOLIS LEYVA-GONZALEZ; JOSE** | § | |
| **CARLOS GOMEZ-COLORADO; JOSE LUIS** | § | |
| **DOMINGUEZ-ROJAS; MELVIN AMAYA** | § | |
| **ZELAYA; JESUS CURIPOMA; OSCAR** | § | |
| **SERRANO MARTINEZ; CHRISTIAN IVAN** | § | |
| **RUIZ-RODRIGUEZ; ISRAEL BAYLON** | § | |
| **ARELLANO; JOSE LOPEZ LOZANO;** | § | |
| **MIGUEL LOPEZ LOZANO; FRANCISCO** | § | |
| **VILLALPANDO RAMOS; CESAR GALINDO** | § | |
| **ESCOTO,** | § | |
| **Plaintiffs,** | § | |
| **Individually and On Behalf of the Class** | § | |
| **of Those Similarly Situated,** | § | |
| | § | |
| **VS.** | § | **Case No. 22-397** |
| | § | |
| **STEVEN MCCRAW in his individual capacity;** | § | |
| **GREG ABBOTT in his individual and official** | § | |
| **capacities; BRYAN COLLIER in his individual** | § | |
| **capacity; BRAD COE in his individual capacity,** | § | |
| **and KINNEY COUNTY, TEXAS** | § | |
| **Defendants.** | § | |

PLAINTIFF'S RESPONSE TO DEFENDANT GREG ABBOTT'S MOTION TO DISMISS
FOR LACK OF SUBJECT-MATTER JURISDICTION & FAILURE TO STATE A CLAIM

NOW COMES Plaintiffs, and files this its Response to Defendant GREG ABBOTT'S

MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION & FAILURE TO

STATE A CLAIM's and in support thereof Plaintiffs would show the Court as follows:

TABLE OF CONTENTS

I.  Motion to Dismiss for Lack of Subject Matter Jurisdiction ................................................. 1

  A.  Standard of Review ..................................................................................................... 1

  B.  Arguments and Authority ............................................................................................ 1

    1.  Standing ................................................................................................................ 1

    2.  Mootness .............................................................................................................. 2

    3.  Sovereign Immunity ............................................................................................ 2

    4.  *Younger* Abstention .......................................................................................... 5

II.  Motion to Dismiss For Alleged Failure To State a Claim ....................................................... 6

  A.  Arguments and Authorities ......................................................................................... 6

    1.  Fourth Amendment Violations ............................................................................ 6

      a)  No Probable Cause ....................................................................................... 9

      b)  False Probable Cause Affidavits ................................................................. 11

    3.  Sixth Amendment Violations ............................................................................. 12

    4.  Due Process Violations ...................................................................................... 12

    5.  Equal Protection Violations ............................................................................... 12

    6.  § 1983 Conspiracy ............................................................................................. 12

    7.  § 1985 Conspiracy ............................................................................................. 12

    8.  Individual Capacity ............................................................................................ 12

    9.  Replead ............................................................................................................... 12

TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 566 U.S. 662 (2009)....................................................................................1

*6th St. Bus. Partners LLC v. Abbott*, No. 1:20-CV-706-RP, 2020 WL 4274589, at *2 (W.D. Tex. July 24, 2020)..................................................................................................................4

*Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 183 L. Ed. 2d 351 (2012). ...passim

*Baker v. McCollan*, 443 U.S. 137 (1979)..............................................................................12

*Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718 (S.D. Tex. 2019). ........................................2, 13

*Brantley v. Kuntz*, 98 F. Supp. 3d 884 (W.D. Tex. 2015).........................................................13

*Caliste v. Cantrell*, 329 F.Supp.3d 296 (E.D. La. 2018) ........................................................13

*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)....................................................................17

*City of El Cenizo*, 890 F.3d 164 (5th Cir. 2018).................................................................8, 10

*Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970). .............................13

*Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) ...............2

*Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)...........................................3

*Gerstein v. Pugh*, 420 U.S. 103,  95 S.Ct. 854, 43 L.Ed.2d 54 (1975) .....................................2

*Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157,  7 L.Ed.2d 114 (1961)..................................12

*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ...............................................................13

*Hines v. Davidowitz*, 312 U.S. 52 (1941). ...........................................................................10

*Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779 (S.D. Tex. 2013)...........16

*League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421 (5th Cir. 2011)....1

*Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)...................2

*Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) ........................13

*McNeil v. Wisconsin*, 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) ...........................12

*Meledres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012).............................................................8, 10

*Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir. 1980).............................................1

*Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020). .......................................................4

*Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019)..............................................14, 16

*Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442 (5th Cir. 2022)...........................3

*Plyler v. Doe*, 457 U.S. 202,  102 S. Ct. 2382, 2394–95, 72 L. Ed. 2d 786 (1982)..............14, 16

*Rocky v. King*, 900 F.2d 864 (5th Cir. 1990)........................................................................2

*Saloom v. Tex. Dept. of Family and Child Protective Servs.*, 578 Fed.Appx. 426  (5th Cir. 2014), .......................................................................................................................5

*Santos v. Frederick County Board of Commissioners*, 725 F.3d 451 (4th Cir. 2013). ............8, 10

*Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240 (5th Cir.2000)..............................................13

*U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388,  100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). .........2

*United States v. Wade, supra*; *Gilbert v. California, supra. Cf. Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)...................................................................13

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002). ..............................................................................................3

*Whisenant v. City of Haltom*, 106 F. App'x 915 (5th Cir. 2004) (per curiam)..............................17

*White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) ..................................13

*Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996) ................14, 16

*Wightman v. Tex. Supreme Court*, 84 F.3d 188 (5th Cir. 1996). ....................................................5

*Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018)........................................................................12

*Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971) ......................................6

**Statutes**

42 U.S.C. § 1985 .......................................................................................................................17, 18

8 U.S.C. § 1357 .................................................................................................................................18

**Rules**

Fed. R. Civ. P. 12 .................................................................................................................................1

**Regulations**

8 CFR § 241 ..............................................................................................................................7, 9, 14

Plaintiffs use the same numbering system as Defendant's brief to address the allegations in Defendant's motion for ease of reference.

I.      Motion to Dismiss for Lack of Subject Matter Jurisdiction

A.      Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(1), A "facial attack" on the complaint requires the court merely to look and see if Plaintiffs have sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).  Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint need only give fair notice of a "plausible" claim and grounds for it.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

B.      Arguments and Authority

1.  Standing

No named Plaintiff is currently incarcerated.  However, Operation Lone Star (OLS) continues to arrest immigrants and Plaintiffs intend to seek to add incarcerated individuals as plaintiffs and then seek class certification.  Thus, Plaintiffs ask to defer any ruling on injunctive or declaratory relief until such time as Plaintiffs seek to add incarcerated individuals to the complaint. "Article III standing does not require the District Court Judges or District Attorney to be the most immediate cause, or even a proximate cause, of Booth's injuries; rather, it requires only that those injuries be "fairly traceable" to the District Court Judges or District Attorney. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011) ("The causation element does not require a party to establish proximate causation, but only requires that

the injury be 'fairly traceable' to the defendant.")" *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 731 (S.D. Tex. 2019).   Plaintiffs have pleaded sufficient facts that their injuries are "fairly traceable" to the Defendant.

2. Mootness

"Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990) (citation omitted). Generally speaking, "[t]he mootness doctrine requires that the controversy posed by the plaintiff's complaint be 'live' not only at the time the plaintiff files the complaint but also throughout the litigation process." *Rocky v. King*, 900 F.2d 864, 866 (5th Cir. 1990). There is, however, a notable exception. When class actions are involved, the Supreme Court has explained that "the Art[icle] III mootness doctrine" is "flexible." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). Indeed, the Supreme Court has expressly held on several occasions that, in a class action challenging procedures for pretrial detention, the release of the named plaintiff from jail does not moot the action. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 51–52, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991); *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)." *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 728 (S.D. Tex. 2019).   Chief Justice John Roberts specifically noted in *Sanchez-Gomez* that " 'class-like claims' seeking 'class-like relief' " are "sufficient to trigger the application of *Gerstein* and save [a] case from mootness" despite the termination of a named plaintiff's criminal case. *Id.*   Alternatively, Plaintiffs ask to defer the ruling on injunctive and declaratory relief until such time as Plaintiffs seek to add individuals who are currently incarcerated to the complaint.

3. Sovereign Immunity

Plaintiffs sued Defendant Abbott in his official capacity in order to seek prospective relief to redress ongoing violations of federal law.  State sovereign immunity is not boundless and one of its  limits is the *Ex parte Young* doctrine. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The doctrine grants a federal court jurisdiction over a lawsuit against a "state official in his official capacity if the suit seeks prospective relief to redress an ongoing violation of federal law." *Planned Parenthood Gulf Coast, Inc*. *v*. *Phillips*, 24 F.4th 442, 450–51 (5th Cir. 2022).  *Ex parte Young* is a "necessary exception" to sovereign immunity, preventing state officials from using their state's sovereignty as a shield to avoid compliance with federal law. *Id*. A "state official is 'not the State for sovereign-immunity purposes' when 'a federal court commands [him] to do nothing more than refrain from violating federal law.' " *Id*. at 451.  "In determining whether the doctrine of *Ex parte Young*" applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Verizon Maryland, Inc*. *v*. *Pub*. *Serv*. *Comm'n of Maryland*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760, 152 L. Ed. 2d 871 (2002).  "[T]he inquiry into whether suit lies under *Ex parte Young* does not include an analysis of the merits of the claim." *Planned Parenthood*, 24 F.4th at 451.

Defendant Abbott's statement that he "plays no role in enforcing the state laws under which other state officials are carrying out the objectives of OLS" is disingenuous.  Defendant Abbott has repeatedly publicized his direct and continuing involvement in the enforcement of OLS, including establishing an enforcement mechanism for arrest and incarceration of immigrants that is entirely separate from the regular state criminal justice system.  Plaintiffs specified many instances of Defendant Abbott declaring his involvement, including but not limited to:  "Operation Lone Star, a state-funded **Abbott-led initiative to guard the Texas-Mexico border**" (emphasis added);  "**Under Texas Gov. Greg Abbott's command**, the Department of Public Safety has

formed a boat blockade on the Rio Grande to keep undocumented migrants out of South Texas" (emphasis added) "Governor Abbot's actions to secure the border include: signing laws that provide $3 billion in funding for Texas' border security efforts; launching Operation Lone Star and deploying thousands of National Guard soldiers and Texas Department of Public Safety troopers; arresting and jailing illegal migrants trespassing or committing other state crimes in Texas…". "Since the initial launch of Operation Lone Star in March 2021, the Governor, DPS, and the Texas National Guard have increased the comprehensive efforts of the mission.  Governor **Abbott launched a second jail booking facility** in Jim Hogg County in February 2022." (emphasis added); Defendant Abbott wrote to President Biden that he, Abbott, was continuing to "**step up to enforce**" immigration laws (emphasis added); Defendant Abbott hosted a "summit" for law enforcement from other states to address OLS; Defendant Abbott initiated a program to bus immigrants taken into custody under OLS to the nation's capital; According to his "disaster proclamation" regarding the implementation of OLS, Defendant Abbott is the one that "deployed 1,000 troops from the Texas Department of Public Safety (DPS) and hundreds of soldiers from the Texas National Guard to the border," and he is the one that "directed DPS to initiate Operation Lone Star and devote additional law enforcement resources towards deterring illegal border crossings and protecting our border community." In his letter to all Texas sheriffs inviting them to a "Border Security Summit," Abbott reiterated that he initiated OLS and deployed the DPS and National Guard to the border..   There are many other instances contained in Plaintiffs' complaint that demonstrate enforcement actions by Defendant.

This case is entirely distinguishable from *6th St. Bus. Partners LLC v. Abbott*, No. 1:20-CV-706-RP, 2020 WL 4274589, at *2 (W.D. Tex. July 24, 2020) and *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020).  In both of those cases, the plaintiffs sued Governor Abbott

for enacting legislation but in neither case could the plaintiffs show enforcement by Abbott.  In the instant case, Plaintiffs have pleaded and proved that Defendant Abbott has continuously acted to enforce OLS and has been directly involved in enforcement actions.

4. *Younger* Abstention

In their motion to dismiss, the Defendants request this Court to decline jurisdiction based on the *Younger* abstention doctrine. The *Younger* abstention doctrine does not apply to claims for monetary relief. *See Saloom v. Tex. Dept. of Family and Child Protective Servs., 578 Fed.Appx. 426, 429 (5th Cir. 2014),* but rather only to claims for injunctive[1] and declaratory relief. Three conditions must be met for the doctrine to apply: (1) the dispute must involve an ongoing state judicial proceeding; (2) an important state interest in the subject matter of the proceeding must be implicated; and (3) the state proceeding must afford an adequate opportunity to raise constitutional challenges. *Wightman v. Tex. Supreme Court*, 84 F.3d 188, 189 (5th Cir. 1996). At the time of the filing of this lawsuit, there was no longer any active state criminal charge pending against Plaintiffs Jesus Guzman-Curipoma, Christian Ruiz-Rodriguez, and Ivan Ruano Nava. Currently, there are no state criminal charges pending against any Plaintiff, except for Erasto Arroyo Barcenas, Melvin Amador Rodas, and Jose Carlos Gomez-Colorado. The *Younger* abstention should not be applied to any claim brought by a Plaintiff without an "ongoing state judicial proceeding."

For the second condition of the abstention to be met, the requested relief must implicate an important state interest in the subject matter of the ongoing state judicial proceeding. The ongoing

---

[1] Currently, none of the named plaintiffs are incarcerated, as those who were in custody at the time of filing this lawsuit have now been released. Plaintiffs request this Court defer any rulings on the claims for injunctive relief until the time of, or subsequent to, a hearing on Plaintiffs' requested class certification. Undersigned counsel anticipates this Court will have jurisdiction over the claims for injunctive relief at that time. The requested class includes an ever-increasing group of individuals detained under Operation Lone Star. As such, it will include actively incarcerated plaintiffs throughout the duration of the lawsuit, even as specific individuals, like the currently named Plaintiffs, are lucky enough to eventually cycle their way out of the prison.

state judicial proceedings raised by the Defendants consist of the criminal prosecutions for criminal trespass under Operation Lone Star. Much of the declaratory and injunctive relief requested would have little, if any, baring on state criminal charges. Four of the claims for declaratory relief ask this Court to enter a judgment declaring that the refusal to release individuals after they are ***entitled to release*** (because of a valid cash bond, personal bond, dismissal, or plea) is a violation of state and federal law. Similarly, four of the claims for injunctive relief ask this Court to order the release of those who are ***entitled to release***. None of these claims ask for, or involve, the release of any individual that the State has any jurisdiction to keep incarcerated, nor do they terminate or preclude any pending or future prosecution. Therefore, the eight claims related to over-detention are not subject to the *Younger* doctrine.

The rest of the declaratory and injunctive claims involve the process and procedures by which individuals are being arrested and charged for criminal trespass – but do not implicate the facts or circumstances of each individual Plaintiff. For example, in the event request number 8 is granted, and this Court enjoins the separate system of arrest and prosecution for immigrants as opposed to other detainees, that would not prevent the State of Texas from prosecuting any criminal trespass charges. Additionally, under the *Younger* doctrine, a federal district court should not abstain where, as is the case here, the threat to the federal plaintiff's federal rights cannot be eliminated by a defense against a single state criminal prosecution. *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971)

II.      Motion to Dismiss For Alleged Failure To State a Claim

A.      Arguments and Authorities

1.      Fourth Amendment Violations

"If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012). The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process. For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention "pending a decision on whether the alien is to be removed from the United States." *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012). And if an alien is ordered removed after a hearing, the Attorney General will issue a warrant. See 8 CFR § 241.2(a)(1). In both instances, the warrants are executed by federal officers who have received training in the enforcement of immigration law. See §§ 241.2(b), 287.5(e)(3).

In the *Arizona* opinion, the Court examined a section of an Arizona law (Section 6) which attempted to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers. Under state law, officers who believe an alien is removable by reason of some "public offense" would have the power to conduct an arrest on that basis regardless of whether a federal warrant has issued or the alien is likely to escape. This state authority could be exercised without any input from the Federal Government about whether an arrest is warranted in a particular case. This would allow the State to achieve its own immigration policy. The result could be unnecessary harassment of some aliens (for instance, a veteran, college student, or someone assisting with a criminal investigation) who federal officials determine should not be removed. *Arizona*, 567 U.S. at 408. "This is not the system Congress created." *Id*.

The Fifth Circuit acknowledges that "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an

individual solely based on known or suspected civil violations of federal immigration law," *City of El Cenizo,* 890 F.3d at 189. (citing *Santos v. Frederick County Board of Commissioners*, 725 F.3d 451, 465 (4th Cir. 2013).  "Thus, the seizure in *Santos* violated the Fourth Amendment because the officers detained Santos "before dispatch confirmed with ICE that the warrant was active."  *City of El Cenizo,* 890 F.3d at 189.  The Fifth Circuit cited with approval *Meledres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) for the proposition that unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" was a constitutional violation and noted that in *Meledres*, "as in *Santos*, there was no federal request for assistance before the seizure."  890 F.3d at 189.

It is clear that the OLS process of unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" is a violation of the Fourth Amendment.  In the case *sub judice*: Plaintiff Martinez was "located and detained" as a "migrant." (emphasis added). He was arrested, along with five others, on the Union Pacific Railway.  There were three males and three females.  The three female "trespassers" were transported to the Border Patrol Station in Brackettville.  The three males were all arrested and sent to the Val Verde Processing Center.  *Id*.  The probable cause affidavit for Plaintiff Barcenas states that a state trooper was "notified by DPS SOG of nine migrants trespassing on the Dos Angeles Ranch."  *Id*. (emphasis added).  The probable cause affidavit charging Plaintiff Becerra reflects that that he was also one of the "nine migrants" on the Dos Angeles Ranch. *Id*.,(emphasis added). Plaintiff Santana was also identified as one of the "nine migrants."  The probable cause affidavit charging Plaintiff Rodas with trespass reflects that troopers "had apprehended a group of Undocumented Persons (UDPs)" on a ranch...The defendant was one of the UDP's in the group." *Id*. (emphasis added). Plaintiff Pineda was also identified as one of the Undocumented Persons in the group.  *Id*.  The

probable cause affidavit charging Plaintiff Colorado with trespassing identifies him as one of two "<u>Illegal Aliens</u>," stating that the "landowners wished to pursue trespassing charges on the <u>Aliens</u>." *Id*. (emphasis added).  "There were two civilians armed with long rifles and two <u>illegal aliens</u> lying prone with their hands on their heads." *Id*.  (emphasis added).  The probable cause affidavits for these Plaintiffs reflect detention and arrest based upon immigration status.

a)  No Probable Cause

"If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent."  *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012).  The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process. For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention "pending a decision on whether the alien is to be removed from the United States." *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012).  And if an alien is ordered removed after a hearing, the Attorney General will issue a warrant. See 8 CFR § 241.2(a)(1). In both instances, the warrants are executed by federal officers who have received training in the enforcement of immigration law. See §§ 241.2(b), 287.5(e)(3).

In the *Arizona* opinion, the Court examined a section of an Arizona law (Section 6) which attempted to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers. Under state law, officers who believe an alien is removable by reason of some "public offense" would have the power to conduct an arrest on that basis regardless of whether a federal warrant has issued or the alien is likely to escape. This state authority could be exercised without any input from the Federal Government about whether an arrest is warranted in a particular case. This would allow the State

to achieve its own immigration policy. The result could be unnecessary harassment of some aliens (for instance, a veteran, college student, or someone assisting with a criminal investigation) who federal officials determine should not be removed. *Arizona*, 567 U.S. at 408. "This is not the system Congress created." *Id*.

Congress has put in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances. *Id*. at 410, citing *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941). In *Hines*, the Court noted that an important consideration in assessing the unconstitutionality of the state's exercise of authority in that case was that the "legislation deals with the rights, liberties, and personal freedoms of human beings, and is in an entirely different category from state tax statutes or state pure food laws regulating the labels on cans." *Id*. at 68. Clearly, the instant case deals with the rights, liberties and personal freedoms of human beings, putting it into a category of higher scrutiny.

The Fifth Circuit acknowledges that "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law," *City of El Cenizo*, 890 F.3d at 189. (citing *Santos v. Frederick County Board of Commissioners*, 725 F.3d 451, 465 (4th Cir. 2013). "Thus, the seizure in *Santos* violated the Fourth Amendment because the officers detained Santos "before dispatch confirmed with ICE that the warrant was active." *City of El Cenizo,* 890 F.3d at 189. The Fifth Circuit cited with approval *Meledres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) for the proposition that unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" was a constitutional violation and noted that in *Meledres*, "as in *Santos*, there was no federal request for assistance before the seizure." 890 F.3d at 189.

It is clear that the OLS process of unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" is a violation of the Fourth Amendment.  In the case *sub judice*, it is clear that the OLS process of unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" is a violation of the Fourth Amendment.  In the case *sub judice*, Plaintiff Martinez was "located and detained" as a "<u>migrant</u>." (emphasis added). He was arrested, along with five others, on the Union Pacific Railway.  There were three males and three females.  The three female "trespassers" were transported to the Border Patrol Station in Brackettville.  The three males were all arrested and sent to the Val Verde Processing Center.  *Id*.  The probable cause affidavit for Plaintiff Barcenas states that a state trooper was "notified by DPS SOG of nine <u>migrants</u> trespassing on the Dos Angeles Ranch." *Id*.  (emphasis added).  The probable cause affidavit charging Plaintiff Becerra reflects that that he was also one of the "nine <u>migrants</u>" on the Dos Angeles Ranch.  *Id*., (emphasis added). Plaintiff Santana was also identified as one of the "nine <u>migrants</u>."  The probable cause affidavit charging Plaintiff Rodas with trespass reflects that troopers "had apprehended a group of <u>Undocumented Persons</u> (UDPs)" on a ranch...The defendant was one of the UDP's in the group." *Id*. (emphasis added).  Plaintiff Pineda was also identified as one of the <u>Undocumented Persons</u> in the group.  *Id*.  The probable cause affidavit charging Plaintiff Colorado with trespassing identifies him as one of two "<u>Illegal Aliens</u>," stating that the "landowners wished to pursue trespassing charges on the <u>Aliens</u>."  *Id*. (emphasis added).  "There were two civilians armed with long rifles and two <u>illegal aliens</u> lying prone with their hands on their heads." *Id*.  (emphasis added).  The probable cause affidavits for these Plaintiffs reflect detention and arrest based upon immigration status.

    b)  False Probable Cause Affidavits

Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). "The Fourth Amendment is the appropriate constitutional basis for [a person's] claim that he was wrongfully arrested due to the knowing or reckless misstatements and omissions in [probable cause] affidavits." *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018). Fourth amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth and (2) the allegedly false statement is necessary to the finding of probable cause. *Id.* at 494.

3.  Sixth Amendment Violations

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." In *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Supreme Court explained that the right arises when a person is charged, at a preliminary hearing, at an indictment, or arraignment." *Id.,* at 175, 111 S.Ct. 2204 (citations and internal quotation marks omitted). Plaintiffs and Class Members have been deliberately denied their Sixth Amendment right to counsel through failure to advise them of such right; refusal to allow them to contact counsel; and/or being forced to waive such right. These violations of their constitutional rights were deliberate and ongoing. As pleaded, individuals, including Plaintiffs, are, and have been, deprived of counsel at critical stages that deprived them of the ability to obtain a bond reduction or make any change in their bond status, obtain an earlier release, to file any motions, obtain any discovery and/or information to support their defenses or to obtain any timely proceedings. "The [Supreme] Court has held that 'critical stages' include the pretrial type of arraignment where certain rights may be sacrificed or lost, *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158—159, 7 L.Ed.2d 114 (1961),

12

see *White v. Mary*land, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), and the pretrial lineup,

*United States v. Wade, supra*; *Gilbert v. California, supra. Cf. Miranda v. Arizona*, 384 U.S. 436,

86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), where the Court held that the privilege against compulsory

self-incrimination includes a right to counsel at a pretrial custodial interrogation. See also *Massiah*

*v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)." *Coleman v. Alabama*, 399

U.S. 1, 7, 90 S. Ct. 1999, 2002, 26 L. Ed. 2d 387 (1970).  The *Coleman* Court specifically found

that bail hearings were "critical stages." *Id*.  "There can really be no question that an initial bail

hearing should be considered a critical stage of trial. *See Higazy v. Templeton*, 505 F.3d 161, 172

(2d Cir. 2007) ("a bail hearing is a critical stage of the State's criminal process") (internal quotation

marks and citation omitted); *Caliste*, 329 F.Supp.3d at 314 ("the issue of pretrial detention is an

issue of significant consequence for the accused")."   *Booth v. Galveston Cnty.*, 352 F. Supp. 3d

718, 738 (S.D. Tex. 2019).

4.    Due Process Violations

To prove a substantive due process claim, a plaintiff must show the challenged governme

nt action is arbitrary, unreasonable, or has no relationship to a legitimate government interest.

or has no relationship to a legitimate government interest. *Brantley v. Kuntz*, 98 F. Supp. 3d 884,

889 (W.D. Tex. 2015), citing *Simi Inv. Co. v. Harris Cnty., Tex.,* 236 F.3d 240, 249 (5th Cir.2000)

(stating government action comports with substantive due process if "rationally related to a

legitimate government interest" and impinges upon it if "arbitrary or capricious"). The federal

statutory structure instructs when it is appropriate to arrest an alien during the removal process.

For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest

and detention "pending a decision on whether the alien is to be removed from the United States."

*Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012).

And if an alien is ordered removed after a hearing, the Attorney General will issue a warrant. See 8 CFR § 241.2(a)(1). In both instances, the warrants are executed by federal officers who have received training in the enforcement of immigration law. See §§ 241.2(b), 287.5(e)(3).   OLS violates the Plaintiffs' substantive due process rights under the Fourteenth Amendment because the law is arbitrary and capricious and, because the federal scheme is enacted to address immigration enforcement, serves no legitimate government interest.

5.      Equal Protection Violations

In *Arizona*, the Supreme Court noted the "constitutional safeguards" that applied to immigration enforcement, including that officers "may not consider race, color or national origin" in implementing its laws.  567 U.S. at 411.  The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental constitutional premises. "Thus we have treated as presumptively invidious those classifications that disadvantage a 'suspect class.'"  *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S. Ct. 2382, 2394–95, 72 L. Ed. 2d 786 (1982). "Everyone accepts that a detention based on race, *even one otherwise authorized by law*, violates the Fourteenth Amendment's Equal Protection Clause."  *Nieves v. Bartlett*, 139 S. Ct. 1715, 1731, 204 L. Ed. 2d 1 (2019).  The Constitution "prohibits selective enforcement of the law based on considerations such as race."  *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996).

The implementation of the OLS system has resulted in systemic discrimination on the basis of color, race and/or national origin.   Arrests under OLS are severely racially disparate: the overwhelming majority (if not all) arrests are of Black and Brown men. Trespass arrest affidavits authored by DPS troopers reveal these racial disparities and also show clear indications of profiling based on race and national origin. The ACLU completed an initial analysis in approximately

December 2021 of DPS trooper affidavits providing arresting officers' accounts of 168 arrests—96 in Kinney County.   The affidavits demonstrated stark racial disparities in arrests: all arrests were of people of color, and almost all were of Latino men. 98% were recorded as "H/M" (Hispanic male) and 2% as "B/M" (Black male). For Kinney County, of the 96 arrest affidavits analyzed, 33% described country of origin and/or perceived immigration status: 29% included perceived immigration status, and 8% included country of origin. (These totals for each category equaled more than 100% because some narratives included for example, both perceived race and perceived immigration status.). As specifically described in Plaintiffs' complaint, the descriptions in the affidavits' arrest narratives strongly indicated racial profiling beyond the bare statistics. The affidavits suggested that the individual's perceived ethnicity was relevant to the DPS trooper's understanding that that person was not welcome on the property. Other affidavits also describe observing, and then arresting, Latino men.  Arrest narratives also strongly indicated profiling on the basis of national origin, including perceived immigration status. Many arrest narratives described observing "undocumented migrants." Others are described in detail in Plaintiffs' complaint.  On February 23, 2022, the ACLU supplemented its written complaint with  analysis of an additional 316 trespass arrests affidavits —277 from arrests in Kinney County. ***100% of the arrests in Kinney County were recorded as "H/M" (Hispanic male).***   Almost always, the descriptions from arresting officers imply that individuals' perceived immigration status was relevant to the decision to initiate law enforcement action or to arrest:

In *Arizona*, the Supreme Court noted the "constitutional safeguards" that applied to immigration enforcement, including that officers "may not consider race, color or national origin" in implementing its laws.  567 U.S. at 411.  The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental constitutional premises. "Thus we

have treated as presumptively invidious those classifications that disadvantage a 'suspect class.'" *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S. Ct. 2382, 2394–95, 72 L. Ed. 2d 786 (1982). "Everyone accepts that a detention based on race, *even one otherwise authorized by law*, violates the Fourteenth Amendment's Equal Protection Clause." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1731, 204 L. Ed. 2d 1 (2019) (emphasis in original).  The Constitution "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996).

The implementation of the OLS system has resulted in systemic discrimination on the basis of color, race and/or national origin.   Arrests under OLS are severely racially disparate: the overwhelming majority (if not all) arrests are of Black and Brown men. The affidavits demonstrated stark racial disparities in arrests: all arrests were of people of color, and almost all were of Latino men. 98% were recorded as "H/M" (Hispanic male) and 2% as "B/M" (Black male). Beyond these bare statistics, the descriptions in the affidavits' arrest narratives strongly indicated racial profiling.

Plaintiffs have absolutely alleged that they were specifically targeted based upon race, national origin and immigration status.  There is no question that they are being treated differently than white people and/or citizens as they are undisputedly targeted based upon race and immigration status.  The Defendant undisputedly have set up an entirely separate criminal system for prosecuting immigrants which white people and citizens are not subject to enduring.  This case can be distinguished from *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 801 (S.D. Tex. 2013) because in that case, the court determined that the plaintiffs were "not targeted based on who they were, but on what they did—that is, exercise their right to free speech."

In this case, Plaintiffs were targeted based on race, national origin and immigration status, constituting a violation of the equal protection law.

6.      § 1983 Conspiracy

"To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Whisenant v. City of Haltom*, 106 F. App'x 915, 917 (5th Cir. 2004) (per curiam) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)).  In the instant case, the agreement between Abbott, McCraw and Coe to engage in "immigration enforcement" is clear and on record.  It is also clear that they agreed to implement the OLS immigration enforcement without the involvement of the Federal Government and based upon observed race/color and/or immigration status in violation of the United States Constitution.  This agreement to implement OLS in such a manner resulted in violations of the constitutional rights of Plaintiffs and the Class Members.  The rights in question were clearly established at the time that OLS was implemented and the actions taken in concert with such agreement/implementation were objectively unreasonable.

7.      § 1985 Conspiracy

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus.  The conspiracy between Abbott, McCraw and Coe (and others) to implement OLS was specifically for the purpose of depriving a class of persons of the equal protection of the laws.  It is clear that arresting and incarcerating someone on the basis of their

race/color and/or immigration status is a violation of equal protection. Defendants acted in furtherance of the conspiracy by implementing OLS in the manner that directly resulted in the injuries to Plaintiffs and the Class Members described herein. Thus, Defendants are liable pursuant to 42 U.S.C. § 1985.

       8.     Individual Capacity

Governor Abbott makes no bones about his OLS system. His written and verbally acknowledged policy is to arrest people based on their immigration status, and to do it without federal assistance, authority or intervention. He takes personal credit/responsibility for thousands of such arrests made at his specific direction. Arrests based upon skin color, race and/or possible removability violate the Fourth and Fourteenth Amendments to the United States Constitution. Abbott's OLS system is the direct and moving force behind the unconstitutional arrests and incarceration of the Plaintiffs and the Class Members. Furthermore, Abbott is aware of the requirements of 8 U.S.C. § 1357, "Power of immigration officers and employees," which requires state and local officers to work in conjunction with the Federal Government as immigration officers and requires specific training. Abbott has consciously and deliberately chosen to violate these requirements and deliberately chosen not to train state officers with respect to the constitutional implications of arresting persons based on race, skin color and/or immigration status. This lack of training and failure of supervision is the direct and moving force of the violations of the rights of the named Plaintiffs and the Class Members. If the officers directed by Abbott were trained to follow federal immigration law and policies, including constitutional restraints relating to probable cause and equal protection, they would not be making arrests based upon color/race and/or immigration status. Thus, Abbott is not entitled to qualified immunity.

       9.     Replead

Should the Court determine that there are any pleading deficiencies in the Plaintiffs' Second Amended Complaint, Plaintiffs ask to allowed to re-plead to address such deficiencies.

FOR THE REASONS STATED, Plaintiffs pray that Defendant's Motion to Dismiss be denied, the opportunity to re-plead if necessary, and for such further relief as justice may require.

Respectfully submitted,

s/Susan E. Hutchison
Texas Bar No. 10354100
sehservice@FightsforRight.com

S. Rafe Foreman
Texas Bar No. 07255200
srfservice@fightsforright.com

HUTCHISON & FOREMAN, PLLC
1312 Texas Ave. Suite #101
Lubbock, Texas 79401
Phone:  806-491-4911
Fax:  806-491-9911

Angelica Cogliano, SBN 24101635
Addy Miro, SBN 24055984
E.G. Morris, SBN 14477700
505 West 12th Street, Suite 206
Austin, TX 78701

ATTORNEYS FOR PLAINTIFF

CERTIFICATE OF SERVICE

On this day of August 31, 2022, Plaintiffs served their Response to Motion to Dismiss on the following counsel via ECF:

Benjamin L. Dower
Deputy Chief, General Litigation Division
benjamin.dower@oag.texas.gov
Attorney-in-Charge

19

Kimberly Gdula
kimberly.gdula@oag.texas.gov
William D. Wassdorf
will.wassdorf@oag.texas.gov
Allison M. Collins
Allison.collins@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ATTORNEYS FOR DEFENDANT
GOVERNOR GREG ABBOTT

Jason T. Bramow
jason.bramow@oag.texas.gov
Attorney-in-Charge
Jessica L. Weltge
jessica.weltge@oag.texas.gov
Marlayna M. Ellis
marlayna.ellis@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ATTORNEYS FOR DEFENDANTS
EXECUTIVE DIRECTOR BRYAN COLLIER
EXECUTIVE DIRECTOR STEVEN MCCRAW

Scott M. Tschirhart
smtschirhart@rampagelaw.com
Denton Navarro Rocha Bernal & Zech, P.C.
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
ATTORNEYS FOR DEFENDANTS
SHERIFF BRAD COE AND KINNEY COUNTY

Matt Crapo
Matt.crapo@protonmail.com
25 Massachusetts Ave. NW, Ste. 335
Washington, DC  20001
ATTORNEYS FOR IMMIGRATION REFORM LAW INSTITUTE

s/Susan E. Hutchison
Susan E. Hutchison

20