IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, <br>    *Plaintiffs, Individually and on* <br>    *Behalf of the Class of Those* <br>    *Similarly Situated*, <br><br> v. <br><br> STEVEN MCCRAW, in his individual <br> capacity, *et al.*, <br>    *Defendants.* | § § § § § § § § § § § § | Case No. 1:22-cv-00397-RP |

## GOVERNOR GREG ABBOTT'S REPLY IN SUPPORT OF MOTION TO DISMISS

Persons present in Texas must abide by state law regardless of whether they legally enter the State. It is undisputed that each Plaintiff was arrested for trespassing on private property in violation of state law. Plaintiffs assert that their criminal conduct should be disregarded because the probable cause arrest affidavits detailing their trespassing also referenced their race or perceived immigration status. But an individual's immigration status is not a free pass to trespass. Plaintiffs' claims should be dismissed for failure to state a claim for which relief can be granted and because this Court lacks jurisdiction over the claims against the Governor. The Governor submits this reply brief in further support of his Motion to Dismiss.

### I. PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST THE GOVERNOR, AND THEIR INJUNCTIVE RELIEF CLAIMS ARE OTHERWISE BARRED BY SOVEREIGN IMMUNITY.

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 220 (2021). Standing is not determined "in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotation omitted). To the contrary, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Id.* (citation omitted). "[F]or each named defendant, at least one named plaintiff must have standing to sue." *Daves v. Dallas Cnty,* 22 F.4th 522, 531 (5th Cir. 2022).

Plaintiffs admit that no Plaintiff is currently incarcerated. Dkt. 26, p. 1. Therefore, no Plaintiff has standing to seek injunctive or declaratory relief because none of them are suffering a concrete or imminent injury that can be redressed through such relief. Similarly, none of the named Plaintiffs are the subject of an ongoing violation of federal law that would benefit from prospective relief.[1] Plaintiffs' response brief provides only perfunctory arguments for standing to sue Defendants generally and does not address their standing to sue the Governor specifically. "[A]rguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) (citation omitted). Moreover, the Fifth Circuit has recognized that Article III standing analysis and the *Ex parte Young* analysis "significantly overlap." *Air Evac EMS, Inc. v. TDI*, 851 F.3d 507, 520 (5th Cir. 2017). Therefore, the Governor addresses these two independent bases for dismissal jointly.

**A.  Plaintiffs' alleged injuries are not fairly traceable to the Governor.**

Although Plaintiffs are correct to note that they need not show that their injury was proximately caused by the Governor, they do need to show that it is "fairly traceable" to the Governor. *Bennett v. Spear*, 520 U.S. 154, 168–69 (1997). They have not done so.

The Fifth Circuit's recent holding in *Daves* is instructive. There, the court evaluated the factual allegations against the judges and determined that the plaintiffs' claimed injury—bail being set pursuant to a schedule rather than based on an individualized assessment—was not traceable to the judges. 22 F.4th at 542-544. The court held that, while the judges created a proposed bail schedule, the plaintiffs' injury was not fairly traceable to the judges because it was the result of the decision of others, namely the magistrates that followed the bail schedules instead of exercising discretion in

---

[1] Plaintiffs cannot argue that their claims are capable of repetition yet evading review because there is no reasonable expectation that the same complaining party will be subject to the same action again. Federal courts have "consistently refused to conclude that the case-or-controversy requirement is satisfied by the possibility that a party will be prosecuted for violating valid criminal laws." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537–38 (2018) (cleaned up).

setting bail amounts. *Id.* The Fifth Circuit noted:

> Standing "is ordinarily 'substantially more difficult' to establish" when "a causal relation between injury and challenged action depends upon the decision of an independent third party." *California v. Texas,* —— U.S. ——, 141 S. Ct. 2104, 2117, 210 L.Ed.2d 230 (2021) (quoting *Lujan,* 504 U.S. at 562, 112 S.Ct. 2130). The Supreme Court is "reluctan[t] to endorse standing theories that rest on speculation about the decisions of independent actors." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013). In such circumstances, the plaintiff must show "that third parties will likely react in predictable ways." *California*, 141 S. Ct. at 2117 (quoting *Department of Com. v. New York*, —— U.S. ——, 139 S. Ct. 2551, 2566, 204 L.Ed.2d 978 (2019)).

*Id.* at 543.

Here, Plaintiffs' theory of causation against the Governor is too speculative to support standing. The Governor's authority to issue executive orders or disaster declarations is not coupled with responsibility for enforcing them. *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020). Although Plaintiffs point to the Governor's initiation of Operation Lone Star, their alleged injury stems from the enforcing—not issuing—party for purposes of standing's "fairly traceable" and "redressability" requirements. *See id.* But rather than demonstrating to the court that the Governor is charged with enforcing any aspect of OLS, Plaintiffs' response focuses on the Governor's public statements and press releases about the initiative. This court should reject that argument, as the Fifth Circuit has held that press releases and public statements do not have the force of law and do not establish an official's authority to enforce a law. *City of Austin v. Paxton*, 943 F.3d 993, 1001 (5th Cir. 2019*); In re Abbott*, 956 F.3d 696, 708 (5th Cir. 2020), cert. granted, judgment vacated sub nom. *Planned Parenthood Ctr. for Choice v. Abbott*, 141 S. Ct. 1261 (2021).

Additionally, the decisions of numerous independent actors stand between Plaintiffs' purported injuries and the Governor's disaster declaration, legislative acts to fund OLS,[2] and his press

---

[2] While not addressed in the Governor's motion due to space restrictions, to the extent Plaintiffs seek standing based on the Governor signing legislation that funded Operation Lone Star, the Governor would be entitled to legislative immunity. Legislative immunity not only protects legislators, it also protects officials fulfilling legislative functions. *Hughes v. Tarrant Cnty.*, 948 F.2d 918, 920 (5th Cir. 1991).

releases. Indeed, the proclamation establishing OLS clearly indicates that DPS is responsible for using available resources to enforce state law, including criminal trespass, to prevent criminal activity along the border and assist Texas counties in addressing such criminal activity. Further, the independent actors in many instances include private citizens who report trespassers on their property, law enforcement officials who make arrests, local prosecutors, local judges, and detention staff. These individuals exercised discretion regarding Plaintiffs' arrests and detentions, and Plaintiffs have not alleged any facts demonstrating that these "third parties will likely react in predictable ways" to indicate a causal connection between the Governor and Plaintiffs' alleged injuries. *California v. Texas*, 141 S. Ct. 2104, 2117 (2021).

**B.     Ordering Plaintiffs' requested injunctive relief against the Governor will not redress Plaintiffs' alleged injuries.**

The redressability requirement is satisfied if it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bennett*, 520 U.S. at 167. Plaintiffs seek declarations and injunctions ordering the release of detainees after certain events or declaring that OLS arrests based on race, immigration status, or national origin violate federal law. Dkt. 10 pp 85-87. The Governor is not involved in arrests or detentions, and Plaintiffs have not demonstrated that their injuries would be redressed by issuing the requested declarations or injunctions against the Governor. As a result, Plaintiffs cannot satisfy the redressability requirement of standing.

**II.     THE CURRENT CLAIMS FOR INJUNCTIVE RELIEF ARE MOOT, AND ABSTENTION APPLIES TO ANY FUTURE CLASS REPRESENTATIVE'S CLAIMS.**

As a general rule, "a purported class action becomes moot when the personal claims of all named plaintiffs" have been satisfied prior to certification of a class, since, under such circumstances, there is no longer an Article III "case or controversy" for the court to resolve. *Murray v. Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (internal citations omitted).

Plaintiffs argue that their claims fall within an exception to the general mootness rule based

on Supreme Court cases that have addressed mootness in the context of class actions. But those cases addressed the limited circumstances of mootness after class certification is granted, *see Gerstein v. Pugh*, 420 U.S. 103, 110–111, n. 11 (1975), and mootness when class certification is denied and the plaintiff challenges that denial, *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980). The Supreme Court reiterated the limited scope of its prior holdings in *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013), explaining that they pertain only to cases where the named plaintiff's claim became moot after a class certification decision had been made.[3] Plaintiffs have not briefed any other exception to the general mootness rule, and therefore have not demonstrated that there is a live controversy or case for declaratory relief currently before the court.

Although Plaintiffs request that the Court defer a mootness determination based on the possibility that new Plaintiffs may be added with live claims at the time of class certification, any future allegations would not overcome *Younger* abstention. *Younger* requires that federal courts decline to exercise jurisdiction over lawsuits when there is "(1) 'an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) … provides an adequate opportunity to raise federal challenges.'" *Google, Inc. v. Hood*, 822 F.3d 212, 222–23 (5th Cir. 2016) (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)). If the three prerequisites are satisfied, then a federal court can assert jurisdiction only if "certain narrowly delimited exceptions to the abstention doctrine apply." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004).[4] Plaintiffs' response does not dispute the first and

---

[3] Plaintiffs mispresent the holding in *U.S. v. Sanchez-Gomez*, 138 S. Ct. 1532 (2018). The Supreme Court specifically rejected the lower court's conclusion that "class-like claims seeking class-like relief were sufficient" to save the case from mootness, and dismissed the case as moot. *Id.* at 1538, 1542. The holding in *Sanchez-Gomez* was mischaracterized in *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 731–32 (S.D. Tex. 2019), which renders that case—relied upon by Plaintiffs in their response—unpersuasive.

[4] The *Younger* exceptions are as follows: (1) the state court proceeding was brought in bad faith or with the purpose of harassing the federal plaintiff, (2) the state statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence, and paragraph, and in whatever manner and against whomever an effort might be made to apply it," or (3) application of the doctrine was waived. *Tex. Ass'n of Bus. v. Earle*, 388 F.3d at 519.

third prongs of the *Younger* abstention doctrine—nor do they argue that they are subject to an exception. *See* Dkt. 26 at 5 (conceding that some of the named Plaintiffs have ongoing state judicial proceedings and not addressing the third prong).

Plaintiffs instead argue that Texas does not have an important interest in regulating the subject matter of the state court proceedings. *Id.* But, as discussed in the Motion to Dismiss, there can be no dispute that Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws."). The same would hold true for any future Plaintiff named as a class representative who has an ongoing state court proceeding or who is subject to pretrial detention.

Alternatively, Plaintiffs argue that *Younger* abstention does not apply because the requested declaratory and injunctive relief in this suit will not interfere with the ongoing state court criminal proceedings. Dkt. 26 at 5. Specifically, Plaintiffs argue that their requested declaratory and injunctive relief applies only to their arrest and detention, not to their ongoing criminal proceedings. *Id.*; *see also* Dkt. 10 at 86-87 (listing the requested declaratory and injunctive relief). This misstates the requested relief. *Id.* Plaintiffs ask this Court, *inter alia*, to find that their arrests violate federal law and enjoin the state to "discontinue a separate system of arrest, prosecution and detention for immigrants versus other arrestees." *Id.* This requested relief would necessarily have the effect of enjoining or otherwise interfering with the ongoing state criminal prosecutions, and *Younger* abstention should therefore be applied.

### III. PLAINTIFFS' DAMAGES CLAIMS AGAINST THE GOVERNOR, IN HIS INDIVIDUAL CAPACITY, ARE BARRED BY QUALIFIED IMMUNITY.

Plaintiffs fail to meet their burden of overcoming the Governor's entitlement to qualified immunity. In their response, Plaintiffs make the conclusory assertion that "Abbott is not entitled to qualified immunity." Dkt. 26 at 18. However, this is not sufficient to establish that the Governor is

on notice that his actions, based on the specific facts of this case, violated Plaintiffs' clearly established constitutional rights as set forth in existing precedent.

Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because "[t]he law generally disfavors expansive civil liability for actions taken while state officials are on duty," *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013), qualified immunity "'gives ample room for mistaken judgment,'" if any, *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery before the case can proceed any further. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010); *Carswell v. Camp*, 37 F.4th 1062, 1066 (5th Cir. 2022). Here, Plaintiffs have not met that burden and the court should dismiss the individual-capacity claims against the Governor.

"[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016) (per curiam)). A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that his conduct is unlawful and violates the right in question. *Wernecke v. Garcia,* 591 F.3d 386, 392–93 (5th Cir. 2009). It is only when the alleged unlawfulness is apparent "in the light of pre-existing law," such that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right," that qualified immunity may be rejected. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff must show that "*every* reasonable official would have understood"

that the relevant action violated "clearly established constitutional law." *McCreary v. Richardson*, 738 F.3d 651, 656 (5th Cir. 2013) (per curiam) (emphasis added). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Malley*, 475 U.S. at 341). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Plaintiffs have not pointed this court to a single case showing that the Governor should be denied qualified immunity. They have also alleged no facts that, if true, would overcome the Governor's entitlement to qualified immunity. Even assuming that the Governor has some enforcement connection to OLS sufficient to confer standing—which Plaintiffs have not adequately alleged—any reasonable official could believe that enforcing criminal trespass laws in high-crime areas was reasonable under the circumstances. Plaintiffs fail to point to a single case holding that immigration status provides immunity from prosecution for criminal trespass, let alone a case permitting relief for such an arrest and detention to be sought from a governor in his individual capacity. *See* Dkt. 26 at 18. Because Plaintiffs have failed in their burden, the Governor is entitled to qualified immunity and Plaintiffs' individual-capacity claims against the Governor should be dismissed.

Plaintiffs also reiterate their argument that the Governor failed to train or failed to supervise state officers. But as stated in the Governor's Motion to Dismiss, "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Plaintiffs have cited no law that would subject the Governor to supervisory liability. They have cited no facts which would support the argument that the Governor is the employer of any state officer conducting these arrests or that the Governor had some duty to personally train or supervise those officers. See Dkt. 26 at 18. Therefore, Plaintiffs' claims against the

Governor for failure to train or supervise should be dismissed.

## IV. PLAINTIFFS' CLAIMS OTHERWISE FAIL AS A MATTER OF LAW.

### A. Plaintiffs' Fourth Amendment and due process claims fail because their reliance on *Arizona* is misplaced.

Plaintiffs' heavy reliance on *Arizona v. United States*, 567 U.S. 387, 407 (2012), is misplaced because they are not being detained or arrested based on their possible removability or due to suspected violations of federal immigration law. The basis for the trespassing arrests is a Texas law that has existed in some iteration for decades. *See, e.g.*, Tex. Pen. Code § 30.05; Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974. In *Arizona*, the Supreme Court held that federal law preempts a state statute authorizing the arrest of individuals based only on probable cause that the person had committed a public offense rendering the individual removable from the United States. *Id.* at 407. Here, Plaintiffs have not established that Texas's criminal trespass statute is preempted by federal law. There is also no dispute that each Plaintiff was arrested for criminally trespassing on private property in violation of state law, not due to any potential removability resulting from their criminal conduct or for violating federal immigration law. Additionally, Plaintiffs attempt to support their Fourth Amendment claims by citing arrest affidavits of individuals who are not even named Plaintiffs. Plaintiffs cite the arrest affidavits of "Plaintiff" Becerra, Santana, and Pineda, but no such named Plaintiff exists. While Plaintiffs emphasize references to their perceived immigration status in the arrest affidavits, bolding some words from the affidavits does not erase the other portions recounting law enforcement's reasonable belief that each Plaintiff had trespassed on private property in violation of state law. For example, Plaintiff Colorado was charged because the "landowners wished to pursue trespassing charges" against him—an individual perceived to be an illegal alien. Plaintiffs' Response Brief, p. 11.

Similarly, Plaintiffs' argument that *Arizona* substantiates their due process claim is unavailing. Plaintiffs were arrested because of what they did—criminally trespass—not because of who they were.

Plaintiffs were not arrested as part of a removal process, and enforcing a state law against immigrants who violate it does not equate to an immigration removal action. Plaintiffs have not demonstrated that Texas's criminal trespass statute is arbitrary and capricious. The law serves the legitimate government interest of protecting private-property owners from property damage, other criminal activity, and individuals being present on their property without permission. The statute's enforcement against Plaintiffs served these legitimate objectives.

**B.     Plaintiffs fail to address threshold deficiencies with their equal protection claim.**

Plaintiffs' response makes no attempt to identify similarly-situated comparators. "It is well settled that the plaintiff must specifically allege the actual existence of a similarly situated group of persons." *Samaad v. Dallas*, 940 F.2d 925, 941 n.31 (5th Cir. 1991). Plaintiffs' reliance on a dissenting Supreme Court opinion discussing the separate treatment of Chinese immigrants from other San Francisco laundry owners in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), is unpersuasive given that Plaintiffs have not identified a similarly situated group of persons who received different or more favorable treatment based on race. Plaintiffs do not assert that white or non-Latino individuals are trespassing on private property in a high-crime area along the border and not being arrested. Nor do Plaintiffs confront or distinguish prior decisions recognizing that concentrated efforts, like Operation Lone Star, to allocate resources to the most egregious violations, namely criminal trespass and other criminal activity in Texas counties along the border, do not amount to an equal protection violation. *Moreno v. City of Brownsville,* 2010 WL 11646748, at * 8–9 (S.D. Tex. Sept. 16, 2010) (citing *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995)). Moreover, Plaintiffs' response does not meaningfully distinguish this case from *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 801 (S.D. Tex. 2013). Plaintiffs' allegations confirm that each Plaintiff was trespassing on private property and was arrested for that criminal conduct. This Court should dismiss the Plaintiffs' equal protection challenge for failure to state a claim.

# PRAYER

For all these reasons, the Governor respectfully asks the Court to dismiss all claims against him in both his official and individual capacity

Respectfully submitted,

| | |
|---|---|
| **KEN PAXTON**<br>Attorney General of Texas<br><br>**BRENT WEBSTER**<br>First Assistant Attorney General<br><br>**GRANT DORFMAN**<br>Deputy First Assistant Attorney General<br><br>**SHAWN COWLES**<br>Deputy Attorney General for Civil Litigation<br><br>**CHRISTOPHER D. HILTON**<br>Chief, General Litigation Division | */s/ Allison M. Collins*<br>**ALLISON M. COLLINS**<br>Texas Bar No. 24127467<br>Allison.collins@oag.texas.gov<br>Assistant Attorney General<br>Attorney-in-Charge<br><br>**KIMBERLY GDULA**<br>Deputy Chief, General Litigation Division<br>Texas Bar No. 24052209<br>kimberly.gdula@oag.texas.gov<br><br>**William D. Wassdorf**<br>Texas Bar No. 24103022<br>Assistant Attorney General<br>will.wassdorf@oag.texas.gov<br><br>**Johnathan Stone**<br>Texas Bar No. 24071779<br>Assistant Attorney General<br>johnathan.stone@oag.texas.gov<br><br>Office of the Attorney General<br>General Litigation Division<br>P.O. Box 12548, Capitol Station<br>Austin, Texas 78711-2548<br>(512) 463-2120 / Fax (512) 320-0667<br><br>**ATTORNEYS FOR DEFENDANT**<br>**GOVERNOR GREG ABBOTT** |

## CERTIFICATE OF SERVICE

I hereby certify that on September 16, 2022, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

*/s/ Allison M. Collins*
**Allison M. Collins**