IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, *Plaintiffs, Individually and on Behalf of the Class of Those Similarly Situated*, | § § § § § | |
| v. | § § | Case No. 1:22-cv-00397-RP |
| STEVEN MCCRAW in his individual capacity, *et al.*, *Defendants.* | § § § § § | |

## DEFENDANT STEVEN MCCRAW'S REPLY IN SUPPORT OF MOTION TO DISMISS

Plaintiffs' claims should be dismissed for failure to state a claim for which relief can be granted and because this Court lacks jurisdiction over the claims against the Director McCraw. Director McCraw submits this reply brief in further support of his Motion to Dismiss.

**I.  PLAINTIFFS LACK STANDING TO PURSUE THEIR CLAIMS AGAINST DIRECTOR MCCRAW AND THEIR INJUNCTIVE RELIEF CLAIMS ARE OTHERWISE BARRED BY SOVEREIGN IMMUNITY.**

"As the party invoking federal jurisdiction, the plaintiffs bear the burden of demonstrating that they have standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 220 (2021). Standing is not determined "in gross." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (quotation omitted). To the contrary, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." Id. (citation omitted). "[F]or each named defendant, at least one named plaintiff must have standing to sue." *Daves v. Dallas Cnty*, 22 F.4th 522, 531 (5th Cir. 2022).

Plaintiffs admit that no Plaintiff is currently incarcerated. ECF No. 28 at 1. Therefore, no Plaintiff has standing to seek injunctive or declaratory relief because none of them are suffering a concrete or imminent injury that can be redressed through such relief. Similarly, none of the named Plaintiffs are the subject of an ongoing violation of federal law that would benefit from prospective relief. In fact, Plaintiffs make no real argument against dismissal of their claims for lack of standing or

1

mootness, but rather seek only for the Court to "defer any ruling . . . until such time as Plaintiffs seek to add incarcerated individuals to the complaint." ECF No. 28 at 6–7. "[A]rguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) (citation omitted).

Plaintiffs correctly note that in determining whether *Ex Parte Young* applies, "a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002). But then go on to ignore the Supreme Court's mandate. As discussed in the Motion to Dismiss, the Plaintiffs requested relief seeks either to remedy past harm or relies on events that are too speculative to establish standing. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1541 (2018) ("We have instead 'assume[d] that [litigants] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct.'").

## II. PLAINTIFFS' CURRENT CLAIMS FOR INJUNCTIVE RELIEF ARE MOOT, AND ABSTENTION APPLIES TO ANY FUTURE CLASS REPRESENTATIVES.

As a general rule, "a purported class action becomes moot when the personal claims of all named plaintiffs" have been satisfied prior to certification of a class, since, under such circumstances, there is no longer an Article III "case or controversy" for the court to resolve. *Murray v. Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010) (internal citations omitted).

Plaintiffs argue that their claims fall within an exception to the general mootness rule based on Supreme Court cases that have addressed mootness in the context of class actions. But those cases addressed the limited circumstances of mootness after class certification is granted, s*ee Gerstein v. Pugh*, 420 U.S. 103, 110–111, n. 11 (1975), and mootness when class certification is denied and the plaintiff challenges that denial, *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980). The Supreme Court reiterated the limited scope of its prior holdings in *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71

2

(2013), explaining that they pertain only to cases where the named plaintiff's claim became moot after a class certification decision had been made. Plaintiffs have not briefed any other exception to the general mootness rule, and therefore have not demonstrated that there is a live controversy or case for declaratory relief currently before the court.

Although Plaintiffs request that the Court defer a mootness determination based on the possibility that new Plaintiffs may be added with live claims at the time of class certification, any future allegations would not overcome *Younger* abstention. *Younger* requires that federal courts decline to exercise jurisdiction over lawsuits when there is "(1) 'an ongoing state judicial proceeding, which (2) implicates important state interests, and (3) ... provides an adequate opportunity to raise federal challenges.'" *Google, Inc. v. Hood*, 822 F.3d 212, 222–23 (5th Cir. 2016) (citing *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 81 (2013)). If the three prerequisites are satisfied, then a federal court can assert jurisdiction only if "certain narrowly delimited exceptions to the abstention doctrine apply." *Tex. Ass'n of Bus. v. Earle*, 388 F.3d 515, 519 (5th Cir. 2004).

Plaintiffs' response does not dispute the first and third prongs of the *Younger* abstention doctrine, nor assert an exception. *See* ECF No. 28 at 9 (conceding that some of the named Plaintiffs have ongoing state judicial proceedings and not addressing the third prong). Plaintiffs instead argue that Texas does not have an important interest in regulating the subject matter of the state court proceedings. *Id.* at 9–10. But, as discussed in the Motion to Dismiss, there can be no dispute that Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws."). The same would hold true for any future Plaintiff named as a class representative who has an ongoing state court proceeding or who is subject to pretrial detention.

Alternatively, Plaintiffs argue that *Younger* abstention does not apply because the requested declaratory and injunctive relief in this suit will not interfere with the ongoing state court criminal proceedings. ECF No. 28 at 9. Specifically, Plaintiffs argue that their requested declaratory and injunctive relief applies only to their arrest and detention, not to their ongoing criminal proceedings. *Id.*; see also ECF No. 10 at 86–87 (listing the requested declaratory and injunctive relief). This misstates the requested relief. *Id.* Plaintiffs ask this Court, inter alia, to find that their arrests violate federal law and enjoin the state to "discontinue a separate system of arrest, prosecution and detention for immigrants versus other arrestees." *Id.* This requested relief would necessarily have the effect of enjoining or otherwise interfering with the ongoing state criminal prosecutions, and *Younger* abstention should therefore be applied.

### III. PLAINTIFFS' DAMAGES CLAIMS AGAINST DIRECTOR MCCRAW, IN HIS INDIVIDUAL CAPACITY, ARE BARRED BY QUALIFIED IMMUNITY.

Plaintiffs fail to meet their burden of overcoming Director McCraw's entitlement to qualified immunity. In their response, Plaintiffs make the conclusory assertion that "Defendant McCraw is not entitled to qualified immunity." ECF No. 28 at 21. However, this is not sufficient to establish that Director McCraw is on notice that his actions, based on the specific facts of this case, violated Plaintiffs' clearly established constitutional rights as set forth in existing precedent.

Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Because "[t]he law generally disfavors expansive civil liability for actions taken while state officials are on duty," qualified immunity "'gives ample room for mistaken judgment,'" if any. *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013); *DePree v. Saunders*, 588 F.3d 282, 287 (5th Cir. 2009) (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986)). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery before the

case can proceed any further. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010); *Carswell v. Camp*, 37 F.4th 1062, 1066 (5th Cir. 2022). Here, Plaintiffs have not met that burden and the court should dismiss the individual-capacity claims against Director McCraw.

"[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotations omitted). "It is the plaintiff's burden to find a case in his favor that does not define the law at a 'high level of generality.'" *Vann v. City of Southaven*, 884 F.3d 307, 310 (5th Cir. 2018) (per curiam) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016) (per curiam)). A right is clearly established if the law is clear in a particularized sense, such that a reasonable official would be put on notice that his conduct is unlawful and violates the right in question. *Wernecke v. Garcia*, 591 F.3d 386, 392–93 (5th Cir. 2009). It is only when the alleged unlawfulness is apparent "in the light of pre-existing law," such that the "contours of the right" are "sufficiently clear that a reasonable official would understand that what he is doing violates that right," that qualified immunity may be rejected. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). A plaintiff must show that "*every* reasonable official would have understood" that the relevant action violated "clearly established constitutional law." *McCreary v. Richardson*, 738 F.3d 651, 656 (5th Cir. 2013) (per curiam) (emphasis added). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (quoting *Malley*, 475 U.S. at 341). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable officer could have believed his actions were proper." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010).

Plaintiffs have not pointed this court to a single case showing that Director McCraw should be denied qualified immunity. They have also alleged no facts that, if true, would overcome Director McCraw's entitlement to qualified immunity. Plaintiffs fail to point to a single case holding that immigration status provides immunity from arrest for criminal trespass or permitting relief against the

5

head of a law enforcement agency in his individual capacity for the arrest of of individuals who violated a state law. Rather, Plaintiffs rely on the lack of an agreement under 8 U.S.C. § 1357, but Plaintiffs fail to show that this statute is applicable; nor can they given that Plaintiffs fail to challenge the fact that they were arrested for violating Texas's criminal trespass law. Because Plaintiffs have failed in their burden, Director McCraw is entitled to qualified immunity and Plaintiffs' individual-capacity claims against Director McCraw should be dismissed.

## IV. PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW.

### A. Plaintiffs Fourth Amendment claim and due process claims fail because their reliance on Arizona is misplaced.

Plaintiffs' heavy reliance on *Arizona v. United States*, 567 U.S. 387, 407 (2012), is misplaced because they are not being detained or arrested based on their possible removability or due to suspected violations of federal immigration law. The basis for the trespassing arrests is a Texas law that has existed in some iteration for decades. See, e.g., Tex. Pen. Code § 30.05; Acts 1973, 63rd Leg., p. 883, ch. 399, § 1, eff. Jan. 1, 1974. In *Arizona*, the Supreme Court held that federal law preempts a state statute authorizing the arrest of individuals based only on probable cause that the person had committed a public offense rendering the individual removable from the United States. *Id.* at 407. Here, Plaintiffs have not established that Texas's criminal trespass statute is preempted by federal law. There is also no dispute that each Plaintiff was arrested for criminally trespassing on private property in violation of state law, not due to any potential removability resulting from their criminal conduct or for violating federal immigration law. Additionally, Plaintiffs attempt to support their Fourth Amendment claims by citing arrest affidavits of individuals who are not even named Plaintiffs. Plaintiffs cite the arrest affidavits of "Plaintiff" Becerra, Santana, and Pineda, but no such named Plaintiff exists. While Plaintiffs emphasize references to their perceived immigration status in the arrest affidavits, bolding some words from the affidavits does not erase the other portions recounting law enforcement's reasonable belief that each Plaintiff had trespassed on private property in violation of

state law. For example, Plaintiff Colorado was charged because the "landowners wished to pursue trespassing charges" against him—an individual perceived to be an illegal alien. ECF No. 28 at 12.

Further, Plaintiffs argue that "OLS violates the Plaintiffs' substantive due process rights under the Fourteenth Amendment because the law is arbitrary and capricious . . . ." But OLS is not a "law" and Plaintiffs do not plead or point to any statutory provision indicating otherwise. Similarly, Plaintiffs' argument that *Arizona* substantiates their due process claim is unavailing. Plaintiffs were arrested because of what they did—criminally trespass—not because of who they were. There is no dispute that each Plaintiff was arrested for violation of state law, namely criminally trespassing on private property, not due to any potential removability resulting from their criminal conduct or for violating federal immigration law. Plaintiffs have not demonstrated that Texas's criminal trespass statute is arbitrary and capricious. The law serves the legitimate government interest of protecting private-property owners from property damage, other criminal activity, and individuals being present on their property without permission. The statute's enforcement against Plaintiffs served these legitimate objectives.

### B. Plaintiffs fail to address the deficiencies with their equal protection claim.

Plaintiffs' response makes no attempt to identify similarly-situated comparators. "It is well settled that the plaintiff must specifically allege the actual existence of a similarly situated group of persons." *Samaad v. Dallas*, 940 F.2d 925, 941 n.31 (5th Cir. 1991). Plaintiffs' reliance on a dissenting Supreme Court opinion discussing the separate treatment of Chinese immigrants from other San Francisco laundry owners in *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), is unpersuasive given that Plaintiffs have not identified a similarly situated group of persons who received different or more favorable treatment based on race. Plaintiffs do not assert that white or non-Latino individuals are trespassing on private property in a high-crime area along the border and not being arrested. Rather, Plaintiffs' equal protection claims rely on mere "suggest[ion]" and "impl[ication]" that perceived

ethnicity or immigration status "was relevant to the decision to initiate law enforcement action to arrest." ECF No. 28 at 18. Here again, Plaintiffs' fail to dispute that they were in fact criminally trespassing, the offense for which they were arrested.

Nor do Plaintiffs confront or distinguish prior decisions recognizing that concentrated efforts, like Operation Lone Star, to allocate resources to the most egregious violations, namely criminal trespass and other criminal activity in Texas counties along the border, do not amount to an equal protection violation. *Moreno v. City of Brownsville*, 2010 WL 11646748, at * 8–9 (S.D. Tex. Sept. 16, 2010) (citing *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995)). Moreover, Plaintiffs' response does not meaningfully distinguish this case from *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 801 (S.D. Tex. 2013). Plaintiffs' allegations confirm that each Plaintiff was trespassing on private property and was arrested for that criminal conduct. This Court should dismiss the Plaintiffs' equal protection challenge for failure to state a claim.

## V. PLAINTIFFS ARE NOT ENTITLED TO AN OPPORTUNITY TO REPLEAD.

"At some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller v. Physicians Res. Group Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Jacquez v. Procunier,* 801 F.2d 789, 792–93 (5th Cir.1986)). Deciding when that opportunity has come and gone is left to the discretion of the district court. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 215 n. 34 (5th Cir.2009).

Here, Plaintiffs have had more than a fair opportunity to plead their best case and have given no indication to the contrary. *See* Alsenz v. Aurora Bank, FSB, 641 Fed. Appx. 359, 363 (5th Cir. 2016); *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009). Plaintiffs have been granted multiple opportunities to amend their complaint and have continued to defend the adequacy of their second amended complaint, even after being put on notice of its deficiencies by the Defendants' motions to dismiss. Further, Plaintiffs do not even attempt to explain what facts they would add or how they

8

would overcome the deficiencies identified by the Defendants if given a third opportunity to amend their complaint. Accordingly, the Court's dismissal of Plaintiffs' claims must be with prejudice. *Alsenz*, 641 Fed. Appx. at 363 (quoting *Brewster*, 587 F.3d at 768).

## VI. PRAYER

For all these reasons, Director McCraw respectfully asks the Court to dismiss the claims against him in both his official and individual capacity.

Respectfully submitted,

| | |
|---|---|
| **KEN PAXTON**<br>Attorney General of Texas | /s/ *Jason T. Bramow*<br>**JASON T. BRAMOW**<br>Texas State Bar No. 24101545 |
| **BRENT WEBSTER**<br>First Assistant Attorney General | jason.bramow@oag.texas.gov<br>Attorney-in-Charge |
| **GRANT DORFMAN**<br>Deputy First Assistant Attorney General | Jessica L. Weltge<br>Texas Bar No. 24118585<br>jessica.weltge@oag.texas.gov |
| **SHAWN COWLES**<br>Deputy Attorney General for Civil Litigation | Marlayna M. Ellis<br>Texas Bar No. 24123448 |
| **SHANNA MOLINARE**<br>Chief, Law Enforcement Defense Division | marlayna.ellis@oag.texas.gov<br>Assistant Attorneys General |

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994
**ATTORNEYS FOR DEFENDANTS**
**EXECUTIVE DIRECTOR BRYAN COLLIER**
**DIRECTOR STEVEN MCCRAW**

## Certificate of Service

I hereby certify that on September 16, 2022, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Jason T. Bramow*
**JASON T. BRAMOW**
Assistant Attorney General

9