# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| ERASTO ARROYO BARCENAS, et al.,<br><br>Plaintiffs, Individually and on Behalf of the Class of Those Similarly Situated,<br><br>v.<br><br>STEVEN MCCRAW in his individual capacity, et al.,<br><br>Defendants. | Case No. 1:22-cv-00397-RP |

## BRIEF OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS THE SECOND AMENDED COMPLAINT

MATT A. CRAPO*
CHRISTOPHER J. HAJEC
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, DC 20001
matt.crapo@pm.me
litigation@irli.org

* Pending *pro hac vice* admission

Counsel for *Amicus Curiae*
Immigration Reform Law Institute

## INTRODUCTION

In their second amended complaint, Plaintiffs attempt to raise selective enforcement claims against Defendants under both the Fourth and Fourteenth Amendment and purport to raise these common claims on behalf of a class of those similarly situated. Plaintiffs were arrested and detained for violating Texas Penal Code § 30.05 as part of Texas's Operation Lone Star ("OLS"). According to Plaintiffs, they were arrested "solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" in violation of the Fourth Amendment. But the facts alleged in the complaint reflect that Plaintiffs were arrested on probable cause that they violated Texas's criminal trespass statute and, even if accepted as true, cannot show that they were arrested "solely" on account of their perceived immigration status. Because the arrest affidavits establish probable cause for Plaintiffs' arrests regardless of immigration status, they have failed to state a plausible claim for relief under the Fourth Amendment.

Plaintiffs also allege that they were subject to selective enforcement under OLS on the basis of their race and immigration status in violation of the Fourteenth Amendment's Equal Protection Clause. But Plaintiffs fail to allege that a similarly situated group of persons of different race or immigration status than themselves were treated differently under the law, as they must to make an equal protection claim. Indeed, Plaintiffs fail to allege that anyone of any race or immigration status was treated differently under OLS. Because Plaintiffs fail to state a claim for which relief can be granted, the Court should dismiss their second amended complaint.

1

**ARGUMENT**

I.  **Plaintiffs' Fail to State a Plausible Fourth Amendment Claim**

Plaintiffs must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In their second amended complaint, Plaintiffs assert that "the OLS process of unilateral detention 'based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States' is a violation of the Fourth Amendment." Dkt. 10 ¶¶ 59, 131. But Plaintiffs assertion that detention under OLS is based "solely" on Defendants' suspicion or knowledge that Plaintiffs are unlawfully present in the United States is not plausible in light of the facts alleged, or is based on a misreading of *Arizona v. United States*.

Under the Immigration and Nationality Act ("INA"), aliens who have committed (or have been convicted of) certain criminal offenses are removable as criminal aliens. *See generally* 8 U.S.C. §§ 1182(a)(2)(A)-(*I*) (listing criminal offenses that render aliens inadmissible); 1227(a)(2)(A)-(F) (listing criminal offenses that render aliens deportable). In *Arizona v. United States*, the state of Arizona enacted a statute authorizing state officers to arrest such criminal aliens "'if the officer has probable cause to believe . . . [the person] has committed any public offense that makes [him] removable from the United States.'" 567 U.S. 387, 407 (2012) (quoting Ariz. Rev. Stat. Ann. § 13-

3883(A)(5)). In other words, the Arizona statute authorized state officers to arrest and detain criminal aliens based solely on the fact that a prior criminal offense rendered the alien removable under the INA.

The Supreme Court held that the Arizona statute is preempted by federal law, reasoning that the statute provided state officers "even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers," that "[t]his state authority could be exercised without any input from the Federal Government about whether an arrest is warranted in a particular case," and that it "would allow the State to achieve its own immigration policy." *Id.* at 408. Because the Arizona statute "violates the principle that the removal process is entrusted to the discretion of the Federal Government," the Court held that the statute was an obstacle to the full purposes and objectives of Congress and therefore preempted by federal law. *Id.* at 409-10. Further, the Court stated that because it is not a federal crime for a removable alien to remain present in the United States, "[i]f the police stop someone *based on nothing more than possible removability*, the usual predicate for an arrest is absent." *Arizona*, 567 U.S. at 407 (emphasis added).

The Fifth Circuit has recognized that "*Arizona* denied state officers the power to unilaterally make removability determinations because '[a] decision on removability requires a determination whether it is appropriate to allow a foreign national to continue living in the United States' and such decisions 'touch on foreign relations and must be made with one voice.'" *City of El Cenizo v. Texas*, 890 F.3d 164, 188 (5th Cir. 2018)

3

(quoting *Arizona*, 567 U.S. at 409). Thus, state officers cannot arrest unlawful aliens based solely on their illegal presence in the United States absent a request for cooperation by federal authorities. *See Arizona*, 567 U.S. at 410 (noting that state officers may cooperate with federal officials in the arrest and detention of illegal aliens).

Here, Plaintiffs' reliance on *Arizona* is misplaced or distinguishable. Plaintiffs rely on *Arizona* to argue that it is unlawful for officers to arrest an alien who they believe "is removable by reason of some 'public offense'" and suggest that they were targeted for arrest based solely on Defendants' belief that Plaintiffs are removable aliens. Dkt. 10 at ¶¶ 56, 59, 128, 131. But the "public offense[s]" at issue in *Arizona* are those criminal offenses that render an alien removable under the INA. *See* 8 U.S.C. §§ 1182(a)(2), 1227(a)(2). Nowhere do Plaintiffs allege that Defendants understood that the offense of criminal trespass under Texas Penal Code § 30.05 would render an alien deportable or that they would become removable once arrested for that offense. Nor do Plaintiffs plausibly allege that Defendants arrested them "solely" for being unlawfully present in the United States. Instead, as Governor Abbott observes in his motion to dismiss, the arrest affidavits presented by Plaintiffs show that they were arrested based upon the reasonable belief that they had committed criminal trespass in violation of Texas Penal Code § 30.05. *See* Dkt. 15 at 10 n.1 (citing arrest affidavits). To the extent that the Plaintiffs' race or national origin was mentioned in the arrest affidavits, it was to describe who they are, not what they did. *See* Dkt. 15 at 19 ("Plaintiffs were arrested because of what they did—criminally trespass—not who they were.").

To the extent that Plaintiffs allege that the probable cause affidavits reflect "detention and arrest based upon immigration status," Dkt. 10 ¶¶ 59, 131, their allegations do not plausibly state a claim. "[T]he constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment. Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996).

## II. Plaintiffs' Failure to Specifically Allege the Actual Existence of a Similarly Situated Group of Persons Who are Treated Differently is Fatal to Their Equal Protection Claims

The Equal Protection clause of the Fourteenth Amendment prohibits racial discrimination in the enactment or enforcement of laws. U.S. Const. amend. 14. "To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff[s] must allege and prove that [they] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (internal quotations omitted).

Plaintiffs allege that arrests under OLS "are severely racially disparate: the overwhelming majority (if not all) arrests are of Black and Brown men." Dkt. 10 ¶¶ 61, 134. But nowhere do Plaintiffs specifically allege the actual existence of a similarly situated group of persons who are being treated differently under OLS. As a prerequisite to an equal protection claim, "the plaintiff must prove that similarly situated individuals were treated differently." *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000)

(citing *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)); *see also Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) (requiring a plaintiff to allege "that two or more classifications of similarly situated persons were treated differently"); *Samaad v. Dallas*, 940 F.2d 925, 941 n.31 (5th Cir. 1991) ("It is well settled that the plaintiff must specifically allege the actual existence of a similarly situated group of persons."); *United States v. Rice*, 659 F.2d 524, 526 (5th Cir. 1981) ("To prevail in a selective prosecution challenge, a defendant must first make a *prima facie* showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not.").

Plaintiffs have not identified anyone, much less an identifiable group of individuals, regardless of race or national origin, who have been treated differently under OLS. Because Plaintiffs fail to clear the first hurdle for stating an equal protection claim, the Court cannot determine the level of scrutiny with which to review the alleged group discrimination or classification. *Cf. Gallegos-Hernandez*, 688 F.3d at 195 ("Once [the classification of similarly situated individuals] is established, the court must then determine the appropriate level of scrutiny."). Absent disparate treatment of similarly situated individuals, no suspect class has been treated unequally. As the *Samaad* Court concluded:

> The Equal Protection Clause proscribes racially-motivated differential treatment. As we said in [*United States v.*] *Cronn*, 717 F.2d [164,] 169 [(5th Cir. 1983)], "the essence of an equal protection claim is that other persons similarly situated as is the claimant unfairly enjoy benefits that he does not or escape burdens to which he is subjected." In the case at bar, there simply

6

> is no similarly situated group of whites that have escaped the burdens to which plaintiffs have been subjected. The complaint does not even allege that defendants chose between similarly situated blacks and whites in determining where to hold the grand prix race. Accordingly, it fails to state a constitutional violation.

940 F.2d at 941-942.

Plaintiffs also contend that OLS violates the Equal Protection Clause because Plaintiffs are allegedly subject to prolonged detention based on race. Dkt. 10 ¶ 142. Again, Plaintiffs fail to allege a specific group of individuals who have been treated differently under OLS, and Plaintiffs' reliance on Justice Gorsuch's dissenting opinion in *Nieves v. Bartlett* is of no avail. Dkt. 10 ¶¶ 60, 133, 142 ("Everyone accepts that a detention based on race, *even one otherwise authorized by law*, violates the Fourteenth Amendment's Equal Protection Clause.") (quoting *Nieves v. Bartlett*, 139 S. Ct. 1715, 1731 (2019) (Gorsuch, J., dissenting)) (emphasis by Plaintiffs). Justice Gorsuch stated nothing irreconcilable with the requirement to allege the existence of a similarly situated group that is treated differently. Indeed, the quoted sentence in context makes clear that Justice Gorsuch was describing a situation in which there *was* a similarly situated group treated differently based on race:

> Here's a way to test the point, too. Everyone accepts that a detention based on race, even one otherwise authorized by law, violates the Fourteenth Amendment's Equal Protection Clause. In *Yick Wo v. Hopkins*, 118 U. S. 356, 6 S. Ct. 1064, 30 L. Ed. 220 (1886), for example, San Francisco jailed many Chinese immigrants for operating laundries without permits but took no action against white persons guilty of the same infraction. Even if probable cause existed to believe the Chinese immigrants had broken a valid law—even if they had in fact violated the law—this Court held that the city's discriminatory enforcement violated the Fourteenth Amendment.

7

> *Id.*, at 373-374, 6 S. Ct. 1064, 30 L. Ed. 220; *see also Whren v. United States*, 517 U. S. 806, 813, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996). Following our lead, the courts of appeals have recognized that §1983 plaintiffs alleging racially selective arrests in violation of the Fourteenth Amendment don't have to show a lack of probable cause, even though they might have to show a lack of probable cause to establish a violation of the Fourth Amendment.

*Nieves*, 139 S. Ct. at 1731. Unlike the situation described by Justice Gorsuch, Plaintiffs fail to allege that anyone, much less an identifiable group of similarly situated individuals, is being treated differently from Plaintiffs or that OLS arrests or detentions depend on the race or national origin of the offender.

As set forth above, Plaintiffs fail to state a claim based on either the Fourth or Fourteenth Amendment. Inasmuch as the only common claims of Plaintiffs' purported class consists of these fatally-flawed claims, the Court should dismiss the Plaintiffs' second amended complaint.

//

//

//

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' motions to dismiss Plaintiffs' second amended complaint.

Respectfully submitted on August 23, 2022,

          */s/ Matt Crapo*
          MATT A. CRAPO*
          CHRISTOPHER J. HAJEC
          Immigration Reform Law Institute
          25 Massachusetts Ave., NW, Suite 335
          Washington, DC 20001
          matt.crapo@pm.me
          litigation@irli.org

          * Pending *pro hac vice* admission

          Counsel for *Amicus Curiae*
          Immigration Reform Law Institute

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2022, a true and accurate copy of the foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

/s/ Matt Crapo

MATT A. CRAPO