IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | 1:22-CV-397-RP |
| | § | |
| STEVEN MCCRAW, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are separate motions to dismiss filed by Defendants Brad Coe ("Coe") and Kinney County, Texas; Defendant Greg Abbott ("Abbott") in his individual and official capacity; Defendant Bryan Collier ("Collier") in his individual capacity; and Defendant Steven McCraw ("McCraw") in his individual capacity. (Dkts. 13, 15, 16, 17). Having reviewed the complaint, the motions to dismiss, and the parties' responsive briefing, the Court finds that Plaintiffs' complaint does not meet Rule 8's requirement for a concise pleading statement. Accordingly, the Court will order a more definite statement and dismiss Defendants' motions as moot.

### I. BACKGROUND

### A. Plaintiffs' Complaint

This is a putative class action challenging the Operation Lone Star ("OLS"), a program created by the State of Texas that uses state criminal trespass charges to target and arrest undocumented migrants. (2d. Am. Compl., Dkt. 10, at 2).[1] The broad goal of the program is to use state criminal charges as a mechanism for enforcing federal immigration policy. (*Id.*). Often, after the individuals are arrested, state officials alert federal immigration authorities, who may then begin

---

[1] Plaintiffs bring suit against five Defendants: Governor Greg Abbott, Steven McCraw, the Director of the Texas Department of Public Safety, Bryan Collier, the Executive Director of the Texas Department of Criminal Justice, Kinney County Sheriff Brad Coe, and Kinney County.

removal proceedings. (*Id.*). At least 5,000 people have been arrested under the program, while Abbott puts the number at over 200,000. (*Id.*). Texas defends OLS as necessary to deter unauthorized border crossings, while Plaintiffs allege that the program is "riddled with civil rights violations" including fraudulent probable cause affidavits, failure to appoint counsel, failure to timely file charges, and over-incarceration of detainees. (*Id.* at 2–6).

The focus of this order, however, is not on the serious constitutional concerns that OLS raises, but on the pleading itself. Plaintiffs' complaint does not precisely identify which claims are brought against which officials. (2d. Am. Compl., Dkt. 10). While the first substantive section begins with a standard statement of facts, the complaint then begins to lose a clear organizational flow. (*Id.* at 5–17). The second substantive section is titled "Operation Lone Star is Unconstitutional" but appears to provide many of the same kinds of facts as in the previous section. (*Id.* at 17–38). The section explains that OLS violates the Fourth Amendment, Fourteenth Amendment, and Due Process Clause, citing and discussing several pages of caselaw. (*Id.*). Within that section, the complaint also alleges that the Defendants are not entitled to sovereign immunity and then explains why Plaintiffs should meet the requirements for class certification under Rule 23. (*Id.*). After a section on "additional facts," the complaint then repeats the Rule 23 class requirements, using similar language to the previous discussion on the class certification factors. (*Id.*). While it seems likely that Plaintiffs intend to establish two classes: one for injunctive relief and the other for damages, this explicit allegation appears to be missing.

The last 20 pages of the complaint allege violations of 42 U.S.C. § 1983 by "individuals in individual capacity." (*Id.* at 66–88). Here in particular, it is difficult to determine which claims are bought against which officials. The first eight parts of this subsection make general allegations of unconstitutional conduct, but do not attribute the conduct to any particular defendant. (*Id.*). A separate subsection alleges violations of § 1983 against Coe and Kinney County, but it is unclear if

they are also facing the same allegations of constitutional violations that are described in the previous subsection. (*Id.*). In addition to their claims for damages, Plaintiffs bring suit against Abbott and McCraw in their official capacity under the *Ex Parte Young* exception to sovereign immunity, omitting Collier, Coe, and Kinney County from any injunctive relief. (*Id.* at 30).[2] The complaint ends with a request for 19 different forms of relief. (*Id.* at 85–87).

## B. Procedural History

On April 27, 2022, Plaintiffs filed the instant suit seeking monetary damages as well as injunctive relief that would order Defendants to halt the alleged constitutional violations related to OLS. (Compl., Dkt. 1). On June 23, Plaintiffs amended their complaint, and did so again on June 27, removing a claim for federal preemption. (Am. Compl., Dkt. 9; 2d. Am. Compl., Dkt. 10).

On July 18, 2022, Coe and Kinney County filed a motion to dismiss. (Dkt. 13). Coe and Kinney County argue that Plaintiffs' § 1983 claims fail because they fail to plead any involvement in a Fourth Amendment violation, any reasonable inference that their Sixth Amendment rights are violated, and or any personal involvement from Coe in over-incarceration. (Coe Mot. Dismiss, Dkt. 13, at 2–13). Coe also moves to dismiss the conspiracy claims and argues that he is entitled to qualified immunity on the § 1983 claims. (*Id.* at 15).

Also on July 18, 2022, the Collier, McCraw, and Abbott filed a joint motion to exceed page limits, which the Court denied. (Mot., Dkt. 14). The three Defendants then filed separate motions to dismiss. (Dkts. 15, 16, 17). Despite being filed as separate documents, the motions all raise similar arguments, with each Defendant claiming that they are entitled to sovereign immunity, that the Court should abstain under *Younger*, and that the claims for injunctive relief are moot. (Abbott Mot. Dismiss, Dkt. 15, at 3–9; Collier Mot. Dismiss, Dkt. 16, at 3–9; McCraw Mot. Dismiss, Dkt. 17, at

---

[2] The complaint appears to seek injunctive relief from McCraw but only lists him in his individual capacity. (2d. Am. Compl., Dkt. 10, at 1).

3–9). They then move to dismiss on the pleadings, arguing that they have failed to state a plausible Fourth, Sixth, or Fourteenth Amendment violation. (Abbott Mot. Dismiss, Dkt. 15, at 10–17; Collier Mot. Dismiss, Dkt. 16, at 10–17; McCraw Mot. Dismiss, Dkt. 17, at 10–17). Finally, each Defendant moves to dismiss the conspiracy claim, arguing that there is no plausible inference that the Defendants acted to violate the Plaintiffs' constitutional rights. (Abbott Mot. Dismiss, Dkt. 15, at 18–21; Collier Mot. Dismiss, Dkt. 16, at 18–21; McCraw Mot. Dismiss, Dkt. 17, at 18–21).

## II. LEGAL STANDARD

### A. Section 1983

Section 1983 liability results when a "person" acting "under color of" state law deprives another of rights "secured by the Constitution" or federal law. 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights," but merely provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979). Thus, the plaintiff must identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91(1978), the Supreme Court held that municipalities may be sued under Section 1983 but cannot be held liable for acts of their employees under a theory of respondeat superior. Rather, to state a claim against a municipality under *Monell* and its progeny, a plaintiff must plead that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Davidson v. City of Stafford, Tex.*, 848 F.3d 384, 395 (5th Cir. 2017).

### B. Qualified Immunity

A government official sued under Section 1983 may raise the affirmative defense of qualified immunity. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). The doctrine of qualified immunity was created to insulate government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citations omitted).

When a defendant raises a qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the inapplicability of that defense. *Terwilliger v. Reyna*, 4 F.4th 270, 284 (5th Cir. 2021). To discharge this burden at the motion to dismiss stage, the plaintiff must allege sufficient facts (1) that the defendant violated a constitutional right, and (2) that the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Pearson*, 555 U.S. at 232. Courts have discretion to decide which prong of the qualified immunity analysis to address first. *Id.* at 236. All well-pleaded facts must be accepted as true and viewed in the light most favorable to the plaintiff. *Terwilliger*, 4 F.4th at 279.

To be clearly established, a right must be sufficiently clear "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* The "clearly established" standard "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can "reasonably anticipate when their conduct may give rise to liability for damages." *Id.* (cleaned up).

### C. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### D. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

### A. Plaintiffs' Injunctive Claims Are Moot

While Plaintiffs' complaint seeks both equitable and monetary remedies, the focus appears to be on the injunctive claims. (2d. Am. Compl., Dkt. 10, at 85–87 (requesting 13 types of injunctive and declaratory relief)). Among the various kinds of injunctions requested, Plaintiffs' complaint seeks an order requiring Defendants to release people detained under OLS, release detainees after they enter a plea, release detainees after charges are dismissed, and release detainees after charges are

dismissed. (*Id.*). In their motions to dismiss, the Defendants argue that Plaintiffs' injunctive claims are moot because only five named Plaintiffs remained in prison at the time of filing. (Abbott Mot. Dismiss, Dkt. 15, at 4). In their response, Plaintiffs concede that no named Plaintiff remains in prison. (Pls.' Resp., Dkt. 26, at 5 ("No named Plaintiff is currently incarcerated.")). In their reply, the Defendants claim that this concession necessarily renders Plaintiffs' injunctive claims moot. (Abbott Reply, Dkt. 36, at 3–4).

While Plaintiffs argue that they can still seek injunctive relief as part of a putative class, (*id.*), this argument is contradicted by recent precedent on the issue. The Supreme Court and the Fifth Circuit have both issued recent decisions rejecting a putative class action of pretrial detainees who were released from detention before class certification. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018); *Manzo-Hernandez v. Saucedo*, No. 21-40034, 2021 WL 5627068 (5th Cir. Nov. 30, 2021). These two holdings render Plaintiffs' request for equitable relief moot.

### B. Plaintiffs' Complaint Does Not Comply with Rule 8

Because Plaintiffs' complaint focuses on injunctive relief, it becomes difficult to disentangle the remaining claims for money damages. (2d. Am. Compl., Dkt. 10, at 85–87). Largely, this is because the complaint, at 89 pages long, does not always specify what factual allegations apply to which defendant's conduct. At points, headings appear to be off, making it difficult to tell which allegations fall under which claims. (*See, e.g.*, 2d. Am. Compl., Dkt. 10, at 66–69). Similarly, the sections on class certification are repeated, but do not appear to explain why there are two separate classes. (*Id.* at 34, 58). Other allegations contain only caselaw, but do not cite facts supporting those legal conclusions. (*See id.* at 73 (alleging that arrests violate Due Process but omitting relevant facts about Plaintiffs), *id.* at 69 (alleging that false probable cause affidavits violate the Fourth Amendment but providing no factual analysis)).

Ultimately, however, the reason why the Court cannot proceed with the Defendants' motions to dismiss is because Plaintiffs' complaint fails to lay out with clear and specific language which legal claims are brought against which Defendants. For example, subsection IV(C) details Plaintiffs' § 1983 claims. (*Id.* at 66). The heading suggests that the claims are brought against all "individual defendants," but subsection IV(C)(3) then goes on to allege specific claims against only Abbott, McCraw, and Collier. (*Id.* at 75–78). It becomes difficult to determine if Abbott, McCraw, and Collier are individually liable for all of the claims within subsection IV(C), or only those within IV(C)(3), where they are actually named. (*Id.*). Similarly, the claims against Coe and Kinney County allege violations of § 1983, but it is unclear whether those defendants are also liable for the conduct alleged in the previous section. (*Id.* at 81).[3] Because the Court is unsure precisely what claims are brought against those Defendants, the Court is not capable of determining whether they should be dismissed under Rule 12(b).

While Plaintiffs' factual allegations are necessarily vast as a result of the several class action claims brought against multiple defendants, the complaint ultimately fails to define its claims with sufficient clarity. Rule 8 requires a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Pleadings should be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). This ensures that defendants are given notice of any allegations brought against them and allows a court to analyze the merits of a claim. *See Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (quoting *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). Here, the Court is unable to evaluate the merits of Plaintiffs' complaint because it is unclear which facts are alleged to which Defendants and which claims.

---

[3] Beyond the complaint, the responses to the motions to dismiss are likewise deficient. For example, the response to Abbott's motion to dismiss cites only caselaw for the first two pages and then spends a single paragraph on the facts of their actual complaint. (Pls.' Resp., Dkt. 25, at 1–3). However, the cites in that fact section are to the previous caselaw, not to the actual complaint. Nor is there any analysis connecting the caselaw to the facts of the case. The response then moves onto the next legal issue and again discusses caselaw for several pages before repeating the exact same facts section as before. (*Id.* at 3–5).

Because of the pleading deficiency, the Court finds that an order for a more definite statement is appropriate. When a "party cannot reasonably prepare a response," the Court may require "a more definite statement of a pleading . . . ." Fed. R. Civ. P 12(e); *Spencer v. August*, No. 1:17-CV-63, 2020 WL 2832078 (E.D. Tex. Apr. 17, 2020), *report and recommendation adopted*, No. 1:17-CV-63, 2020 WL 2820303 (E.D. Tex. May 29, 2020) (noting that "the proper remedy is a motion for a more definite statement under Rule 12(e), or an order allowing the Plaintiff to amend" when a complaint does not put defendants on notice of the wrong that occurred). A court may issue such an order sua sponte. *See Molina v. March*, No. CV 07-4296, 2008 WL 11388763 (S.D. Tex. Nov. 20, 2008). As the Court is unable to properly determine what claims Plaintiffs bring, it will order a more definite statement.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' motions to dismiss, (Dkts. 13, 15, 16, 17), are **DISMISSED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' complaint is **DISMISSED without prejudice** under Rule 12(e).

**IT IS FINALLY ORDERED** that Plaintiffs may file an amended complaint, if at all, on or before **May 1, 2023**.

**SIGNED** on March 28, 2023.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE