IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, | § | |
| *Plaintiffs, Individually and on Behalf of the Class of Those Similarly Situated,* | § § § § | |
| | § | |
| v. | § | **Case No. 1:22-cv-00397-RP** |
| | § | |
| STEVEN MCCRAW in his individual capacity, *et al.*, | § § | |
| *Defendants.* | § § | |

## DEFENDANT BRYAN COLLIER'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Acting Deputy Attorney General for Civil Litigation

SHANNA E. MOLINARE
Chief, Law Enforcement Defense Division

MARLAYNA M. ELLIS
Assistant Attorney General
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

ATTORNEYS FOR DEFENDANTS
EXECUTIVE DIRECTOR BRYAN COLLIER
DIRECTOR STEVEN MCCRAW

I.      <u>MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION</u>

A.      **Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. "Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

B.      **Arguments & Authorities**

1.      **Standing, Ripeness, and Mootness**

The Court lacks jurisdiction over Plaintiffs' requests for declaratory relief based on the intersection of standing, ripeness, and mootness.

a.      **Plaintiffs lack standing to obtain declarations against Collier in his *individual* capacity because such declarations would not have any preclusive effect on TDCJ or its officials.**

The requirement that the plaintiff have standing imposes a "fundamental limitation" upon a federal court's subject-matter jurisdiction. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,

528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992). The redressability requirement limits the relief to that which is likely to remedy the injuries. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998) (citing *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 45-46 (1976)).

To remedy the injury, the declaration must have a preclusive effect on the conduct of the defendants towards the plaintiff. *Haaland v. Brackeen*, 599 U.S. ---,  2023 WL 4002951, at *18 (June 15, 2023). "Without preclusive effect, a declaratory judgment is little more than an advisory opinion." *Id.* It is insufficient to show that a non-party would defer to a declaration and adjust their conduct accordingly. *Id.* at *18–19. "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Id.* at *19. The declaration must issue against the party whose allegedly illegal conduct is at issue, "[o]therwise redressability would be satisfied whenever a decision might persuade actors who are not before the court—contrary to Article III's strict prohibition on 'issuing advisory opinions.'" *Id.* at *19 (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)).

Here, in their thrice-repleaded case, Plaintiffs chose to sue Collier in his individual capacity. But a declaratory judgment against Collier in his *individual* capacity has no preclusive effect on TDCJ. To illustrate the point, consider what would happen if Collier retired tomorrow. The lawsuit against Collier in his individual capacity would continue—but the new Executive Director of TDCJ would not be a party. In this scenario, it is easy to understand why a declaration about TDCJ's detention or incarceration practices directed at private-citizen Collier would have no preclusive effect on TDCJ. As "nonparties [neither TDCJ nor its officials] would [] be bound by the judgment." *See Haaland*, 2023 WL 4002951, at *18. But the same is equally true now. The nature of an individual-capacity claim

being what it is, a declaration issued against Collier "the man" has no preclusive effect on "the office" of the Executive Director of TDCJ.

Even setting this aside, the declarations sought still do not meet the requirements for standing. Plaintiffs' claims for declaratory relief based on over-detention or over-incarceration against Collier do not satisfy the traceability or redressability requirements of standing because people detained in TDCJ facilities in the future would remain under the exclusive control of the Kinney County Sheriff, and any decisions regarding the release of those hypothetical individuals would remain under the authority of the Kinney County Sheriff. *See* ECF No. 1-4 at 149; *see also* Exhibit A (Order Denying Ivan Nava's Motion for Finding of Contempt, *Ex parte Texas Department of Criminal Justice, et al.*, Cause No. 5118 (63rd Judicial Dist. June 16, 2022) (finding that "[TDCJ] . . . [has] no authority to release individuals.")). As such, even had Collier been sued in his official capacity, he still would not be a proper party for these declarations.

> ### b. Plaintiffs' claims for declaratory relief based on *past* injuries are moot because a declaration about a past injury does not remedy a live harm.

To the extent Plaintiffs' claims for declaratory relief are premised on past injuries, Plaintiffs' requests for declaratory relief are also moot. Mootness can be described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997); *but see Friends of the Earth, Inc.*, 528 U.S. at 190 (noting that this description is "not comprehensive."). "The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* "[M]ootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004). "An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). As a general rule, "a purported class action becomes moot when the personal claims of all named plaintiffs"

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

have been satisfied prior to certification of a class, since, under such circumstances, there is no longer an Article III 'case or controversy' for the court to resolve." *Ward v. Hellerstedt*, 753 F. App'x 236, 241 (5th Cir. 2018) (quoting *Murray v. Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010)).

Because declaratory relief "cannot conceivably remedy any past wrong," plaintiffs seeking declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). "Where there is no claimed continuing violation of federal law or any threat of future violation, a declaratory judgment is inappropriate." *Green v. Mansour*, 474 U.S. 64, 65 (1985).

Here, Plaintiffs seek seven different declarations. Dkt. 52 at 44 ¶ 2-8. But no named Plaintiff remains in custody for pending criminal trespass charges, as they have either been released from custody or their claims have been adjudicated. *Id.* at ¶ 6-23. Although there is a mootness exception for claims that are "capable of repetition, yet evading review [,]" it is inapplicable because Plaintiffs have not "demonstrated a reasonable likelihood that [they] will once again be" arrested and detained. *Spencer v. Kemna*, 523 U.S. 1, 17–18 (1998). Thus, Plaintiffs' individual claims are moot. To the extent Plaintiffs argue their claims are not moot and they can seek declaratory relief as part of a putative class action, the Supreme Court and the Fifth Circuit have issued recent decisions rejecting a putative class action of pretrial detainees who were released from detention *before* class certification. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018); *Manzo-Hernandez v. Saucedo*, No. 21-40034, 2021 WL 5627068 (5th Cir. Nov. 30, 2021).

Here, Plaintiffs ask this Court to issue sweeping declarations, but the factual allegations neither create the reasonable inference that any past violation of federal law is still ongoing, nor that Plaintiffs face any threat of future violation. *See* Dkt. 52 at 44 ¶ 2-8. There is no allegation that any of the named

Plaintiffs remain in custody for pending criminal trespass charges. *Id.* at ¶ 6-23.[1] Plaintiffs have either been released from custody or their claims have been adjudicated. *Id.* Similarly, Plaintiffs fail to allege immediate threatened future injury to themselves that they will once again be arrested and detained. As such, Plaintiffs impermissibly seek declaratory relief for past injuries.

> c.    **Plaintiffs' claims for declaratory relief based on possible future injuries are speculative and unripe.**

To the extent Plaintiffs rest their claims on threatened future injuries, the claims are not ripe. The standing question "bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544-45 (5th Cir. 2008). Ripeness often overlaps with standing, "most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical." *Id.* "[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.12 (5th Cir. 2008). A declaratory judgment cannot be based on a possible future factual situation that may never develop. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583 587-88 (5th Cir. 1987); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

The Supreme Court's opinion in *O'Shea v. Littleton* is instructive. 414 U.S. 488, 496-97 (1974). There, a putative class of people who had been subjected to allegedly unlawful bond proceedings sought equitable relief. *Id.* at 491-92. Because the challenged proceedings were in the past, the Court held that the named plaintiffs needed to show that the threat of future prosecution was "real and

---

[1] Plaintiffs' Third Amended Complaint states that Cesar Galindo Escoto is "currently incarcerated in Edinburg, Texas," which is likely a typographical error carried over from Plaintiffs' previously filed complaints because Plaintiffs have previously conceded that no named Plaintiff remains in prison. *See* Dkt. 26 at 5.

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

immediate." *Id.* at 496-97. But the Court concluded that "attempting to anticipate whether and when these [named plaintiffs] will be charged with crime" required "speculation and conjecture," and therefore held that "the threat of injury from the alleged course of conduct they attack [was] simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court." *Id.* at 496-98. So too here.

Accordingly, for these interrelated reasons—standing, mootness, and ripeness—the Court lacks jurisdiction to issue declaratory relief against Collier.

### 2. *Younger* and *O'Shea* Abstention

Should this Court conclude that a future injury is not speculative, both *Younger* and *O'Shea* abstention apply to Plaintiffs' request for equitable relief. Under *Younger*, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). The *Younger* principles of equity, comity, and federalism "counsel[] restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *O'Shea*, 414 U.S. at 499 (quoting *Younger*, 401 U.S. at 46). "The *Younger* doctrine applies not only to suits for injunctive relief, as in *Younger* itself, but also extends to suits for declaratory relief." *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (citing *Samuels v. Mackell*, 401 U.S. 66, 72 (1971).

The *Younger* doctrine counsels federal courts to abstain from exercising jurisdiction when there are parallel state proceedings in any one of three "exceptional circumstances: state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *"Sprint Commc'n Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotation marks omitted). Abstention is required from a

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

state criminal defendant's asserted federal claims if: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). "[F]ederal courts consistently have abstained from ruling on cases that involve ongoing state criminal prosecutions except in the most unusual cases and only after there has been a showing of great and immediate harm." *Darnell v. Sabo*, No. 4:19-CV-00871-O-BP, 2020 WL 3442057, at *2 (N.D. Tex. June 1, 2020), rep't & rec. adopted, No. 4:19-CV-871-O, 2020 WL 3440885 (N.D. Tex. June 23, 2020). All three *Younger* abstention requirements would be satisfied as to any future class representatives, and *O'Shea* abstention is appropriate for Plaintiffs' claims for declaratory relief.

> **a.    Proceedings before this Court would necessarily interfere with ongoing state judicial proceedings.**

To determine whether the federal proceeding would interfere with the state proceeding, the court "look[s] to the relief requested and the effect it would have on the state proceedings." *Bice*, 677 F.3d at 717. "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* (quoting *Joseph A. ex rel. Wolfe v. Ingram,* 275 F.3d 1253, 1272 (10th Cir. 2002)). Even when there is not a specific ongoing state proceeding, *Younger*-like abstention may be appropriate when the federal claim interferes with state processes generally in a manner that *Younger* abstention seeks to prevent. *O'Shea*, 414 U.S. at 500; *see Disability Rights N.Y. v. New York*, 916 F.3d 129, 134 (2d Cir. 2019). Courts and counsel refer to this type of abstention as *O'Shea* abstention, and generally consider it an extension of or related to *Younger* abstention. *See, e.g., Disability Rights*, 916 F.3d at 134; *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003). Whether *O'Shea* abstention is proper depends on whether the federal claim essentially makes the federal courts ongoing auditors or supervisors of state criminal proceedings that warrant *Younger* abstention. *O'Shea v. Littleton*, 414 U.S.

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

488, 500-01 (1974); *see Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 612 (8th Cir. 2018); *Kaufman v. Kaye*, 466 F.3d 83, 86-87 (2d Cir. 2006).

Here, Plaintiffs seek vast declaratory relief that would necessarily interfere with ongoing state judicial proceedings because it would effectively require TDCJ and Kinney County to release criminal defendants from jail and refrain from any future prosecution or face "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S.at 500. This is so because "[t]he enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order." *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981). Not only would such compliance reviews impose lengthy delays on any pending criminal prosecutions, but this type of judicial oversight is exactly what *Younger* sought to prohibit. *See O'Shea*, 414 U.S. at 500*; Wallace v. Kern*, 520 F.2d 400, 401 (2d Cir. 1975).

### b. The State of Texas has an important interest in enforcing its laws.

There is no dispute that the State of Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws."); *Schall v. Martin*, 467 U.S. 253, 264 (1984) (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960) and *Terry v. Ohio*, 392 U.S. 1, 22 (1968) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted.")). Therefore, the second *Younger* abstention factor would be satisfied for claims brought by future Plaintiffs.

### c. Plaintiffs had an adequate opportunity to raise their constitutional challenges in their state proceedings, and any future Plaintiffs would have the same opportunity.

To overcome the presumption in favor of abstention, Plaintiffs must show that they have *no opportunity* to litigate the asserted federal issues in state court. *DeSpain*, 731 F.2d at 1178. Under this prong, "abstention is appropriate unless state law *clearly bars the interposition of the constitutional claims*."

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

*Moore v. Sims*, 442 U.S. 415, 425-26 (1979) (emphasis added); *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights"); *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) ("[T]he federal court should not exert jurisdiction if the plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings.'") Within their state criminal proceedings, the Plaintiffs had the opportunity to present their challenges to arrest and detention under the Fourth Amendment and their challenges under the Fourteenth Amendment in a pre-trial writ of habeas corpus under Article 11 of the Texas Code of Criminal Procedure, an examining trial under Article 16.01 of the Texas Code of Criminal Procedure, or a hearing to challenge the sufficiency of probable cause to arrest. Plaintiffs' challenges under the Sixth Amendment could have been remedied by the exclusion of evidence or disregarded as harmless error. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (collecting cases).

Plaintiffs generically assert that hearings on writs of habeas corpus have not proven to be an adequate remedy, citing to alleged setting delays, but do not allege they have *personally* experienced setting delays. Dkt. 52 at ¶ 73. In fact, several of the Plaintiffs concede they had opportunities to present their challenges in state court. For example, Plaintiffs Nava and Vega's charges were dismissed after habeas corpus hearings. *Id.* at ¶ 9-10. Plaintiffs Barcenas, Rodas, and Becerra's attorneys filed Petitions for Writ of Mandamus on their behalf, which were presumably successful as no further facts were provided. *Id.* at ¶ 6-7, 15. Plaintiffs Curipoma and Rodriguez were released after self-proclaimed "exhaustive efforts by defense counsel." *Id.* at ¶ 16, 18.[2] Likewise, any future Plaintiff would have

___

[2] Similarly, several other individuals purportedly arrested pursuant to Operation Lone Star ("OLS") have had adequate opportunities to raise their challenges in their pending state proceedings. *See Ex parte Sifuente*, 639 S.W.3d 842, 845 n.1, 849 (Tex. App.—San Antonio 2022, pet. ref'd) (reversing the

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

opportunities to present their challenges in their state court proceedings, but these challenges must be determined on a case-by-case basis.

For these reasons, Collier asks this Court to abstain under *Younger*.

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Standard of Review

Rule 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)

### B.   Arguments & Authorities

#### 1.   Plaintiffs have failed to plead a plausible Fourth Amendment violation.

Plaintiffs allege that their Fourth Amendment rights have been violated because they were arrested or detained solely to determine their immigration status, and they were over-incarcerated despite legally being entitled to release. Dkt. 52 at 40 ¶ 105-110. Relevant to Collier, Plaintiffs have failed to plead facts establishing a Fourth Amendment violation for their detention where Plaintiffs were arrested based on sufficient probable cause for violation of Texas' criminal trespass statute. Additionally, Plaintiffs have failed to plead facts establishing a Fourth Amendment violation for their

---

trial court's order denying the habeas corpus applications of the four appellants arrested pursuant to OLS who had not yet "bonded out" or pled "no contest or guilty to the charges"); *cf. State v. Curipoma*, 2022 WL 580872, at *1 (Tex. App.—Austin 2022, pet. granted) (describing a successful habeas application filed by an arrestee who was purportedly arrested pursuant to OLS).

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

over-detention claims where they only sue Collier in his individual capacity and fail to allege his personal involvement or supervisory liability.

The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or by probable cause. U.S. Const. amend. IV. "The constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009); *see also Baker v. McCollum*, 443 U.S. 137, 144–45 (1979). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017).

"To determine whether probable cause existed for an arrest, the court examines the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause." *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 780 (5th Cir. 2022) (internal quotations omitted). The probable cause inquiry focuses on the facts known to the arresting officer at the time of arrest, not subsequent developments that might disprove the correctness of a previous police determination that probable cause exists. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *Club Retro, LLC v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). "Critically, 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Loftin*, 33 F.4th at 780 (quoting *Illinois v. Gates*, 480 U.S. 213, 243 n.13 (1983)). "Thus, probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

"As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). "If the police stop someone based on *nothing more* than possible removability, the usual predicate for an arrest is absent." *Id.* Although Plaintiffs

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

argue their arrests were to determine their immigration status, citing to alleged race, national origin, and immigration status references in probable cause affidavits, Plaintiffs were clearly arrested for violation of Texas' criminal trespass law. Dkt. 52 at ¶ 6–23. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (emphasis added).

To succeed on false arrest claim based on a deficient probable cause affidavit, the plaintiff must demonstrate that the defendants (1) "knowingly or recklessly omitted exculpatory information from the affidavits they submitted in support of the warrant applications" and, (2) that there would not have been probable cause for the arrest "if the omitted information had been included in the affidavits." *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (citing *Freeman v. Cnty. of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000)); *see also Wilson v. Stroman*, 33 F.4th 202, 206–07 (5th Cir. 2022). If the affidavit adds false facts or omits exculpatory facts, but a corrected affidavit would still give probable cause for arrest, then the arrest is constitutional. *Johnson*, 565 F. App'x at 289. Here, arrests took place pursuant to probable cause based on individuals' unlawful presence on private property, which is noted in the few affidavit excerpts Plaintiffs chose to highlight. Dkt. 52 at ¶ 54–55, 60. Further, these affidavits show that arresting officers had sufficient knowledge to believe the individuals arrested had committed criminal trespass. *See* Dkt. 1-4 at 38, 39, 40, 41, 44, 49, 48. In fact, Plaintiffs never assert that the arrestees did *not* engage in criminal trespass.

Rather, Plaintiffs argue that affidavits and arrest narratives indicate racial profiling because they note perceived ethnicity or immigration status. Dkt. 52 at ¶ 52, 54, 56, 58. Even if this is true, it is unimportant when analyzing whether there was sufficient probable cause for arrests based on criminal trespass. The arresting officers only needed to be aware of information that caused belief that the individual had already committed a crime or was committing a crime, and they were. Further,

Plaintiffs make no factual allegations that officers submitted "false facts," omitted "exculpatory facts," or provided false statements regarding their unlawful presence on private property, other than one sentence referencing "fraudulent probable cause affidavits" in the introduction section. *Id.* at 2. In a separate section, Plaintiffs merely cite case law regurgitating Fourth Amendment requirements. *Id.* at ¶ 106–108.

Additionally, including identifying information, such as race, helps prevent—not cause—false arrests. In *Jones v. City of Grand Prairie, Texas*, the Fifth Circuit held that *withholding* the perpetrator's race (per the victim) from the information presented to the magistrate "vitiated" probable cause because the inclusion of that "clearly critical information" would have prevented a false arrest. 209 F.3d 718 (Table), at *2–4 (5th Cir. 2000). Moreover, Plaintiffs fail to allege facts that create a reasonable inference that the probable cause affidavits without such "false facts" (as their perceived race or immigration status) or that included such "exculpatory facts" would have left officers without probable cause to arrest. *Johnson*, 565 F. App'x at 289. Again, Plaintiffs do not contest that they were illegally trespassing, but instead that the arrest affidavits contain information that Plaintiffs deem irrelevant. This is not enough to plead a violation of the Fourth Amendment.

Finally, Plaintiffs' claims of over-detention against Collier in his individual capacity for monetary damages fail because they fail to allege his personal involvement or establish supervisory liability. A pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint is insufficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citations omitted). "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions[.] The plaintiff must allege specific

facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

Importantly, "[section] 1983 does not give a cause of action based on the conduct of subordinates. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Courts have held that supervisory officials are not liable under §1983 unless "there exists either 1) his personal involvement in the constitutional deprivation, or 2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Circ. 1987) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Circ. 1985)). "A failure to supervise or train claim arises when the plaintiff shows that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). Deliberate indifference is "a stringent standard of fault," requiring the official to "disregard a known or obvious consequence of his actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, Plaintiffs largely rely on language cited from case law, but otherwise do not allege facts demonstrating Collier's personal involvement beyond generically asserting that "Defendants created, directed, and implemented a policy to keep the arrestee/defendants in custody following their entitlement to release due to case resolution or a bond being posted. Often, class Plaintiffs were over-detained because the Defendants wanted them to be deported or removed by ICE, and so kept them in custody solely for immigration purposes outside their authority." Dkt. 52 at ¶ 109. Aside from this conclusory assertion, Plaintiffs "re-allege and incorporate each and every allegation made in the preceding [104] paragraphs." *Id.* at ¶ 105. Critically, Plaintiffs' lack of pleading specificity makes it difficult to discern their factual contentions against Collier.

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

However, the Plaintiffs who specifically allege that they were detained despite legally being entitled to release clearly fail to allege that Collier was personally involved in their prolonged detention. In fact, Plaintiffs Barcenas, Nava, Vega, and Becerra specifically allege that the Warden of the Briscoe Unit, not Collier, refused or delayed their release. Dkt. 52 at ¶ 6, 9–10, 15. While the Amended Complaint states that Petitions for Writ of Mandamus were allegedly filed for three Plaintiffs compelling Collier to release them, there are no facts demonstrating Collier's personal involvement prior to the writs, let alone facts alleging that he knew these individuals were entitled to release *and* consciously chose to detain them despite it. *Id.* at ¶ 6, 7, 15. Assumedly, these individuals were released following the writs, as no other facts are alleged that Collier then ignored them or continued to detain them following receipt. And again, Collier is sued only in his individual capacity, so it is critical that Plaintiffs allege facts where the Court can plausibly infer his personal involvement.  Further, Plaintiffs fail to allege a policy or failure to train or supervise claim or that Collier's conduct in any way caused the infringement of their Fourth Amendment rights *and* that he consciously disregarded a known or obvious consequence of his actions. Simply put, Plaintiffs fail to state a Fourth Amendment claim against Collier in his individual capacity.

### 2.  Plaintiffs have failed to plead a plausible Substantive Due Process claim.

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted). "Substantive due process analysis," the Supreme Court has cautioned, "must begin with a careful description of the asserted right." *Reno v. Flores*, 507 U.S. 292, 302 (1993). The alleged liberty interest must be "carefully formulat[ed]" and must be "deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 721, 722 (1997). To violate substantive due process, the defendant's

actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8). "If this standard is met, a court must next determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Id.*

However, only "a plaintiff whose claim is not susceptible to proper analysis with reference to a specific constitutional right may still state a claim under § 1983 for a violation of his or her Fourteenth Amendment substantive due process right, and have the claim judged by the constitutional standard which governs that right." *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 409 U.S. 386, 395 (1989).

Here, Plaintiffs vaguely allege that their due process rights have been violated by generically referencing and incorporating every allegation made in the preceding 96 paragraphs, which makes it difficult to discern the full nature of their due process claims. *See* Dkt. 52 at ¶ 97–100. Plaintiffs simply claim that Defendants overtly created and maintained a "separate but equal criminal justice system" in which they only jail and prosecute individuals from this program, that the Fourteenth Amendment prohibits them from jailing Plaintiffs indefinitely and without any meaningful legal process to challenge their detention, and that Plaintiffs were deprived their most basic liberty interests, such as their "freedom of movement and human dignity." *Id.* ¶ 99–100. Importantly, Plaintiffs' sporadic references to their due process rights allegedly being violated are explicitly protected and enumerated in another Amendment.

The only seemingly relevant due process violation against Collier would be Plaintiffs' allegations of over-detention despite legally being entitled to release. However, it is well-established

that the Fourth Amendment governs the standard for probable cause necessary to effect a detention, as well as the minimum constitutional standards and procedures for detention. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Accordingly, because Plaintiffs failed to allege a deprivation of their due process rights that is separate and apart from a right not otherwise protected by another Amendment, this claim must be dismissed against Collier. And, of course, if Plaintiffs had a purely procedural due process issue with their criminal prosecutions, the proper mechanism to raise those due process concerns was through the state judiciary. *Cf. Younger*, 401 U.S. at 46 (emphasizing "the fundamental policy against federal interference with state criminal prosecutions," in which "even irreparable injury is insufficient" to warrant intrusion). The process afforded through the Texas criminal justice system *was* their due process.

### 3. Plaintiffs have failed to plead a plausible Section 1985 conspiracy claim.

To state a Section 1985 claim, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001).[3]

---

[3] Plaintiffs appear to have inadvertently included language relating to a Section 1983 conspiracy claim. *See* Dkt. 49 at ¶ 112. To the extent Plaintiffs intended to bring a Section 1983 conspiracy claim, Plaintiffs have failed to state a viable claim against any of the individually named defendants and Plaintiffs have not alleged facts that create a reasonable inference that Collier agreed to violate Plaintiff's constitutional rights. *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008) (holding that a conspiracy claim by itself is not actionable under Section 1983); *Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982) (finding general conclusory charges of conspiracy with no specific allegation of facts tending to show a prior agreement cannot survive a motion to dismiss).

Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint

Here, Plaintiffs claim that there was an agreement between Defendants Abbott, McCraw, Collier, Coe, and Kinney County to engage in "immigration enforcement" without the involvement of the federal government based on the observed race/color and/or immigration status in violation of the United States Constitution and that they agreed to deny detainees the right to counsel and to refuse to release those who are lawfully entitled to release. Dkt. 52 at ¶ 113. First, Plaintiffs do not allege that Collier violated their equal protection rights.[4] Consequently, it is unclear how Plaintiffs simultaneously assert that Collier engaged in a conspiracy for the purpose of depriving them of the equal protection of the laws. Even assuming Plaintiffs had alleged Collier deprived them of the equal protection of the laws, Plaintiffs still fail to state a 1985 conspiracy claim because they fail to allege an act of Collier's in furtherance of the conspiracy, that he even conspired with others, or that the conspirators were motivated by racial animus.

Although Plaintiffs assert that the agreement to engage in "*immigration* enforcement is clear and on the record," this is insufficient to allege Collier's act of furthering the conspiracy, let alone that the defendants conspired. *See* Dkt. 52 at ¶ 113. While Plaintiffs argue the program was constructed to target and arrest individuals based on "national origin, including immigration status," they fail to allege racial animus. *Id.* at ¶ 48. At most, Plaintiffs cite to purported racial profiling in arrest affidavits and narratives, but this does not demonstrate that the actions of Collier or any of the other alleged conspirators were motivated by racial animus. As such, Plaintiffs' Section 1985 claim based on *national origin* and *immigration status* must be dismissed.

### 4. Plaintiffs' claims for monetary damages against Executive Director Collier in his individual capacity are barred by Qualified Immunity.

Plaintiffs' factual allegations, taken as true, do no overcome Collier's entitlement to qualified immunity. Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to

---

[4] Plaintiffs' equal protection claim is specifically brought against Defendants McCraw, Abbot, Coe, and Kinney County, but not Collier. *See* Dkt. 52 at 36.

show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010). The qualified immunity analysis has two steps, which can be taken in either order: (1) whether a constitutional right would have been violated on the facts alleged, and (2) "whether the defendant's actions violated 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). "[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). Finally, the court "asks whether qualified immunity is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (internal quotations omitted). Here, Plaintiffs cannot overcome qualified immunity for any claim against Executive Director Collier in his individual capacity because they have failed to allege a constitutional violation or that any alleged actions violated clearly establish law. As such, Collier is entitled to qualified immunity and Plaintiffs' suit for monetary damages should be dismissed.

## V.   PRAYER

For all these reasons, Executive Director Collier respectfully asks the Court to dismiss the claims against him in his individual capacity.

Respectfully submitted,

**JOHN SCOTT**                                  /s/ *Marlayna M. Ellis*
Provisional Attorney General      **MARLAYNA M. ELLIS**
                                                           Texas Bar No. 24123448
**BRENT WEBSTER**                      marlayna.ellis@oag.texas.gov
First Assistant Attorney General  Attorney-in-Charge

**GRANT DORFMAN**                     Office of the Attorney General
Deputy First Assistant Attorney General   Law Enforcement Defense Division
                                                           P.O. Box 12548, Capitol Station
**JAMES LLOYD**                           Austin, Texas 78711-2548
Deputy Attorney General for Civil Litigation   (512) 463-2080 / Fax (512) 370-9994

**SHANNA E. MOLINARE**              **ATTORNEYS FOR DEFENDANTS**
Chief, Law Enforcement Defense Division   **EXECUTIVE DIRECTOR BRYAN COLLIER**
                                                           **DIRECTOR STEVEN MCCRAW**


## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2023, a true and correct copy of the foregoing document was

served via the Court's ECF system to all counsel of record.

/s/ *Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General


Defendant Bryan Collier's Motion to Dismiss Plaintiffs' Third Amended Complaint