IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, | § | |
| *Plaintiffs, Individually and on* | § | |
| *Behalf of the Class of Those* | § | |
| *Similarly Situated,* | § | |
| | § | |
| **v.** | § | Case No. 1:22-cv-00397-RP |
| | § | |
| STEVEN MCCRAW in his individual | § | |
| capacity, *et al.*, | § | |
| *Defendants.* | § | |

## DEFENDANT STEVEN MCCRAW'S MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT

**JOHN SCOTT**
Provisional Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for Civil Litigation

**SHANNA E. MOLINARE**
Chief, Law Enforcement Defense Division

**MARLAYNA M. ELLIS**
Assistant Attorney General
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

**ATTORNEYS FOR DEFENDANTS**
**EXECUTIVE DIRECTOR BRYAN COLLIER**
**DIRECTOR STEVEN MCCRAW**

I.    MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

A.    Standard of Review

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001. "A 'facial attack' on the complaint requires the court merely to look and see if plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980).

B.    Arguments & Authorities

1.    The Court lacks jurisdiction over Plaintiffs' requests for declaratory relief based on the intersection of standing, ripeness, and mootness.

a.    Plaintiffs lack standing to obtain declarations against McCraw in his *individual* capacity because such declarations would not have any preclusive effect on DPS or its officials.

To establish standing, a plaintiff must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). To remedy the injury, the declaration must have a preclusive effect on the conduct of the defendants towards the plaintiff. *Haaland v. Brackeen*, 599 U.S. ---, 2023 WL 4002951, at *18 (June 15, 2023). "Without preclusive effect, a declaratory judgment is little more than an advisory opinion." *Id.* It is insufficient to show that a non-party would defer to a declaration and adjust their conduct accordingly. *Id.* at *18–19. "It is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Id.* at *19. The declaration must issue against the party whose allegedly illegal conduct is at issue, "[o]therwise redressability would be satisfied whenever a decision might persuade actors who are not

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

before the court—contrary to Article III's strict prohibition on 'issuing advisory opinions.'" *Id.* at *19 (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)).

Here, in their thrice-repleaded case, Plaintiffs chose to sue McCraw in his individual capacity. But a declaratory judgment against McCraw in his *individual* capacity has no preclusive effect on DPS or its officials. If McCraw retired tomorrow, the lawsuit against him in his individual capacity would continue—but the DPS Director would not be a party. Thus, as "nonparties [neither DPS nor its officials] would [] be bound by the judgment." *See Haaland*, 2023 WL 4002951, at *18. Consequently, a declaration issued against McCraw "the man" has no preclusive effect on "the office" of the Director of DPS.

### b. Plaintiffs' claims for declaratory relief based on *past* injuries are moot because a declaration about a past injury does not remedy a live harm.

"An action is moot where (1) the controversy is no longer live or (2) the parties lack a personal stake in its outcome." *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). As a general rule, "a purported class action becomes moot when the personal claims of all named plaintiffs" have been satisfied prior to certification of a class, since, under such circumstances, there is no longer an Article III 'case or controversy' for the court to resolve." *Ward v. Hellerstedt*, 753 F. App'x 236, 241 (5th Cir. 2018) (quoting *Murray v. Fid. Nat'l Fin., Inc.*, 594 F.3d 419, 421 (5th Cir. 2010)). Because declaratory relief "cannot conceivably remedy any past wrong," plaintiffs seeking declaratory relief can satisfy the redressability requirement only by demonstrating a continuing injury or threatened future injury. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). "Where there is no claimed continuing violation of federal law or any threat of future violation, a declaratory judgment is inappropriate." *Green v. Mansour*, 474 U.S. 64, 65 (1985).

Here, Plaintiffs seek seven different declarations. Dkt. 52 at 44 ¶ 2-8. But no named Plaintiff remains in custody for criminal trespass charges, as they have been released from custody or their

claims have been adjudicated. *Id.* at ¶ 6-23. [1]Although there is a mootness exception for claims that are "capable of repetition, yet evading review [,]" it is inapplicable because Plaintiffs have not "demonstrated a reasonable likelihood that [they] will once again be" arrested. *Spencer v. Kemna*, 523 U. S. 1, 17–18 (1998). Thus, Plaintiffs' individual claims are moot. To the extent Plaintiffs argue they can seek declaratory relief as part of a putative class action, the Supreme Court and the Fifth Circuit have issued recent decisions rejecting a putative class action of pretrial detainees who were released from detention *before* class certification. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018); *Manzo-Hernandez v. Saucedo*, No. 21-40034, 2021 WL 5627068 (5th Cir. Nov. 30, 2021).

> ### c.   Plaintiffs' claims for declaratory relief based on *possible* future injuries are speculative and unripe.

To the extent Plaintiffs rest their claims on threatened future injuries, the claims are not ripe. The standing question "bears close affinity to questions of ripeness—whether the harm asserted has matured sufficiently to warrant judicial intervention." *Mississippi State Democratic Party v. Barbour*, 529 F.3d 538, 544-45 (5th Cir. 2008). Ripeness often overlaps with standing, "most notably in the shared requirement that the injury be imminent rather than conjectural or hypothetical." *Id.* "[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.12 (5th Cir. 2008). A declaratory judgment cannot be based on a possible future factual situation that may never develop. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583 587-88 (5th Cir. 1987); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

---

[1] Plaintiffs' Third Amended Complaint states that Cesar Galindo Escoto is "currently incarcerated in Edinburg, Texas," which is likely an error from Plaintiffs' previously filed complaints because Plaintiffs have previously conceded that no named Plaintiff remains in prison. *See* Dkt. 26 at 5.

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

The Supreme Court's opinion in *O'Shea v. Littleton* is instructive. 414 U.S. 488, 496-97 (1974). There, a putative class of people who had been subjected to allegedly unlawful bond proceedings sought equitable relief. *Id.* at 491-92. Because the challenged proceedings were in the past, the Court held that the named plaintiffs needed to show that the threat of future prosecution was "real and immediate." *Id.* at 496-97. But the Court concluded that "attempting to anticipate whether and when these [named plaintiffs] will be charged with crime" required "speculation and conjecture," and therefore held that "the threat of injury from the alleged course of conduct they attack [was] simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court." *Id.* at 496-98. The same is true here. Accordingly, for these interrelated reasons—standing, mootness, and ripeness—this Court lacks jurisdiction to issue declaratory relief against McCraw.

### 2. *Younger* and *O'Shea* Abstention.

Should this Court conclude that a future injury is not speculative, both *Younger* and *O'Shea* abstention apply to Plaintiffs' requests for equitable relief. The *Younger* doctrine counsels federal courts to abstain from exercising jurisdiction when there are parallel state proceedings in any one of three "exceptional circumstances: state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions. *"Sprint Commc'n Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotation marks omitted). Abstention is required from a state criminal defendant's asserted federal claims if: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). "[F]ederal courts consistently have abstained from ruling on cases that involve ongoing state criminal prosecutions except in the most unusual cases and only after there has been a showing of great and immediate harm." *Darnell v. Sabo*, No. 4:19-CV-00871-O-BP, 2020 WL

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

3442057, at *2 (N.D. Tex. June 1, 2020), rep't & rec. adopted, No. 4:19-CV-871-O, 2020 WL 3440885 (N.D. Tex. June 23, 2020)). The *Younger* doctrine applies not only to suits for injunctive relief, as in *Younger* itself, but also extends to suits for declaratory relief." *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992) (citing *Samuels v. Mackell*, 401 U.S. 66, 72 (1971)).

> **a.  Proceedings before this Court would necessarily interfere with ongoing state judicial proceedings.**

To determine whether the federal proceeding would interfere with the state proceeding, the court "look[s] to the relief requested and the effect it would have on the state proceedings." *Bice*, 677 F.3d at 717. "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* (quoting *Joseph A. ex rel. Wolfe v. Ingram,* 275 F.3d 1253, 1272 (10th Cir. 2002)). Even when there is not a specific ongoing state proceeding, *Younger*-like abstention may be appropriate when the federal claim interferes with state processes generally in a manner that *Younger* abstention seeks to prevent (*O'Shea*, 414 U.S. at 500; *see Disability Rights N.Y. v. New York*, 916 F.3d 129, 134 (2d Cir. 2019)). Courts and counsel refer to this type of abstention as *O'Shea* abstention, and generally consider it an extension of or related to *Younger* abstention (see, for example, *Disability Rights*, 916 F.3d at 134; *31 Foster Children v. Bush*, 329 F.3d 1255, 1276 (11th Cir. 2003)). Whether *O'Shea* abstention is proper depends on whether the federal claim essentially makes the federal courts ongoing auditors or supervisors of state criminal proceedings that warrant *Younger* abstention. *O'Shea v. Littleton*, 414 U.S. 488, 500-01 (1974); *see Oglala Sioux Tribe v. Fleming*, 904 F.3d 603, 612 (8th Cir. 2018); *Kaufman v. Kaye*, 466 F.3d 83, 86-87 (2d Cir. 2006).

Here, Plaintiffs seek vast declaratory relief that would necessarily interfere with ongoing state judicial proceedings because it would effectively require DPS to not arrest individuals found to be criminally trespassing, TDCJ and Kinney County to release criminal defendants from jail, and to

refrain from any future prosecution or face "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500. This is so because "[t]he enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order." *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981). Not only would such compliance reviews impose lengthy delays on any pending criminal prosecutions, but this type of judicial oversight is exactly what *Younger* sought to prohibit. *See O'Shea*, 414 U.S. at 500; *Wallace v. Kern*, 520 F.2d 400, 401 (2d Cir. 1975).

### b.   The state of Texas has an important interest in enforcing its laws.

There is no dispute that the State of Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws."); *Schall v. Martin*, 467 U.S. 253, 264 (1984) (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960) and *Terry v. Ohio*, 392 U.S. 1, 22 (1968)) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted."). Therefore, the second *Younger* abstention factor would be satisfied for claims brought by future Plaintiffs.

### c.   Plaintiffs had an adequate opportunity to raise their constitutional challenges in their state proceedings, and any future Plaintiffs would have the same opportunity.

To overcome the presumption in favor of abstention, Plaintiffs must show that they have *no opportunity* to litigate the asserted federal issues in state court. *DeSpain*, 731 F.2d at 1178. Under this prong, "abstention is appropriate unless state law *clearly bars the interposition of the constitutional claims*." *Moore v. Sims*, 442 U.S. 415, 425-26 (1979) (emphasis added); *cf. Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[W]hen a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that the state procedures will afford an adequate remedy."); *Kugler v. Helfant*, 421 U.S. 117, 124 (1975) ("ordinarily a pending state prosecution provides the accused

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

a fair and sufficient opportunity for vindication of federal constitutional rights"); *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018) ("[T]he federal court should not exert jurisdiction if the plaintiffs 'had an *opportunity* to present their federal claims in the state proceedings.'") Within their state criminal proceedings, the Plaintiffs had the opportunity to present their challenges to arrest and detention under the Fourth Amendment and their challenges under the Fourteenth Amendment in a pre-trial writ of habeas corpus under Article 11 of the Texas Code of Criminal Procedure, an examining trial under Article 16.01 of the Texas Code of Criminal Procedure, or a hearing to challenge the sufficiency of probable cause to arrest. Plaintiffs' challenges under the Sixth Amendment could have been remedied by the exclusion of evidence or disregarded as harmless error. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (collecting cases).

Here, Plaintiffs generically assert that hearings on writs of habeas corpus have not proven to be an adequate remedy, citing to alleged setting delays, but do not allege they *personally* experienced setting delays. Dkt. 52 at ¶ 73. In fact, Plaintiffs concede they had opportunities to present their challenges in state court. Plaintiffs Nava and Vega's charges were dismissed after habeas corpus hearings. *Id.* at ¶ 9-10. Plaintiffs Barcenas, Rodas, and Becerra's attorneys filed Petitions for Writ of Mandamus on their behalf, which were presumably successful as no further facts were provided. *Id.* at ¶ 6-7, 15. Plaintiffs Curipoma and Rodriguez were released after self-proclaimed "exhaustive efforts by defense counsel." *Id.* at ¶ 16, 18. [2] Similarly, any future Plaintiffs would have opportunities to present their challenges in their state court proceedings, but these challenges must be determined on a case-by-case basis. For these reasons, McCraw asks this Court to abstain under *Younger*.

---

[2] Similarly, several other individuals purportedly arrested pursuant to OLS have had adequate opportunities to raise their challenges in their pending state proceedings. *See Ex parte Sifuente*, 639 S.W.3d 842, 845 n.1, 849 (Tex. App.—San Antonio 2022, pet. ref'd) (reversing the trial court's order denying the habeas corpus applications of the four appellants arrested pursuant to OLS who had not yet "bonded out" or pled "no contest or guilty to the charges"); *cf. State v. Curipoma*, 2022 WL 580872, at *1 (Tex. App.—Austin 2022, pet. granted) (describing a successful habeas application filed by an arrestee who was purportedly arrested pursuant to OLS).

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.   Standard of Review

To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### B.   Arguments & Authorities

#### 1.   Plaintiffs have failed to plead a plausible Fourth Amendment violation.

Plaintiffs allege Fourth Amendment violations asserting that  they were arrested or detained solely to determine their immigration status. Dkt. 52 at ¶ 105-110. Plaintiffs largely rely on irrelevant case law instead of factual allegations to support their contentions. *Id.* Plaintiffs facts, as alleged, demonstrate that arrests were based on sufficient probable cause for violation of Texas' criminal trespass statute. Additionally, Plaintiffs sue McCraw in his individual capacity, but fail to allege his personal involvement or supervisory liability.

The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or by probable cause. U.S. Const. amend. IV. "The constitutional claim of false arrest requires a showing of no probable cause." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009). "The Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)); *see also Texas v. Kleinert*, 855 F.3d 305, 316 (5th Cir. 2017). "To determine whether

probable cause existed for an arrest, the court examines the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause." *Loftin v. City of Prentiss, Miss.*, 33 F.4th 774, 780 (5th Cir. 2022) (internal quotations omitted). "Critically, 'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Id.* "Thus, probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

"As a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). "If the police stop someone based on *nothing more* than possible removability, the usual predicate for an arrest is absent." *Id.* Although Plaintiffs argue their arrests were to determine their immigration status, citing to alleged race, national origin, and immigration status references in probable cause affidavits, Plaintiffs were clearly arrested for violation of Texas' criminal trespass law. Dkt. 52 at ¶ 6–23. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (emphasis added).

To succeed on false arrest claim based on a deficient probable cause affidavit, the plaintiff must demonstrate that the defendants (1) "knowingly or recklessly omitted exculpatory information from the affidavits they submitted in support of the warrant applications" and, (2) that there would not have been probable cause for the arrest "if the omitted information had been included in the affidavits." *Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (citing *Freeman v. Cnty. of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000)); *see also Wilson v. Stroman*, 33 F.4th 202, 206–07 (5th Cir. 2022). If the affidavit adds false facts or omits exculpatory facts, but a corrected affidavit would still give probable cause for arrest, then the arrest is constitutional. *Johnson*, 565 F. App'x at 289.

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

Here, arrests took place pursuant to probable cause based on Plaintiffs' unlawful presence on private property, which is noted in the few affidavit excerpts Plaintiffs chose to highlight. Dkt. 52 at ¶ 54–55, 60. The affidavits show that arresting officers had sufficient knowledge to believe the individuals arrested had committed criminal trespass. *See* Dkt. 1-4 at 38-41, 44, 49, 48. Plaintiffs make no factual allegations that officers submitted "false facts," omitted "exculpatory facts," or provided false statements regarding their unlawful presence on private property, other than one sentence referencing "fraudulent probable cause affidavits" in the introduction section. Dkt. 52 at 2. In fact, Plaintiffs never assert that the arrestees did *not* engage in criminal trespass.

Rather, Plaintiffs argue that arrest affidavits and narratives indicate racial profiling because they note perceived ethnicity or immigration status. Dkt. 52 at ¶ 52, 54, 56, 58. Even if this is true, it is unimportant when analyzing whether there was sufficient probable cause for arrests based on criminal trespass. In fact, including identifying information, such as race, helps prevent—not cause—false arrests. In *Jones v. City of Grand Prairie, Texas*, the Fifth Circuit held that *withholding* the perpetrator's race (per the victim) from the information presented to the magistrate "vitiated" probable cause because the inclusion of that "clearly critical information" would have prevented a false arrest. 209 F.3d 718 (Table), at *2–4 (5th Cir. 2000). Moreover, Plaintiffs fail to allege facts that create a reasonable inference that the probable cause affidavits without such "false facts" (as their perceived race or immigration status) or that included such "exculpatory facts" would have left officers without probable cause to arrest. *Johnson*, 565 F. App'x at 289. Again, Plaintiffs do not contest that they were illegally trespassing, but instead that the arrest affidavits contain information that Plaintiffs deem irrelevant, which is not enough to plead a Fourth Amendment violation.

Finally, Plaintiffs' Fourth Amendment claims against McCraw in his *individual* capacity for monetary damages fails because they fail to allege his personal involvement or establish supervisory liability. A pleading "does not require 'detailed factual allegations,' but it demands more than an

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint is insufficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citations omitted). "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusional assertions[.] The plaintiff must allege specific facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

Importantly, "[section] 1983 does not give a cause of action based on the conduct of subordinates. *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Courts have held that supervisory officials are not liable under § 1983 unless "there exists either 1) his personal involvement in the constitutional deprivation, or 2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Circ. 1987) (citing *Harvey v. Andrist*, 754 F.2d 569, 572 (5th Circ. 1985)). "A failure to supervise or train claim arises when the plaintiff shows that (1) the defendant failed to supervise or train the alleged bad actor, (2) there is a causal connection between the infringement of the plaintiff's constitutional rights and the lack of supervision or training, and (3) the failure to supervise or train exhibited deliberate indifference to the plaintiff's constitutional rights." *Parker v. Blackwell*, 23 F.4th 517, 525 (5th Cir. 2022). Deliberate indifference is "a stringent standard of fault," requiring the official to "disregard a known or obvious consequence of his actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Plaintiffs assert that "Defendants created, directed, and implemented a policy in which arresting officers are required to continuously detain individuals in order to confirm or deny the detainee/arrestee's immigration and residency status." Dkt. 52 at ¶ 109. Aside from this conclusory assertion, Plaintiffs "re-allege and incorporate each and every allegation made in the preceding [104] paragraphs." *Id.* at ¶ 105. Plaintiffs' lack of pleading specificity makes it difficult to discern their factual

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

contentions against McCraw. However, throughout the Complaint, the only references to McCraw are that "he is the Director of the DPS and is directly involved in deploying and supervising DPS officers implementing OLS [Operation Lone Star]," or statements McCraw has allegedly made, none of which indicate arrests were to determine arrestee's immigration status. *Id.* at ¶ 44-45. Of course, Plaintiffs do not allege that McCraw personally arrested them for criminal trespass with the intention of determining their immigration status. And again, McCraw is sued *only* in his individual capacity, so it is critical that Plaintiffs allege facts where the Court can plausibly infer his personal involvement, but the Amended Complaint is devoid of such facts. Similarly, Plaintiffs fail to allege a policy or failure to train or supervise claim or that McCraw's conduct in any way caused the infringement of their Fourth Amendment rights *and* that he consciously disregarded a known or obvious consequence of his actions. Simply put, Plaintiffs fail to state a Fourth Amendment claim against McCraw in his individual capacity.

### 2. Plaintiffs have failed to plead a plausible Due Process claim.

Plaintiffs allege that Defendants overtly created and maintained a "separate but equal criminal justice system" in which they only jail and prosecute individuals from this program, doing so "without the required safeguards of due process." Dkt. 52 at ¶ 99–100. Importantly, as relevant to McCraw, the right allegedly infringed upon is explicitly protected in another Amendment.

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted). To violate substantive due process, the defendant's actions must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Morris v. Dearborne*, 181 F.3d 657, 668 (5th Cir. 1999) (quoting *Lewis*, 523 U.S. at 847 n.8). "If this standard is met, a court must next

determine whether there exist historical examples of recognition of the claimed liberty protection at some appropriate level of specificity." *Id.* However, only "a plaintiff whose claim is not susceptible to proper analysis with reference to a specific constitutional right may still state a claim under § 1983 for a violation of his or her Fourteenth Amendment substantive due process right, and have the claim judged by the constitutional standard which governs that right." *See Petta v. Rivera*, 143 F.3d 895, 901 (5th Cir. 1998). "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 409 U.S. 386, 395 (1989)).

Here, the only relevant due process allegation against McCraw would be related to arrest. However, the Fourth Amendment governs the standard for probable cause necessary to effect a detention and arrest. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Accordingly, Plaintiffs fail to allege a deprivation of their due process rights that is separate and apart from a right not otherwise protected by another Amendment, and this claim must be dismissed against McCraw.

### 3. Plaintiffs have failed to plead a plausible Equal Protection violation based on race, national origin, or immigration status.

Plaintiffs allege that Defendants created, directed, and enforced a policy to only arrest and prosecute male migrants. Dkt. 52 at 36. Plaintiffs appear to be asserting racial profiling or a selective enforcement equal protection claim.

### a. Plaintiffs have not alleged that similarly situated individuals were treated differently or that a discriminatory purpose motivated Operation Lone Star.

"To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). As a prerequisite, the plaintiff "must allege and

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012); *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999). "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (quoting *Bryan v. City of Madison, Miss.*, 213 F.3d 267, 277 (5th Cir. 2000)); *see also United States v. Lawrence*, 179 F.3d 343, 349 (5th Cir. 1999); *United States v. Hall*, 455 F.3d 508, 523 (5th Cir. 2006). An equal protection claim based on profiling similarly requires a plaintiff to allege that he was treated differently than similarly situated individuals. *Flanagan v. City of Dallas, Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014) (citing *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012)).

Although Plaintiffs assert that arrests were based on national origin, including immigration status, Plaintiffs have not alleged that they were treated differently than similarly situated individuals, in this case, other "male migrants." There are no allegations that individuals of different races or national origins were trespassing on private property but not arrested. To the contrary, the diversity of Plaintiffs' origins, including Mexico, *Florida*, *Texas*, Honduras, and El Salvador, indicate that no national origin was targeted. Dkt. 52 at ¶ 6–23. And "no equal protection violation is alleged where a plaintiff 'fails to allege any facts showing that [others were] similarly situated.'" *Davis v. Foley*, No. 3:17-CV-278-M-BN, 2018 WL 5723165, at *9 (N.D. Tex. Oct. 12, 2018), report and rec. adopted, No. 3:17-CV-278-M, 2018 WL 5717426 (N.D. Tex. Oct. 31, 2018) (quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 414 (5th Cir. 2015)).

Additionally, Plaintiffs fail to demonstrate that an invidious discriminatory purpose that the Equal Protection Clause guards against underlies OLS. A discriminatory purpose (sometimes referred to as discriminatory intent) "implies that the decision maker singled out a particular group for disparate

treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Bowlby*, 681 F.3d at 227. Purposeful discrimination "involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Ashcroft*, 556 U.S. at 676-7; *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979). Here, Plaintiffs have not sufficiently alleged that McCraw undertook OLS for the purpose of adversely affecting anyone based on race or national origin. Courts have recognized that enforcing laws in a "concentrated effort to allocate scarce resources to the most egregious violations," which is the purpose of OLS, does not amount to an equal protection violation. *Moreno v. City of Brownsville*, Cause No. B-08-504, 2010 WL 11646748 at * 8-9 (S.D. Tex. Sept. 16, 2010) (citing *Esmail v. Macrane*, 53 F.3d 176, 178-79 (7th Cir. 1995)).

Plaintiffs' Amended Complaint is replete with references to media coverage and statements by McCraw.[3] But, at most, these allegations suggest that McCraw's actions were motivated by immigration status. Importantly, immigration status is not a protected class under the Equal Protection Clause. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* And the phrase "national origin" does not embrace citizenship. *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 92-94 (1973) (holding that Title VII does cover citizenship status).[4] Rather, "the term 'national origin' on its face refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came." *Id.* at 88. "Although citizenship and national origin may be highly correlated, they should not be equated with one another" and "[b]y themselves, the

---

[3] Interestingly, by Plaintiffs' own count, only 8% of Kinney County arrest affidavits made reference to the arrestee's national origin, which does not support an equal protection claim based on national origin. Dkt. 52 at ¶ 53.
[4] "[T]he inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (internal quotation marks and citations omitted).

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

facts upon which [Plaintiffs] relies simply do not support an inference of national origin or race discrimination." *See Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059–60 (5th Cir. 1998).

      **b.**    **Plaintiffs cannot establish an Equal Protection claim based solely on disparate impact.**

"The Constitution forbids only purposeful discrimination." *U.S. v. LULAC*, 793 F.2d 636, 646 (5th Cir. 1986). "Disparate impact alone cannot suffice to state an Equal Protection violation." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *Pers. Adm'r*, 442 U.S. at 272 (noting that "uneven effects upon particular groups within a class are ordinarily of no constitutional concern" and "even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"); *Washington v. Davis*, 426 U.S. 229, 239 (1976). A showing of disparate impact only bears on an Equal Protection analysis in the rarest case where "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action[.]" *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977). Under *Arlington Heights*, the "starting point" of the inquiry is whether the challenged action "bears more heavily on one race than another." *Id.* at 266. (quoting *Washington v. Davis*, 426 U.S. 229, 242 (1976)). If the disparate impact is clearly "unexplainable on grounds other than race," then a court may infer racial animus. *Arlington Heights,* 429 U.S. at 266. If not, the court must perform "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.*

Five factors guide this inquiry: "(1) the historical background of the decision, (2) the specific sequence of events leading up to the decision, (3) departures from the normal procedural sequence, (4) substantive departures, and (5) legislative history, especially where there are contemporary statements by members of the decision-making body." *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (en banc) (plurality opinion) (quoting *Overton v. City of Austin*, 871 F.2d 529, 540 (5th Cir. 1989)). These factors are not exhaustive, and the ultimate determination requires examining "the totality of the circumstances." *Veasey*, 830 F.3d at 230, 235. Awareness of a disparate impact on a protected

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

group is not enough: the law must be passed because of that disparate impact. *Pers. Adm'r of Mass.*, 442 U.S. at 279.

Here, the Court may not infer racial animus based on Plaintiffs' allegations that OLS disparately impacts Latino and "Black" individuals because the impact is explainable on grounds other than race: illegal aliens[5] are primarily committing criminal trespass in Kinney County, and they are also largely Latino or "Black" individuals. A similar equal protection claim was rejected in *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013). There, the city's special order called for increased enforcement of criminal trespassing and other statutes against day laborers. As the court recognized, the special order therefore disproportionately impacted Latino men since it was undisputed that day laborers are almost exclusively Latino men. But this fact did not demonstrate racial or ethnic animus sufficient to support an equal protection claim. *Id.* "Day laborers were not targeted based on who they were, but on what they did." *Id.* Therefore, the plaintiffs' equal protection claim based on race and national origin failed. *Id.* at 800–801. The same is true here: Plaintiffs were arrested because of what they did—criminally trespass—not because of their race or national origin.

### 4. Plaintiffs have failed to plead a plausible Section 1985 conspiracy claim.

To state a Section 1985 claim, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen

---

[5] State Defendants "understand [] that some may find the terms 'alien' and 'illegal alien' offensive, and [their] intent is certainly not to offend." *Texas v. United States*, --- F. Supp.3d ---, 2022 WL 2109204, at *2 n.2 (S.D. Tex. June 10, 2022). "These terms are used in this [motion] because they are contained in the statutes as well as official government documents quoted by the Supreme Court in a seminal immigration case." *Id.*; *see also* Matthew R. Salzwedel, *The Lawyer's Struggle to Write*, 16 Scribes Journal of Legal Writing 69, 76 (2015) ("[I]llegal alien has going for it both history and well-documented, generally accepted use.").

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Horaist v. Doctor's Hosp. of Opelousas,* 255 F.3d 261, 270 n.12 (5th Cir. 2001). "Plaintiffs who assert conspiracy claims under the civil rights statutes must plead the operative facts showing a prior illegal agreement, and bald allegations of an agreement do not suffice." *Way v. Mueller Brass Co.,* 840 F.2d 303, 308 (5th Cir. 1988) (quoting *Lynch v. Cannatella,* 810 F.2d 1363, 1369-70 (5th Cir. 1987), and *Arsenaux v. Roberts,* 726 F.2d 1022, 1023-24 (5th Cir. 1982)).

Here, Plaintiffs allege a bare-bones agreement between Defendants to engage in "*immigration enforcement.*" Dkt. 52 at ¶ 113. First, Plaintiffs do not plead the operative facts showing a prior illegal agreement among any of the Defendants. Second, and conveniently, Plaintiffs appear to argue that they must only show that the conspiracy was motivated by class-based animus, rather than racial animus. *Id.* at ¶ 112. However, the Fifth Circuit has made clear  that a claim under § 1985(3) *must* include race-based animus. *Cantu v. Moody,* 933 F.3d 414, 419 (5th Cir. 2019); *see also Bryan v. City of Madison, Miss.,* 213 F.3d 267, 276 (5th Cir. 2000) ("In this circuit, we require an allegation of a race-based conspiracy."). While Plaintiffs argue the program was constructed to target and arrest individuals based on "*national origin,* including immigration status," they fail to allege racial animus. *Id.* at ¶ 48. At most, Plaintiffs cite to purported racial profiling in arrest affidavits and narratives, but this does not demonstrate that the actions of McCraw or any of the other alleged conspirators were motivated by racial animus. The alleged facts do not create the plausible inference that McCraw's actions were motivated by a racially discriminatory purpose for the reasons described in the context of Plaintiffs' equal protection claim, or that he conspired with others to further a plan to deprive Plaintiffs of equal protection based on their race. As such, Plaintiffs' Section 1985 claim based on *national origin* and *immigration status* must be dismissed.

### 5.   Director McCraw is entitled to Qualified Immunity.

McCraw is entitled to qualified immunity because Plaintiffs have failed to show a violation of their constitutional rights or that his actions were objectively unreasonable in light of clearly established law.  Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (quotation omitted). A plaintiff seeking to defeat qualified immunity must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the *time* of the challenged conduct." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). It is well-established that a court may conduct the two-pronged inquiry in any order. *See Crostley v. Lamar Cnty., Tex.*, 717 F.3d 410, 422 (5th Cir. 2013) (citation omitted). "[C]learly established law should not be defined at a high level of generality," but must instead be "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017). A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). This inquiry "does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741.

As discussed above, McCraw did not violate the Plaintiffs' Fourth Amendment, Due Process, or Equal Protection rights, nor did he conspire with others to deprive the Plaintiffs of equal protection based on their race. As such, McCraw is entitled to qualified immunity on these claims. Regarding Plaintiffs' gender-based Equal Protection claim, Plaintiffs cannot meet their heavy burden in showing that qualified immunity does not bar their recovery because there was no clearly established law at the time Plaintiffs were arrested for criminal trespass. The Fifth Circuit has noted that this "second question—whether the officer violated clearly established law—is a doozy. The § 1983 plaintiff bears the burden of proof. And the burden is heavy: A right is clearly established only if relevant precedent

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

'has placed the . . . constitutional question beyond debate.'" *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (citing *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 309 (5th Cir. 2018). The pertinent question is whether "the state of the law at the time of the incident provided fair warning to the defendants that their alleged conduct was unconstitutional." *Kimbriel v. City of Greenville, Miss.*, 647 F. App'x 353, 356 (5th Cir. 2016) (quoting *Cass v. City of Abilene, Tex.*, 814 F.3d 721, 728 (5th Cir. 2016); *Tolan v. Cotton*, 572 U.S. 656 (2014)) (internal quotation marks omitted).

It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *City of Tahlequah v. Bond*, 142 S. Ct. 9, 11 (2021) (per curiam) (quotation omitted). Although the Supreme Court's case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 7–8 (2021) (per curiam). This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* Accordingly, McCraw is "entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Salazar*, 37 F.4th at 286 (citing *Kisela*, 138 S. Ct. at 1153). Moreover, Plaintiffs must identify precedent placing the constitutional question "beyond debate" such that the answer would immediately be apparent to every reasonable officer. *Id.* (citing *Rivas-Villegas*, 142 S. Ct. at 8); *see also Morrow*, 917 F.3d at 876–77.

Here, there is no precedent that squarely governs the facts at issue: men who are found to be criminally trespassing on private property. Plaintiffs cite to *one* Order granting relief sought in an Application for Pretrial Writ of Habeas Corpus. Importantly, this Order granted the defendant relief in December 2022, and Plaintiffs were arrested for criminal trespass in 2021 or early 2022. As such, McCraw could not have violated a clearly established right of which a reasonable official would have known, and he is entitled to qualified immunity.

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint

## V.     PRAYER

For all these reasons, Director McCraw respectfully asks the Court to dismiss the claims against him in his individual capacity.

Respectfully submitted,

JOHN SCOTT
Provisional Attorney General

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Acting Deputy Attorney General for Civil
Litigation

SHANNA MOLINARE
Chief, Law Enforcement Defense Division

/s/ Marlayna M. Ellis
MARLAYNA M. ELLIS
Texas Bar No. 24123448
marlayna.ellis@oag.texas.gov
Attorney-in-Charge

Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2080 / Fax (512) 370-9994

ATTORNEYS FOR DEFENDANTS
EXECUTIVE DIRECTOR BRYAN COLLIER
DIRECTOR STEVEN MCCRAW

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2023, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ Marlayna M. Ellis
MARLAYNA M. ELLIS
Assistant Attorney General

Defendant Steven McCraw's Motion to Dismiss Plaintiffs' Third Amended Complaint