IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, | § | |
|     *Plaintiffs, Individually and on* | § | |
|     *Behalf of the Class of Those* | § | |
|     *Similarly Situated,* | § | |
| | § | |
| v. | § | **Case No. 1:22-cv-00397-RP** |
| | § | |
| STEVEN MCCRAW in his individual | § | |
| capacity, *et al.*, | § | |
|     *Defendants.* | § | |

## DEFENDANT GOVERNOR ABBOTT'S SECOND MOTION TO DISMISS

Plaintiffs' complaint against Governor Abbott related to Operation Lonestar—claiming violations of the Fourteenth Amendment, Sixth Amendment, Fourth Amendment, and 42 U.S.C. § 1985—must be dismissed for a bevy of reasons. This Court lacks subject matter jurisdiction. Even if this Court had subject matter jurisdiction, Plaintiffs have failed to state a claim against Governor Abbott. And Governor Abbott is entitled to qualified immunity in any event.

At bottom, Plaintiffs complain that they have been illegally arrested, detained, and prosecuted by State Officials. But Governor Abbott does not arrest, detain, or prosecute *anyone*—including Plaintiffs and any putative class they purport to represent. That bare fact ends this case as to the Governor. Plaintiffs' complaint should be dismissed.[1]

## I.    BACKGROUND

The crisis at the southern border is well known. While U.S. Customs and Border Patrol encountered about 458,000 aliens at the border in FY2020, that number skyrocketed to over 1.7 million in FY2021 and nearly 2.4 million in FY2022.[2] In part because of this surge of aliens crossing the border, the number of "gotaways"—aliens who are detected crossing the border by "cameras or sensors" but "no one is found, or no agent is available to respond"—increased by 303 percent between FY2019 and FY2022, reaching more than 600,000 known gotaways in FY2022.[3] And

---

[1] Despite the Court's reminder to "lay out with clear and specific language which legal claims are brought against which Defendants," Dkt. 45 at 9, confusion persists in Plaintiffs' latest effort. Plaintiffs' complaint states that "Defendant Greg Abbott is the Governor of Texas and is sued in his individual capacity," Dkt. 52 at ¶ 24, but the complaint's caption names him as a defendant "in his individual and official capacities," *id.* at 1. The Governor understands that he is sued in his individual capacity. Insofar as Plaintiffs also bring official-capacity claims against the Governor, those claims are barred by sovereign immunity. Dkt. 15 at 3-4.

[2] Department of Homeland Security Office of the Inspector General, *Intensifying Conditions at the Southwest Border are Negatively Impacting CBP and ICE Employees Health and Morale*, at 6, available at https://tinyurl.com/yckad9sx.

[3] *Id.* at 10.

because "an unknown number of migrants evade detection," the actual number entering the United States illegally is "unknown."[4] In FY2023, which will not end until October, CBP has already encountered nearly 1.6 million aliens crossing the border.[5] Because Texas shares a land border with Mexico of over 1,200 miles, many of these aliens enter the United States in Texas.

To address the harms caused by the dramatic increase in the number of aliens illegally entering Texas, Governor Abbott launched Operation Lone Star in March 2021.[6] "The Operation integrates DPS with the Texas National Guard and deploys air, ground, marine, and tactical border security assets to high threat areas to deny Mexican Cartels and other smugglers the right to move drugs and people into Texas."[7] On May 31, 2021, Governor Abbott declared a disaster and "direct[ed] DPS to use available resources to enforce all applicable federal and state laws to prevent the criminal activity along the border."[8] "Since the launch of Operation Lone Star, the multi-agency effort has led to over 381,000 illegal immigrant apprehensions and more than 29,000 criminal arrests, with more than 26,000 felony charges reported."[9] In addition, "Texas law enforcement has seized over 418 million lethal doses of fentanyl during this border mission."[10]

## II.     The Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction.

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v.*

---

[4] *Id.*

[5] U.S. Customs and Border Protection, *Southwest Land Border Encounters*, available at https://www.cbp.gov/newsroom/stats/southwest-land-border-encounters.

[6] Dkt. 52 at ¶ 32 (citing OOG Press Release, available at https://tinyurl.com/yjd7r8j8).

[7] OOG Press Release, available at https://tinyurl.com/yjd7r8j8.

[8] Dkt. 52 at ¶ 35 (citing the Governor's proclamation).

[9] OOG, *Operation Lone Star Deploys New Border Security Deterrence Strategy*, available at https://tinyurl.com/5n92jckk.

[10] *Id.*

*City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citation omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Plaintiffs lack standing to sue Governor Abbott, their claims are in turn barred by *Younger* and claim preclusion, and their requests for equitable relief remain moot—as this Court previously held. Dkt. 45 at 7-8.

**A.      Plaintiffs lack standing to bring their claims against Governor Abbott.**

To establish standing, Plaintiffs must show: (1) an actual or imminent, concrete, and particularized "injury-in-fact"; (2) that is fairly traceable to the challenged action of the defendant; and (3) that is likely to be redressed by a favorable decision. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Plaintiffs cannot meet the traceability and redressability elements of standing against a state official "who is without any power to enforce the complained-of [rule]." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc). "Enforcement" means "compulsion or constraint." *City of Austin v. Paxton*, 943 F.3d 993, 1000 (5th Cir. 2019). Otherwise, enjoining an official does not stop the alleged violation. *See Air Evac EMS, Inc. v. TDI*, 851 F.3d 507, 520 (5th Cir. 2017).

Under this well-established standard, Plaintiffs lack standing to proceed against Governor Abbott. As the Fifth Circuit has explained, Tex. Gov't Code § 418.012 grants the Governor the power "to issue, amend or rescind an Executive Order" but "not the power to enforce it." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020) (internal quotation marks omitted); *see also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 400 (5th Cir. 2020). Plaintiffs have failed to establish traceability or redressability because, while Governor Abbott issues executive orders and proclamations, he does not arrest, detain, or prosecute any individual, including Plaintiffs.

The Governor does not *arrest* illegal aliens for violating Texas's criminal trespass laws,

Tex. Pen. Code § 30.05. The authority to arrest individuals suspected of violating Tex. Pen. Code § 30.05 is entrusted to *peace officers*, Tex. Code Crim. Pro. art. 2.12, not the Governor, Tex. Gov't Code § 418.012. Peace officers "*shall in every case* … interfere without warrant to prevent or suppress crime," and "arrest offenders without warrant *in every case* where the officer is authorized by law." Tex. Code Crim. Pro. art. 2.13(a)(1), (4) (emphases added). Executive orders cannot "affect the *jurisdiction* or *responsibilities* of police forces." Tex. Gov't Code § 418.003(4) (emphases added). In other words, Governor Abbott cannot appropriate the role that peace officers play under Texas law. Plaintiffs thus concede that they were arrested by state and local law enforcement—not by Governor Abbott. Dkt. 52 at ¶ 40.

The Governor likewise does not *detain* or otherwise jail aliens arrested on suspicion of violating Tex. Pen. Code § 30.05. Plaintiffs challenge their pretrial detention at the Briscoe and Segovia Units. Dkt. 52 at ¶¶ 1, 6-23, 63. The Briscoe and Segovia Units are overseen by the Texas Department of Criminal Justice. *See Morris v. Livingston*, 739 F.3d 740, 746 (5th Cir. 2014). TDCJ, in turn, is overseen by a Board—not by the Governor. Tex. Gov't Code § 492.001. Indeed, when Plaintiffs challenged their pretrial detention, they sent demand letters and brought mandamus proceedings against TDCJ officials—not the Governor. *See* Dkt. 52 at ¶¶ 6-18.

Plaintiffs attribute their pretrial detention in TDCJ to Governor Abbott because a press release claims credit for "arresting and jailing illegal migrants trespassing or committing other state crimes in Texas," and explains he "launched a second jail booking facility in Jim Hogg County in February 2022." Dkt. 52 ¶ 43. Yet that press release explains that "[t]he Governor *directed* the Texas Commission on Jail Standards and the Texas Commission on Law Enforcement to work with border counties to establish alternative detention facilities to ensure enough jail capacity for

individuals who are arrested for border-related criminal activities such as trespassing."[11] Drafting and issuing press statements about agencies that have been directed to enforce a proclamation is not the same as enforcing the proclamation. *Mi Familia Vota*, 977 F.3d at 467–68.

The Governor does not *prosecute* violations of Tex. Pen. Code § 30.05. Plaintiffs concede that they were prosecuted by Kinney County—again not the Governor. Dkt. 52 at ¶¶ 6-23, 66-69. Plaintiffs have not and cannot show that the Governor prosecutes violations of Tex. Pen. Code § 30.05. *See also Langan v. Abbott*, 518 F. Supp.3d 948, 954 (W.D. Tex. 2021) (Pitman, J.).

Because Governor Abbott did not arrest, detain, or prosecute Plaintiffs, whatever harms they allege are not fairly traceable to the Governor. And because Governor Abbott did not cause any of the harms Plaintiffs allege, they cannot be redressed by any order against him. Indeed, this Court recently held that bar owners lacked standing to sue the Governor over an executive order during the COVID-19 pandemic temporarily prohibiting people from visiting certain categories of bars. *6th St. Bus. Partners LLC v. Abbott*, No. 1:20-CV-706-RP, 2020 WL 4274589, at *1 (W.D. Tex. July 24, 2020). It did so because the plaintiffs' argument was foreclosed by Fifth Circuit precedent holding that Tex. Gov't Code § 418.012 does not empower the Governor to "enforce" executive orders. *Id*. at *3. In *6th Street*, the bar owners lacked standing to sue the Governor because it was TABC peace officers, not the Governor, who enforced the challenged executive order by visiting their establishments and commanding them to close. *Id.* So too here.

**B.    The Court Should Abstain Under *Younger*.**

Under *Younger*, "courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer

---

[11] Office of the Texas Governor, *Governor Abbott Opens Operation Lone Star Jail Booking Facility in Jim Hogg County*, available at https://tinyurl.com/46ev94t6 (emphasis added).

irreparable injury if denied equitable relief." *Younger v. Harris*, 401 U.S. 37, 43–44 (1971). The *Younger* principles of equity, comity, and federalism "counsel[] restraint against the issuance of injunctions against state officers engaged in the administration of the State's criminal laws in the absence of a showing of irreparable injury which is 'both great and immediate.'" *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974) (quoting *Younger*, 401 U.S. at 46). *Younger* applies to both injunctive and declaratory relief. *Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 86 (5th Cir. 1992).

Under *Younger*, federal courts abstain when there are parallel state proceedings involving "state criminal prosecutions, civil enforcement proceedings, and civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'n Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (internal quotation marks omitted). Abstention is required if: "(1) the federal proceeding would interfere with an ongoing state judicial proceeding; (2) the state has an important interest in regulating the subject matter of the claim; and (3) the plaintiff has an adequate opportunity in the state proceedings to raise constitutional challenges." *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). These requirements are satisfied here.

*First*, courts "look to the relief requested and the effect it would have on the state proceedings." *Bice*, 677 F.3d at 717. "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)). Here, the injunctive and declaratory relief sought by Plaintiffs would necessarily interfere with ongoing state judicial proceedings because it would require TDCJ or Kinney County to release criminal defendants from jail and refrain from future prosecution or face "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at

500. This is because "[t]he enforcement of any remedial order granting the relief requested would require federal courts to interrupt state proceedings to adjudicate allegations of asserted non-compliance with the order." *Tarter v. Hury*, 646 F.2d 1010, 1014 (5th Cir. 1981). Such compliance reviews would impose lengthy delays on the pending criminal prosecutions at issue, which *Younger* sought to prohibit. *See O'Shea*, 414 U.S.at 500*; Wallace v. Kern*, 520 F.2d 400, 401 (2d Cir. 1975). This judicial interference on behalf of the putative class is the very purpose of Plaintiffs' suit.

*Second*, the State of Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984); *Schall v. Martin*, 467 U.S. 253, 264 (1984) (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960); *Terry v. Ohio*, 392 U.S. 1, 22 (1968)).

*Third*, to overcome the presumption in favor of abstention, Plaintiffs must show that they have *no opportunity* to litigate the asserted federal issues in state court. *DeSpain*, 731 F.2d at 1178. Thus, "abstention is appropriate unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims*, 442 U.S. 415, 425–26 (1979); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987); *Gates v. Strain*, 885 F.3d 874, 880 (5th Cir. 2018). Here, Plaintiffs can challenge their arrests and continued detention under the Fourth Amendment and raise due process challenges under the Fourteenth Amendment in state criminal proceedings—be it in a pre-trial habeas petition under Article 11 of the Texas Code of Criminal Procedure, at an examining trial under Article 16.01 of the Texas Code of Criminal Procedure, or at a hearing to challenge the sufficiency of probable cause to arrest. Plaintiffs' challenges under the Sixth Amendment can be remedied by the exclusion of evidence, if appropriate. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (collecting cases). Accordingly, to the extent Plaintiffs are still involved in ongoing prosecutions, they have adequate opportunities to raise each of their challenges in the pending state proceedings.

*See Ex parte Sifuente*, 639 S.W.3d 842, 845 n.1 (Tex. App.—San Antonio 2022, pet. ref'd); *cf. State v. Curipoma*, 2022 WL 580872, at *1 (Tex. App.—Austin 2022, pet. granted); *Ex parte Aparicio*, 2023 WL 4095939, at *1 (Tex. App. June 21, 2023). This Court should abstain under *Younger*.

### C.     At Least Some of Plaintiffs' Claims are Precluded.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). Claims brought under 42 U.S.C. § 1983 are no exception. *Id.* at 84-85. Under Texas law, claim preclusion "bars causes of action that have already been fully adjudicated or that, with the use of diligence, could have been brought in the prior suit." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022). Claim preclusion requires "'(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action.'" *Id.* (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996)).

The face of Plaintiffs' complaint reveals that many of them have filed pre-trial writs of habeas corpus against defendants in this suit or have otherwise litigated the legality of their arrest or detention in state court. Dkt. 52 at 4-9. To the extent they have brought pre-trial habeas petitions against Defendants in this suit and obtained judgments, Plaintiffs could have brought the challenges they bring now with ordinary diligence. This precludes them from re-litigating those claims in a federal forum. *Rosetta*, 645 S.W.3d at 225.

### D.     Plaintiffs' Claims for Equitable Relief Remain Moot.

Mootness can be described as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue

throughout its existence (mootness)." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997). "[M]ootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004). Here, none of the Plaintiffs are currently incarcerated. Dkt. 26 at 5; Dkt. 52 at ¶¶ 8, 10, 15.[12] This Court previously ruled that this renders Plaintiffs' claims for equitable relief moot. Dkt. 45 at 7-8. It should do so again for exactly the same reasons.

### III.   The Complaint Should Also Be Dismissed for Failure to State a Claim.

Should this Court reach the merits, Plaintiffs claims must be dismissed. *See* FED. R. CIV. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

### A.   Plaintiffs' claims against Governor Abbott should be dismissed because they fail to allege his involvement in their arrest, detention, or prosecution.

Plaintiffs fail to allege personal involvement by Governor Abbott in their arrest, pretrial detention, and prosecution for violating Tex. Pen. Code § 30.05. Dkt. 52 ¶¶ 6-23. A claim of liability for violation of rights under § 1983 must be based upon allegations of personal responsibility. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) ("[A] plaintiff bringing a § 1983 action must specify the personal involvement of each defendant...."). The Supreme Court

---

[12] Plaintiffs allege (Dkt. 52 at ¶ 23) that "Cesar Galindo Escoto is currently incarcerated in Edinburg, Texas under OLS." But Mr. Escoto was a named plaintiff in the Second Amended Complaint, and Plaintiffs "concede[d] that no named Plaintiff remains in prison," Dkt. 45 at 8, in their response to motions to dismiss that complaint, *see* Dkt. 26 at 5.

squarely held in *Iqbal* that § 1983 claims against supervisory officials cannot be premised merely upon their knowledge of subordinates' actions. 556 U.S. at 677. Instead, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.*

Plaintiffs' Complaint fails to show any personal involvement by Governor Abbott in the alleged violations. This Court should dismiss each of Plaintiffs' claims against Governor Abbott because there is no allegation of his involvement in the decision to arrest, detain, or prosecute them for violating Tex. Pen. Code § 30.05. Dkt. 52 at ¶¶ 6-23.

**B.    Plaintiffs' equal protection claims should be dismissed.**

To plead an equal protection violation, a plaintiff must present factually supported allegations that "1) he was treated differently than persons similarly situated to him, and 2) that such treatment stemmed from discriminatory intent." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citation omitted).[13] Discriminatory intent requires a showing that "the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." *Id.* Plaintiffs assert equal protection claims based on race and national origin and sex; all fail.

**1.** Plaintiffs' claims based on race or national origin fail at the outset for several straightforward reasons. *First*, while there are 17 named Plaintiffs, Dkt. 52 at ¶¶ 6-23, none of the Plaintiffs alleged membership in a particular race. *Id.* And none identified as a particular color. *Id.* Plaintiffs cannot state an equal protection claim premised on race and color when they've failed— at the most basic level—to allege membership in these suspect classes. *See Sanchez v. Bexar Cnty. Sheriff's Off.*, No. 5:21-CV-18-DAE, 2021 WL 3598286, at *5 (W.D. Tex. Mar. 30, 2021)

---

[13] To the extent Plaintiffs seek to show an equal protection violation through disparate impact, that argument is unavailing. "The Constitution forbids only purposeful discrimination." *United States v. LULAC*, 793 F.2d 636, 646 (5th Cir. 1986).

(dismissing a hostile work environment claim where the plaintiff failed to allege membership in a protected class); *see also Angel v. La Joya Indep. Sch. Dist.*, 717 F. App'x 372, 379 (5th Cir. 2017).

*Second*, Plaintiffs' pleadings if anything affirmatively disprove their national-origin equal protection claims. Only four Plaintiffs allege national origins outside the U.S.A. *See id.* at ¶ 6 (Mexico), ¶ 11 (Mexico), ¶ 14 (Honduras), ¶ 17 (El Salvador). The remaining 13 Plaintiffs allegedly reside in the U.S.A. and do not identify as having foreign national origins. *Id.* at ¶¶ 7-10, 12-13, 15-16, 18-23. Plaintiffs cannot state an equal protection claim based on national origin when their factual allegations show that members inside and outside of the suspect class were treated the same. *Id.* at ¶¶ 6-23. *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988).

*Third*, "[t]o prevail on a[n] [equal protection] selective prosecution challenge, a [party] must first make a prima facie showing that he has been singled out for prosecution while others similarly situated and committing the same acts have not." *United States v. Greene*, 697 F.2d 1229, 1234 (5th Cir. 1983). Plaintiffs fail to state an equal protection claim based on race, color, and national origin because they have not identified *any* similarly situated individuals outside these suspect classes similarly trespassing on private property in Kinney County who were *not* arrested, detained, and prosecuted for violating Tex. Pen. Code § 30.05. *United States v. Armstrong,* 517 U.S. 456, 465 (1996) ("[T]he claimant must show that similarly situated individuals of different races were not prosecuted."). Plaintiffs seemingly concede that they cannot meet this element of an equal protection claim because "Kinney County has not charged any individual with criminal trespass, or any other charge, in the two years preceding the implementation of OLS." Dkt. 52 ¶95. Because there are no similarly situated comparators, there is no equal protection claim.

Plaintiffs' reliance on a study by a special interest group about the race of those arrested in Kinney County for violating Tex. Pen. Code § 30.05, Dkt. 52 ¶53, says nothing about those who

were *not* arrested, *see United States v. Bass*, 536 U.S. 862, 863–64 (2002) ("[R]aw statistics regarding overall charges say nothing about charges brought against similarly situated individuals." (emphasis omitted)). This is exactly the type of evidence that courts have found insufficient to support an equal protection claim. *See Armstrong*, 517 U.S. at 470; *United States v. Williams*, No. CR 20-55, 2020 WL 5960689, at *11 (E.D. La. Oct. 8, 2020).

*Fourth*, Plaintiffs' allegations of selective prosecution are wholly conclusory. Selective prosecution equal protection claims are disfavored because they (1) call for the imposition of judicial review upon the usually unfettered discretion exercised by the executive authority responsible for prosecuting criminal offenses and (2) necessarily begin with a presumption of good faith and constitutional compliance by prosecutors. *Armstrong*, 517 U.S. a 463–64; *Reno v. Am.-Arab Anti-Discrim. Comm.*, 525 U.S. 471, 489 (1999). In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Armstrong*, 517 U.S. at 464. Purposeful discrimination "involves a decisionmaker's undertaking a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Iqbal*, 556 U.S. at 676–77 (cleaned up). The facts must offer more than "intent as volition or intent as awareness of consequences." *Pers. Adm'r v. Feeney*, 442 U.S. 256, 279 (1979).

Plaintiffs cannot state an equal protection claim against Governor Abbott because their allegation that he acted with discriminatory intent is wholly conclusory. Dkt. 52 at ¶ 32. When evaluating the sufficiency of a complaint, courts do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. At Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Here, Plaintiffs can point to nothing showing discriminatory intent by

Governor Abbott past their conclusory assertion that OLS was instituted to deter illegal immigration. Dkt. 52 at ¶ 95. But immigration status is not a protected class under the Equal Protection Clause. *Plyler v. Doe*, 457 U.S. 202, 210 (1982). And the stated goal of OLS, enforcing laws in a "concentrated effort to allocate scarce resources to the most egregious violations," does not amount to an equal protection violation. *Moreno v. City of Brownsville,* Cause No. B-08-504, 2010 WL 11646748, at *8–9 (S.D. Tex. Sept. 16, 2010) (citing *Esmail v. Macrane*, 53 F.3d 176, 178–79 (7th Cir. 1995)). Even assuming OLS had disproportionately impacted certain groups, that does not demonstrate animus when the pleadings and attachments show that Plaintiffs (along with many other individuals) actually violated Texas's criminal trespass law in Kinney County. *See Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013).

**2.** Plaintiffs' allegations of sex-based discrimination also fail. Sex-based classifications are subject to intermediate scrutiny under the Equal Protection Clause. *Sessions v. Morales-Santana*, 582 U.S. 47, 59 (2017). Intermediate scrutiny requires the State to show that the challenged sex-based classification "serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives." *Tuan Anh Nguyen v. INS*, 533 U.S. 53, 60 (2001) (cleaned up).

*First*, Plaintiffs cannot state an equal protection claim when the Governor was not responsible for instituting a policy to only arrest and detain males. *E.g.*, *Ex parte Aparicio*, No. 04-22-00623-CR, 2023 WL 4095939, at *2 (Tex. App. June 21, 2023) (finding a DPS Captain issued guidance to only arrest and detain males). Defendant's threadbare allegation, without more, that "Defendants Coe, McGraw, Abbott, and Kinney County directed arrests" be made on the basis of sex , Dkt. 52 ¶95, does not satisfy the pleading standard set out in *Twombly* and *Iqbal. See Iqbal*, 556 U.S. at 678.

Even if Governor Abbott had instituted a policy to arrest only males violating Tex. Pen. Code § 30.05 in Kinney County (and he did not), Plaintiffs still fail to state a claim because such a policy is substantially related to the achievement of an important governmental objective—namely, sex-segregated correctional facilities. All Plaintiffs were jailed at the Briscoe and Segovia Units. Dkt. 52 ¶¶6-23. Both units are *male-only* facilities. *Aparicio*, 2023 WL 4095939 at *12. Sex segregation in correctional facilities is constitutional because it serves important and legitimate government interests, including improved discipline within penal facilities and increased safety for female inmates. *See Women Prisoners of D.C. Dep't of Corr. V. District of Columbia*, 93 F.3d 910, 926 (D.C. Cir. 1996) (citing *Pitts v. Thornburgh*, 866 F.2d 1450 (D.C. Cir. 1989)).

Plaintiffs' pleadings fail to allege that the Segovia or Briscoe Units had facilities to house females arrested for violating Tex. Pen. Code § 30.05. Plaintiffs, instead, attach an affidavit from a Sheriff in Maverick County attesting that his county jail could house *some* female detainees. Dkt. 52-4 at 1. But Plaintiffs were all arrested in Kinney County (not Maverick County), and the attachments to the affidavit show that there was an agreement with the counties to send *all* those arrested pursuant to OLS to the male-only Briscoe and Segovia Units. *Id.* at 2-4. The alleged policy of arresting and detaining only males passes intermediate scrutiny where the only TDCJ facilities available to house the arrestees were male-only.

This Court should hold that Plaintiffs have failed to allege a sex-based equal protection claim when the facilities to house those arrested in Kinney County for violating Tex. Pen. Code § 30.05 are male-only facilities.

### A.    Plaintiffs' due process claims should be dismissed.

"Substantive due process analysis is appropriate only in cases in which government arbitrarily abuses its power to deprive individuals of constitutionally protected rights," namely a

constitutionally protected liberty or property interest. *Simi Inv. Co., Inc. v. Harris Cnty.*, 236 F.3d 240, 249 (5th Cir. 2000); *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988) (internal quotation marks and citations omitted).

*First*, when equal protection claims "fully overlap" with substantive due process claims, the substantive due process claims should be dismissed. *Lindquist v. City of Pasadena*, 525 F.3d 383, 387 (5th Cir. 2008). Plaintiffs assert, without distinction, the same race, color, national origin, and gender-based violations of their Equal Protection and Due Process rights. *See* Dkt. 52 at ¶¶ 92-96. These due process claims should therefore be dismissed.

*Second*, Plaintiffs have not alleged a due process violation related to over-detention. Prisoners do have the right to be timely released from detention. *Crittindon v. LeBlanc*, 37 F.4th 177, 189 (5th Cir. 2022). But "timely release" is not the same as instantaneous release: it is reasonable for jailers to have some administrative delay in processing an inmate's discharge. *Id*. at 188. While courts have declined to define the amount of delay that is reasonable, the Fifth Circuit has held that a prisoner held for a month beyond the expiration of his sentence has been denied due process. *Id*.

Here, none of the Plaintiffs allege that they were detained for more than thirty days. Four Plaintiffs contend that they were over-detained for eight days. Dkt. 52 at ¶¶ 6-8, 15. The delay, however, was caused by the Kinney County Sheriff's Office failing to transfer the orders to the Val Verde Process Center. Dkt. 1-4 at 21-22. TDCJ released all four individuals on October 20, 2021, the same day they received the orders. *Id*.; *see* Attachment A. Two Plaintiffs, Dkt. 51 ¶¶9-10, contend that TDCJ over-detained them for one day. *Id*. Another Plaintiff contends that he was over-detained by TDCJ for 20 days. *Id*. at ¶16. Finally, one Plaintiff contends that TDCJ over-

detained him for 13 days. *Id.* at 18. These alleged over-detentions were brief and seemingly attributable to administrative delays.

Plaintiffs fail to state an over-detention claim against the Governor because they have not alleged any direct involvement by the Governor in their over-detention, or that he acted with deliberate indifference in the adoption of policies that resulted in the alleged violation. *See Crittindon*, 37 F.4th at 186. Plaintiffs' complaint nowhere alleges that Governor Abbott had notice or awareness of Plaintiffs' alleged over-detention. Dkt. 52. Nor have Plaintiffs alleged that the Governor is responsible for creating or adopting a detention policy that resulted in their over-detention. *See id.* at ¶¶ 6-23.

*Finally*, to the extent Plaintiffs are asserting a purely procedural due process claim, cast as a substantive due process claim, the proper mechanism to raise those due process concerns is through the state judiciary. *Cf. Younger*, 401 U.S. at 46 (emphasizing "the fundamental policy against federal interference with state criminal prosecutions," in which "even irreparable injury is insufficient" to warrant intrusion). The process afforded through the Texas criminal justice system *is* their due process—and some Plaintiffs appear to have used this process to obtain release. Dkt. 52 at ¶¶ 6-23.

### B.   Plaintiffs' Sixth Amendment claims should be dismissed.

"[T]he right to counsel guaranteed by the Sixth Amendment applies at the first appearance before a judicial officer at which a defendant is told of the formal accusation against him and restrictions are imposed on his liberty." *Rothgery v. Gillespie Cnty.,* 554 U.S. 191, 194–95 (2008) (citing *Brewer v. Williams*, 430 U.S. 387, 398–399 (1977)). "[T]he right to counsel granted by the Sixth Amendment means that a person is entitled to the help of a lawyer at or after the time that adversary judicial proceedings have been initiated against him …." *Estelle v. Smith*, 451 U.S. 454,

469 (1981). Once the right to counsel attaches, the accused "is entitled to the presence of appointed counsel during any 'critical stage' of the post attachment proceedings; what makes a stage critical is what shows the need for counsel's presence." *Rothgery*, 554 U.S. at 212. Not every event following the inception of adversary judicial proceedings constitutes a "critical stage." *E.g.*, *United States v. Ash*, 413 U.S. 300, 321 (1973). "Pretrial proceedings are 'critical,' then, if the presence of counsel is essential 'to protect the fairness of the trial itself.'" *Id.* at 323. Where the denial of the Sixth Amendment right to counsel results in no "demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Morrison*, 449 U.S. at 365.

The Supreme Court has declined to consider whether even a six-month delay in appointment of counsel would prejudice Sixth Amendment rights, nor considered what standards might apply. *Rothgery*, 554 U.S. at 213; *Lucio v. Davis*, 751 F. App'x 484, 490 n.3 (5th Cir. 2018) (per curiam). And in *Leachman v. Stephens*, the Fifth Circuit explained that the Supreme Court has never "held that speedy-trial concerns determinatively bear on the denial-of-counsel inquiry, *or* that a defendant suffers an independent violation of the right to counsel because he requests appointment of counsel not given to him until his arrival to answer pending state charges." 581 F. App'x 390, 400 (5th Cir. 2014) (emphasis added).

Plaintiffs do not allege that they are forced to engage in "critical stage" proceedings without the assistance of counsel. Dkt. 52 ¶¶101-104. Rather, they complain of the delay in appointment of counsel, alleging that "[a]ppointment of counsel after arrest is routinely delayed and ranges between 2 and 139 days." *Id.* at 75. Plaintiffs also complain that they did not receive counsel immediately after requesting representation, despite having no critical-stage proceedings where the right to counsel would be needed or harm would occur without such representation. *Id.*

at ¶¶6-23. A delay in the appointment of counsel, standing alone, does not present any demonstrable prejudice. The Court should dismiss Plaintiffs' Sixth Amendment claims because they do not allege a Sixth Amendment violation, much less that Governor Abbott had any role to play in the appointment of counsel.

### C.    Plaintiffs' Fourth Amendment claims should be dismissed.

To establish a violation of the Fourth Amendment right to be free from false arrest and from unreasonable seizure, a plaintiff must show that there was no probable cause for their arrest. *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004). If probable cause exists, the claim fails. *See Clark v. Thompson*, No. 20-10568, 850 F. App'x 203, 210 (5th Cir. Mar. 9, 2021). "To determine whether probable cause existed for an arrest, the court examines the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause." *Loftin v. City of Prentiss*, 33 F.4th 774, 780 (5th Cir. 2022) (internal quotations omitted). Critically, "'probable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Loftin*, 33 F.4th at 780 (quoting *Illinois v. Gates*, 480 U.S. 213, 243 n.13 (1983)). "Thus, probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

The affidavits attached to Plaintiffs' Complaint affirmatively show that arresting officers had probable cause to believe the individuals arrested committed criminal trespass. Dkt. 52-5 at 4-17. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Plaintiffs do not deny that they violated Tex. Pen. Code § 30.05. Dkt. 52 ¶¶6-23. This Court should conclude that Plaintiffs have

not stated a Fourth Amendment claim, and certainly not against Governor Abbott, where the affidavits show that probable cause existed for their arrest and imprisonment.

### D.      Plaintiffs' conspiracy claim should be dismissed.

To state a § 1985 claim, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001).

Plaintiffs' complaint does not create the plausible inference that Governor Abbott was motivated by a racially discriminatory purpose, nor that he conspired with others to further a plan to deprive Plaintiffs of equal protection based on race. Plaintiffs' conclusory allegations of an undefined agreement are insufficient to plausibly allege a conspiracy. Dkt. 52 at ¶ 113; *Twombly*, 550 U.S. at 555-57 (explaining that a "naked assertion of conspiracy" is insufficient).

## IV.     Governor Abbott is Entitled to Qualified Immunity as to Each of Plaintiffs' Claims.

Even if the Court concludes that it has jurisdiction and that Plaintiffs' claims should not be dismissed on the merits, Governor Abbott is entitled to qualified immunity. Qualified immunity "shields government officials from liability when they are acting within their discretionary authority and their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a state official has asserted qualified immunity, the burden shifts to the plaintiff to show that qualified immunity does not bar her recovery. *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir.

2010). In order to overcome qualified immunity, the Plaintiff must not only identify a constitutional or statutory violation, but also must also show the violation was clearly established. *Flores v. City of Palacios,* 381 F.3d 391, 394–95 (5th Cir. 2004). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.*

Here, Governor Abbott is entitled to qualified immunity. Plaintiffs have failed to state viable claims for which relief can be granted against Governor Abbott, which demonstrates his entitlement to qualified immunity. Moreover, qualified immunity is a defendant-specific inquiry, and Plaintiffs must plead facts substantiating that each defendant, "through the official's own individual actions, has violated the Constitution." *See Iqbal*, 556 U.S. at 676; *see also Marlowe v. LeBlanc*, 2022 WL 2101523, at *2 (5th Cir. June 10, 2022) (per curiam). Plaintiffs seek relief based primarily on Governor Abbott's press releases and Tweets. *See* Dkt. 52 at ¶ 43. Plaintiffs have not and cannot show that every reasonable official in the Governor's position would know that engaging in these alleged actions violated Plaintiffs' constitutional rights. Indeed, to pierce qualified immunity, Plaintiffs are required to point to "a case or body of relevant case law in which an officer acting under similar circumstances was held to have violated the Constitution." *Batyukova v. Doege*, 994 F.3d 717, 726 (5th Cir. 2021) (cleaned up). A "generalized proposition of law is not enough." *Rogers v. Jarrett*, 63 F.4th 971, 977 (5th Cir. 2023). Plaintiffs have adduced no such precedent. For these reasons, this Court should find that Governor Abbott is entitled to qualified immunity.

## V.   Prayer

For all these reasons, Governor Abbott respectfully asks the Court to dismiss the claims against capacity and for any further relief to which he is justly entitled.

Respectfully submitted,

**John Scott**
Provisional Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Acting Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Deputy Chief, General Litigation Division

**RYAN KERCHER**
Deputy Chief, General Litigation Division

*/s/ Johnathan Stone*
**JOHNATHAN STONE**
Assistant Attorney General
Texas State Bar No. 24071779

Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4196
Facsimile: (512) 320-0667
Johnathan.Stone@oag.texas.gov

**ATTORNEYS FOR DEFENDANT**

## <u>CERTIFICATE OF SERVICE</u>

I certify that that on June 30, 2023, this document was filed electronically via the Court's

CM/ECF system, causing electronic service upon all counsel of record.

*/s/Johnathan Stone*

J<small>OHNATHAN</small> S<small>TONE</small>

Assistant Attorney General
