IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS; MELVIN AMADOR RODAS; IVAN RUANO NAVA; NOLIS LEYVA-GONZALEZ; JOSE CARLOS GOMEZ-COLORADO; JOSE LUIS DOMINGUEZ-ROJAS; MELVIN AMAYA ZELAYA; JESUS CURIPOMA; OSCAR SERRANO MARTINEZ; CHRISTIAN IVAN RUIZ-RODRIGUEZ; ISRAEL BAYLON ARELLANO; JOSE LOPEZ LOZANO; MIGUEL LOPEZ LOZANO; FRANCISCO VILLALPANDO RAMOS; CESAR GALINDO ESCOTO, Plaintiffs, Individually and On Behalf of the Class of Those Similarly Situated, | § § § § § § § § § § § § § § § § § § | |
| VS. | § § | Case No. 22-397 |
| STEVEN MCCRAW in his individual capacity; GREG ABBOTT in his individual and official capacities; BRYAN COLLIER in his individual capacity; BRAD COE in his individual capacity, and KINNEY COUNTY, TEXAS Defendants. | § § § § § § § | |

PLAINTIFF'S RESPONSE TO DEFENDANTS BRAD COE, IN HIS INDIVIDUAL
CAPACITY AND KINNEY COUNTY, TEXAS' SECOND MOTION TO DISMISS

NOW COMES Plaintiffs, and files this its Response to Defendants BRAD COE, IN HIS INDIVIDUAL CAPACITY AND KINNEY COUNTY, TEXAS' MOTION TO DISMISS and in support thereof Plaintiffs would show the Court as follows:

TABLE OF CONTENTS

A.   Standard of Review ............................................................................................................. 1
B.   Illegal Arrest ....................................................................................................................... 1
    a)  No Probable Cause ....................................................................................................... 3
    b)  False Probable Cause Affidavits .................................................................................. 6
C.   Sixth Amendment Denial of Counsel ................................................................................ 6
D.   Overincarceration ............................................................................................................... 7
E.   Failure to Train .................................................................................................................. 9
F.   § 1983 Conspiracy ............................................................................................................ 11
G.   § 1985 Conspiracy ............................................................................................................ 12
H.   No Qualified Immunity ................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387,  132 S. Ct. 2492,  183 L. Ed. 2d 351 (2012). ......... passim
*Ashcroft v. Iqbal*, 566 U.S. 662 (2009). ................................................................................................ 1
*Baker v. McCollan*, 443 U.S. 137 (1979). ............................................................................................ 6
*Bd. of Cty. Comm'rs of Bryan Cty.,Okl. v. Brown*, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). ........................................................................................................................... 10
*Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 738 (S.D. Tex. 2019). ....................................... 7
*Caliste v.Cantrell*, 329 F.Supp.3d 296 (E.D. La. 2018) ................................................................. 7
*Cinel v. Connick*, 15 F.3d 1338 (5th Cir. 1994)............................................................................... 11
*City of Canton v. Harris*, 489 U.S. 378 (1989)............................................................................... 11
*City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432,  105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)............................................................................................................................................ 9
*City of El Cenizo v. Texas,* 890 F.3d 164 (5th Cir. 2018).......................................................... 2, 5
*Coleman v. Alabama*, 399 U.S. 1, 90 S. Ct. 1999, 26 L. Ed. 2d 387 (1970). ................................ 7
*Estes v. State*, 546 S.W.3d 691 (Tex. Crim. App. 2018) ................................................................ 9
*Hamilton v. Alabama*, 368 U.S. 52, 82 S.Ct. 157,  7 L.Ed.2d 114 (1961).................................... 7
*Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007)......................................................................... 7
*Hines v. Davidowitz,* 312 U.S. 52 (1941). ......................................................................................... 4
*Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964) ......................... 7
*McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991).............................. 6
*Meledres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012)....................................................................... 2, 5
*Nieves v. Bartlett*, 139 S. Ct. 1715, 204 L. Ed. 2d 1 (2019). .......................................................... 9
*Plyler v. Doe*, 457 U.S. 202, 102 S. Ct. 2382, 72 L. Ed. 2d 786 (1982)........................................ 9
*Santos v. Frederick County Board of Commissioners*, 725 F.3d 451 (4th Cir. 2013)............... 2, 5
*Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). ................................................................. 13
*United States v. Wade, supra*; *Gilbert v. California, supra*. Cf. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) ............................................................................. 7
*Whisenant v. City of Haltom*, 106 F. App'x 915 (5th Cir. 2004) (per curiam) ............................ 11
*White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) ..................................... 7
*Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769,  135 L. Ed. 2d 89 (1996). ..................... 9
*Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018)............................................................................. 6

**Statutes**
42 U.S.C. § 1983.................................................................................................................................... 12
42 U.S.C. § 1985(3), ...................................................................................................................... 12, 13
8 U.S.C. § 1357.............................................................................................................................. 10, 11

**Rules**
Fed. R. Civ. P. 12(b)(6).......................................................................................................................... 1

**Regulations**
8 CFR § 241.2(a)(1)........................................................................................................................... 1, 4

A.    Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint need only give fair notice of a "plausible" claim and grounds for it. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009).

B.    Illegal Arrest

Defendant characterizes this as a "Fourth Amendment" claim. However, Plaintiffs pleaded conduct by Defendants in violation of the Fourth and Fourteenth Amendment (equal protection) rights.

"If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012). The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process. For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention "pending a decision on whether the alien is to be removed from the United States." *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012). And if an alien is ordered removed after a hearing, the Attorney General will issue a warrant. See 8 CFR § 241.2(a)(1). In both instances, the warrants are executed by federal officers who have received training in the enforcement of immigration law. See §§ 241.2(b), 287.5(e)(3).

In the *Arizona* opinion, the Court examined a section of an Arizona law (Section 6) which attempted to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers. Under state law,

1

officers who believe an alien is removable by reason of some "public offense" would have the power to conduct an arrest on that basis regardless of whether a federal warrant has issued or the alien is likely to escape. This state authority could be exercised without any input from the Federal Government about whether an arrest is warranted in a particular case. This would allow the State to achieve its own immigration policy. The result could be unnecessary harassment of some aliens (for instance, a veteran, college student, or someone assisting with a criminal investigation) who federal officials determine should not be removed.  *Arizona*, 567 U.S. at 408. "This is not the system Congress created." *Id*.

The Fifth Circuit acknowledges that "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law," *City of El Cenizo,* 890 F.3d at 189. (citing *Santos v. Frederick County Board of Commissioners*, 725 F.3d 451, 465 (4th Cir. 2013).  "Thus, the seizure in *Santos* violated the Fourth Amendment because the officers detained Santos "before dispatch confirmed with ICE that the warrant was active." *City of El Cenizo,* 890 F.3d at 189.  The Fifth Circuit cited with approval *Meledres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) for the proposition that unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" was a constitutional violation and noted that in *Meledres*, "as in *Santos*, there was no federal request for assistance before the seizure."  890 F.3d at 189.

It is clear that the OLS process of unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" is a violation of the Fourth Amendment.  In the case *sub judice*: Plaintiff Martinez was "located and detained" as a "migrant." (emphasis added). He was arrested, along with five others, on the Union Pacific Railway.  There

2

were three males and three females. The three female "trespassers" were transported to the Border Patrol Station in Brackettville. The three males were all arrested and sent to the Val Verde Processing Center. *Id*. The probable cause affidavit for Plaintiff Barcenas states that a state trooper was "notified by DPS SOG of nine <u>migrants</u> trespassing on the Dos Angeles Ranch." *Id*. (emphasis added). The probable cause affidavit charging Plaintiff Becerra reflects that that he was also one of the "nine <u>migrants</u>" on the Dos Angeles Ranch. *Id*., (emphasis added). Plaintiff Santana was also identified as one of the "nine <u>migrants</u>." The probable cause affidavit charging Plaintiff Rodas with trespass reflects that troopers "had apprehended a group of <u>Undocumented Persons</u> (UDPs)" on a ranch...The defendant was one of the UDP's in the group." *Id*. (emphasis added). Plaintiff Pineda was also identified as one of the <u>Undocumented Persons</u> in the group. *Id*. The probable cause affidavit charging Plaintiff Colorado with trespassing identifies him as one of two "<u>Illegal Aliens</u>," stating that the "landowners wished to pursue trespassing charges on the <u>Aliens</u>." *Id*. (emphasis added). "There were two civilians armed with long rifles and two <u>illegal aliens</u> lying prone with their hands on their heads." *Id*. (emphasis added). The probable cause affidavits for these Plaintiffs reflect detention and arrest based upon immigration status.

    a) No Probable Cause

"If the police stop someone based on nothing more than possible removability, the usual predicate for an arrest is absent." *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012). The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process. For example, the Attorney General can exercise discretion to issue a warrant for an alien's arrest and detention "pending a decision on whether the alien is to be removed from the United States." *Arizona v. United States*, 567 U.S. 387, 407, 132 S. Ct. 2492, 2505, 183 L. Ed. 2d 351 (2012). And if an alien is ordered removed after a hearing,

the Attorney General will issue a warrant. See 8 CFR § 241.2(a)(1). In both instances, the warrants are executed by federal officers who have received training in the enforcement of immigration law. See §§ 241.2(b), 287.5(e)(3).

In the *Arizona* opinion, the Court examined a section of an Arizona law (Section 6) which attempted to provide state officers even greater authority to arrest aliens on the basis of possible removability than Congress has given to trained federal immigration officers. Under state law, officers who believe an alien is removable by reason of some "public offense" would have the power to conduct an arrest on that basis regardless of whether a federal warrant has issued or the alien is likely to escape. This state authority could be exercised without any input from the Federal Government about whether an arrest is warranted in a particular case. This would allow the State to achieve its own immigration policy. The result could be unnecessary harassment of some aliens (for instance, a veteran, college student, or someone assisting with a criminal investigation) who federal officials determine should not be removed. *Arizona*, 567 U.S. at 408. "This is not the system Congress created." *Id*.

Congress has put in place a system in which state officers may not make warrantless arrests of aliens based on possible removability except in specific, limited circumstances. *Id*. at 410, citing *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941).  In *Hines*, the Court noted that an important consideration in assessing the unconstitutionality of the state's exercise of authority in that case was that the "legislation deals with the rights, liberties, and personal freedoms of human beings, and is in an entirely different category from state tax statutes or state pure food laws regulating the labels on cans." *Id*. at 68.  Clearly, the instant case deals with the rights, liberties and personal freedoms of human beings, putting it into a category of higher scrutiny.

The Fifth Circuit acknowledges that "absent express direction or authorization by federal statute or federal officials, state and local law enforcement officers may not detain or arrest an individual solely based on known or suspected civil violations of federal immigration law," *City of El Cenizo,* 890 F.3d at 189. (citing *Santos v. Frederick County Board of Commissioners*, 725 F.3d 451, 465 (4th Cir. 2013). "Thus, the seizure in *Santos* violated the Fourth Amendment because the officers detained Santos "before dispatch confirmed with ICE that the warrant was active." *City of El Cenizo,* 890 F.3d at 189. The Fifth Circuit cited with approval *Meledres v. Arpaio*, 695 F.3d 990, 1000 (9th Cir. 2012) for the proposition that unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" was a constitutional violation and noted that in *Meledres*, "as in *Santos*, there was no federal request for assistance before the seizure." 890 F.3d at 189.

In the case *sub judice*, it is clear that the OLS process of unilateral detention "based solely on reasonable suspicion or knowledge that a person was unlawfully present in the United States" is a violation of the Fourth Amendment. In the case *sub judice*, Plaintiff Martinez was "located and detained" as a "<u>migrant</u>." (emphasis added). He was arrested, along with five others, on the Union Pacific Railway. There were three males and three females. The three female "trespassers" were transported to the Border Patrol Station in Brackettville. The three males were all arrested and sent to the Val Verde Processing Center. *Id*. The probable cause affidavit for Plaintiff Barcenas states that a state trooper was "notified by DPS SOG of nine <u>migrants</u> trespassing on the Dos Angeles Ranch." *Id*. (emphasis added). The probable cause affidavit charging Plaintiff Becerra reflects that that he was also one of the "nine <u>migrants</u>" on the Dos Angeles Ranch. *Id*., (emphasis added). Plaintiff Santana was also identified as one of the "nine <u>migrants</u>." The probable cause affidavit charging Plaintiff Rodas with trespass reflects that troopers "had apprehended a group of

5

Undocumented Persons (UDPs)" on a ranch…The defendant was one of the UDP's in the group." *Id*. (emphasis added). Plaintiff Pineda was also identified as one of the Undocumented Persons in the group. *Id*. The probable cause affidavit charging Plaintiff Colorado with trespassing identifies him as one of two "Illegal Aliens," stating that the "landowners wished to pursue trespassing charges on the Aliens." *Id.* (emphasis added). "There were two civilians armed with long rifles and two illegal aliens lying prone with their hands on their heads." *Id*. (emphasis added). The probable cause affidavits for these Plaintiffs reflect detention and arrest based upon immigration status.

        b)   False Probable Cause Affidavits

Under the Fourth Amendment, "a fair and reliable determination of probable cause" must be provided "as a condition for any significant pretrial restraint of liberty." *Baker v. McCollan*, 443 U.S. 137, 142 (1979). "The Fourth Amendment is the appropriate constitutional basis for [a person's] claim that he was wrongfully arrested due to the knowing or reckless misstatements and omissions in [probable cause] affidavits." *Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018). Fourth amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth and (2) the allegedly false statement is necessary to the finding of probable cause. *Id.* at 494.

C.     Sixth Amendment Denial of Counsel

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right … to have the Assistance of Counsel for his defense." In *McNeil v. Wisconsin,* 501 U.S. 171, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991), the Supreme Court explained that the right arises when a person is charged, at a preliminary hearing, at an indictment, or arraignment." *Id.,* at 175, 111 S. Ct. 2204 (citations and internal quotation marks omitted). Plaintiffs and Class Members have been

6

deliberately denied their Sixth Amendment right to counsel through failure to advise them of such right; refusal to allow them to contact counsel; and/or being forced to waive such right. These violations of their constitutional rights were deliberate and ongoing. As pleaded, individuals, including Plaintiffs, are, and have been, deprived of counsel at critical stages that deprived them of the ability to obtain a bond reduction or make any change in their bond status, obtain an earlier release, to file any motions, obtain any discovery and/or information to support their defenses or to obtain any timely proceedings. "The [Supreme] Court has held that 'critical stages' include the pretrial type of arraignment where certain rights may be sacrificed or lost, *Hamilton v. Alabama*, 368 U.S. 52, 54, 82 S.Ct. 157, 158—159, 7 L.Ed.2d 114 (1961), see *White v. Mary*land, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963), and the pretrial lineup, *United States v. Wade, supra*; *Gilbert v. California, supra. Cf. Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), where the Court held that the privilege against compulsory self-incrimination includes a right to counsel at a pretrial custodial interrogation. See also *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)." *Coleman v. Alabama*, 399 U.S. 1, 7, 90 S. Ct. 1999, 2002, 26 L. Ed. 2d 387 (1970). The *Coleman* Court specifically found that bail hearings were "critical stages." *Id*. "There can really be no question that an initial bail hearing should be considered a critical stage of trial. *See Higazy v. Templeton*, 505 F.3d 161, 172 (2d Cir. 2007) ("a bail hearing is a critical stage of the State's criminal process") (internal quotation marks and citation omitted); *Caliste*, 329 F.Supp.3d at 314 ("the issue of pretrial detention is an issue of significant consequence for the accused")." *Booth v. Galveston Cnty.*, 352 F. Supp. 3d 718, 738 (S.D. Tex. 2019).

D.    Overincarceration

Plaintiffs have pleaded violations of their Fourth, Eighth and Fourteenth Amendment Equal Protection rights, including against the County and Coe individually.

Addressing the "stop and show me papers" Arizona law (see sec. V(A), *supra*, incorporated by reference), the Supreme Court noted that "[s]ome who support the challenge to § 2(B) argue that, in practice, state officers will be required to delay the release of some detainees for no reason other than to verify their immigration status. Detaining individuals solely to verify their immigration status would raise constitutional concerns." 567 U.S. at 411 (citations omitted). "[I]t would disrupt the federal framework to put state officers in the position of holding aliens in custody for possible unlawful presence without federal direction and supervision." *Id*.  The program put in place by Congress does not allow state or local officers to adopt this enforcement mechanism. *Id.* at 413.

The Class Members in this case, including the named Plaintiffs, were subjected to an entirely separate criminal justice system based upon their race/color and/or immigration status. They were "processed" through a "processing center" established solely for OLS/immigrant arrestees and placed into state jail facilities re-opened specifically and only for OLS immigrant arrestees.  There, they are subjected to continuing unconstitutional over-incarceration as described in the categories set forth in section VI(B), *supra*, incorporated by reference.  The Defendants' knowing and intentional refusal to release arrestees who are legally entitled to release violates the Fourth Amendment and, in some cases of lengthy delays, the Eighth Amendment.

Furthermore, the over incarceration of arrested immigrants is related, at least in part, to their color/race and/or immigrant status and, as such, violates the Equal Protection Clause. "The United States Supreme Court has interpreted the Fourteenth Amendment's Equal Protection Clause as 'essentially a direction that all persons similarly situated should be treated alike.' " *Estes v.*

8

*State*, 546 S.W.3d 691, 697 (Tex. Crim. App. 2018) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).  In *Arizona*, the Supreme Court noted the "constitutional safeguards" that applied to immigration enforcement, including that officers "may not consider race, color or national origin" in implementing its laws.  567 U.S. at 411.  The Equal Protection Clause was intended as a restriction on state legislative action inconsistent with elemental constitutional premises. "Thus we have treated as presumptively invidious those classifications that disadvantage a 'suspect class.'" *Plyler v. Doe*, 457 U.S. 202, 216–17, 102 S. Ct. 2382, 2394–95, 72 L. Ed. 2d 786 (1982).  "Everyone accepts that a detention based on race, *even one otherwise authorized by law*, violates the Fourteenth Amendment's Equal Protection Clause." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1731, 204 L. Ed. 2d 1 (2019).  The Constitution "prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996).

The implementation of the OLS system has resulted in systemic discrimination on the basis of color, race and/or national origin, including with respect to the refusal to release arrestees detained pursuant to the OLS system.  Those that are being over-detained are all Hispanic males detained based on their race/skin color and arrested based on their national origin/immigration status.

E.      Failure to Train

When city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407, 117 S. Ct. 1382, 1391, 137 L. Ed. 2d

9

626 (1997). Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* In the instant case, Kinney County is, and has been, aware—through its policymaker, Brad Coe—of the necessity to train its law enforcement officers regarding the constitutional rights involved in arresting and incarcerating immigrants. Federal law specifically requires that any officer engaging in immigration-officer functions must be specially trained. 8 U.S.C. § 1357, "Power of immigration officers and employees," specifies immigration-officer functions and describes circumstances under which state and local officers can perform those functions only with specific training. Under Section 1357, immigration-officer functions include the power "to interrogate" and "to arrest" aliens without a warrant. *Id*. § 1357(a)(1)-(2). Section 1357 further provides that states and political subdivisions can enter into written agreements with the Federal Government, so that state and local officers can perform immigration-officer functions. *Id*. § 1357(g). These agreements require that local officers must be "determined by the Attorney General to be qualified"; that they receive appropriate training "regarding the enforcement of relevant Federal immigration laws"; that their powers and duties are set forth in a written agreement; that they "adhere to Federal law relating to that function" and that they are "subject to the direction and supervision of the Attorney General." *Id*. § 1357(g)(1)-(5) (emphasis added). Kinney County has chosen to engage in immigration-officer functions without training its officers and in violation of section 1357. The result has been ongoing and continuing violations of the constitutional rights of the immigrants as described herein. Brad Coe, in his affidavit acknowledges that, as of July 8, 2021 (the date of the affidavit), "[t]he overwhelming majority of detainees that [his] office has arrested are either illegal aliens or involved in activity relating to illegal immigration." Sheriff

Coe was a Border Patrol officer for thirty years before being elected Sheriff of Kinney County and, as such, was aware of the training that was required of his officers before engaging in an acknowledged plan to arrest immigrants. Coe's deliberate decision not to follow section 1357 or to provide training to his officers not to target individuals based on race, color, national origin or immigration status "is the functional equivalent of a decision by the city itself to violate the Constitution." *Canton,* 489 U.S., at 395, 109 S. Ct. 1197. This lack of training and failure of supervision is the direct and moving force of the violations of the rights of the named Plaintiffs and the Class Members. If Coe's officers were trained to follow federal immigration law and policies, including constitutional restraints relating to probable cause and equal protection, they would not be making arrests based upon color/race and/or immigration status.

Certainly, Plaintiffs' pleading has established a pattern of conduct by Kinney County officers intentionally violating individual rights by targeting them and arresting them based on race, color, national origin and/or immigration status, putting those same individuals into a separate criminal system based on those same classifications, denying them counsel and refusing to release them when they should be released. This is conduct that they know violates constitutional rights and is, at the very least, deliberately indifferent. Thus, both Coe individually and Kinney County are liable for the harms and damages sustained by the Plaintiffs and Class Members.

F.   § 1983 Conspiracy

"To state a claim for conspiracy under § 1983, a plaintiff must allege the existence of (1) an agreement to do an illegal act and (2) an actual constitutional deprivation." *Whisenant v. City of Haltom*, 106 F. App'x 915, 917 (5th Cir. 2004) (per curiam) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)). In the instant case, the agreement between Abbott, McCraw and Coe

to engage in "immigration enforcement" is clear and on record. Plaintiffs have pleaded substantial facts supporting such an agreement, including but not limited to the social media postings and press releases by and from all three individuals that have been ongoing since the inception of OLS. It is also clear that they agreed to implement the OLS immigration enforcement without the involvement of the Federal Government and based upon observed race/color and/or immigration status in violation of the United States Constitution. This agreement to implement OLS in such a manner resulted in violations of the constitutional rights of Plaintiffs and the Class Members. The rights in question were clearly established at the time that OLS was implemented and the actions taken in concert with such agreement/implementation were objectively unreasonable.

The agreement between Coe and Collier to deny detainees the right to counsel and to refuse to release those who are lawfully entitled to release is also in violation of the rights of detainees under the United States Constitution and resulted in the deprivation of such rights to Plaintiffs and the Class Members. The rights in question were clearly established at the time of the deprivations and the conduct of Coe and Collier is, and has been, objectively unreasonable. Thus, the Defendants are liable to Plaintiffs and the Class Members under 42 U.S.C. § 1983.

G.    § 1985 Conspiracy

To state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege: (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. In so doing, the plaintiff must show that the conspiracy was motivated by a class-based animus. The conspiracy between Abbott, McCraw and Coe (and others) to implement OLS was specifically for the purpose of depriving a class of persons of the equal

protection of the laws. Plaintiffs have pleaded substantial facts supporting such an agreement, including but not limited to the social media postings and press releases by and from all three individuals that have been ongoing since the inception of OLS. It is clear that arresting and incarcerating someone on the basis of their race/color and/or immigration status is a violation of equal protection. Defendants acted in furtherance of the conspiracy by implementing OLS in the manner that directly resulted in the injuries to Plaintiffs and the Class Members described herein. Thus, Defendants are liable pursuant to 42 U.S.C. § 1985.

The agreement between Coe and Collier to deny detainees the right to counsel and to refuse to release those who are lawfully entitled to release is also in violation of the rights of detainees under the United States Constitution and resulted in the deprivation of such rights to Plaintiffs and the Class Members. The rights in question were clearly established at the time of the deprivations and the conduct of Coe and Collier is, and has been, objectively unreasonable. Thus, the Defendants are liable to Plaintiffs and the Class Members under 42 U.S.C. § 1985.

H.   No Qualified Immunity

The qualified immunity analysis addresses whether the Plaintiffs have alleged a violation of a constitutional right and, if so, whether the Defendant's conduct was objectively reasonable under clearly established law at the time the conduct occurred. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001). Defendant Coe attempts to cherry pick a couple of factual allegations out of over 80 pages of factual allegations. Plaintiffs' allegations include Coe's conduct in training and supervising his deputies to intentionally violate the rights of immigrants—hundreds of immigrants, and it is ongoing. Coe trains and supervises his deputies to target immigrants based on race, national origin and immigration status. Coe trains his deputies to force immigrants onto private land so they can be charged with trespassing. Coe trains and supervises his deputies to

intentionally delay or deprive immigrants of the right to counsel. Coe trains and supervises his deputies to refuse to release immigrants. No reasonable sheriff would ever train and supervise his or her deputies to intentionally violate constitutional rights, particularly systemically. The complaint does not solely assert claims on behalf of the named Plaintiffs, but includes a putative class of people whose rights have been violated and are being violated on an ongoing basis. Defendant Coe is not entitled to qualified immunity.

FOR THE REASONS STATED, Plaintiffs pray that Defendant's Motion to Dismiss be denied, and for such further relief as justice may require.

Respectfully submitted,

s/Susan E. Hutchison
Texas Bar No. 10354100
sehservice@FightsforRight.com

S. Rafe Foreman
Texas Bar No. 07255200
srfservice@fightsforright.com

HUTCHISON & FOREMAN, PLLC
1312 Texas Ave. Suite #101
Lubbock, Texas 79401
Phone:  806-491-4911
Fax:  806-491-9911

Angelica Cogliano, SBN 24101635
Addy Miro, SBN 24055984
E.G. Morris, SBN 14477700
505 West 12th Street, Suite 206
Austin, TX 78701

ATTORNEYS FOR PLAINTIFF

14

CERTIFICATE OF SERVICE

      On this day of September 8, 2023, Plaintiffs served their Response to Motion to Dismiss on the following counsel via ECF:

Johnathan Stone
Assistant Attorney General
Johnathan.Stone@oag.texas.gov
John Scott
Provisional Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ATTORNEYS FOR DEFENDANT
GOVERNOR GREG ABBOTT

Marlayna M. Ellis
marlayna.ellis@oag.texas.gov
Assistant Attorneys General
Office of the Attorney General
Law Enforcement Defense Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
ATTORNEYS FOR DEFENDANTS
EXECUTIVE DIRECTOR BRYAN COLLIER
EXECUTIVE DIRECTOR STEVEN MCCRAW

Scott M. Tschirhart
smtschirhart@rampagelaw.com
Denton Navarro Rocha Bernal & Zech, P.C.
2500 W. William Cannon Drive, Suite 609
Austin, Texas 78745
ATTORNEYS FOR DEFENDANTS
SHERIFF BRAD COE AND KINNEY COUNTY

Matt Crapo
Matt.crapo@protonmail.com
25 Massachusetts Ave. NW, Ste. 335
Washington, DC  20001
ATTORNEYS FOR IMMIGRATION REFORM LAW INSTITUTE

                                                    s/Susan E. Hutchison
                                                    Susan E. Hutchison