IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO ARROYO BARCENAS, *et al.*, | § | |
|     *Plaintiffs, Individually and on Behalf of the Class of Those Similarly Situated*, | § § § § | |
| | § | |
| v. | § | Case No. 1:22-cv-00397-RP |
| | § | |
| STEVEN MCCRAW in his individual capacity, *et al.*, | § § § | |
|     *Defendants*. | § | |

## DEFENDANT STEVEN MCCRAW'S REPLY IN SUPPORT OF MOTION TO DISMISS

Director McCraw submits this reply brief in further support of his Motion to Dismiss.

**I.   THE COURT LACKS JURISDICTION OVER PLAINTIFFS' REQUESTS FOR DECLARATORY RELIEF AGAINST DIRECTOR MCCRAW IN HIS INDIVIDUAL CAPACITY BASED ON THE INTERSECTION OF STANDING, RIPENESS, AND MOOTNESS.**

### A.   STANDING

Plaintiffs admit that no Plaintiff is currently incarcerated. ECF No. 59 at 4. Therefore, no Plaintiff has standing to seek declaratory relief because none of them are suffering a concrete or imminent injury that can be redressed through such relief. *See* F*riends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Plaintiffs make no argument against dismissal of their claims for lack of standing but seek only for the Court to "defer any ruling . . . until such time as Plaintiffs seek to add incarcerated individuals to the complaint." ECF No. 59 at 4. "[A]rguments in favor of standing, like all arguments in favor of jurisdiction, can be forfeited or waived." *Ctr. for Biological Diversity v. EPA*, 937 F.3d 533, 542 (5th Cir. 2019) (citation omitted). This Court rejected Plaintiffs prior argument that they could seek injunctive relief as part of a putative class, *see* ECF No. 45 at 8, and should similarly reject Plaintiffs argument that they can seek declaratory relief as such.

Plaintiffs also cannot meet Article III's redressability requirement. Plaintiffs fail to acknowledge that they chose to sue McCraw in his *individual* capacity. A declaratory judgment against

McCraw in his individual capacity has no preclusive effect on DPS or its officials. *See Haaland v. Brackeen*, 599 U.S. ---, 2023 WL 4002951, at *19 (June 15, 2023) (holding the declaration must issue against the party whose allegedly illegal conduct is at issue, "[o]therwise redressability would be satisfied whenever a decision might persuade actors who are not before the court—contrary to Article III's strict prohibition on 'issuing advisory opinions.'") (quoting *Carney v. Adams*, 141 S. Ct. 493, 498 (2020)). Thus, as "nonparties [neither DPS nor its officials] would [] be bound by the judgment." *See Haaland*, 2023 WL 4002951, at *18. Consequently, a declaration issued against McCraw "the man" has no preclusive effect on "the office" of the Director of DPS.

### B. MOOTNESS AND RIPENESS

Plaintiffs argue that their claims fall within an exception to the general mootness rule. ECF No. 59 at 5. But the cases cited by Plaintiffs address the limited circumstances of mootness *after* class certification is granted, s*ee Gerstein v. Pugh*, 420 U.S. 103, 110–111, n. 11 (1975), and when class certification is denied and the plaintiff challenges that denial, *see U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 400 (1980). The Supreme Court reiterated the limited scope of its prior holdings in *Genesis HealthCare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013), explaining that they pertain only to cases where the named plaintiff's claim became moot *after* a class certification decision had been made. The Supreme Court and Fifth Circuit have issued decisions rejecting a putative class action of pretrial detainees who were released from detention *before* class certification. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018); *Manzo-Hernandez v. Saucedo*, No. 21-40034, 2021 WL 5627068 (5th Cir. Nov. 30, 2021).

Similarly, Plaintiffs cannot maintain their current suit for declaratory relief, indefinitely delaying a decision from this Court based on hypothetical, future plaintiffs who may never become incarcerated, because those claims are not ripe. "[T]he ripeness doctrine seeks to separate matters that are premature for review because the injury is speculative and may never occur, from those cases that are appropriate for federal court action." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 544 n.12

(5th Cir. 2008). A declaratory judgment cannot be based on a possible future factual situation that may never develop. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583 587-88 (5th Cir. 1987); *Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.").

### C. *YOUNGER* AND *O'SHEA* ABSTENTION

Although Plaintiffs argue that the sought declaratory relief would have "little, if any, baring on state criminal charges," *see* ECF No. 59 at 6, Plaintiffs misunderstand the abstention doctrine for a multitude of reasons. To the extent Plaintiffs argue that the requested relief would have little baring on state criminal charges, and therefore the requested relief does not implicate an important state interest, there is no dispute that the State of Texas has a compelling and important state interest in protecting the community from crime and enforcing its criminal laws. *DeSpain v. Johnston*, 731 F.2d 1171, 1176 (5th Cir. 1984) ("The state has a strong interest in enforcing its criminal laws."); *Schall v. Martin*, 467 U.S. 253, 264 (1984) (citing *De Veau v. Braisted*, 363 U.S. 144, 155 (1960) and *Terry v. Ohio*, 392 U.S. 1, 22 (1968)) ("The 'legitimate and compelling state interest' in protecting the community from crime cannot be doubted."). Plaintiffs sought declaratory relief certainly implicates Texas' ability to enforce its criminal laws.

Additionally, *Younger* counsels federal courts to abstain from exercising jurisdiction when the federal proceeding would interfere with ongoing state judicial proceedings, not just the initial criminal charges. *Bice v. La. Pub. Def. Bd.*, 677 F.3d 712, 716 (5th Cir. 2012). Plaintiffs seek a declaration that "any person arrested… under OLS violates federal law" and "that the Defendants violated the due process rights of the class members … prosecuted under the OLS trespass arrest program." Dkt. 52 at 44 ¶ 2, 3. Clearly, the sought declaratory relief would have significant baring on state criminal charges because it would effectively require DPS to refrain from arresting individuals found to be criminally

trespassing, and Kinney County to refrain from future prosecution or face "an ongoing federal audit of state criminal proceedings." *O'Shea*, 414 U.S. at 500.

Despite Plaintiffs assertion that the eight claims related to over-detention are not subject to the *Younger* doctrine, Plaintiffs fail to cite any authority endorsing that opinion. Interestingly, Plaintiffs appear to contend that *Younger* is inapplicable because they are allegedly "entitled to release" and therefore their sought declaratory relief does not implicate an important state interest. ECF No. 59 at 7. Contrary to this assertion, though, "not releasing those who are dangerous or likely to disappear, or at least not releasing without some form of restraint such as bail, are vital state interests." *Daves v. Dallas Cnty.*, 64 F.4th 616, 655 (5th Cir. 2023) (Southwick concurring). Additionally, the focus is on whether the federal proceeding would interfere with the state proceeding. *Bice*, 677 F.3d at 717. "Interference is established 'whenever the requested relief would interfere with the state court's ability to conduct proceedings, regardless of whether the relief targets the conduct of a proceeding directly.'" *Id.* (quoting *Joseph A. ex rel. Wolfe v. Ingram*, 275 F.3d 1253, 1272 (10th Cir. 2002)). Thus, not only does the declaratory relief implicate an important state interest, but the eight claims relating to over-detention also interfere with the state court's ability to conduct proceedings, by depriving the state court of its ability to resolve challenges to purported over-detentions.

Plaintiffs also assert that *Younger* should not be applied to any claim brought by a Plaintiff without an "ongoing state judicial proceeding." ECF No. 59 at 6. Plaintiffs cite no case authority supporting this proposition. And contrary to this assertion, *Younger*-like abstention may be appropriate when the federal claim interferes with state processes generally in a manner that *Younger* abstention seeks to prevent, even when there is not a specific ongoing state proceeding. *O'Shea v. Littleton*, 414 U.S. 488, 496-97 (1974). Furthermore, Plaintiffs cannot simultaneously argue that there are no ongoing state judicial proceedings regarding the named Plaintiffs, and therefore *Younger* is inapplicable, but also seek declaratory relief on behalf of a purported class, where *Younger* would be appropriate.

## II. PLAINTIFFS' DAMAGES CLAIMS AGAINST EXECUTIVE DIRECTOR MCCRAW, IN HIS INDIVIDUAL CAPACITY, ARE BARRED BY QUALIFIED IMMUNITY.

Plaintiffs assert that "Defendant McCraw is not entitled to qualified immunity." ECF No. 59 at 18. Plaintiffs argue that McCraw "makes no bones about this enthusiastic participation OLS system." *Id.* at 17.  Plaintiffs argue that "McCraw is aware of the requirements of 8. U.S.C. Section 1357… which requires state and local officers to work in conjunction with the Federal Government as immigration officers…" *Id.* at 18. Enthusiastic participation in arresting individuals found to be criminally trespassing does not mean McCraw committed a constitutional violation. Likewise, McCraw's alleged awareness of the Section 1357 requirements are meaningless because Plaintiffs were not arrested for their removability, but for their criminal trespass. Most importantly, Plaintiffs conclusory assertions do not cure their failure to allege McCraw's personal involvement. Plaintiffs do not allege that McCraw personally arrested them for criminal trespass with the intention of determining their immigration status. McCraw is sued *only* in his individual capacity, so it is critical that Plaintiffs allege facts where the Court can plausibly infer his personal involvement, but the Amended Complaint is devoid of such facts.

Plaintiffs have not pointed this Court to a single case showing that Director McCraw should be denied qualified immunity. They have also alleged no facts that, if true, would overcome Director McCraw's entitlement to qualified immunity. Plaintiffs fail to point to a single case holding that immigration status provides immunity from arrest for criminal trespass or permitting relief against the head of a law enforcement agency in his individual capacity for the arrest of individuals who violated a state law. As such, Plaintiffs failed to show that McCraw violated a statutory or constitutional right, and that the right was clearly established at the time of the challenged conduct. *Anderson v. Valdez*, 845 F.3d 580, 600 (5th Cir. 2016).

For the first time, after filing their *Third* Amended Complaint, and only *after* McCraw filed his Second Amended Motion to Dismiss, Plaintiffs raise an entirely new claim that McCraw purportedly

failed to supervise and train officers, asserting that if they had been trained, " [officers] would not be making arrests based upon color/race and/or immigration status." ECF No. 59 at 18. These allegations are *not* contained in Plaintiffs' *Third* Amended Complaint. As a general rule, claims and allegations that are not raised in the complaint, but rather raised for the first time in a response to a dispositive motion are not properly before the court. *Cutrera v. Board of Supervisors*, 429 F.3d 108, 113 (5th Cir. 2005). Although the Fifth Circuit has held that courts should construe new allegations and theories in responses to dispositive motions as motions to amend, *see Debowale v. U.S. Inc.*, 62 F.3d 395 (5th Cir. 1995), Plaintiffs have now been given *three* opportunities to amend, as well as the opportunity to address deficiencies noted by the Defendants' motions to dismiss and this Court's Order (ECF No. 45). Plaintiffs have had more than a fair opportunity to plead their best case and have given no indication to the contrary. *Alsenz v. Aurora Bank*, FSB, 641 Fed. Appx. 359, 363 (5th Cir. 2016); *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009).

**III.   PLAINTIFFS' REMAINING CLAIMS FAIL AS A MATTER OF LAW.**

**A.  Plaintiffs fail to state a Fourth Amendment violation and fail to allege McCraw's personal involvement.**

Plaintiffs do not respond to McCraw's assertion that the Complaint should be dismissed for failure to allege his personal involvement in any Fourth Amendment violation.[1] A pleading "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint is insufficient "if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal citations omitted). "Plaintiffs suing governmental officials in their individual capacities ... must allege specific conduct giving rise to a constitutional violation. This standard requires more than conclusory assertions[.] The plaintiff must allege specific

---

[1] As discussed above, Plaintiffs raise new claims that were not contained in their Third Amended Complaint. For the reasons discussed above, these allegations are not properly before the court and should not be given any weight.

facts giving rise to the constitutional claims." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citation omitted).

Further, Plaintiffs rely heavily on *Arizona v. United States*, 567 U.S. 387, 407 (2012), but Plaintiffs were not detained or arrested based on their possible removability or due to suspected violations of federal immigration law. In *Arizona*, the Supreme Court held that federal law preempts a state statute authorizing the arrest of individuals based *only* on probable cause that the person had committed a public offense rendering the individual removable from the United States. *Id.* at 407. Here, Plaintiffs have not established that Texas's criminal trespass statute is preempted by federal law. There is also no dispute that each Plaintiff was arrested for criminally trespassing on private property in violation of state law. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (emphasis added).

As for their threadbare false arrest claim, Plaintiffs highlight language in the affidavits reflecting immigration status, *see* ECF No. 59 at 12, but all of these affidavits *also* describe the individuals' unlawful presence on private property. Details allegedly indicating racial profiling do not inherently make probable cause affidavits "false." Plaintiffs make no factual allegations that officers submitted "false facts," omitted "exculpatory facts," or provided false statements regarding their unlawful presence on private property. Therefore, Plaintiffs cannot state a claim for false arrest. *See Johnson v. Norcross*, 565 F. App'x 287, 289 (5th Cir. 2014) (the plaintiff must demonstrate that the defendants (1) "knowingly or recklessly omitted exculpatory information from the affidavits they submitted in support of the warrant applications" and, (2) that there would not have been probable cause for the arrest "if the omitted information had been included in the affidavits.").

**B.  Plaintiffs fail to state a due process claim separate from their Fourth Amendment claim.**

Plaintiffs assert that "OLS violates the Plaintiffs' substantive due process rights under the Fourteenth Amendment because the law is arbitrary and capricious and, because the federal scheme is enacted to address immigration enforcement, serves no legitimate government interest." ECF No. 59 at 13. However, Plaintiffs fail to reconcile the fact that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (quoting *Graham v. Connor*, 409 U.S. 386, 395 (1989).

As discussed in McCraw's Second Motion to Dismiss, the only relevant due process violation against McCraw would be related to arrest. However, the Fourth Amendment governs the standard for probable cause necessary to effect a detention and arrest. *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). Accordingly, Plaintiffs fail to allege a deprivation of their due process rights that is separate and apart from a right not otherwise protected by another Amendment, and this claim must be dismissed against McCraw.

**C.  Plaintiffs have failed to plead a plausible equal protection violation based on race, national origin, or immigration status.**

Plaintiffs simply do not address any of the deficiencies in their Third Amended Complaint that they failed to allege that individuals of different races or national origins were trespassing on private property but not arrested. While Plaintiffs spend significant time arguing that they were intentionally discriminated against based on their purported membership in a protected class, as a prerequisite, the plaintiff "must allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012). Instead, Plaintiffs

insist that they have "absolutely alleged" that they are "undisputedly targeted," and that "there is no question that they are being treated differently than white people and or/citizens, " *see* ECF No. 59 at 16, but fail to cite to specific portions of their Complaint which purportedly support their contentions. Indeed, a review of Plaintiffs' Third Amended Complaint shows that there are no allegations that a white person was found to be criminally trespassing and not arrested. Similarly, there are no allegations that a citizen was found to be criminal trespassing and not arrested.

Additionally, "The Constitution forbids only purposeful discrimination." *U.S. v. LULAC*, 793 F.2d 636, 646 (5th Cir. 1986). "Disparate impact alone cannot suffice to state an Equal Protection violation." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997); *Pers. Adm'r*, 442 U.S. at 272 (noting that "uneven effects upon particular groups within a class are ordinarily of no constitutional concern" and "even if a neutral law has a disproportionately adverse effect upon a racial minority, it is unconstitutional under the Equal Protection Clause only if that impact can be traced to a discriminatory purpose"); *Washington v. Davis*, 426 U.S. 229, 239 (1976). The Court may not infer racial animus based on Plaintiffs' allegations that OLS disparately impacts Latino and "Black" individuals because the impact is explainable on grounds other than race: illegal aliens are primarily committing criminal trespass in Kinney County, and they are also largely Latino or "Black" individuals.

A similar equal protection claim was rejected in *Jornaleros de Las Palmas v. City of League City*, 945 F. Supp. 2d 779, 800 (S.D. Tex. 2013). Plaintiffs argue that *Jornaleros* is distinguishable because the day laborer plaintiffs in were targeted based on *what* they did—not *who* they were, *see* ECF No. 59 at 16, but the distinction is not meaningful because Plaintiffs here were "targeted" because of *what* they did, i.e., criminally trespass, not who they were.

### D. Plaintiffs fail to state a conspiracy claim.

Plaintiffs assert that the alleged conspiracy is "clear and on the record." ECF No. 59 at 16. Importantly, Plaintiffs make no attempt at citing the purportedly clear record and continue to offer

nothing more than conclusory allegations of a vague conspiracy, without any reference to operative facts showing a prior illegal agreement. *See Way v. Mueller Brass Co.*, 840 F.2d 303, 308 (5th Cir. 1988) (quoting *Lynch v. Cannatella*, 810 F.2d 1363, 1369-70 (5th Cir. 1987) (holding that plaintiffs who assert conspiracy claims under the civil rights statutes must plead the operative facts showing a prior illegal agreement, and bald allegations of an agreement do not suffice. It is well-settled that a complaint is insufficient if it offers only "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Armstrong v. Ashley*, 60 F.4th 262, 270 (5th Cir. 2023).

Plaintiffs also disregard any requirement that they must allege racial animus, rather than class-based animus. Plaintiffs assert that they must show "that the conspiracy was motivated by class-based animus" and that the "conspiracy between… to implement OLS was specifically for the purpose of depriving a class of persons of the equal protections of the law." ECF No. 59 at 17. But this is not the standard. The Fifth Circuit has made clear that a claim under § 1985(3) *must* include race-based animus. *Cantu v. Moody*, 933 F.3d 414, 419 (5th Cir. 2019); *see also Bryan v. City of Madison, Miss.*, 213 F.3d 267, 276 (5th Cir. 2000) ("In this circuit, we require an allegation of a race-based conspiracy.")). As such, Plaintiffs' Section 1985 claim based on *national origin* and *immigration status* – not race – must be dismissed.

## IV.   PRAYER

For all these reasons, Executive Director McCraw respectfully asks the Court to dismiss the claims against him in his individual capacity.

Respectfully submitted,

| | |
|---|---|
| **KEN PAXTON** | /s/ *Marlayna M. Ellis* |
| Attorney General | **MARLAYNA M. ELLIS** |
| | Texas Bar No. 24123448 |
| **BRENT WEBSTER** | marlayna.ellis@oag.texas.gov |
| First Assistant Attorney General | Attorney-in-Charge |
| | |
| **GRANT DORFMAN** | Office of the Attorney General |
| Deputy First Assistant Attorney General | Law Enforcement Defense Division |
| | P.O. Box 12548, Capitol Station |
| **JAMES LLOYD** | Austin, Texas 78711-2548 |
| Deputy Attorney General for Civil Litigation | (512) 463-2080 / Fax (512) 370-9994 |
| | |
| **SHANNA E. MOLINARE** | **ATTORNEYS FOR DEFENDANTS** |
| Chief, Law Enforcement Defense Division | **EXECUTIVE DIRECTOR BRYAN MCCRAW** |
| | **DIRECTOR STEVEN MCCRAW** |

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2023, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Marlayna M. Ellis*
**MARLAYNA M. ELLIS**
Assistant Attorney General

11