IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ERASTO BARCENAS, MELVIN AMADOR RODAS, IVAN RUANO NAVA, NOLIS LEYVA-GONZALEZ, JOSE CARLOS GOMEZ-COLORADO, JOSE LUIS DOMINGUEZ-ROJAS, MELVIN AMAYA ZELAYA, JESUS CURIPOMA, OSCAR SERRANO MARTINEZ, CHRISTIAN IVAN RUIZ-RODRIGUEZ, ISRAEL BAYLON ARELLANO, JOSE LOPEZ LOZANO, MIGUEL LOPEZ LOZANO, FRANCISCO VILLALPANDO RAMOS, and CESAR GALINDO ESCOTO,<br><br>  Plaintiffs,<br><br>v.<br><br>STEVEN C. MCCRAW, GREG ABBOTT, BRYAN COLLIER, BRAD COE, and KINNEY COUNTY, TEXAS,<br><br>  Defendants. | § § § § § § § § § § § § § § § § § § § § § § § § § | 1:22-CV-397-RP |

## **ORDER**

Before the Court are several motions to dismiss filed by Defendants Brad Coe ("Coe"), in his individual capacity and Kinney County, Texas, (Dkt. 53); Bryan Collier ("Collier"), in his individual capacity, (Dkt. 54); Steven McCraw ("McCraw"), in his individual capacity, (Dkt. 55); and Greg Abbott ("Abbott"), in his individual capacity[1] (collectively, "Defendants"), (Dkt. 56). Plaintiffs filed responses to all of the motions to dismiss. (Dkts. 59, 60, 61, 62). Defendants filed replies to each response. (Dkts. 63, 65, 66, 67). Having reviewed the complaint, the motions to dismiss, and the parties' responsive briefing, the Court will grant Defendants' motions to dismiss.

---

[1] The caption of the case indicates that Abbott is also being sued in his official capacity, but the Revised Third Amended Complaint only states that Abbott is being sued in his individual capacity. (*See* Rev. 3d. Am. Compl., Dkt. 52, at 10). The Court will therefore assume that Abbott is only being sued in his individual capacity.

1

# I. BACKGROUND

## A. Factual Background

Plaintiffs are all male individuals who were arrested without warrants for criminal trespass in Kinney County, Texas in 2021 or 2022, as part of the State of Texas's immigration initiative known as Operation Lone Star ("OLS"), which was launched by Defendant Abbott in March 2021. (Rev. 3d. Am. Compl., Dkt. 52, 3–9). Plaintiffs allege that Abbott's actions and OLS policies, along with the actions and policies of the other Defendants, violated several of their constitutional rights. (*Id.*). Rather than processing them through the normal state jail system, Plaintiffs and other individuals arrested under OLS for criminal trespass are "channeled into a separate criminal system that is designed by OLS only for migrants." (*Id.* at 14). Most of the Plaintiffs were taken to the Texas Department of Criminal Justice's ("TDCJ") Dolph Brisco Unit in Frio County, Texas after their arrests. (*Id.* at 3–9). Several of the Plaintiffs allege that they were detained for extended periods of time after they were eligible for release. (*Id.*). Plaintiffs further allege that they also waited for weeks or months to be appointed a defense attorney or given a court date. (*Id.*). Some of the Plaintiffs also allege that they were transported directly from state custody to United States Customs and Border Control in violation of federal law. (*Id.*).

## B. Procedural Background

This is a putative class action. (3d. Am. Compl., Dkt. 52). Plaintiffs filed their original complaint on April 27, 2022. (Dkt. 1). On June 23, 2022, Plaintiffs filed an amended complaint. (Dkt. 9). Plaintiffs filed a Second Amended Complaint on June 27, 2023. (Dkt. 10). Defendants then filed several motions to dismiss Plaintiffs' Second Amended Complaint. (Dkts. 13, 15, 16, 17). On March 28, 2023, the Court dismissed Plaintiffs' Second Amended Complaint without prejudice under Federal Rule of Civil Procedure 12(e). (Order, Dkt. 45). The Court also dismissed Defendants' motions to dismiss as moot. (*Id*). The Court allowed Plaintiffs to file an amended complaint, (*id.*),

and Plaintiffs filed their Third Amended Complaint on May 25, 2023, (Dkt. 49). Plaintiffs then filed a revised version of their Third Amended Complaint as the May 25, 2023, version did not have their exhibits attached. (Dkt. 52).[2] Plaintiffs' Revised Third Amended Complaint brings several claims against Defendants: (1) violation of the Fourteenth Amendment Equal Protection Clause; (2) violation of the Fourteenth Amendment Substantive Due Process clause; (3) violation of the Sixth Amendment right to counsel; (4) violation of the Fourth Amendment; and (5) violation of 42 U.S.C. § 1985(3). (*Id.* at 36–44). Plaintiffs request relief in the form of several declaratory judgments as well as damages. (*Id.* at 43–44). The Revised Third Amended Complaint also represents that Plaintiffs "seek to certify classes to recover damages for illegal over-detention." (*Id.* at 3). Defendants have filed several motions to dismiss Plaintiffs' Revised Third Amended Complaint under Rules 12(b)(1) and 12(b)(6). (Dkts. 53, 54, 55, 56).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Rule 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."

---

[2] Plaintiffs' Revised Third Amended Complaint, ("Rev. 3d. Am. Compl.," Dkt. 52), is the live complaint in this action.

*Id.* In ruling on a Rule 12(b)(1) motion, a court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider

documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because a court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey*, 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

### III. DISCUSSION

#### A. The Mootness Doctrine

Article III of the United States Constitution authorizes federal courts to decide only "Cases" or "Controversies." U.S. Const., Art. III, § 2. The "actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Alvarez v. Smith*, 558 U.S. 87, 92 (2009) (cleaned up). "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for the purposes of Article III—'when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quoting *Murphy v. Hunt*, 445 U.S. 478, 481 (1982)). A moot claim "presents no Article III case or controversy, and a court has no constitutional jurisdiction to resolve the issue it presents." *Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 344 (5th Cir. 2013) (cleaned up). Mootness is a jurisdictional issue. *Manzo-Hernandez v. Saucedo*, No. 21-40034, 2021 WL 5627068, at *2 (5th Cir. Nov. 30, 2021) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94–95 (1995)).

In its order on March 28, 2023, this Court dismissed Plaintiffs' complaint without prejudice under Rule 12(e) and allowed Plaintiffs to file an amended complaint. (Order, Dkt. 45, at 10). In that same order, this Court explained that the claims for equitable relief in Plaintiffs' Second Amended Complaint—the live pleading at issue at the time—were moot. (*Id.* at 7–8). Plaintiffs' Second

Amended Complaint requested 13 types of injunctive and declaratory relief, including "an order requiring Defendants to release people detained under OLS, release detainees after they enter a plea, . . . and release detainees after charges are dismissed." (*Id.* (citing to 2d. Am. Compl., Dkt. 10, at 85–87)). Plaintiffs contended that although no named Plaintiff remained in prison, they could still seek injunctive relief as part of a putative class. (Pls.' Resp., Dkt. 26, at 5). However, as this Court stated in its prior order, Plaintiffs were incorrect in their belief, as the Supreme Court and the Fifth Circuit have both recently issued decisions rejecting putative class actions comprised of pretrial detainees who were released from detention prior to class certification. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1538 (2018); *Manzo-Hernandez*, 2021 WL 5627068.

In Plaintiffs' Revised Third Amendment Complaint, they once again request equitable relief in the form of the following seven declaratory judgments:

1. a judgment declaring that any person arrested based on race, immigration status and/or national origin under OLS violates federal law;
2. a judgment declaring that the Defendants violated the due process rights of the class members detained or prosecuted under the OLS trespass arrest program;
3. a judgment declaring that Defendants' refusal to release detainees after posting cash bond violates state and federal law;
4. a judgment declaring that Defendants' refusal to release detainees after entering a plea violates state and federal law;
5. a judgment declaring that Defendants' refusal to release detainees after a dismissal of charges violates state and federal law;
6. a judgment declaring that Defendants' refusal to release detainees after a personal bond violates state and federal law;
7. a judgment declaring that Defendants' refusal to afford detainees constitutional rights at the time of detention violates state and federal law;

(Rev. 3d. Am. Compl., Dkt. 52, at 44). Plaintiffs state that none of the named Plaintiffs in their Revised Third Amended Complaint are still in detention, (Pls.' Resp., Dkt. 62, at 4)—once again prompting Defendants to contend that Plaintiffs' claims for equitable relief are moot—but Plaintiffs argue that the mootness doctrine is flexible when it comes to class actions, (*id.* at 5). Generally, "a class action would be moot if no named class representative with an unexpired claim remained at the

time of class certification." *Sanchez-Gomez,* 138 S. Ct. at 1538 (cleaned up). However, as Plaintiffs point out, the Supreme Court has held that in class actions challenging procedures for pretrial detention, the release of the named plaintiffs from custody does not always moot the action. (Pls.' Resp., Dkt. 62, at 5).

Unfortunately for Plaintiffs, the cases in which the Supreme Court has made such an exception are distinguishable from the facts of the instant case. In *Sosna v. Iowa,* "[t]he [Supreme] Court held that a class action is not rendered moot when the named plaintiff's individual claim becomes moot *after* the class has been duly certified." *Genesis Healthcare Corp. v. Symczyk,* 569 U.S. 66, 74 (2013) (citing *Sosna v. Iowa,* 419 U.S. 393, 399 (1975)) (emphasis in original). In *United States Parole Commission v. Geraghty,* the Supreme Court narrowly extended this holding to instances where "an action would have acquired the independent legal status described in *Sosna* but for the district court's erroneous denial of class cerification." *Genesis Healthcare Corp.,* 569 U.S. at 74 (citing *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 404, 416 n.11). Here, Plaintiffs have not already been certified as a class, as was the case in *Sosna.* Nor has this Court previously erroneously denied class certification, as occurred in *Geraghty.* "[E]ssential to [the Supreme Court's] decisions in *Sosna* and *Geraghty* was the fact that a putative class acquires an independent legal status once it is certified under Rule 23." *Genesis Healthcare Corp.,* 569 U.S. at 75.

Plaintiffs also cite to *County of Riverside v. McLaughlin,* where the Supreme Court held that although the class was not certified until after the named plaintiffs' claims had become moot, the Court still had jurisdiction. 500 U.S. 44, 52 (1991). The Supreme Court noted that the plaintiffs' request for "prompt judicial determination of probable cause" was live when the complaint was filed and that the nature of the request was "inherently transitory," such that the trial court would not have time to rule on a motion for class certification before the named plaintiffs' requested equitable relief was moot. *Id.* Here, Plaintiffs' claims for equitable relief were not even live at the time the

7

Revised Third Amended Complaint was filed. And Plaintiffs did not take the opportunity to plead facts on which the Court could find that their claims may be "inherently transitory" like the claims in *McLaughlin*. Rather Plaintiffs ask the Court to "defer any ruling on injunctive relief or declaratory relief until such time as Plaintiffs seek to add incarcerated individuals to the complaint." (Pls.' Resp., Dkt. 59, at 4). Defendants rightly argue that Plaintiffs "had ample opportunity to . . . amend their Complaint to include currently incarcerated plaintiffs but chose not to." (Collier Reply, Dkt. 67, at 2).

More analogous to this case is *Manzo-Hernandez*, in which the petitioners "[did] not argue that their individual claims remain[ed] live but continue[d] to seek injunctive relief for themselves, as well as on behalf of a putative class of detained witnesses." 2021 WL 5627068, at *3. The *Manzo-Hernandez* petitioners were undocumented immigrants arrested by United States Customs and Border Patrol agents and were detained for an extended period of time without counsel and without valid detention orders. *Id.* at *1. In a *habeas* petition, the petitioners claimed that the defendant, the assistant warden of the detention center, had a policy of failing to comply with 18 U.S.C. § 3144 and violated the Due Process Clause of the Fifth Amendment. *Id.* The petitioners sought their own release and an injunction against the warden from detaining individuals under Section 3144 without a valid detention order, as well as declarations that the warden had detained the petitioners in violation of Section 3144 and the Constitution and that detentions under Section 3144 must follow individualized findings. *Id.* Petitioners indicated that they sought to represent a class of around 156 individuals who had experienced similar treatment. *Id.*

On appeal after the district court declined to exercise jurisdiction over the petitioners' declaratory judgment claims as a matter of discretion, the Fifth Circuit held that the declaratory judgment claims were moot because the petitioners were no longer in detention. *Id.* at *3. Further, the petitioners' claims on behalf of the putative class were also moot because the class had not yet

8

been certified before they were released, as in *Sosna*, or been erroneously denied class status, like the plaintiffs in *Geraghty*. *Id.* The petitioners had moved for class certification, but the district court had denied it without prejudice on the basis that it would first consider any motions to dismiss. *Id.* at *2.

Similarly, here, the Court has not granted nor denied class certification. In ruling on the motions to dismiss, the Court finds that Plaintiffs, who are no longer in custody, do not have live claims for the declaratory judgments they seek. And because a class has not yet been certified, there is no exception from the general rule that a putative class action is moot when no named class representative with an unexpired claim remains at the time of class certification. *See Sanchez-Gomez*, 138 S. Ct. at 1538. "[O]nly a properly certified class . . . may succeed to the adversary position of a name[d] representative whose claim becomes moot." *Kremens v. Bartley*, 431 U.S. 119, 133 (1977) (cleaned up). Thus, the Court dismisses Plaintiffs' declaratory judgment claims as moot.

### B. Failure to State a Claim

The Court will now address Plaintiffs' remaining request for "monetary damages on a class-wide basis for time unlawfully spent in custody." (Rev. 3d. Am. Compl., Dkt. 52, at 44). A plaintiff seeking damages may avoid mootness even if injunctive relief is no longer available to him or her. *See Manzo-Hernandez*, 2021 WL 5627068, at *3. However, while Plaintiffs' request for damages may not be moot as are their claims for declaratory judgment, the Court finds that Plaintiffs have failed to adequately plead their Fourth Amendment claim under 42 U.S.C. § 1983[3] or their Section 1985(3) conspiracy claim.

---

[3] Plaintiffs do not clearly state that they are bringing their constitutional violation claims under Section 1983. In the section of their Revised Third Amended Complaint titled "Class Designation," Plaintiffs do state that the "Class Members' legal claims arise under the United States Constitution, asserted pursuant to 42 U.S.C. § 1983 and § 1985." (Rev. 3d. Am. Compl., Dkt. 52, at 36). However, Plaintiffs do not mention Section 1983 again in their complaint, even when recounting their claims for relief. The Court therefore assumes that Plaintiffs intend to bring their claims, including their Fourth Amendment claim, pursuant to Section 1983.

Further, Plaintiffs' responses to Defendants' motions to dismiss suggest that Plaintiffs intend to assert that time unlawfully spent in custody is not only a violation of the Fourth Amendment, but also the Fourteenth

Section 1983 provides an avenue for individuals to assert violations of preexisting federal rights. 42 U.S.C. § 1983; *see Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (internal quotation marks and citation omitted). "To bring an action within the purview of section 1983, a claimant must first identify a protected life, liberty, or property interest, and then prove that government action resulted in a deprivation of that interest." *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 700 (5th Cir. 1991) (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979)).

### 1. Fourth Amendment Violation Pursuant to Section 1983

<u>Defendants McCraw, Collier, Coe, and Abbott</u>

Plaintiffs bring their claims against Defendants McCraw, Collier, Coe, and Abbott in their individual capacities. (Rev. 3d. Am. Compl., Dkt. 52, at 10). When a plaintiff brings a Section 1983 claim against a government-official defendant in their individual capacity, the plaintiff "must plead that each . . . defendant, through the official's own individual actions, has violated the Constitution." *Jones v. Hosemann*, 812 F. App'x 235, 238 (5th Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)) (cleaned up). "It is not enough for a plaintiff to simply allege that something unconstitutional happened to him. The plaintiff must plead that each defendant individually engaged in actions that caused the unconstitutional harm." *Jones*, 812 F. App'x at 238–39. Further, vicarious liability is inapplicable to Section 1983 suits: "Government officials may not be held liable for the

---

and the Eighth Amendments. (*See, e.g.*, Pls.' Resp., Dkt. 60, at 11). However, the live complaint clearly categorizes time unlawfully spent in custody as an alleged violation of the Fourth Amendment, (*see* Rev. 3d. Am. Compl., Dkt. 52, at 40), so the Court will only consider whether Plaintiffs have sufficiently pled a Fourth Amendment violation pursuant to Section 1983. In an abundance of caution, the Court notes here that even if Plaintiffs are alleging violations of other constitutional rights regarding the time unlawfully spent in custody, the Court would still find that Plaintiffs have failed to state a claim upon which relief can be granted because of the dearth of facts plead about Defendants' individual or supervisory actions. As for Plaintiffs' Section 1983 conspiracy claim, (*see* Rev. 3d. Am. Compl., Dkt. 52, at 42–43), "Section 1983 conspiracy claims are not actionable without an underlying violation of section 1983." *Collins v. Garcia*, No. 1-19-CV-1097-LY, 2020 WL 2733953, at *7 (W.D. Tex. May 26, 2020) (citing *Jackson v. Pierre*, No. 19-30853, 2020 WL 1918708, at *3 (5th Cir. Apr. 20, 2020)).

unconstitutional conduct of their subordinates under a theory of respondeat superior." *Ashcroft*, 556 U.S. at 676. However, a supervisory official may be held liable if (1) he affirmatively participates in the acts that caused the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury. *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011). Here, Plaintiffs fail to plead that Defendants McCraw, Collier, Coe, and Abbott "individually engaged in actions" or "implemented unconstitutional policies" that violated their Fourth Amendment rights.

In Count Four of the Revised Third Amended Complaint, Plaintiffs allege that Defendants McCraw, Collier, Abbott, Coe, and Kinney County "created, directed, and implemented a policy in which arresting officers are required to continuously detain individuals in order to confirm or deny the detainee/arrestee's immigration and residency status." (Rev. 3d. Am. Compl., Dkt. 52, at 42). Plaintiffs further allege that Defendants "created, directed, and implemented a policy to keep the arrestee/defendants in custody following their entitlement to release due to case resolution or a bond being posted." (*Id.*).

Although Plaintiffs are unclear, Plaintiffs' claim that Defendants effectuated a policy in which officers detain individuals solely to identify their immigration status seems to relate to the Fourth Amendment right to be free from false arrest and unreasonable seizure. To establish a violation of the Fourth Amendment right to be free from false arrest and from unreasonable seizure, a plaintiff must show that there was no probable cause for their arrest. *See Haggerty v. Tex. S. Univ.*, 391 F.3d 653, 655–56 (5th Cir. 2004). If probable cause exists, the claim fails. *See Clark v. Thompson*, No. 20-10568, 850 F. App'x 203, 210 (5th Cir. Mar. 9, 2021). "To determine whether probable cause existed for an arrest, the court examines the events leading up to the arrest, and then decide[s] whether these historical facts, viewed from the standpoint of a reasonable police officer, amount to probable cause." *Loftin v. City of Prentiss*, 33 F.4th 774, 780 (5th Cir. 2022) (cleaned up). Critically, "'probable cause requires only a probability or substantial chance of criminal activity, not an actual

11

showing of such activity.'" *Loftin*, 33 F.4th at 780 (quoting *Illinois v. Gates,* 480 U.S. 213, 243 n.13 (1983)). "Thus, probable cause 'is not a high bar.'" *Id.* (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)).

As for Plaintiffs' second claim that Defendants are effectuating a policy to keep OLS arrestees in detention past their legal entitlement to release, this seems to suggest a due process violation, although Plaintiffs include it as part of their Fourth Amendment claim. (*See* Rev. 3d. Am. Compl., Dkt. 52, at 42). Regardless, there is a clearly established right to timely release from prison. *See Porter,* 659 F.3d at 445. While the term "timely" has never been clearly defined, the Fifth Circuit has held that "it is without question that holding without legal notice a prisoner for a month beyond the expiration of his sentence constitutes a denial of due process." *Crittindon v. LeBlanc*, 37 F.4th 177, 188 (5th Cir. 2022).

Plaintiffs' conclusory statements about the creation, direction, and implementation of unconstitutional policies are not sufficient to state a claim for a Fourth Amendment violation pursuant to Section 1983. Even when Plaintiffs do plead facts about Defendants McCraw, Collier, Abbott, and Coe's individual actions as part of their Statement of the Facts, Plaintiffs do not explain how each Defendant caused the Fourth Amendment violations, as Plaintiffs must do when suing Defendants in their individual or supervisory capacity. *See Jones*, 812 F. App'x at 238-39. For example, Plaintiffs plead the following limited facts about Defendant McCraw: (1) McCraw is the director of the Texas Department of Public Safety ("DPS"); (2) "DPS is the primary agency that arrests individuals on criminal trespass charges under the OLS program"; (3) McCraw deploys and supervises DPS officers; and (4) McCraw told DPS officers to only arrest male migrants. (3d. Am. Compl., Dkt. 52, at 15–17). None of these facts support the allegations that McCraw "created, directed, and implemented a policy in which arresting officers are required to continuously detain individuals in order to confirm or deny the detainee/arrestee's immigration and residency status" or

12

that he "created, directed, and implemented a policy to keep the arrestee/defendants in custody following their entitlement to release due to case resolution or a bond being posted." Plaintiffs do not even allege that McCraw has the authority to create or enforce such policies in his role at DPS.

As for Defendant Collier, Plaintiffs merely state that he is the Executive Director of TDCJ and that two of the Plaintiffs, Mr. Barcenas and Mr. Rodas, filed petitions for writ of mandamus compelling Collier to direct their release after county judges had ordered their release. (*Id.* at 4). These facts do not speak to how Collier individually engaged in actions that violated Plaintiffs' Fourth Amendment rights. Further, Collier cannot be held liable for the unconstitutional conduct of TDCJ employees through a Section 1983 action, *Ashcroft*, 556 U.S. at 676, and Plaintiffs do not plead that he implemented unconstitutional policies. Therefore, Plaintiffs' pleadings that TDCJ has "repeatedly failed to timely release OLS arrestees" do not adequately allege Collier's individual or supervisory involvement.

Similarly, Plaintiffs plead no facts about Defendant Abbott's individual involvement with creating, directing, and implementing policies to unlawfully keep Plaintiffs in custody. Plaintiffs state that Abbott announced OLS as his policy to "deploy a substantial number of state law enforcement personnel and other resources along the Texas-Mexico border," (Rev. 3d. Am. Compl., Dkt. 52, at 11), and that Abbott signed H.B. 9 into law, (*id.* at 13). Plaintiffs further plead that Abbott directed the Texas National Guard to set up fences on private property as part of OLS, (*id.* at 14), and that, like McCraw, Abbott directed DPS to only arrest males on criminal trespass charges, (*id.* at 17). Again, none of these facts go to Abbott's individual involvement with arresting Plaintiffs without probable cause or holding Plaintiffs in custody beyond their entitlement to release.

Plaintiffs state that Defendant Coe is the Sheriff of Kinney County. (Rev. 3d. Am. Compl., Dkt. 52, at 10). They also plead that Coe "publicly mentioned three arrests for trespass on [Kinney] County Attorney Smith's ranch, pursuant to Kinney County's efforts to begin arresting migrants for

13

trespass." (*Id.* at 21). Plaintiffs state that the American Civil Liberties Union has identified at least eight arrests pursuant to OLS where Coe was the complaining witness, (*id.* at 21); however, they fail to allege that Coe's role as a complaining witness violated Plaintiffs' Fourth Amendment rights. While Plaintiffs do allege that the Kinney County Sheriff's Office illegally kept Plaintiffs in custody, (*see id.* at 8), Coe cannot be held liable for such behavior under a theory of *respondeat superior. Ashcroft*, 556 U.S. at 676. Plaintiffs again fail to plead any facts about Coe's individual actions or Coe's direct involvement in implementing unconstitutional policies.

### B. Defendant Kinney County

Plaintiffs also allege in Count Four that Defendant Kinney County "created, directed, and implemented a policy in which arresting officers are required to continuously detain individuals in order to confirm or deny the detainee/arrestee's immigration and residency status." (Rev. 3d. Am. Compl., Dkt. 52, at 42). Plaintiffs further allege that Kinney County "created, directed, and implemented a policy to keep the arrestee/defendants in custody following their entitlement to release due to case resolution or a bond being posted." (*Id.*).

Municipal liability under Section 1983 requires proof of three elements: "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023) (internal citations omitted); *see also Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (internal quotations omitted). To sufficiently plead that a practice is so persistent and widespread as to have the force of law, a plaintiff's description of the alleged policy cannot be conclusory and must contain specific facts. *Johnson*, 83 F.4th at 946. Like government-

defendants sued in their individual capacity, "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

Beyond alleging that Kinney County "created, directed, and implemented" policies that resulted in unlawful detention of Plaintiffs, Plaintiffs do not plead facts that suggest there was either a written policy to illegally detain Plaintiffs or a practice promulgated by the policymakers of Kinney County that was so persistent that it had the force of law. Plaintiffs seem to press the theory that while there was not a written policy, Kinney County engaged in a persistent custom of detaining individuals arrested pursuant to OLS beyond the time when they were entitled to release. However, the facts alleged against Kinney County do not speak to a custom of illegal detainment: Plaintiffs allege that Kinney County officials (1) regularly corresponded with the Texas Office of the Attorney General ("OAG") regarding OLS, (2) requested funding and support from Defendant Abbott, (3) cooperated with "groups of armed private paramilitary organizations," and (4) removed judges who expressed "a willingness to grant relief" to OLS arrestees. (Rev. 3d. Am. Compl., Dkt. 52, at 12, 13, 27).

Plaintiffs do allege that Kinney County judges "refuse to set habeas petitions for hearing or do so after lengthy delay." (*Id.* at 27). They also plead that Kinney County Judge Shahan has begun replacing visiting judges with whom he disagrees so that he can further delay proceedings and keep arrestees in detention. (*Id.* at 27). While county judges may be considered as acting for the county itself for the purposes of Section 1983 liability, *see Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 536 (5th Cir. 2022), Plaintiffs fail to plead that the Kinney County judges, including Judge Shahan, were acting outside of their judicial capacity. The Fifth Circuit has held that under Texas law, "a local judge acting in his or her judicial capacity is not considered a local government official whose actions are attributable to the county." *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009). Thus, even taking Plaintiffs' pleadings about Kinney County judges as true, the Court cannot find that

Plaintiffs have sufficiently pleaded that Kinney County is liable to Plaintiffs for Fourth Amendment violations.

Plaintiffs also allege that Kinney County's prosecutors enhanced Plaintiffs' state criminal trespass charges by one misdemeanor class and have failed to file charges at all against many arrestees, resulting in "weeks of detention past the date at which release was required." (Rev. 3d. Am. Compl., Dkt. 52, at 25). Additionally, Plaintiffs do plead facts about the incredibly slow rates at which charges have been brought against OLS arrestees generally. (*Id.* at 26). But "Texas law makes clear . . . that when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted." *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997). Plaintiffs make no attempt to plead their way around this clearly stated rule, even after Defendants Coe and Kinney County raised that point in their motion to dismiss, (Dkt. 53, at 18).

Finally, Plaintiffs allege that the Kinney County Sheriff's Office is "directly involved in arresting individuals for the Operation Lone Star trespass arrest program as well." (Rev. 3d. Am. Compl., Dkt. 52, at 16). Plaintiffs also allege that the "Kinney County Sheriff's Office . . . [has] repeatedly failed to timely release OLS arrestees. Time and again, those who have been granted personal bond, bail paid, or had their cases dismissed have remained confined in the absence of any legal authority for their detention." (*Id.* at 29). These are conclusory statements unsupported by any factual pleadings. The Court cannot find that these statements alone are sufficient to state a claim for municipal liability under Section 1983 for violations of the Fourth Amendment.

### 2. Section 1985(3) Conspiracy Claim

To state a Section 1985 claim, a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or

more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n.12 (5th Cir. 2001).

Here, Plaintiffs do not sufficiently plead that Defendants conspired with one another. Plaintiffs state that "the agreement between Abbott, McCraw, Collier, Coe, and Kinney County to engage in 'immigration enforcement' is clear and on record. It is also clear that they agreed to implement the OLS immigration enforcement without the involvement of the Federal Government and based upon observed race/color and/or immigration status in violation of the United States Constitution." (Rev. 3d. Am. Compl., Dkt. 52, at 43). However, nowhere do Plaintiffs explain what they mean by "the agreement" between Defendants. They allege that there is ongoing correspondence between Kinney County and OAG, (*id.* at 12), and that Kinney County has expressed its willingness to implement OLS, (*id.* at 13). Beyond that, Plaintiffs do not plead facts as to how Defendants have been conspiring together to deprive Plaintiffs of their constitutional rights. And as discussed above, Plaintiffs fail to state a claim pursuant to Section 1983 that Defendants have violated their constitutional rights in an individual, supervisory, or municipal capacity. Thus, the Court must dismiss Plaintiffs' Section 1985(3) conspiracy claim.

## V. CONCLUSION

Because Plaintiffs' requests for declaratory judgment are moot and because they fail to sufficiently plead that Defendants have violated their constitutional rights, the Court finds that it must dismiss this case. While Plaintiffs' Revised Third Amended Complaint certainly provided the Court with concerning statistics regarding the rollout of OLS, Plaintiffs have not provided the Court

17

with facts regarding how the individual or supervisory powers and actions of Defendants have deprived Plaintiffs of their constitutional rights.

For the reasons given above, **IT IS ORDERED** that Defendants' Motions to Dismiss, (Dkts. 53, 54, 55, 56), are **GRANTED**.

Plaintiffs have already amended their complaint three times, (Dkts. 9, 10, 52), and this Court has already dismissed their claims without prejudice once, (Order, Dkt. 45). In their Revised Third Amended Complaint, (Dkt. 52), Plaintiffs have failed to fix the deficiencies in their complaint that the Court previously noted, (Dkt. 45). Accordingly, the Court finds that further amendment would be futile. **IT IS THEREFORE ORDERED** that Plaintiffs' claims are **DISMISSED** with prejudice.

**SIGNED** on February 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE